PROSKAUER ROSE LLP
Kathleen M. McKenna
Evandro C. Gigante
Rachel S. Fischer
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900
kmckenna@proskauer.com
egigante@proskauer.com
rfischer@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

| | | |
|---|---|---|
| KERRIE CAMPBELL and JAROSLAWA Z. JOHNSON, individually, and on behalf of others similarly situated, | : : : : : | Case No.:  1:16-cv-06832 (JPO) |
| Plaintiffs, | : : | |
| v. | : : : | **ECF CASE** **ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT WITH COUNTERCLAIM** |
| CHADBOURNE & PARKE LLP, MARC ALPERT, ANDREW GIACCIA, ABBE LOWELL, LAWRENCE ROSENBERG, HOWARD SEIFE, and PAUL WEBER, | : : : : : : : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

        Defendants Chadbourne & Parke LLP ("Chadbourne" or the "Firm"), Marc Alpert

("Alpert"), Andrew Giaccia ("Giaccia"), Abbe Lowell ("Lowell"), Lawrence Rosenberg

("Rosenberg"), Howard Seife ("Seife"), and Paul Weber ("Weber") (collectively "Defendants"),

by their attorneys, Proskauer Rose LLP, hereby answer the First Amended Class Action

Complaint ("First Amended Complaint") as follows:

As to the un-numbered introductory paragraph of (and much of the highly charged language designed for media attention in) the First Amended Complaint which alleges that Plaintiffs Kerrie Campbell ("Campbell") and Jaroslawa Johnson ("Johnson") (collectively, "Plaintiffs") bring this action to redress supposed "systematic gender discrimination" at Chadbourne, Defendants deny this allegation and further state that what this action actually presents is the unfortunate scenario where the worthy purposes of the nation's anti-discrimination laws are falsely invoked by two partners who seek to avoid responsibility for and divert attention from their own respective professional performances and, with respect to Campbell, the facts of her own misconduct, as more specifically detailed herein.

## I.   AS TO AND AS CONCERNING THE "INTRODUCTION"

1.     Defendants deny the allegations in Paragraph 1 of the First Amended Complaint, except admit that Chadbourne is an international law firm with over 300 attorneys, some of whom are employees and some of whom are partners, currently has 10 offices around the world, and admit that Campbell joined Chadbourne in January 2014 as a lateral partner in the Litigation Department based in Chadbourne's Washington, D.C. office.  Defendants refer Plaintiffs to the rankings referenced in *The American Lawyer* for the true and complete contents thereof.

2.     Defendants deny the allegations in Paragraph 2 of the First Amended Complaint, except admit that Campbell opened multiple billing indexes under the names of various clients, which varied in size and significance.

3.     Defendants deny the allegations in Paragraph 3 of the First Amended Complaint, except admit that Campbell is a member of the *Law 360 Media & Entertainment* Editorial Advisory Board and was listed in the publication "Best Lawyers in America" in the category of

First Amendment Litigation**,** and admit that Campbell testified before the United States

Consumer Product Safety Commission.

4.     Defendants deny the allegations in Paragraph 4 of the First Amended Complaint,

and further state that Campbell's productivity and revenue generation have been far below those

of Chadbourne's "top performing male Partners."

5.     Defendants deny the allegations in Paragraph 5 of the First Amended Complaint,

except admit that on February 19, 2016, Giaccia met with Campbell and explained that the

Management Committee had concluded that her practice did not fit with the Firm and suggested

that the best step for Campbell personally would be to transition to another Firm that was more

suitable for her, and admit that Campbell was told that her monthly draw would be reduced.

This decision was made in connection with the Management Committee's annual evaluations of

each Chadbourne partner's role and contributions to the Firm, a practice which at times can

include partners being asked to move their practices elsewhere as the Firm re-evaluates its

strategic plans and goals.  The Management Committee's decision that Campbell's practice was

a poor fit for the Firm was a well-informed, carefully considered business judgment that was

made in the ordinary course of business for entirely legitimate and proper business reasons and

without a scintilla of consideration being given to her gender. Campbell generated relatively little

business and proved to have little potential for cross-selling to other departments at the Firm,

contrary to expectations created by Campbell both when interviewing with the Firm and after.  In

addition, in the short period in which she has been a partner, Campbell was seemingly unable to

manage her practice, mistreated associates, and acted in ways that raised serious questions about

her legal knowledge and judgment as well as her technical competence in litigation matters.

Campbell's inappropriate behavior at a Firm event and before a client during an out-of-town

trial, among other troubling behavior, made clear to Chadbourne that Campbell should not continue at the Firm.

6.      Defendants deny the allegations in Paragraph 6 of the First Amended Complaint, except admit that Giaccia informed her that the Management Committee's decision that she leave the Firm was "final" and would not be revisited.

7.      Defendants deny the allegations in Paragraph 7 of the First Amended Complaint, except admit that as an explanatory note for not listing Campbell's shares and points on an April 6, 2016 memorandum circulated only to partners of the Firm, the phrase "partner in transition" appeared by Campbell's name (as it has for other partners), but that at all times through the present she has been and continues to be an equity partner of the Firm holding shares and points, and, as such, was required to make all mandatory payments required of partners of the Firm in the same manner as all other equity partners.

8.      Defendants deny the allegations in Paragraph 8 of the First Amended Complaint, and further state that Campbell was not a high-achieving partner with "superior performance" and "impressive revenue," but rather was a very recent lateral partner with no prior track record at the Firm who:

> a.  Did not generate the revenue alleged by her in the First Amended Complaint, or even the revenue levels to which her compensation was tied in her offer letter from Chadbourne.
>
> b.  Has blatantly misstated her current compensation arrangements with Chadbourne in the First Amended Complaint.
>
> c.  Sought to claim ordinary client expense reimbursements as fee revenue generated by her.

d.  Represented that she would be bringing to the Firm a defamation matter for a high net-worth individual when in fact the client refused to work with Campbell because of his dissatisfaction with how she previously handled his case.  The matter remained at the Firm only because of the efforts of Lowell, who (at Campbell's request) traveled overseas to establish a relationship with the client so that the case could be handled by the Firm.  During the trip abroad and after, the client made clear to Chadbourne that he did not want Campbell to work on his case or to be billed for her time.  Notwithstanding this request, the Firm and Lowell permitted billing partner statistics on the case to be attributed entirely to Campbell.  This matter—on which the client made clear that he *did not want Campbell involved*—comprised approximately $1,522,000 of the $2,155,000 in billings for which Campbell had credit for the year 2014.

e.  Demonstrated deficiencies in her practice management soon after her arrival.  Campbell became notorious among associates in the Litigation Department (both male and female) for giving false deadlines, disappearing and being incommunicado for days or weeks at a time, and creating unnecessary last-minute fire drills for routine court filings.  To the extent Campbell communicated with associates, they complained that her instructions were inconsistent and confusing and wasted a lot of time for them and for clients.

f.  Insisted that the Firm hire an associate from her prior firm as Counsel, and then immediately refused to work with him.

g.  Exhibited questionable legal judgment.  For example, she sought to pursue a legal theory or strategy on a matter that did not appear supportable or correct to any of

5

the multiple attorneys who reviewed it, and then repeatedly demanded that new associates be assigned to re-do the work in the hopes of getting a different answer after each associate reported that the approach Campbell proposed could not reasonably be advanced. Campbell repeatedly criticized the associates with whom she worked to others in the Litigation Department, and complained that the work product she received was "unusable." Campbell's wasteful use of associate time led to a number of write-offs. On at least one occasion, an attorney approached Firm management in this situation out of concern that he would be subject to sanctions had he advocated for Campbell's position.

h. Despite numerous efforts by the Firm's litigation department manager and its director of legal personnel and associate recruiting, refused to use the network of support that the Firm provides to all partners to secure them appropriate associate and counsel staffing for client matters. When Campbell did make her needs known through departmental channels, those needs were immediately addressed. Over time, more attorneys expressed reluctance to be staffed on or work with Campbell.

i. Frequently contacted Lowell and Litigation Department administration with frantic last-minute staffing needs, but when associates were assigned to Campbell's "urgent" matters, they would reach out to Campbell for days without receiving any response. Campbell would schedule phone calls only to fail to make herself available to tell the associates what it was that she needed. Campbell frequently would only surface shortly before work product was due to

the client or in court.  Campbell was also often absent from the office, making it

even more difficult for associates to communicate with her.

j.   Arrived at a Firm event already inebriated, acted in a shocking and inappropriate

manner toward the male fiancé of a male Chadbourne attorney, and made graphic

comments to a male Chadbourne attorney while at the event.

k.   During an out-of-town trial, displayed poor judgment with respect to the use of

alcohol in the presence of a client between trial days.

9.     Defendants deny the allegations in Paragraph 9 of the First Amended Complaint,

except state as follows: on one occasion, Lowell observed what he deemed an offensive picture

that had been posted outside of Campbell's office in a hallway, either by Campbell herself or

some other unknown person, which he removed from the wall as being inappropriate for a

professional environment.  On or about the following day he observed a different picture (smiley

face) posted outside (not inside) of Plaintiff's office in this same hallway (again posted either by

Campbell herself or some other unknown person), and also observed a third picture (a man) on

the floor in that hallway with tape on it that appeared to have fallen off the wall, whereupon

Lowell re-taped the fallen picture back onto the wall from which it appeared to have fallen.

Shortly thereafter, Lowell concluded that such postings in the office hallways were inappropriate

for a professional environment and therefore returned and removed all of the pictures and

possibly a card with a Nelson Mandela quote.  In addition, Campbell mounted a secret camera

that recorded only an act of office management that occurred entirely when she was away from

her office, and not an act of retaliation.

10.     Defendants deny the allegations in Paragraph 10 of the First Amended Complaint,

except admit that Johnson is an experienced attorney who was previously the Managing Partner

of the Firm's Kiev office with over 20 years' experience in corporate expansion in emerging markets, and that collectively over many years the total billings from the Kiev office were in the millions of dollars.

11.    Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 11 of the First Amended Complaint.

12.    Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 12 of the First Amended Complaint.

13.    Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 13 of the First Amended Complaint, except admit that Johnson was recognized by *Chambers Global* and *IFLR 1000*, and refer to the referenced publications for the true and complete contents thereof.

14.    Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 14 of the First Amended Complaint, except admit that upon information and belief Johnson was appointed by President Clinton to the Western NIS Enterprise Fund and now serves as its President and Chief Executive Officer.

15.    Defendants deny the allegations in Paragraph 15 of the First Amended Complaint.

16.    Defendants deny the allegations in Paragraph 16 of the First Amended Complaint, except admit that in Johnson's later years at Chadbourne, her compensation was reduced as the Kiev office continued to lose money for the Firm as Ukraine went through periods of political and military turmoil, and deny having knowledge or information sufficient to form a belief as to what Campbell's compensation had been "as a non-equity partner at her previous firm."

17.     Defendants deny the allegations in Paragraph 17 of the First Amended Complaint, except refer to the terms of Campbell's April 6, 2016 letter to Giaccia for the true and complete contents thereof.

18.     Defendants deny the allegations in Paragraph 18 of the First Amended Complaint, except admit that Campbell filed a charge with the Equal Employment Opportunity Commission on June 30, 2016, and refer to the terms of that document for the true and complete contents thereof.

19.     Defendants deny the allegations in Paragraph 19 of the First Amended Complaint. From their extra-judicial statements, public relations attempts, mischaracterizations of events, and inflammatory language, it is not clear what Plaintiffs' motives are.

20.     Defendants deny the allegations in Paragraph 20 of the First Amended Complaint insofar as they are made in reference to Chadbourne, and deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 20 to the extent they may refer to any other law firm.  Defendants refer to the American Bar Association and National Association of Women Lawyers articles cited in Paragraph 20 for the true and complete contents thereof.

21.     Defendants deny the allegations in Paragraph 21 of the First Amended Complaint insofar as they are made in reference to Chadbourne, and deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 21 to the extent they may refer to any other law firm.  Defendants refer to the Major, Lindsey & Africa study cited in Paragraph 21 for the true and complete contents thereof.

22.     Defendants deny the allegations in Paragraph 22 of the First Amended Complaint, and state that Chadbourne is an equal opportunity employer and assesses the performance of its attorneys and staff on the merits without regard to gender; that compensation of women at the

Firm is not determined based on their gender; and that Plaintiffs' own performance showed them
to be far from the "similarly situated male attorneys" to whom they want to be compared.
Defendants further aver that a woman has served on the Firm's Management Committee, first as
an *ex officio* member and then as a full member; that women have served as Managing Partners
of the Firm's Washington D.C., Moscow, Kiev, Istanbul, and London offices; and that women
have led numerous practice groups and chaired various committees at Chadbourne.   Defendants
additionally refer to the contents of the articles cited in Paragraph 22 of the First Amended
Complaint for the true and complete contents thereof.

23.     Defendants deny the allegations in Paragraph 23 of the First Amended Complaint,
except admit that pursuant to the partnership agreement that Plaintiffs elected to sign, and under
which they now assert claims in this action, the Firm's Management Committee, which is elected
by the partnership and for seats on which any partner (including Campbell at all times since she
joined Chadbourne through the present) is free to run, is "vested with all the powers of the
partners in the management of the business of the firm and to make and carry out the decisions
necessary therefor [with certain defined limited exceptions]," and that at certain times pertinent
hereto the Management Committee was composed of five male partners and also had two *ex
officio* members, one of whom was female and one of whom was male.

24.     Defendants deny the allegations in Paragraph 24 of the First Amended Complaint,
except admit that compensation is largely determined by the number of "points" set for each
partner by the Management Committee for a given year and the Firm's actual financial
performance in that year.  Points assigned and Firm profits paid to women partners do not
include any consideration of gender, and further state that the Management Committee reminds
all partners on an annual basis in connection with the compensation process that statistics such as

productivity, originations and revenues are incomplete indicators of partners' contributions, as such designations do not accurately reflect the teamwork involved in originating, retaining, and growing business, and, accordingly, that it is important for the Management Committee to obtain a more rounded view of partners' contributions.  The Management Committee therefore considers a host of other factors relevant to setting compensation, including, but not limited to: efforts undertaken by partners to enhance revenues; instances of teamwork yielding new business or other positive results; instances where partners have referred work to other groups or attorneys in other U.S. or international offices; partners who have been of help to one another; client-related activities, including service to existing clients, obtaining new work from existing clients, obtaining new clients, and any other activities deemed noteworthy in this regard; assumption of Firm responsibilities and participation in Firm activities; efforts made by partners to attract lateral partners and other senior attorneys to the Firm; *pro bono* activities; activities aimed at improving attorney competence, including recruiting and training, diversity efforts, and morale; and activities outside the Firm that serve to enhance the reputation of the Firm and its partners.

25.     Defendants deny the allegations in Paragraph 25 of the First Amended Complaint, and additionally refer to response to Paragraph 24 of the First Amended Complaint.

26.     Defendants deny the allegations in Paragraph 26 of the First Amended Complaint, except admit that at times partners, both male and female, have had their points decreased over time as determined by the Management Committee in its consideration of the relevant factors (as noted in Defendants' response to Paragraph 24).

27.     Defendants deny the allegations in Paragraph 27 of the First Amended Complaint.

28.     Defendants deny the allegations in Paragraph 28 of the First Amended Complaint, except admit that in 2013 the number of points among the male partners ranged from 250-2,050,

while those among the female partners ranged from 350-950.  Allocation of points and bonuses result from a careful consideration of the criteria described in Paragraph 24 above.

29.     Defendants deny the allegations in Paragraph 29 of the First Amended Complaint, except admit that in 2014 the number of points among the male partners ranged from 250-2,250, while those among the female partners ranged from 375-1,000.  Allocation of points and bonuses result from a careful consideration of the criteria described in Paragraph 24 above.

30.     Defendants deny the allegations in Paragraph 30 of the First Amended Complaint, except admit that in 2015 the number of points among the male partners ranged from 250-2,100, while those among the female partners ranged from 375-1,000.  Allocation of points and bonuses result from a careful consideration of the criteria described in Paragraph 24 above.

31.     Defendants deny the allegations in Paragraph 31 of the First Amended Complaint.

32.     Defendants deny the allegations in Paragraph 32 of the First Amended Complaint and further state that a female partner actually served on a predecessor to what is now the Chadbourne Management Committee; further state that a female partner served as an *ex officio* member of the Management Committee for years, including at the times when Campbell and Johnson were partners at Chadbourne, before that female partner was elected to the Management Committee in 2016 at a time before Campbell commenced this action; and further specifically deny the demeaning, sexist, insulting, and indeed ironic insinuations in Paragraph 32 that the election to the Management Committee of an accomplished woman partner who won in a contested multi-candidate race was in any way connected to her gender or Plaintiffs' claims in this action.

33.     Defendants deny the allegations in Paragraph 33 of the First Amended Complaint and further state that phrases in Paragraph 33 like "all-male dictatorship," "black box,"

"complete secrecy," "under wraps," "wall of silence," "glass ceiling," and "unchecked

dominion" are all publicity-seeking catch-phrases designed to misrepresent how much

information Plaintiffs and all other partners received and how much input Plaintiffs and all other

partners have at Chadbourne; that the Firm's partnership generally meets on a monthly basis,

discusses and votes on any number of issues in a given year; and that all Firm partners, including

Plaintiffs, have access to weekly, monthly, and annual reports on the finances of the Firm and the

performance of both its partner and non-partner attorneys, as well as information about business

generated by the Firm, billings and collections of all partners, realization rates of all attorneys,

hours worked of all attorneys, the inventory of accounts receivable and work-in-progress at the

Firm, and the Firm's payroll expenses, disbursements, and account balances, among other

information.  Plaintiffs, like all partners at the Firm, received, and Campbell continues to receive,

detailed information on the compensation paid to all Firm partners, as well as information on the

compensation of non-partner attorneys.   The compensation process includes multiple

opportunities for partners to provide input on their performance and the performance of others,

along with other input from within the Firm.  In fact, both Campbell and Johnson availed

themselves of such opportunities each year with memoranda and even meetings with the

Management Committee.  Campbell additionally has had, and continues to have, access 24 hours

a day to a computerized database containing a wide range of real-time client, matter, and

attorney financial data, including realization and utilization data, for all attorneys at Chadbourne,

both partner and non-partner.

34.     Defendants deny the allegations in Paragraph 34 of the First Amended Complaint,

except admit that at times, both male and female attorneys (including associates, counsel, and

partners) have displayed bottles of wine or liquor in their offices, such as those received as expressions of appreciation from clients.

35.     Defendants deny the allegations in Paragraph 35 of the First Amended Complaint and further state that the Firm's partnership agreement expressly provides for partner involvement in business concerns outside the Firm, and that the Firm at times has provided legal representation relating to non-Firm matters for partners, both male and female.

36.     Defendants deny the allegations in Paragraph 36 of the First Amended Complaint.

37.     Defendants deny the allegations in Paragraph 37 of the First Amended Complaint.

38.     Defendants deny the allegations in Paragraph 38 of the First Amended Complaint, and further state that Campbell is not and has never been "employed" by Chadbourne, as she is and at all times since her arrival at Chadbourne has been an equity partner and owner of Chadbourne and not an employee, and has not been "terminated" by the Firm, and who indeed continues to attend partners' meetings and to be able to vote (if she so chooses) on matters that come before the partnership for a vote, such as (in just recent months) Management Committee elections and proposed new lateral partner admissions.  Johnson was the respected leader of the Kiev office, the economics of which were challenging and affected her compensation.  The Firm was forced to close its Kiev office because of its difficult political and economic circumstances. Johnson ultimately returned to Illinois after resigning her partnership.

39.     Defendants deny the allegations in Paragraph 39 of the First Amended Complaint and refer to their affirmative averments in Paragraphs 33 and 38, and state that Campbell received all the compensation provided for in the offer letter pursuant to which she agreed to join the Firm, and that so long as she remains a partner in the Firm Campbell is not entitled to have her capital returned but rather must contribute and maintain capital in accordance with the same

14

terms and procedures as all other partners.  Campbell actually received more compensation than she would have otherwise earned as a result of the billing partner statistics that the Firm permitted to be attributed to Campbell for a case that she did not actually bring to the Firm, and Campbell was able to receive a large bonus as if she has satisfied the terms of the compensation letter she agreed to when she joined the Firm.

40.     Defendants deny the allegations in Paragraph 40 of the First Amended Complaint.

## II.     AS TO AND AS CONCERNING THE "PARTIES"

41.     Defendants deny the allegations in Paragraph 41 of the First Amended Complaint, except admit that Campbell is a Maryland resident, moved to Chadbourne laterally from another firm, and from her arrival at Chadbourne in January 2014 through the present has been a partner located in Chadbourne's Washington, D.C. office with a percentage ownership share in the Firm's profits and losses and the same rights and obligations as any other partner in the Firm.

42.     Defendants deny the allegations in Paragraph 42, except admit that Johnson managed Chadbourne's Kiev office until the end of 2013 when she asked to step down as Managing Partner, turning over managerial responsibility for the office to another attorney, that Johnson transitioned to Senior Counsel and continued to work in the Kiev office on a reduced schedule, that in April 2014 the Firm informed Johnson that it was closing the Kiev office, and thereafter, Johnson performed wind-down activities until the Kiev office formally closed in October 2014, and admit that for a short period Johnson was an independent contractor of Chadbourne when she transitioned to the Senior Counsel position.  Defendants deny having knowledge or information sufficient to form a belief as to whether Johnson maintained a home in Chicago during the relevant time period.

43.     Defendants deny the allegations in Paragraph 43 of the First Amended Complaint, except admit that Chadbourne is a limited liability partnership with offices worldwide, including New York, New York, and Washington, D.C.; that Chadbourne's New York office is the Firm's largest, and that nearly all of the Firm's major practices are represented to some degree (but not exclusively) in the Firm's New York office.  The last sentence alleged in Paragraph 43 states a legal conclusion to which no responsive pleading is required.

44.     Defendants deny the allegations in Paragraph 44 of the First Amended Complaint, except admit that Marc Alpert was a Partner at Chadbourne and was a member of the Firm's Management Committee from June 2014 to June 2016.  Defendants further state that Alpert did not become a member of the Management Committee until after Campbell had joined the Firm, and that he was not a member of the Management Committee at any time during Johnson's tenure at the Firm.

45.     Defendants deny the allegations in Paragraph 45 of the First Amended Complaint, except admit that Giaccia is the Managing Partner of Chadbourne and a member of the Firm's Management Committee.

46.     Defendants deny the allegations in Paragraph 46 of the First Amended Complaint, except admit that Abbe Lowell is the Head of the Litigation practice group at Chadbourne.

47.     Defendants deny the allegations in Paragraph 47 of the First Amended Complaint, except admit that Lawrence Rosenberg is a Partner at Chadbourne and a member of the Firm's Management Committee.

48.     Defendants deny the allegations in Paragraph 48 of the First Amended Complaint, except admit that Howard Seife is a Partner at Chadbourne and a member of the Firm's Management Committee.

49.     Defendants deny the allegations in Paragraph 49 of the First Amended Complaint, except admit that Paul Weber is a Partner at Chadbourne and a member of the Firm's Management Committee.

## III.     AS TO AND AS CONCERNING THE "JURISDICTION AND VENUE"

50.     Defendants deny the allegations in Paragraph 50 of the First Amended Complaint.

51.     Defendants deny the allegations in Paragraph 51 of the First Amended Complaint, except admit that venue is proper in this Court and that Chadbourne transacts a substantial portion of its business in New York and has its largest office in this District, and that Chadbourne sent Plaintiffs their offer letters from New York.

52.     Defendants deny the allegations in Paragraph 52 of the First Amended Complaint.

53.     Defendants admit the allegations in Paragraph 53 of the First Amended Complaint.

## IV.     AS TO AND AS CONCERNING THE "FACTUAL ALLEGATIONS"

54.     Defendants admit the allegations in Paragraph 54 of the First Amended Complaint.

55.     Defendants deny the allegations in Paragraph 55 of the First Amended Complaint, except to admit that Campbell previously worked at Collier Shannon and Manatt, Phelps, and Phillips, LLC, and that she purports to practice law in the areas of consumer product safety and defamation/product disparagement.

56.     Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 56 of the First Amended Complaint as to why she left or had to leave her prior law firm.

57.     Defendants admit the allegations in Paragraph 57 of the First Amended Complaint.

58.     Defendants admit the allegations in Paragraph 58 of the First Amended Complaint, except refer to Campbell's November 26, 2013 offer letter for the true and complete contents thereof.

59.     Defendants deny the allegations in Paragraph 59 of the First Amended Complaint.

60.     Defendants deny the allegations in Paragraph 60 of the First Amended Complaint, except admit that Campbell joined the Firm on or about January 8, 2014, deny having knowledge or information sufficient to form a belief as to whether clients praised the quality of Campbell's work, and further state, as more particularly set forth in Paragraph 8 of this Answer, that Campbell did not perform "exceptionally well" at Chadbourne and in fact generated far less than the $5 million in revenue for the Firm since her arrival that she claims.

61.     Defendants admit the allegations in Paragraph 61 of the First Amended Complaint, and further state that the Firm has a Management Committee consisting of 5 members elected directly by the partners to serve two-year terms, other than the Managing Partner who is elected by the partners to serve a three-year term.

62.     Defendants deny the allegations in Paragraph 62 of the First Amended Complaint, except admit that under the Firm's Partnership Agreement the Management Committee is "vested with all the powers of the partners in the management of the business of the firm and to make and carry out all decisions necessary therefor" (with certain defined limited exceptions, which exceptions include the approval of mergers with any other law firm, which would require a partnership vote), which decisions include the setting of partner compensation, and that the

Management Committee exercises the powers given to it as may be useful or necessary in particular situations.

63.     Defendants deny the allegations in Paragraph 63 of the First Amended Complaint, except admit that, for their mutual benefit and protection as co-owners of the Firm sharing in profits and losses, all partners without regard to gender are subject to ordinary and commonly-used client-matter intake policies or procedures, including as to billing arrangements, collections, and write-offs.

64.     Defendants deny the allegations in Paragraph 64 of the First Amended Complaint except admit that Campbell, and all other equity partners of Chadbourne, are encouraged (but are never required) to submit annual year-end memoranda describing a wide variety of matters concerning themselves and other partners for the Management Committee's consideration in setting compensation, as more particularly discussed in Paragraph 24 of this Answer.

65.     Defendants deny the allegations in Paragraph 65 of the First Amended Complaint, except admit that Giaccia denied Campbell's requests that the Firm create and name her chair of what would have been a one-person Consumer Product Safety & Risk Management practice "group" or a one-person Reputation Protection and Defamation practice "group."

66.     Defendants deny the allegations in Paragraph 66 of the First Amended Complaint, except admit that Campbell agreed to receive 500 points as a partner upon her arrival at Chadbourne.  Those points reflected Chadbourne's sense of Campbell's prior performance.  Defendants deny having knowledge or information sufficient to form a belief as to what Campbell's collections truly were at Manatt.  Far from having "the deck stacked against her" from her start, the Firm permitted the billing partner statistics for a matter to be attributed to

Campbell for a case that generated over a million and a half dollars in fees that the client did not want to assign to her or use her.

67.     Defendants deny the allegations in Paragraph 67 of the First Amended Complaint, and state that the points level of partners who have been at the Firm for decades are not simply "awarded" but rather have been earned based on a wide assortment of relevant factors and years of demonstrated performance that go far beyond billable partner collections for the prior year, as more particularly discussed in Paragraph 25 of this Answer.  Defendant additionally states that Campbell possessed neither the experience nor the professional reputation of William Cavanagh and never made even remotely the same quality of contributions to the Firm and its clients as William Cavanagh has made and continues to make over his many years with the Firm, and any suggestion in Paragraph 67 that the two are in any way comparable is denied and indeed absurd.

68.     Defendants deny the allegations in Paragraph 68 of the First Amended Complaint, and state that the points level of partners who have been at the Firm for decades are not simply "awarded" but rather have been earned based on a wide assortment of relevant factors and years of demonstrated performance that go far beyond billable partner collections for the prior year, as more particularly discussed in Paragraph 24 of this Answer.  Defendants further state that the allegations in Paragraph 68 of the First Amended Complaint misstate the compensation process and the scope of partner contributions that are evaluated in it (as discussed more particularly in Paragraph 24 of this Answer), and are premised on a false portrayal of Campbell's own contributions.

69.     Defendants deny the allegations in Paragraph 69 of the First Amended Complaint, except admit that Campbell asked for a substantial points increase, to which Giaccia responded that Campbell was new to the Firm and had not demonstrated her ability to generate revenue, as

she generated in the year 2014 far less than the $2.5 million she alleges.  He also pointed out to her, as she ignores, that the Firm had permitted her to be attributed billing partner statistics for a large case for which she would otherwise not have earned any credit.

70.     Defendants deny the allegations in Paragraph 70 of the First Amended Complaint, except admit that the Management Committee determines whether a partner will be awarded a bonus, and in what amount without regard to the gender of the partner.

71.     Defendants deny the allegations in Paragraph 71 of the First Amended Complaint, except admit that for the years 2014 and 2015 Campbell did not receive a discretionary merit bonus from Chadbourne, in view of her overall performance in those years.  She was far from "one of the Firm's top performers."

72.     Defendants deny the allegations in Paragraph 72 of the First Amended Complaint, and with respect to her alleged "exemplary performance" refer to the affirmative averments in Paragraph 8 of this Answer.

73.     Defendants deny the allegations in Paragraph 73 of the First Amended Complaint, except Defendants deny having knowledge or information sufficient to form a belief as Campbell's actual collections at Manatt.

74.     Defendants deny the allegations in Paragraph 74 of the First Amended Complaint, and further state that Campbell was never one of the highest business-generating partners or one of the most productive partners in the Firm.

75.     Defendants deny the allegations in Paragraph 75 of the First Amended Complaint, except admit that despite her first-year performance, the Firm permitted the billing partner statistics for the case that was salvaged by Lowell (see ¶ 8, supra) to be attributed to Campbell so as to allow her to appear to meet the thresholds set in her offer letter from the Firm, and that

Campbell's points for 2015 were set in accordance with the 550-point level specified in her offer letter.

76.     Defendants deny the allegations in Paragraph 76 of the First Amended Complaint.

77.     Defendants deny the allegations in Paragraph 77 of the First Amended Complaint, and state that Campbell received all the compensation for 2014 for which the Firm had contracted in its offer letter to her, which far exceeded "$200,000 – $250,000," and refer to the terms of Campbell's offer letter for the true and complete contents thereof.

78.     Defendants deny the allegations in Paragraph 78 of the First Amended Complaint, and refer to the affirmative averments in Paragraphs 8 and 75 of this Answer regarding how billing partner statistics were attributed to Campbell for a large case that she did not actually bring to the Firm.

79.     Defendants deny the allegations in Paragraph 79 of the First Amended Complaint, except admit that Campbell requested both in her year-end memorandum and in a meeting with the Management Committee an increase in her points to 950 points, an increase that was not warranted because Campbell had not demonstrated an ability to generate significant revenue at Chadbourne or to otherwise contribute at a higher level.

80.     Defendants deny the allegations in Paragraph 80 of the First Amended Complaint, except admit that Campbell requested of Giaccia an increase in her points that was not warranted given her contributions in 2014, and also requested a position in leadership that likewise was not merited.

81.     Defendants deny the allegations in Paragraph 80 of the First Amended Complaint, except admit that Giaccia told Campbell that she would not receive the substantial additional points she requested for the 2015 year because she had not demonstrated an ability to reliably

generate annual revenue at Chadbourne at the level that would warrant such an increase, and that

Campbell's attempt to compare herself with another lateral partner with a very different

professional history and Firm responsibilities than Campbell's, and whose compensation was

governed by a significantly different agreement with the Firm, were inappropriate.

82.     Defendants deny the allegations in Paragraph 82 of the First Amended Complaint.

83.     Defendants deny the allegations in Paragraph 83 of the First Amended Complaint.

84.     Defendants deny the allegations in Paragraph 84 of the First Amended Complaint,

except admit that the Management Committee is authorized under the Firm's Partnership

Agreement to set partner compensation.

85.     Defendants deny the allegations in Paragraph 85 of the First Amended Complaint.

86.     Defendants deny the allegations in Paragraph 86 of the First Amended Complaint,

except state that all write-offs relating to the referenced matter were made in full compliance

with the Firm's usual procedures for obtaining approvals for write-offs, and for reasons that had

nothing to do with Campbell, and refer to the terms of Campbell's offer letter for the true and

complete contents thereof.

87.     Defendants deny the allegations in Paragraph 87 of the First Amended Complaint,

except state that all write-offs relating to the referenced matter(s) were made in full compliance

with the Firm's usual procedures for obtaining approvals for write-offs, and for reasons that had

nothing to do with Campbell, and refer to the terms of Campbell's offer letter for the true and

complete contents thereof.

88.     Defendants deny the allegations in Paragraph 88 of the First Amended Complaint,

except state that Lowell and Giaccia made substantial efforts to meet Campbell's staffing needs.

As described in Paragraph 8 above, Campbell refused to use the Litigation Department's process

23

for staffing her cases, only to then complain about not getting adequate support from the department.  And when given such support, Campbell created case management issues for almost every attorney assigned to her cases.  Even then, Lowell and the Firm administrative personnel found ways to staff Campbell's cases, often in the face of written and orally communicated strong resistance from attorneys who had worked with Campbell in the past. Defendants additionally state that Giaccia as Managing Partner does not ordinarily get involved in staffing logistics, and any involvement of his in this regard here resulted from the increasingly urgent concerns expressed by associates and staff about Campbell's mismanagement of cases.

89.     Defendants deny the allegations in Paragraph 89 of the First Amended Complaint, except refer to the terms of the referenced documents and publications for the true and complete contents thereof, and further state that the Firm provided support for Campbell's practice in the Litigation Department as it had done for female and male partners in litigation and other practice areas; included her practice in planning and meetings; and provided Campbell with business development support when it was requested.  During the course of such activities, Campbell took business trips and made other marketing efforts at Firm expense at her discretion and with administrative support from the Firm's marketing personnel.

90.     Defendants deny the allegations in Paragraph 90 of the First Amended Complaint, except admit that Giaccia denied Campbell's requests that the Firm create and name her chair of a one-person Consumer Product Safety & Risk Management practice "group" or a one-person Reputation Protection and Defamation practice "group," and that female as well as male partners serve as practice group leaders at Chadbourne.

91.     Defendants deny the allegations in Paragraph 91 of the First Amended Complaint, except state that another litigation partner has the office next to Campbell's, and that requests

from associates to move offices are accommodated where possible.  Campbell is not the "sole remaining female Partner in the Litigation Department in the D.C. office."

92.     Defendants deny the allegations in Paragraph 92 of the First Amended Complaint.

93.     Defendants deny the allegations in Paragraph 93 of the First Amended Complaint, except admit that Giaccia and Lowell informed Campbell that the Management Committee in the course of year-end compensation deliberations had determined that her practice did not fit with Chadbourne, that it would be best for her if she would work to transition her practice to another firm, and that they recommended that she do so, with the expectation that she could transition out by August 31, 2016, more than six months later, and that the only month in 2016 in which Campbell ever billed more than 200 hours — or indeed more than 70 hours — was January 2016.  Giaccia's efforts were intended to give Campbell the time and support needed to find a position better matched to her practice and to make clear that the Firm wanted her transition to another firm to be her priority for the next six months, which should have been ample time to accomplish a move.

94.     Defendants deny the allegations in Paragraph 94 of the First Amended Complaint.

95.     Defendants deny the allegations in Paragraph 95 of the First Amended Complaint. Indeed, Campbell has sought new business since the meeting and has submitted requests for conflict checks.  Giaccia sought to give Campbell the time and support needed to find a position better matched to her practice and to make clear that the Firm did not think she should prioritize seeking new business at the expense of finding that better-matched position.

96.     Defendants deny the allegations in Paragraph 96 of the First Amended Complaint, and state that Campbell has not been discharged from the Firm, remains a partner of the Firm, and is not the only female litigation partner in the Firm's D.C. office.

97.     Defendants deny the allegations in Paragraph 97 of the First Amended Complaint, except admit that Campbell sent Giaccia an email on February 23, 2016, and refer to the terms of that e-mail for the true and complete the contents thereof.

98.     Defendants deny the allegations in Paragraph 98 of the First Amended Complaint, except admit that Giaccia sent Campbell an email on February 25, 2016, and refer to the terms of that e-mail for the true and complete the contents thereof.

99.     Defendants deny the allegations in Paragraph 99 of the First Amended Complaint, except admit that Campbell met with Chadbourne's Management Committee on March 29, 2016 and that Chadbourne's Chief Operating Officer, Lisa Palestine, was present because she routinely participates in Management Committee meetings as part of her position.

100.     Defendants deny the allegations in Paragraph 100 of the First Amended Complaint, and state that Campbell generated less than half of the amount she asserts in Paragraph 100.

101.     Defendants deny the allegations in Paragraph 101 of the First Amended Complaint.

102.     Defendants deny the allegations in Paragraph 102 of the First Amended Complaint, except admit that on April 1, 2016 Campbell met with Giaccia in Washington D.C., with Alpert on the speakerphone from New York, told Campbell that the Management Committee did not intend to revisit its decision, and discussed certain financial proposals tied to Campbell's possible departure from the Firm by certain dates.  Campbell was not *required* to leave the Firm by the end of August 2016, and indeed remains at the Firm as a partner and in the office to this day.

103.    Defendants deny the allegations in Paragraph 103 of the First Amended Complaint, except admit that Giaccia told Campbell that he wished to support her ability to transition from the Firm and reminded her that this should be a priority.  Campbell did not appear to be making significant efforts to make a transition.  Campbell advised Giaccia that she had been ill and consequently had not pursued a transition very extensively.

104.    Defendants deny the allegations in Paragraph 104 of the First Amended Complaint.  Campbell is still an equity partner of the Firm and has even attended Firm and partner meetings despite her allegation that she was "terminat[ed]" from the Partnership.

105.    Defendants deny the allegations in Paragraph 105 of the First Amended Complaint, and state that Campbell was not terminated from Chadbourne and, in fact, remains an equity partner of Chadbourne, and refer to the terms of the Firm's Partnership Agreement for the true and complete contents thereof.

106.    Defendants deny the allegations in Paragraph 106 of the First Amended Complaint, except admit that Giaccia sent Campbell an e-mail on April 13, 2016 and refer to the terms of that e-mail for the true and complete contents thereof.

107.    Defendants deny the allegations in Paragraph 107 of the First Amended Complaint but admit that Giaccia on several occasions inquired about Campbell's transition efforts in view of the August 31, 2016 goal that previously had been articulated.

108.    Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 108 of the First Amended Complaint, except deny that there was any "discriminatory termination of [Campbell's] employment," as she has never been a Chadbourne employee and remains to this day a Chadbourne partner.

109.    Defendants deny the allegations in Paragraph 109 of the First Amended Complaint and state that Giaccia has exchanged a number of emails with Campbell since August 2016 relating to staffing and other client issues.  On each occasion, Campbell has taken a considerable period to respond and has mostly written emails to mischaracterize Giaccia's communications in an effort to support retaliation claims she was planning to assert.  The Firm (including Giaccia and Lowell) continues to respond to her requests for staffing on any matter and provide her staffing on the work she identifies.

110.    Defendants deny the allegations in Paragraph 110 of the First Amended Complaint, except to aver that e-mail has been the preferred method of communication with Campbell since the filing of her Complaint, as she has gratuitously sent a number of hostile, insulting, and unprofessional e-mails containing numerous false statements to Firm management since filing her Complaint on August 31, 2016.

111.    Defendants deny the allegations in Paragraph 111 of the First Amended Complaint and specifically deny that Campbell has any First Amendment rights vis-à-vis a private partnership like the Firm — a basic legal principle that a lawyer like Campbell, who claims to be highly experienced in First Amendment matters, should know.

112.    Defendants deny the allegations in Paragraph 112 of the First Amended Complaint and refer to affirmative averments of Paragraph 9 of this Answer.

113.    Defendants deny having knowledge or information sufficient to form a belief regarding Paragraph 113 of the First Amended Complaint, except refer to the affirmative averments of Paragraph 9 of this Answer.

114.     Defendants deny having knowledge or information sufficient to form a belief regarding Paragraph 114 of the First Amended Complaint, except refer to the affirmative averments of Paragraph 9 of this Answer.

115.     Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 115 of the First Amended Complaint, except refer to the affirmative averments of Paragraph 9 of this Answer.

**B. Johnson's Allegations**

116.     Defendants admit the allegations in Paragraph 116 of the First Amended Complaint, except deny having knowledge or information sufficient to form a belief as to whether Johnson served as the "first female editor-in-chief of the *Wisconsin Law Review.*"

117.     Defendants admit the allegations in Paragraph 117 of the First Amended Complaint.

118.     Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 118, except admit that Johnson has practiced law for more than 35 years on a variety of transactional matters.

119.     Defendants deny the allegations in Paragraph 119 of the First Amended Complaint, except admit that Johnson was previously a partner at the Kiev office of Altheimer & Gray, and that Johnson joined Chadbourne as Altheimer was closing down its operations.  Defendants deny having knowledge or information sufficient to form a belief as to the additional allegations in this Paragraph.

120.     Defendants admit the allegations in Paragraph 120 of the First Amended Complaint.

121.     Defendants deny the allegations in Paragraph 121 of the First Amended Complaint, except admit that Johnson became a partner at Chadbourne in 2003.

122.     Defendants deny the allegations in Paragraph 122 of the First Amended Complaint, except admit that Johnson led the Kiev office for ten years, during which time she managed a number of attorneys and support staff, and that she was responsible for $5 million in collections in 2008.  With regard to her collections, Johnson has admitted in press interviews that she "was not a rainmaker at Chadbourne."[1]

123.     Defendants deny the allegations in Paragraph 123 of the First Amended Complaint.

124.     Defendants deny the allegations in Paragraph 124 of the First Amended Complaint, except admit that the Management Committee played a role in determining the budget for the Kiev office.

125.     Defendants deny the allegations in Paragraph 125 of the First Amended Complaint, except admit that the Management Committee decided to close the Kiev office in 2014 in light of the unprofitability of that office, and that it told Johnson that it was closing the office in or around April 2014.

126.     Defendants deny the allegations in Paragraph 126 of the First Amended Complaint, except admit that Johnson was never awarded more than 675 points during her tenure at Chadbourne.

127.     Defendants deny the allegations in Paragraph 127 of the First Amended Complaint, except admit that Johnson had 450 points for the year 2013, 525 points in 2012, and that Johnson's collections totaled $1,465,000 as billing partner for the year 2012.

---

[1] Brian Baxter, *Ex-Chadbourne Partner Discusses Decision to Join Gender Bias* Suit (The American Lawyer, Oct. 18, 2016), available at: http://www.americanlawyer.com/id=1202770213905/ExChadbourne-Partner-Discusses-Decision-to-Join-Gender-Bias-Suit?slreturn=20160930132903.

128.   Defendants deny the allegations in Paragraph 128 of the First Amended Complaint.

129.   Defendants deny the allegations in Paragraph 129 of the First Amended Complaint.

130.   Defendants admit the allegations in Paragraph 130 of the First Amended Complaint.

131.   Defendants deny the allegations in Paragraph 131 of the First Amended Complaint, except admit that Johnson was responsible for over $1.4 million in collections for 2012, and admit that Johnson engaged in managerial and business activities in 2013.

132.   Defendants deny the allegations in Paragraph 132 of the First Amended Complaint.

133.   Defendants deny the allegations in Paragraph 133 of the First Amended Complaint, except admit that Johnson had 525 points in 2012, 450 points in 2013, and that she was responsible for over $1.4 million in collections in 2012.

134.   Defendants deny the allegations in Paragraph 134 of the First Amended Complaint.

135.   Defendants admit the allegations in Paragraph 135 of the First Amended Complaint, and state that Johnson knew that the office had been doing poorly for quite some time, and did not question the obvious decision that was made in difficult political circumstances but rather questioned why the Firm was not also closing its Moscow office.  The Management Committee informed the full partnership about its decision to close the Kiev office within a few weeks after Johnson was informed.

136.    Defendants deny the allegations in Paragraph 136 of the First Amended Complaint, except admit that Johnson transitioned from Partner to Senior Counsel at her request at the beginning of 2014.

## V.    AS TO AND AS CONCERNING THE "CLASS ALLEGATIONS"

137.    Defendants incorporate their denials from previous paragraphs of their Answer as a denial of the allegations in Paragraph 137 of the First Amended Complaint.

138.    Defendants deny the allegations in Paragraph 138 of the First Amended Complaint.

139.    Defendants deny the allegations in Paragraph 139 of the First Amended Complaint.

140.    Defendants deny the allegations in Paragraph 140 of the First Amended Complaint.

141.    Defendants deny the allegations in Paragraph 141 of the First Amended Complaint.

142.    Defendants deny the allegations in Paragraph 142 of the First Amended Complaint.

143.    Defendants deny the allegations in Paragraph 143 of the First Amended Complaint.

144.    Defendants deny the allegations in Paragraph 144 of the First Amended Complaint.

145.    Defendants deny the allegations in Paragraph 145 of the First Amended Complaint, and further state that determinations such as "Billing Partner" and "Responsible Partner" are made by the partners who bring matters to the Firm, who are free to share their

billing credit with others and/or to assign responsible partner credit to other partners.  The Management Committee rarely involves itself in determining which partner(s) should have "Billing Partner" or "Responsible Partner" status for any given matter.

146.    Defendants deny the allegations in Paragraph 146 of the First Amended Complaint.

147.    Defendants deny the allegations in Paragraph 147 of the First Amended Complaint.

148.    Defendants deny the allegations in Paragraph 148 of the First Amended Complaint, except admit that partner compensation at Chadbourne is determined by the Management Committee.

149.    Defendants deny the allegations in Paragraph 149 of the First Amended Complaint.

150.    Defendants deny the allegations in Paragraph 150 of the First Amended Complaint.

151.    Defendants deny the allegations in Paragraph 151 of the First Amended Complaint, and specifically deny that Plaintiffs are Class Representatives or that any Class may be maintained in this action.

152.    Defendants deny the allegations in Paragraph 152 of the First Amended Complaint.

153.    Defendants deny the allegations in Paragraph 153 of the First Amended Complaint.

154.    Defendants deny the allegations in Paragraph 154 of the First Amended Complaint.

155.     Defendants deny the allegations in Paragraph 155 of the First Amended Complaint.

156.     Defendants deny the allegations in Paragraph 156 of the First Amended Complaint.

157.     Defendants deny the allegations in Paragraph 157 of the First Amended Complaint.

158.     Defendants deny the allegations in Paragraph 158 of the First Amended Complaint.

159.     Defendants deny the allegations in Paragraph 159 of the First Amended Complaint.

160.     Defendants deny the allegations in Paragraph 160 of the First Amended Complaint.

161.     Defendants deny the allegations in Paragraph 161 of the First Amended Complaint.

162.     Defendants deny the allegations in Paragraph 162 of the First Amended Complaint.

163.     Defendants deny the allegations in Paragraph 163 of the First Amended Complaint.

164.     Defendants admit the allegations in Paragraph 164 of the First Amended Complaint.

165.     Defendants deny the allegations in Paragraph 165 of the First Amended Complaint.

166.     Defendants deny the allegations in Paragraph 166 of the First Amended Complaint.

167.     Defendants deny the allegations in Paragraph 167 of the First Amended Complaint.

168.     Defendants deny the allegations in Paragraph 168 of the First Amended Complaint.

169.     Defendants deny that a Rule 23 Class action may be maintained in this matter and specifically deny that there are at least 26 members of the Proposed Class.

170.     The allegations in Paragraph 170 of the First Amended Complaint state a legal conclusion to which no responsive pleading is required.

171.     Defendants deny the allegations in Paragraph 171 of the First Amended Complaint.

172.     The allegations in Paragraph 172 of the First Amended Complaint state a legal conclusion to which no responsive pleading is required.

173.     Defendants deny the allegations in Paragraph 173 of the First Amended Complaint.

174.     Defendants deny the allegations in Paragraph 174 of the First Amended Complaint.

175.     Defendants deny the allegations in Paragraph 175 of the First Amended Complaint.

176.     Defendants deny the allegations in Paragraph 176 of the First Amended Complaint.

177.     The allegations in Paragraph 177 of the First Amended Complaint state a legal conclusion to which no responsive pleading is required; to the extent a response is required, Defendants deny the allegations.

178.     Defendants deny the allegations in Paragraph 178 of the First Amended Complaint.

179.     Defendants deny the allegations in Paragraph 179 of the First Amended Complaint; further deny that female partners are dispersed throughout the United States; and deny that female partners in the Firm's international offices may be included in the proposed class.

180.     Defendants deny the allegations in Paragraph 180 of the First Amended Complaint.

181.     Defendants deny the allegations in Paragraph 181 of the First Amended Complaint.

182.     Defendants deny the allegations in Paragraph 182 of the First Amended Complaint.

183.     Defendants deny the allegations in Paragraph 183 of the First Amended Complaint.

184.     Defendants deny the allegations in Paragraph 184 of the First Amended Complaint.

185.     Defendants deny the allegations in Paragraph 185 of the First Amended Complaint, except admit that Johnson was previously a female partner of Chadbourne and Campbell is currently a female partner of Chadbourne.

186.     Defendants deny the allegations in Paragraph 186 of the First Amended Complaint.

187.     Defendants deny the allegations in Paragraph 187 of the First Amended Complaint.

188.     Defendants deny the allegations in Paragraph 188 of the First Amended Complaint.

189.     Defendants deny the allegations in Paragraph 189 of the First Amended Complaint.

190.     Defendants admit that Plaintiffs are seeking the relief stated in Paragraph 190 of the First Amended Complaint but deny that they or the purported Class are entitled to any of the relief described therein.

191.     Defendants deny the allegations in Paragraph 191 of the First Amended Complaint.

192.      Defendants deny the allegations in Paragraph 192 of the First Amended Complaint.

193.     Defendants deny the allegations in Paragraph 193 of the First Amended Complaint.

194.     Defendants deny the allegations in Paragraph 194 of the First Amended Complaint.

195.     Defendants deny the allegations in Paragraph 195 of the First Amended Complaint.

196.     Defendants deny the allegations in Paragraph 196 of the First Amended Complaint.

197.    Defendants deny the allegations in Paragraph 197 of the First Amended Complaint.

198.    Defendants deny the allegations in Paragraph 198 of the First Amended Complaint.

199.    Defendants deny the allegations in Paragraph 199 of the First Amended Complaint, except deny having knowledge or information as to whether injunctive, declaratory, and affirmative relief are the "predominant forms of relief sought in this case."

200.    Defendants deny the allegations in Paragraph 200 of the First Amended Complaint.

201.    Defendants deny the allegations in Paragraph 201 of the First Amended Complaint.

202.    Defendants deny the allegations in Paragraph 202 of the First Amended Complaint.

203.    The first sentence of Paragraph 203 states a legal conclusion to which no responsive pleading is required.  Defendants deny the allegations in the second sentence of Paragraph 203 of the First Amended Complaint.

**VI.    AS TO AND AS CONCERNING THE "COLECTIVE ALLEGATIONS UNDER THE EQUAL PAY ACT"**

204.    Defendants repeat each of the answers to Paragraphs 1 through 203 of the First Amended Complaint as if fully set forth herein.

205.    The allegations in Paragraph 205 state a legal conclusion to which no responsive pleading is required.  To the extent a response to Paragraph 205 is required, Defendants admit that Plaintiffs purport to assert claims under the statutes cited therein but deny that they are entitled to assert said claims.

38

206.    Defendants deny the allegations in Paragraph 206 of the First Amended Complaint.

207.    Defendants deny the allegations in Paragraph 207 of the First Amended Complaint.

208.    Defendants deny the allegations in Paragraph 208 of the First Amended Complaint, except the allegation that "[c]ounts for violation of the EPA may be brought and maintained as an 'opt-in' collective action pursuant to 29 U.S.C. § 216(b)" states a legal conclusion to which no responsive pleading is required.

209.    Defendants deny the allegations in Paragraph 209 of the First Amended Complaint.

## VII.    AS TO AND AS CONCERNING "COUNTS"

### COUNT I

210.    Defendants repeat each of the answers to Paragraphs 1 through 209 of the First Amended Complaint as if fully set forth herein.

211.    The allegations in Paragraph 211 state a legal conclusion to which no responsive pleading is required.

212.    Defendants deny the allegations in Paragraph 212 of the First Amended Complaint.

213.    Defendants deny the allegations in Paragraph 213 of the First Amended Complaint.

214.    Defendants deny the allegations in Paragraph 214 of the First Amended Complaint.

215.    Defendants deny the allegations in Paragraph 215 of the First Amended Complaint.

216.    Defendants deny the allegations in Paragraph 216 of the First Amended Complaint.

217.    Defendants deny the allegations in Paragraph 217 of the First Amended Complaint.

218.    Defendants deny the allegations in Paragraph 218 of the First Amended Complaint.

219.    Defendants deny the allegations in Paragraph 219 of the First Amended Complaint.

## COUNT II

220.    Defendants repeat each of the answers to Paragraphs 1 through 219 of the First Amended Complaint as if fully set forth herein.

221.    The allegations in Paragraph 221 of the First Amended Complaint state a legal conclusion to which no responsive pleading is required.

222.    Defendants deny the allegations in Paragraph 222 of the First Amended Complaint.

223.    Defendants deny the allegations in Paragraph 223 of the First Amended Complaint.

224.    Defendants deny the allegations in Paragraph 224 of the First Amended Complaint.

225.    Defendants deny the allegations in Paragraph 225 of the First Amended Complaint.

226.    Defendants deny the allegations in Paragraph 226 of the First Amended Complaint.

227.    Defendants deny the allegations in Paragraph 227 of the First Amended Complaint.

228.    Defendants deny the allegations in Paragraph 228 of the First Amended Complaint.

229.    Defendants deny the allegations in Paragraph 229 of the First Amended Complaint.

230.    Defendants deny the allegations in Paragraph 230 of the First Amended Complaint.

**COUNT III**

231.    Defendants repeat each of the answers to Paragraphs 1 through 230 of the First Amended Complaint as if fully set forth herein.

232.    Defendants deny the allegations in Paragraph 232 of the First Amended Complaint, except admit that Campbell filed an EEOC charge relating to the Firm on June 30, 2016.  The allegations concerning whether Campbell engaged in "protected activity" state a legal conclusion to which no responsive pleading is required.

233.    Defendants deny the allegations in Paragraph 233 of the First Amended Complaint.

234.    Defendants deny the allegations in Paragraph 234 of the First Amended Complaint.

235.    Defendants deny the allegations in Paragraph 235 of the First Amended Complaint.

236.     Defendants deny the allegations in Paragraph 236 of the First Amended Complaint.

237.     Defendants deny the allegations in Paragraph 237 of the First Amended Complaint.

238.     Defendants deny the allegations in Paragraph 238 of the First Amended Complaint.

239.     Defendants deny the allegations in Paragraph 239 of the First Amended Complaint.

## COUNT IV

240.     Defendants repeat each of the answers to Paragraphs 1 through 239 of the First Amended Complaint as if fully set forth herein.

241.     Defendants deny the allegations in Paragraph 241 of the First Amended Complaint.

242.     Defendants deny the allegations in Paragraph 242 of the First Amended Complaint.

243.     Defendants deny the allegations in Paragraph 243 of the First Amended Complaint.

244.     Defendants deny the allegations in Paragraph 244 of the First Amended Complaint.

245.     Defendants deny the allegations in Paragraph 245 of the First Amended Complaint.

246.     Defendants deny the allegations in Paragraph 246 of the First Amended Complaint.

## COUNT V

247.     Defendants repeat each of the answers to Paragraphs 1 through 246 of the First Amended Complaint as if fully set forth herein.

248.     Defendants deny the allegations in Paragraph 248 of the First Amended Complaint.

249.     Defendants deny the allegations in Paragraph 249 of the First Amended Complaint.

250.     Defendants deny the allegations in Paragraph 250 of the First Amended Complaint.

251.     Defendants deny the allegations in Paragraph 251 of the First Amended Complaint.

252.     Defendants deny the allegations in Paragraph 252 of the First Amended Complaint.

## COUNT VI

253.     Defendants repeat each of the answers to Paragraphs 1 through 252 of the First Amended Complaint as if fully set forth herein.

254.     Defendants deny the allegations in Paragraph 254 of the First Amended Complaint.

255.     Defendants deny the allegations in Paragraph 255 of the First Amended Complaint.

256.     Defendants deny the allegations in Paragraph 256 of the First Amended Complaint.

257.    Defendants deny the allegations in Paragraph 257 of the First Amended Complaint.

## COUNT VII

258.    Defendants repeat each of the answers to Paragraphs 1 through 257 of the First Amended Complaint as if fully set forth herein.

259.    Defendants deny the allegations in Paragraph 259 of the First Amended Complaint except admit that Chadbourne is an employer as to certain persons but not Plaintiffs for purposes of the DCHRA.

260.    Defendants deny the allegations in Paragraph 260 of the First Amended Complaint.

261.    Defendants deny the allegations in Paragraph 261 of the First Amended Complaint.

262.    Defendants deny the allegations in Paragraph 262 of the First Amended Complaint.

263.    Defendants deny the allegations in Paragraph 263 of the First Amended Complaint.

## COUNT VIII

264.    Defendants repeat each of the answers to Paragraphs 1 through 264 of the First Amended Complaint as if fully set forth herein.

265.    Defendants deny the allegations in Paragraph 265 of the First Amended Complaint, except admit that Chadbourne is an employer as to certain persons but not Plaintiffs for purposes of the DCHRA.

44

266.    Defendants deny the allegations in Paragraph 266 of the First Amended Complaint.

267.    Defendants deny the allegations in Paragraph 267 of the First Amended Complaint.

268.    Defendants deny the allegations in Paragraph 268 of the First Amended Complaint.

269.    Defendants deny the allegations in Paragraph 269 of the First Amended Complaint.

## COUNT IX

270.    Defendants repeat each of the answers to Paragraphs 1 through 269 of the First Amended Complaint as if fully set forth herein.

271.    Defendants deny the allegations in Paragraph 271 of the First Amended Complaint, except admit that Chadbourne is an employer as to certain persons but not Plaintiffs for purposes of the DCHRA.

272.    Defendants deny the allegations in Paragraph 272 of the First Amended Complaint.

273.    Defendants deny the allegations in Paragraph 273 of the First Amended Complaint.

274.    Defendants deny the allegations in Paragraph 274 of the First Amended Complaint.

275.    Defendants deny the allegations in Paragraph 275 of the First Amended Complaint.

## COUNT X

276.     Defendants repeat each of the answers to Paragraphs 1 through 275 of the First Amended Complaint as if fully set forth herein.

277.     Defendants deny the allegations in Paragraph 277 of the First Amended Complaint.

278.     Defendants deny the allegations in Paragraph 278 of the First Amended Complaint.

279.     Defendants deny the allegations in Paragraph 279 of the First Amended Complaint.

280.     Defendants deny the allegations in Paragraph 280 of the First Amended Complaint.

281.     Defendants deny the allegations in Paragraph 281 of the First Amended Complaint.

## **COUNT XI**

282.     Defendants repeat each of the answers to Paragraphs 1 through 281 of the First Amended Complaint as if fully set forth herein.

283.     Defendants deny the allegations in Paragraph 283 of the First Amended Complaint, except refer the Court to the November 26, 2013 offer letter for true and complete contents thereof.

284.     Defendants deny the allegations in Paragraph 284 of the First Amended Complaint.

285.     Defendants deny the allegations in Paragraph 285 of the First Amended Complaint, except refer the Court to the November 26, 2013 offer letter for the true and complete contents thereof.

286.     Defendants deny the allegations in Paragraph 286 of the First Amended Complaint.

287.     Defendants deny the allegations in Paragraph 287 of the First Amended Complaint.

## COUNT XII

288.     Defendants repeat each of the answers to Paragraphs 1 through 287 of the First Amended Complaint as if fully set forth herein.

289.     The allegations in Paragraph 289 of the First Amended Complaint state a legal conclusion to which no responsive pleading is required.

290.     The allegations in Paragraph 290 of the First Amended Complaint state a legal conclusion to which no responsive pleading is required.

291.     Defendants deny the allegations in Paragraph 291 of the First Amended Complaint.

292.     Defendants deny the allegations in Paragraph 292 of the First Amended Complaint and additionally state that Paragraph 292 of the First Amended Complaint states a legal conclusion to which no responsive pleading is required.

293.     Defendants deny the allegations in Paragraph 293 of the First Amended Complaint.

294.     Defendants deny the allegations in Paragraph 294 of the First Amended Complaint.

## COUNT XIII

295.     Defendants repeat each of the answers to Paragraphs 1 through 294 of the First Amended Complaint as if fully set forth herein.

296.    Defendants deny the allegations in Paragraph 296 of the First Amended Complaint and additionally state that Paragraph 296 of the First Amended Complaint states a legal conclusion to which no responsive pleading is required.

297.    Defendants deny the allegations in Paragraph 297 of the First Amended Complaint, except admit that Campbell made a required capital contribution of $217,250 to the Firm.

298.    Defendants deny the allegations in Paragraph 298 of the First Amended Complaint.

299.    Defendants deny the allegations in Paragraph 299 of the First Amended Complaint.

**VIII.    AS TO AND AS CONCERNING THE "PRAYER FOR RELIEF"**

Defendants deny the allegations set forth in the WHEREFORE clause of the First Amended Complaint, and further deny that Plaintiffs and/or the purported class members are entitled to any of the relief demanded therein or any relief whatsoever.  Defendants deny each and every allegation in the First Amended Complaint not specifically admitted herein.

**AFFIRMATIVE OR OTHER DEFENSES**

In further of their Answer to the First Amended Complaint, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants state as follows for their affirmative and other defenses, without admitting thereby that they necessarily bear the burden of proof on any such defense.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

The First Amended Complaint fails, in whole or in part, to state a claim upon which relief can be granted or a claim for which the damages sought may be awarded.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collection members, are barred, in whole or in part, by the applicable statutes of limitation and/or filing periods.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collection members, are barred, in whole or in part, as for any matters for which Plaintiffs failed to satisfy administrative, procedural and jurisdictional prerequisites for commencing and maintaining this action.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

To the extent, if any, Defendants engaged in conduct with respect to Plaintiffs, (1) all actions by Defendants with respect to Plaintiffs were lawful and were made in good faith compliance with applicable provisions of law, rules and regulations, and (2) all actions by Chadbourne with respect to Plaintiffs were taken for legitimate, non-discriminatory, non-retaliatory, non-prohibited reasons and/or for good cause.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Even assuming that Defendants ever engaged in any conduct with respect to Plaintiffs that was motivated in part by unlawful reasons (which Chadbourne expressly denies), Defendants would have taken the same actions with respect to Plaintiffs for lawful, non-discriminatory, non-retaliatory reasons.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

Even assuming that there ever was any unlawful discriminatory behavior with respect to Plaintiffs (which Chadbourne expressly denies), Defendants at all times exercised reasonable care to prevent and promptly correct such, and Plaintiffs unreasonably failed to take advantage of

the preventive and/or corrective opportunities provided by Chadbourne or to avoid harm otherwise.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Chadbourne at all relevant times has maintained, disseminated and observed equal employment, affirmative action, a harassment-free work environment, and anti-retaliation policies, that *inter alia*, provide that all personnel decisions are to be made on the basis of merit without regard to gender or on any other basis that is protected under applicable law, prohibit any form of harassment or intimidation on any basis that is protected by applicable law, and prohibit any form of retaliation against an individual who reports a claim of discrimination or who opposes any act or practice made unlawful by any federal, state, or local statute, or who cooperates in the investigation of such a report.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collection members, are barred, in whole or in part, by equitable defenses, including the doctrines of equitable estoppel, laches, waiver and/or unclean hands.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or the collection members have not been damaged by any of Defendants' actions.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

If damaged, which Defendants expressly deny, Plaintiffs have failed to make reasonable and diligent efforts to mitigate damages.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFNESE

50

The First Amended Complaint fails to state a claim upon which an award of punitive damages can be granted.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or the collection members are not entitled to recover punitive damages because, at all relevant times, Defendants engaged in good faith efforts to comply with all of their obligations.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or the collection members are not entitled to recover any exemplary or punitive damages because Defendants did not commit, ratify, authorize, or acquiesce in any malicious, willful, or reckless act.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or collection members are not entitled to recover attorneys' fees and costs under the causes of action as demanded in the First Amended Complaint.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collection members, are barred, in whole or in part, by the jurisdictional requirements of the Fair Labor Standards Act, 29 U.S.C. § 213(f).

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

The Court does not have subject matter jurisdiction over all or part of the claims asserted in the First Amended Complaint.

WHEREFORE, Defendants request that the Court enter judgment in favor of Defendants and dismiss the First Amended Complaint in its entirety, and award Defendants their attorneys' fees and costs and such other relief as the Court deems just and proper.

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, Defendant/Counterclaimant Chadbourne & Parke LLP ("Chadbourne," the "Firm," or "Counterclaimant"), by its attorneys, Proskauer Rose LLP, hereby asserts the following counterclaim against Kerrie Campbell ("Campbell").

1.      Chadbourne is an international law firm with over 300 attorneys and locations on five continents.  Chadbourne is recognized internationally for its work in project-finance and energy, corporate transactions, tax, international disputes, bankruptcy, and litigation.

2.      Counterclaim defendant Campbell is a Chadbourne partner.  Campbell joined Chadbourne in January 2014 as a lateral partner in the Litigation Department, based in Chadbourne's Washington, D.C. office.  Campbell describes her practice as focusing primarily in the fields of First Amendment litigation, consumer product safety, and "reputation protection."

3.      As a leading international law firm, Chadbourne's reputation is perhaps its most valuable asset.  That reputation has been developed and fortified over nearly a century of cutting-edge, service-focused legal practice in courts and boardrooms across America and around the world.

4.      Campbell is aware that Chadbourne places paramount importance on its reputation as a firm.

5.      Indeed, and ironically, one of Campbell's primary areas of practice is what she calls "reputation protection," which involves representing those whose products or services have been defamed in the press by the publication of false allegations.  As such, she is keenly aware of the fact that even false and meritless allegations of wrongdoing can have a devastating effect on corporations and firms.

6.     Campbell's First Amended Complaint contains numerous allegations purporting to disclose confidential and proprietary financial information of Chadbourne and its individual partners.

7.     Within the past few months, and wholly separate from the filings made and judicial proceedings in this lawsuit, Campbell has engaged in a nationwide campaign to impugn, malign, and denigrate Chadbourne outside the Court in the press, online, and at speaking engagements.

8.     On information and belief, Campbell has actively sought opportunities to be interviewed by the press and to participate in speaking engagements regarding Chadbourne.

9.     This campaign, which is separate from the instant litigation and outside any judicial proceeding, has no lawful purpose but rather is an effort to denigrate Chadbourne in the court of public opinion through false allegations and sensational hyperbole, with the implicit extortionate threat that this campaign of falsity would continue unless Chadbourne were to agree to a large settlement in this factually baseless and legally defective litigation.

10.     The public statements made by Campbell, both individually and through her attorneys, go far beyond a mere recitation or summarization of the allegations in the original Complaint or First Amended Complaint.  Indeed, Campbell purposefully chose not to serve the initial Complaint on Chadbourne and instead chose to focus her efforts on the nationwide press campaign.

11.     On August 31, 2016, the very day the initial Complaint in this action was filed (but not served), Campbell's counsel David Sanford gave an interview falsely stating that "gender discrimination is standard procedure" at Chadbourne.  Aebra Coe, "Breaking:

Chadbourne Partner Smacks Firm with $100M Gender Discrimination Class Action," Law360, August 31, 2016.[2]

12.     On September 7, 2016, Campbell gave an interview to BNA in which she accused the Firm of creating a "hostile environment."  Stephanie Russell-Kraft, "Working at Chadbourne While Suing Chadbourne for $100M," BNA, Sept. 7, 2016.

13.     Shortly thereafter, 14 female Chadbourne partners drafted and sent a letter to Sanford criticizing him for his "patronizing" and "patriarchal" attempt to speak on behalf of all female Chadbourne partners as if these educated, highly competent attorneys were nothing more than helpless victims.  In response, Sanford dismissively – and falsely – accused them of having other motives this letter, such as to "keep in good standing with the powers that be."  Sanford thus falsely and insultingly  insinuated that the female Chadbourne partners were but helpless victims who are capable only of obeying orders given to them by male partners.  Ashby Jones, "Female Partners at Chadbourne Respond to Discrimination Suit," The Wall Street Journal Law Blog, Sept. 12, 2016.

14.     Sanford further falsely impugned the professional competence of the 14 Chadbourne partners as attorneys by stating that they "were apparently not aware of" non-solicitation laws, which Sanford incorrectly claimed prevented him from reaching out to them prior to filing a lawsuit, even for so much as just to verify the supposed facts he was alleging in their name and purportedly on their behalf.  Kat Greene, "Female Partners at Chadbourne Disavow Discrimination Suit," Law360, Sept. 13, 2016.

---

[2] David Sanford is the Chairman of Sanford & Heisler.  He is a male.  Jeremy Heisler, the Managing Partner, is also male.  Indeed, fewer than 30% of Sanford & Heisler's partners are female.

15.     On October 13, 2016, Sanford and Campbell appeared as featured speakers at a panel discussion at Stanford Law School.  The title of the program was "Litigating the Glass Ceiling: Gender Discrimination Actions Against Big Law."

16.     During the course of this presentation, both Sanford and Campbell proceeded to slander Chadbourne before the audience, many of whom were law students at Stanford and potential Chadbourne recruits.

17.     On October 14, 2016, Campbell and Sanford participated in a "podcast" interview with J. Craig Williams and Bob Ambrogi.  During this interview, both Campbell and Sanford made various false statements regarding Chadbourne, including but not limited to the statements set forth below:

   a.   During the interview, Campbell falsely said that she "was at the very bottom of the point system" at Chadbourne.  This statement is wholly false, as there are, and always have been, both male and female partners whose compensation is lower than Campbell's own compensation.

   b.   During the interview, Sanford falsely said "At Chadbourne in particular you have 20 non-partner attorneys who left the Firm in 2015.  85%, approximately 85%, are female, 17 out of the 20," as if to insinuate that female attorneys were fleeing or being driven out of the Firm.  Sanford's statement significantly misstates both the actual number of non-partner attorney departures from Chadbourne during that time period, and the percentage of that group that was female, which was in fact under 50%.

18.     By October 21, 2016, a draft Amended Complaint for this action, marked "PRIVILEGED ATTORNEY WORK PRODUCT DRAFT: 10/19 at 12:05 pm" ("Draft

56

Amended Complaint") was posted on the website of Sanford & Heisler,

https://sanfordheisler.com, specifically at the then-existing URL https://sanfordheisler.com/wp-content/uploads/2016/08/Amended-Chadbourne-Complaint-10-19-2016-CLEAN.pdf.  This

posting, which appears to waive the attorney-client privilege, was outside a litigation filing.

19.     The Draft Amended Complaint, which was published worldwide on the Internet at

least six (6) days before Campbell and her counsel filed the First Amended Complaint on

October 27, 2016, contains numerous of denigrating false and misleading statements about the

Firm, its partners (including women partners), and associates (including women associates).

20.     After filing the First Amended Complaint on October 27, 2016, Sanford & Heisler

released a press statement falsely claiming that "[g]ender discrimination seems to be

Chadbourne's modus operandi."  PR NewsWire,"Sanford Heisler, LLP Adds Female Former

Partner of Chadbourne & Parke LLP as Second Named Plaintiff and Class Representative in

$155 Million Gender Discrimination Class Action," Oct. 27, 2016.

21.     Sanford and Sanford & Heisler's motivation for making these various false

statements against the Counterclaimants was made clear by Sanford's own public comments that

were quoted as follows in an October 27, 2016 article in Bloomberg BNA:

> The amended complaint should signal to other law firms and companies with a history of sex discrimination that things just "get worse in litigation" after the opportunity for an early resolution has passed, lead class counsel David Sanford told Bloomberg BNA.
>
> "It's important to examine what went on and to take care of things at the front-end" before litigation becomes necessary, he said Oct. 27. Sanford is the chairman of Sanford Heisler LLP in Washington.

*     *     *

**More Law Firms to Be Sued?**

> Sanford, whose firm has a strong track record of successful class sex bias litigation against other industries—including obtaining a $19.5 million settlement from Qualcomm Inc. July 26—told Bloomberg BNA that class lawsuits against other big law firms may be coming.
>
> "We do plan similar suits against other firms, mostly big but not all," but whether they come to pass depends on the outcome of current settlement talks, he said. "We're trying to resolve" the disputes with the other firms presuit, but if that doesn't happen "we will file," he said.

Patrick Dorrian, "Chadbourne Class Action Adds Six Partners as Defendants," Bloomberg BNA, Oct. 27, 2016.

22.     The gravamen of Sanford's comments is clear:  this lawsuit, and the separate nationwide campaign of falsehoods against Chadbourne are only tangentially related to Plaintiffs Kerrie Campbell or Jaroslawa Johnson, or the action they have filed against Chadbourne.  The true goals of Sanford and Sanford & Heisler are to make an example of how they are able to inflict injury upon Chadbourne reputationally, and thereby to serve notice to *other* law firms or companies that, should a future complaint arise against them, they would be well served to settle with Sanford & Heisler "at the front end" or they, too, would be subject to a baseless nationwide smear campaign of falsehoods like the one now being conducted against Chadbourne.

23.     In another interview published on October 27, 2016, Sanford falsely accused Chadbourne of "Animal House-like hijinks," and a "fraternity-type prank that shows the culture of intimidation, harassment and retaliation."  Brian Baxter, "Chadbourne Hit With New Complaint – and Video – in Gender Bias Suit," The Am Law Daily, Oct. 27, 2016.

24.     Some of the baseless attacks by Sanford and Campbell, for example published by Stephanie Russell-Kraft, "Chadbourne Partner Suing Firm Answers Three Questions," BNA, Oct. 27, 2016, are based on false allegations that Lowell went into Campbell's office which never happened.  Campbell and Sanford omit numerous aspects of the events they are

misrepresenting to the public, the true purpose and nature of which events are set forth more fully in Paragraph 9 of Defendants' Answer in this action.

25.    Campbell likewise claimed, in a press interview, that a postcard bearing a Mandela quote had twice been torn from her office wall, and replaced with a smiley face. Stephanie Russell-Kraft, "Chadbourne Partner Suing Firm Answers Three Questions," BNA, Oct. 27, 2016.  Here again, the fact is that Lowell never went into Campbell's office to do the things claimed, that the events about which Campbell is referring occurred on an outside wall, and the true purpose and nature of these events is set forth more fully in Paragraph 9 of Defendants' Answer in this action.  In the same interview, she accused Chadbourne of being a "boys' club" and made several disparaging comments regarding what she referred to as "male management."  *Id.*

26.    Campbell in the First Amended Complaint has admitted that she has engaged in surreptitious videotaping of the Firm premises.

27.    On information and belief, Campbell has reached out to numerous Chadbourne employees and former employees and encouraged them to make unfounded and false accusations of gender discrimination or other mistreatment against Chadbourne and the individual Defendants, and possibly to assert claims of their own against the Firm in which she is a partner, in the hope that such claims would increase her personal ability to negotiate a lucrative settlement with the Firm of the unfounded claims she has asserted in this action.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (BY CHADBOURNE AGAINST CAMPBELL)

28.    Counterclaimant hereby reincorporates and realleges Paragraphs 1-27, above.

29.     At all times since January 2014, Campbell has been an equity partner in Chadbourne.  As such, she owes a fiduciary duty to Chadbourne and to all other Chadbourne partners.

30.     As set forth above, in the past few months Campbell has engaged in a nationwide smear campaign against Chadbourne – both individually and through the authorized and extra-judicial statements of her attorneys.  Campbell has made numerous knowingly false statements and accusations in the press solely with the purpose of injuring Chadbourne's hard-earned reputation.

31.     These false statements and accusations constitute a breach of Campbell's fiduciary duty of loyalty to Chadbourne.

32.     As a Chadbourne equity partner, Campbell has access to confidential information (which she knows is confidential) regarding the Firm and its partners, including but not limited to information regarding billing rates, origination rates, yearly collections, and compensation.

33.     Campbell's First Amended Complaint contains numerous allegations purporting to disclose confidential and proprietary financial information of Chadbourne and its individual partners.

34.     The allegations setting forth purported details of confidential and personal financial information were not necessary to meet Campbell's pleading burden under Fed. R. Civ. P. 8.

35.     Campbell has further made statements purporting to disclose confidential and proprietary financial information of Chadbourne and its individual partners during the course of her ongoing press campaign against the Firm.

36.     Campbell's disclosure of confidential Chadbourne data was a direct breach of her duty of loyalty to her partners and the Firm.

37.     Campbell's actions in purposefully disseminating such false and misleading statements regarding what purported to be Chadbourne's private financial data constituted a direct breach of her duty of loyalty to her partners and the Firm.

38.     Campbell's alleged and surreptitious videotaping of Firm premises where privileged client business is being conducted is likewise a direct breach of her fiduciary duties to her partners and the Firm.

39.     On information and belief, Campbell has reached out to numerous Chadbourne employees and former employees and encouraged them to make unfounded accusations of gender discrimination or other mistreatment against Chadbourne and the individual Defendants, solely for her own personal gain.

40.     Campbell's attempts to elicit these false accusations were made with no lawful purpose and constitute a breach of her fiduciary duties to Chadbourne and to the individual Counterclaimants.

41.     Chadbourne therefore seeks monetary damages and punitive damages according to proof.


**PRAYER FOR RELIEF**

WHEREFORE, Chadbourne seeks the following relief:

A)      An order finding and declaring that Campbell and her counsel Sanford, and Sanford & Heisler have made knowingly false statements regarding Chadbourne;

B)      An order requiring Campbell, Sanford, and Sanford & Heisler to publicly retract all false statements regarding Chadbourne;

C)      An order finding and declaring that Campbell has breached her fiduciary duty to Chadbourne;

D)      Temporary and permanent injunctive relief enjoining Campbell from releasing any Chadbourne confidential information into the public record or otherwise disseminating such confidential information;

E)      An order directing Campbell to cease surreptitious recording on the premises of the Firm;

F)      An award of compensatory damages according to proof;

G)      An award of punitive damages according to proof;

H)      Attorneys' fees and costs as may be provided by law; and

I)      Any other and further legal or equitable relief that the Court deems proper.

Dated: November 3, 2016
         New York, New York

PROSKAUER ROSE LLP

By:    _/s/ Kathleen M. McKenna_
       Kathleen M. McKenna
       Evandro C. Gigante
       Rachel S. Fischer
       Eleven Times Square
       New York, NY 10036
       Tel:  212.969.3000
       Fax:  212.969.2900
       kmckenna@proskauer.com
       egigante@proskauer.com
       rfischer@proskauer.com

       *Attorneys for Defendants and Counterclaimant*

62