# GIACCIA
# EXHIBIT A

PARTNERSHIP AGREEMENT

Dated as of April 1, 1987

11/95

Page

Section 1.    Firm name, continuing existence                          1

Section 2.    Transfer of property of predecessor
              firms                                                     2

Section 3.    Admission of additional partners                         2

Section 4.    Termination of a partner's membership
              in the firm                                              2

Section 5.    Management of firm                                       3

Section 6.    Partners' activities, partners' investments              6

Section 7.    Fiscal year, books of account, firm
              capital                                                  11

Section 8.    Participation in profits and losses                      15

Section 9.    Termination of firm, termination of
              partner's membership, setoff                             16

Section 10.   Services by firm to prior firm or to a
              prior partner                                            19

Section 11.   Retirement of partners                                   19

Section 12.   Meetings and voting                                      20

Section 13.   Delivery of assets in kind                               23

Section 14.   Personal liability                                       23

Section 15.   Agreement binding upon parties,                          24
              estates

PARTNERSHIP AGREEMENT

Dated as of April 1, 1987

Most persons signing this Agreement have been engaged in the practice of law as partners under the firm name of Chadbourne, Parke, Whiteside & Wolff and, since 1985, Chadbourne & Parke (hereinafter called the "firm") pursuant to an agreement which was amended and restated as of January 1, 1960, thereafter amended and restated as of November 1, 1975 and since amended from time to time. The persons signing this agreement intend to continue the practice of law as partners and by this Agreement to amend and to restate completely the terms and conditions of their firm agreement, as follows:

1.   Firm name, continuing existence

(a)   The firm name shall be Chadbourne & Parke.

(b)   If two or more persons or firms shall each assert the right to be considered a successor within the meaning of this Section 1(b), the decision of partners having a total of more than 50% profit percentage interest (as defined in Section 12(f) hereof) in the firm immediately preceding the time of such assertion shall determine who or what firm is to be considered the successor and entitled to use the firm name, and such decision shall be binding on all firms and partners thereof and their estates.

(c)   Notwithstanding the death, incompetency or otherwise ceasing to be a partner, or the admission of one or more partners, the firm shall have a continuing existence until its termination pursuant to the provisions of this Agreement.

### 2. Transfer of property of predecessor firms

All the property, rights and claims of all predecessor firms have been, or hereby are, transferred to the firm, subject to all liabilities and obligations of the predecessor firms to third parties and to each partner thereof and successor to the interest of such partner.

### 3. Admission of additional partners

Any additional partner shall be admitted only by major action of the firm pursuant to the provisions of Section 12 and his admission shall be evidenced by his delivery to the firm of his written agreement to become a partner on the terms and conditions of this Agreement and to be bound by the provisions of each other agreement of the firm that requires him to be bound thereby.

### 4. Termination of a partner's membership in the firm

(a) A partner may voluntarily terminate his membership in the firm at any time by giving written notice thereof to the firm specifying the date when such termination shall become effective, which notice shall, unless otherwise agreed to by firm action (as defined in Section 12(f)), be given at least 30 days and not more than 90 days before such effective date, subject, however, to the provisions of Section 9(a). A partner may be expelled from the firm by major action of the firm pursuant to Section 12.

2

(b) A partner shall automatically cease to be a partner at the end of his "scale down period" pursuant to the firm's Retirement Plan for Partners.

(c) No partner (nor estate of a partner) who dies, becomes incompetent or otherwise ceases to be a partner shall share or have any interest in any good will of the firm or any receivables for services rendered or client disbursements made, whether or not billed, or, except as otherwise provided herein, in any other assets of the firm. Such partner's capital in the firm, including his share of the undistributed profits of the firm at the time of termination, shall be paid to such partner (or such partner's estate) as soon as reasonably practicable following such termination, subject to the provisions of Section 9 and to the provisions of the Retirement Plan for Partners in the circumstances therein provided for. For all purposes of this Agreement, the term "estate" shall be deemed to include a successor in interest designated by the partner during his lifetime by an instrument filed with the firm or under his last will and testament.

## S. Management of firm

(a) The property and business of the firm shall be managed by the partners. The firm may, by firm action, appoint a Management Committee consisting of such number of

3

partners as the firm from time to time may determine, with
such powers and duties as the firm from time to time may
determine.  The Management Committee may be vested with all
the powers of the partners in the management of the business
of the firm and to make and carry out all decisions necessary
therefor, except that the Management Committee shall not be
empowered (1) to take any of the actions specified in Section
12(a) or (2) to fix or change the composition, terms of
office or method of election or removal of members of the
Management Committee.

(b)  Until changed by firm action, the Management
Committee shall be composed of five partners of the firm who
are elected for two-year terms, with the initial Committee to
consist of Messrs. William J. Calise and Donald L. Deming,
having terms ending October 31, 1987, and Messrs. Rigdon H.
Boykin, Robert A. Howes and Edward P. Smith, having terms
ending October 31, 1988.  At the end of each term of office,
the Management Committee or any partner may nominate partners
for the following two-year terms and there shall be no prohi-
bition against nomination of one or more of the existing
members of the Management Committee.  Election to the Manage-
ment Committee shall be by affirmative vote of partners
having a total of more than 50% profit percentage interest in
the firm and, in the case of rejection, one or more substi-
tute nominees, named by the Management Committee or any part-

4

ner of the firm, shall be elected by such majority vote of the members thereof. The members of the Committee may resign or be removed by affirmative vote of partners having a total of more than 50% profit percentage interest in the firm. In the case of resignation, removal, incapacity or death, the remaining members of the Management Committee or any partner may nominate a successor to fill the vacancy for the remainder of the term, such successor to be elected by partners having a total of more than 50% profit percentage interest in the firm.

(c) The Management Committee shall have the authority to appoint committees to perform certain of its responsibilities in designated areas. Without in any way limiting the Management Committee's authority, the Management Committee may appoint one or more partners to have such of its responsibilities as it deems appropriate in the areas of administration and non-legal staff liaison, billing and accounts receivable, finance matters, investments and borrowing, associates' programs and training, associates' assignments and evaluations, recruiting, mergers and acquisitions, client development and branch office planning and administration. The Committee may also, in its discretion, appoint a group of senior advisors to consult on various matters, including particularly partners' compensation.

5

6.  Partners' activities, partners' investments

(a)  Without the consent of the firm by firm action (or, if authorized by the firm, the consent of the Management Committee), no partner shall, while he is a partner:

(1)  engage in any business or professional activities that require his personal services (including the management of securities or property for anyone other than those in which the partner or a member of the partner's family, by blood or marriage, has a substantial interest), other than those of the firm; provided, however, that without such consent a partner may devote a reasonable amount of time to bar association and other professional association activities and to the partner's investments, directorships and fiduciary responsibilities and to philanthropic, civic and family affairs and like matters;

(2)  become director, trustee, officer or partner (except a limited partner for investment purposes) of any business organization, except that, without such consent, a partner may be engaged (as director, trustee, fiduciary or otherwise) in the management of securities or property in which the partner or a member of the partner's family (by blood or marriage) has a substantial interest;

6

(3) permit his name to be used in the title or style under which any business or profession (other than the firm) is conducted.

(b) As used in this Section 6:

(1) The term "director's fees" shall mean fees, allowances or similar payments received by a partner for services as director or trustee or member of a committee of directors or trustees of a corporation or other business entity or of a foundation or non-profit organization.

(2) The term "fiduciary fees" shall mean fees, commissions or other compensation received by a partner for services as executor or administrator of an estate or as trustee of a testamentary, inter vivos or other trust, provided, however, that the term "fiduciary fees" shall not include (i) director's fees, as defined in (1) above, nor (ii) fees, commissions or other compensation received by a partner by reason of his engaging in the management of securities or property in which a partner or a member of the partner's family (by blood or marriage) has a substantial interest or engaging in any capacity in the management of a trust, estate, corporation or other entity in which the partner or a member of the partner's family (by blood or marriage) has a substantial interest.

7

(3)   The term "other compensation" shall mean fees, commissions, compensation, salary, royalties, allowances or other things of value (by whatever name described) (i) received by a partner for legal services or other services as agent, assignee for the benefit of creditors, attorney-in-fact, broker, committee, conservator or guardian for an incompetent or minor or other person, conciliator, consultant, employee or officer of a corporation or other business entity, escrowee, expert witness, finder, guardian ad litem, special guardian, master, mediator, arbitrator, umpire, member or officer of a reorganization, stockholders' or creditors' committee, promoter, receiver, referee, or trustee in bankruptcy or reorganization of liquidation, or (ii) received by a partner as author, editor, speaker or teacher, if those activities as author, editor, speaker or teacher are related to law or the practice of law, provided, however, that the term "other compensation" shall not include director's fees nor fiduciary fees as defined in (1) and (2) above nor any item set forth in clause (ii) of (2) above.

(c)   A partner need not pay to the firm any director's fees received by him nor shall his payments from the the firm be adjusted because of that receipt.

8

(d) If a partner shall receive any fiduciary fees or other compensation, such partner shall contribute such fees or other compensation to the firm as additional income of the firm or, at the election of such partner, an amount equal to such fiduciary fees or other compensation, shall be deemed to be income of the firm for the partnership period in which such fiduciary fees or other compensation are received by such partner and shall be deducted from such partner's share of the profit, or added to his share of the loss, of the firm for such partnership period, as is appropriate.

(e) For the purposes of this Section 6:

(1) The amount of fiduciary fees or other compensation shall be the gross amount thereof before deductions for social security, employee or other benefits and for taxes withheld.

(2) Fiduciary fees or other compensation received otherwise than in cash shall be considered to have such value as is determined by firm action, which shall normally be the same amount as that which would be considered taxable compensation under the provisions of the United States Internal Revenue Code.

(3) Each partner shall promptly notify the Management Committee of his engaging in any activity from which he will receive director's fees, fiduciary fees or other compensation.

9

(4)  Reimbursed expenses are not subject to the provisions of paragraph (d).

(5)  If fiduciary fees and other compensation received by a partner in any one fiscal year of the firm total less than $1,000, they shall not be subject to the provisions of paragraph (d) for that fiscal year.

(6)  A partner shall not waive any fiduciary fees or other compensation without the consent of the firm by firm action (or, if authorized by the firm, the consent of the Management Committee).

(f)  No partner, for his own account or any account for which he is acting in a fiduciary or other representative capacity (if investments in such capacity are controlled directly or indirectly by such partner solely), nor his spouse nor any child living in the same home as such partner shall acquire <u>or sell</u> any share of stock, or any instrument convertible into or containing a right to purchase or receive any share of stock or interest in, or any debenture or other obligation of, any corporation, firm, joint venture or other organization that is a client of the firm without the prior approval of the firm or the Management Committee.  The foregoing shall not apply to shares, instruments, interests, debentures or other obligations (i) that are acquired as a result of a merger, consolidation, sale of assets, liquidation, stock dividend or split-up or that are acquired by will or descent or by exercise of a right owned by such partner, spouse or children, or (ii) in the case of an

10

executor or trustee, that are part of the principal of the estate or trust at the time such fiduciary takes office.

(g)   The partnership recognizes that it is essential to its practice that the individual partners should personally incur and pay such expenses as they deem necessary or proper and advisable in carrying on the law practice of the firm, in addition to those expenses for which the firm normally reimburses a partner.

7.   Fiscal year, books of account, firm capital

(a)   The fiscal year of the firm shall be from November 1 to October 31 or, if required by law, the calendar year.

(b)   The firm's books of account shall be kept on a cash receipts and disbursements basis in accordance with accounting principles applied on a basis that is consistent from year to year, provided, however, that notwithstanding the foregoing:

(1)   If any provision of this Agreement specifically states how any amount is to be treated for accounting purposes, the amount shall be so treated; and

(2)   The Management Committee may from time to time direct that additional exceptions be made.

(c)   An audit of the firm books of the general character heretofore followed shall be made by independent certified public accountants as of the close of each fiscal year and a copy of the auditors' report shall be delivered to each partner who was such at any time during such fiscal year.

(d)   Except as otherwise provided by firm action, or by action of the Management Committee to the extent authority therefor has been delegated by the firm, each partner shall from time to time contribute to the capital of the firm, proportionately according to his profit percentage interest, such amounts as may be required to enable the firm to carry on its activities and maintain proper reserves for contingencies.   No capital shall be required to be contributed by any partner whose compensation is based on a fixed guaranteed amount.

(e)(1)   There shall be accumulated in capital accounts of the firm and the partners expenditures by the firm for capital assets, including graphics and other art work (including framing), furniture, fixtures, equipment, automobiles, leasehold interests, leasehold alterations, additions or improvements (and any related architects', engineers' and decorators' charges), movers' expenses incurred in connection with the relocation of the firm's offices to 30 Rockefeller Plaza, and the firm's capital investment in BAR Ltd., other than expenditures for such types of property or

12

in such amounts as the firm deems to be minor and therefore appropriate to be expensed for tax and book purposes.

(2)   For tax purposes, the firm will depreciate, amortize, or charge to expense such capital expenditures accumulated pursuant to paragraph (1) at such rates and over such periods as the firm may determine within the provisions of applicable law.  Accounts shall be maintained to record each partner's proportionate interest in the firm's tax basis in such assets after giving effect to the depreciation, amortization, or charge to expense taken by the firm for tax purposes.  In addition to such tax basis accounts, accounts also shall be maintained showing each partner's proportionate share of such capital assets based on depreciation or amortization of such assets on a straight-line basis over the same period used for tax purposes, except that (i) movers' expense and leasehold costs incurred in connection with the move to 30 Rockefeller Plaza shall be amortized over the leasehold period, (ii) graphics and art work shall not be depreciated, and (iii) the capital investment in BAR Ltd. shall be adjusted from time to time to approximate the firm's share of the net book value of BAR Ltd.

(3)   Upon termination of a partner's membership in the firm, the firm will pay to such partner (or his estate) as part of such partner's capital payable pursuant to Section

13

4(c) an amount equal to such partner's current tax basis in such capital assets, plus any amount ("deferred income credit") by which such partner's share of the current book basis of such assets shall exceed his current tax basis therefor for the items in such accounts.

(4) Whenever profit percentage interests are changed, for purposes of paragraph (3) any partner whose profit percentage interest is reduced shall be deemed to have terminated his membership in the firm to the extent of such reduction and shall be entitled to payment as provided therein based on such reduction. Any partner whose profit percentage interest is increased (including a partner who obtained a profit percentage interest for the first time) shall be charged for and shall therefore be entitled to an additional share (based on such increase in profit percentage interest) in the capital accumulated in the accounts provided for in paragraph (2).

(5) The amount of any deferred income credits paid to a partner pursuant to paragraphs (3) or (4) shall be treated as income to such partner for the relevant fiscal period and the distributive shares of the firm's taxable income of the partners whose profit percentage interests are increased as a result of such reduction or termination shall be reduced by such aggregate amount.

14

## 8. Participation in profits and losses

All profits and losses of the firm for each fiscal
year, until changed by firm action or by action of the
Management Committee, shall be shared or borne, as the case
may be, by partners in accordance with their respective
profit percentage interests, subject to the authority in the
Management Committee to set aside a portion of the profits of
the firm in any fiscal year for bonuses to partners in such
amounts and at such times as may be determined by firm action
or by the Management Committee to the extent authority
therefor has been delegated by the firm. Profit percentage
interests shall be fixed from time to time by the firm by
firm action or by the Management Committee to the extent
authority therefor has been delegated by the firm. Distri-
bution of profits shall be made from time to time as deter-
mined by the Management Committee, subject to requirements
for contribution to capital in accordance with Section 7 and
subject to such withholding with respect to future require-
ments as may be determined by the Management Committee. If
any partner ceases to be a partner at a time other than on
the last day of a fiscal year, such partner's share of the
firm's profits or losses for the fiscal year in which such
partner ceases to be a partner shall be an amount determined
by multiplying the amount of the firm's profits or losses for
such fiscal year which such partner would have been entitled

15

to share or bear, as the case may be, if such partner had remained a partner through the last day of such fiscal year, by a fraction, the numerator of which is the number of days during such fiscal year that such partner was a partner (including the date on which such partner ceased to be a partner) and the denominator of which is the number of days in such fiscal year.

9.  Termination of firm, termination of
    partner's membership, setoff

        (a)  The firm shall terminate or be terminated only as follows:

> (i)   by major action pursuant to Section
>       12(a) at a meeting of the partners
>       called for that purpose; or
>
> (ii)  by the termination of membership in the
>       firm, from whatever cause, within a
>       period of 90 consecutive days, of
>       partners having a total of more than 50%
>       profit percentage interest in the firm
>       at the beginning of such period.

A partner who has given notice of termination pursuant to Section 4 shall not be entitled to vote at the meeting referred to in clause (i) above, and his termination shall not become effective unless the effective date of his termination was prior to the meeting at which termination of the firm was voted and prior to termination of the firm pursuant to clause (ii) above.

16

(b)  Upon termination of the firm, the partners shall appoint a Liquidating Committee, which shall be the agent of the terminated firm in liquidation, to serve until completion of the liquidation. Any vacancy in the Committee shall be filled by a majority vote of its remaining members from among the partners at the time of termination of the firm. Members of the Committee may receive reasonable compensation for their services.

(c)  Upon termination of the firm, no further professional services shall be rendered in the firm name, and no further business shall be transacted except that necessary to wind up its affairs, to settle its obligations, to liquidate its assets, and to distribute the net proceeds.

(d)  The termination of a partner's membership in the firm, whether by termination of the firm or by his death, incompetency, expulsion or withdrawal, shall not, in itself, relieve such partner (or his estate) of any obligation or liability of any nature in respect of any action or failure to act on the part of the firm prior to such termination of membership, whether or not the firm or any partner was aware of the existence of such obligation or liability at the time of such termination. The term "obligation or liability" shall, without limitation, include obligations or liabilities to third parties and to the firm and members thereof and the obligation of reimbursement between partners. Upon the

17

happening of any event which, under the terms of any contract or any lease of real or personal property, or under the terms of any note or loan agreement, including without limitation any revolving credit or term loan agreement entered into by the firm, releases a partner from an obligation or obligations under such contract, lease or note or loan agreement, such partner shall be released from all obligations to the firm or any other partner to contribute toward the payment of the firm's or other partner's obligations under such document.

(e) The firm as at any time constituted, may from time to time by firm action or by action of the Management Committee, withhold from any amounts otherwise payable to a former partner (or his estate) such amounts as the firm (or such Committee) may reasonably determine to provide for the payment of such former partner's (or estate's) share of any obligation or liability and any amount to which it is entitled pursuant to this Agreement if such obligation or liability (including any obligation pursuant to this Agreement) exists or is asserted, or in the reasonable discretion of the firm (or such Committee) is considered likely to exist or be asserted, such withholding to continue, as and to the extent the firm (or such Committee) shall in its reasonable discretion determine to be necessary, until such obligation or liability no longer exists or the firm (or such Committee) reasonably determines it to be non-existent.

18

(f) Each partner hereby authorizes the firm to set off against any amount that at any time may be owing or payable to him or his estate, the full or part of any amount that may be owing or payable by such partner's spouse or issue to the firm.

10. Services by firm to prior firm
    or to a prior partner

     If at any time or times the firm as it then exists shall render services to or for the account of any prior firm, or any prior partner, then, except as otherwise determined by the firm or the Management Committee, the firm shall be entitled to receive payment from such firm or partner for such services and reimbursement of its disbursements in connection therewith. The amount to be paid for such services shall be computed on the basis of time charged at the rates for time adopted by the firm for services to its clients at the time or during the times when such services were rendered.

11. Retirement of partners

     (a) The provisions of the Retirement Plan for Partners and the Muskie Retirement Plan, as amended from time to time as therein permitted, shall be binding on the firm.

     (b) Any partner who is not a participant in the Retirement Plan for Partners shall be entitled only to such payments, if any, upon and after retirement as such partner and the firm may agree upon in writing.

19

12.   Meetings and voting

(a)   As used in this Agreement, a "major action" by the firm shall mean any of the following:

- (1)  Admission of an additional partner.
- (2)  Expulsion of a partner.
- (3)  Termination of the firm.
- (4)  Change in the name of the firm.
- (5)  Amendment of any provision of this Agreement that would affect any of the foregoing matters unless such provision specifically requires a different vote or procedure, in which case such requirement shall govern.

(b)   Meetings of the firm shall be held upon at least two business days' notice to each partner, except that if a major action is proposed to be taken at least three business days' notice shall be given, and such notice shall identify the subject matter of the major action proposed to be taken.   Notice to any partner of any firm meeting or for any other purpose shall, except as otherwise provided in this agreement, be in writing and shall be deemed given to any partner maintaining an office in the United States when delivered to such office of that partner and shall be deemed given to any partner who maintains an office outside the United States either when delivered to such partner or when mailed to him at such office provided that such partner shall also be given telephonic or telex advice thereof if the

20

notice was mailed to him less than five business days prior to the meeting or other action. Any action taken at any meeting notice of which was not so given shall not be subject to attack by any partner who was present at the time such action was taken, or who agrees to such action (either before or after the taking of such action) when notified thereof in person or by telephonic or telex advice by any other partner, or who fails to object to such action in writing within five business days after such partner was given written notice as to the taking of such action.

(c) Regular meetings of the firm shall be held monthly. Special meetings of the firm may be called for a specific purpose, including proposed partnership admissions and proposed removal of a Management Committee member, by the Management Committee and shall be called by it upon the written request of partners having a total of 20% or more of the profit percentage interests in the firm.

(d) No action shall be taken at any firm meeting unless there are present in person or by proxy partners the total of whose profit percentage interests exceeds one-third of the total of the profit percentage interests of all partners entitled to vote upon such action.

21

,

# DOCUMENT SEPARATOR

Proposed
Amendment and Restatement
of Sections 12(e), 12(f) and 12(g)
of the Partnership Agreement

.

(e)   Except as otherwise specifically provided in
this Agreement, a partner may appoint another partner as his
proxy to vote at any meeting only on matters specified by
subject matter.

(f)   Except as otherwise specifically provided in
this Agreement, firm action shall be taken at any meeting of
the partners by vote of partners (or their proxies) the total
of whose profit percentage interests exceeds 50% of the total
of the profit percentage interests of all partners entitled
to vote upon such action who are present or represented by
proxy at the meeting.  A major action may be taken only upon
the affirmative vote of partners (or their proxies) the total
of whose profit percentage interests exceeds two-thirds of
the total of the profit percentage interests of all partners
entitled to vote upon such action, except that the admission
of any additional partner may be taken only upon the
affirmative vote of partners (and not their proxies) and
shall not be effective if there is a negative vote of
partners whose profit percentage interests equal or exceed
20% of the total of the profit percentage interests of all
partners entitled to vote upon such action.  For all purposes

22

of this Agreement, the term "profit percentage interest" is
defined as a percentage as to each partner that bears the
same ratio to 100% as such partner's then percentage
entitlement to profits (excluding any bonus) of the firm,
whether such entitlement is expressed as units or as a fixed
guaranteed amount, with partners whose entitlement is
expressed in whole or in part as a fixed guaranteed amount to
be deemed to have one unit for each $1,000 of fixed annual
guaranteed compensation.

(g)   Voting on all matters submitted for
consideration at firm meetings shall be by an informal show
of hands or, on major actions and otherwise if requested by
any partner, by call of the roll; provided that in voting
upon the composition and number of members of the Management
Committee or the election or removal of members thereof or
upon the admission of any additional partner, voting shall be
by secret ballot if requested by any partner. With respect
to the vote on the admission of any additional partner, the
numerical tally of the votes (affirmative, negative or
abstention) shall not be disclosed to the partners with
respect to any person admitted as an additional partner, but
∧shall be disclosed to the partners with respect to any person
not admitted as an additional partner if requested by any
partner.

23

## 13. Delivery of assets in kind

If any assets of the firm to which a partner or his estate is entitled upon his termination of membership in the firm (by retirement or otherwise) are represented by securities or other property, the firm may at its election make delivery in kind or pay an amount equal to the fair value of such securities or other property at the time of payment. Any determination as to fair value shall be made by partners having a total of more than 50% profit·percentage interest in the firm at the time of such determination and their determination shall be binding on the firm, each partner thereof and his estate.

## 14. Personal liability

The signing of this agreement by any partner shall not be deemed an acknowledgment by such partner that he or she has any personal liability under any circumstances for any events (other than contractual commitments of the firm

24

binding on him or her) occurring prior to the date on which
he or she became a partner of the firm.

15.  Agreement binding upon parties, estates

This agreement shall be binding upon the parties
hereto, their estates, and all persons claiming through them.

Dated as of April 1, 1987.

Edmund S. Muskie

Donald L. Deming

Robert A. Howes

Paul G. Pennoyer, Jr.

Peter M. Ward

Janet C. Brown

Edmund E. Harvey

Edward W. Forrester

Michael B. Weir

William M. Bradner, Jr.

Edward C. McLean, Jr.

Stuart D. Baker

Zachary Shimer

Nicholas B. Angell

George E. Zeitlin

Norman Sinrich

William J. Geen

Donald I Strauber

25

# DOCUMENT SEPARATOR

CONFIDENTIAL

January 16, 1992

TO:       All Partners

FROM:     Donald Schapiro

RE:       Vote on Annual Addition of a New Member to
          Management Committee

          Neil Bianco told me that the initial report on the
motion I made regarding Management Committee elections did
not accurately reflect the fact that a number of partners
indicated they wished to switch their votes after the vote
was announced.  The Management Committee suggested it would
be appropriate in these circumstances for me to resubmit the
proposal to the January 28 meeting.  On this basis, I intend
to resubmit the following resolution at the January 28
meeting:

          RESOLVED, that the Partnership Agreement be amended
     to incorporate the following procedures regarding
     election to the Management Committee:

          If both incumbent members of the Management
     Committee are standing for reelection in a year in which
     there are two vacancies ("year of two"), or if the three
     incumbent members of the Management Committee are
     standing for reelection in a year in which there are
     three vacancies ("year of three"), there shall be a
     preliminary election between the two members in the
     "year of two" and a preliminary election between the two
     members having the longest continuous terms of service
     on the Management Committee in the "year of three".
     Elections to the Management Committee will thereafter
     proceed in ordinary course except that the person not
     prevailing in the preliminary election shall be
     ineligible to serve on the Management Committee for a
     one-year period.

26

# DOCUMENT SEPARATOR

Amendment to Partnership Agreement
of Chadbourne & Parke

THIS AMENDMENT, dated as of August $7\frac{th}{}$, 1995, by
and among the parties who are signatories hereto, to the
Partnership Agreement of Chadbourne & Parke dated as of
April 1, 1987, as previously amended (the "Partnership
Agreement").

R E C I T A L S

A.   On May 25, 1995, the partners of the firm
adopted as a "major action" by the firm a resolution to
have the firm register as a registered limited liability
partnership (an "RLLP") pursuant to Section 121-1500 of
the Partnership Law of the State of New York (the
"Partnership Law").

B.   The parties wish to amend the Partnership
Agreement as provided herein to effect changes designed
to reflect the firm's registration as an RLLP.

NOW, THEREFORE, the parties hereto agree as
follows:

1.   Section 1(a) of the Partnership Agreement
shall be amended to read in its entirety as follows:

"(a)   The firm name shall be Chadbourne &
Parke LLP."

2.   Section 6 of the Partnership Agreement is
amended to add at the end thereof the following two new
paragraphs:

"(h)   The firm's obligation to indemnify
each partner pursuant to Section 40, subdivision 2
of the Partnership Law (as limited by Section 26(b)
of the Partnership Law), with respect to any claim
made against such partner, is conditioned on such
partner complying in full with:

(a)   all requirements of the firm's
professional liability policies, including as
to the conduct of any litigation and the
procedures for handling claims; and

(b)   all reasonable requirements,
directives and procedures established by the
Management Committee with respect to claims
generally or to a particular claim, including,
if applicable, control by the firm or its
designee of (i) any contest of the claim by the
individual partner, and (ii) settlement of the
claim.

"(i)   Notwithstanding the provisions of
Section 26(d) of the Partnership Law, the liability
of any partner for all or specified debts,
obligations or liabilities of the firm shall not be
increased by agreement pursuant to Section 26(d) of

2

the Partnership Law unless such agreement has been
subscribed in writing by partners the total of whose
profit percentage interests (determined pursuant to
Section 8 without taking into account entitlements
to profits of the firm expressed as a fixed
guaranteed amount) exceeds two-thirds of the total
of the profit percentage interests of all partners;
and any such agreement shall not be modified or
revoked pursuant to said Section 26(d) without a
similar two-thirds vote."

    3.   The first sentence of Section 7(d) of the
Partnership Agreement shall be amended to read in its
entirety as follows:

    "(d)   Except as otherwise provided by firm
action, or by action of the Management Committee to
the extent authority therefore has been delegated by
the firm, each partner shall from time to time
contribute to the capital of the firm,
proportionately according to his profit percentage
interest, such amounts as may be required to enable
the firm to carry on its activities and maintain
proper reserves for contingencies; provided,
however, that a partner may refuse to make any such
contribution to capital if such partner promptly
gives written notice to the firm of the voluntary
termination of his membership in the firm in

3

accordance with the provisions of Section 4(a)
hereof "

4.   The first sentence of Section 9(d) of the
Partnership Agreement shall be amended to read in its
entirety as follows:

"(d)   The termination of a partner's membership
in the firm, whether by termination of the firm or by his
death, incompetency, expulsion or withdrawal, shall not,
in itself, relieve such partner (or his estate) of any
obligation or liability of any nature for which such
partner is liable pursuant to Section 26 of the
Partnership Law in respect of any activity of the firm or
failure of the firm to act prior to such termination of
membership, whether or not the firm or any partner was
aware of the existence of such obligation or liability at
the time of such termination; provided, however, that
this provision shall have no affect on any debt,
liability or obligation of the firm or any other partner
for which the terminating partner would not have
liability pursuant to Section 26(b) of the Partnership
Law, after taking into account the exceptions of Section
26(c) and (d) thereof."

5.   This Agreement shall be effective from and
after the date on which the registration of the firm as a
registered limited liability partnership pursuant to

4

Section 121-1500 of the Partnership Law becomes effective.

This Agreement shall be binding upon the parties hereto, their estates and all persons claiming through them.

# DOCUMENT SEPARATOR

Section 11 is amended by adding at the end of Paragraph (a) the following:

> "At the request of a partner who otherwise would be subject to the "scale-down" provisions of Paragraph 2 of the 1974 Retirement Plan for Partners, the Management Committee may waive these "scale-down" provisions and enter into such compensation arrangements with such partner, including the allocation of points, as the Committee shall deem to be in the best interests of the Firm.  This provision shall supersede anything to the contrary in the 1974 Retirement Plan and shall be effective for years beginning January 1, 1997."

6

# DOCUMENT
# SEPARATOR

AMENDMENT TO PARTNERSHIP AGREEMENT OF
_____ ___ CHADBOURNE & PARKE LLP_____ . . .

THIS AMENDMENT dated as of June 1, 1997, by and
among the parties who are signatories hereto, to the
Partnership Agreement of Chadbourne & Parke LLP dated as of
April 1, 1987, as previously amended by amendments dated
January 16, 1989, as of August 7, 1995 and January 28, 1997
(the "Partnership Agreement").

## R E C I T A L S

a.   Certain partners of the firm, each of whom is
(1) a lawyer admitted to practice within one or more
jurisdictions within the United States and a registered
foreign lawyer within the meaning of Section 89 of the
Courts and Legal Services Act 1990 or (2) a solicitor
qualified in England and Wales, are entering into a
Partnership Agreement in the form attached as Exhibit A, as
a Delaware general partnership, for the purpose of
establishing a multinational law partnership (the "MNP") to
render advice on the laws of England and Wales.

b.   The parties wish to amend the Partnership
Agreement as provided herein to effect changes designed to
reflect the establishment of the MNP.

NOW, THEREFORE, the parties hereto agree as
follows:

    1. To the extent any partner of the MNP
receives from the MNP in respect of any fiscal year,
(a) an allocation of profits or (b) a guaranteed
payment or salary (including bonus) from the MNP ("MNP
Compensation"), such amounts shall reduce such
partner's total compensation (share of profits,
guaranteed payments, salary and bonus) from the firm
for the same fiscal year; and to the extent any partner
receives a greater amount of MNP Compensation in
respect of any fiscal year than such partner's share of
total compensation from the firm for such fiscal year,
such excess shall reduce the amount of such partner's
total compensation from the firm in the succeeding
fiscal year in the manner determined by the Management
Committee.  To the extent any partner of the MNP
receives distributions, including distributions on
termination of the MNP or withdrawal as a partner of
the MNP (other than in respect of an allocation of
profits), the amount of such distributions shall reduce
such partner's distributions from the firm for the same
fiscal year or a subsequent fiscal year in the manner
determined by the Management Committee.  The Management
Committee shall also take into account in setting a
partner's compensation from the firm (or provide for
the reimbursement of) any net out-of-pocket losses
sustained by a partner (including any capital

2

contributions required to be made to the MNP) as a
result of being a partner in the MNP or in the proper
conduct of its business.

    2.    This Agreement shall be effective from
and after the date set forth above and shall be binding
on the parties hereto, their estates and all persons
claiming through them.

Marc A. Alpert

John T. Baecher

Stuart D. Baker

Jonathan F. Bank

Roy C. Meilman

Thomas C. Merriam

J. Allen Miller

Garybwen P. Morrisroe

Philip D. Beaumont

Barbara L. Becker

Thomas E. Bezanson

Mary Rose Brubewitz

William G. Cavanagh

Peter R. Chaffetz

A. Robert Colby

Andrew C. Coronios

Richard J. Ney

F. John Nyhan

Henry J. Oechler, Jr.

Charles K. O'Neill

Daniel J. O'Neill

John B. O'Sullivan

William K. Perry

Nancy W. Pierce

3

# DOCUMENT SEPARATOR

### AMENDMENT TO PARTNERSHIP AGREEMENT OF
### CHADBOURNE & PARKE LLP

AMENDMENT, dated as of December 18, 1997, by and
among the parties who are signatories hereto, to the
Partnership Agreement of Chadbourne & Parke LLP dated as of
April 1, 1987, as previously amended by amendments adopted
on or as of January 16, 1989, January 28, 1992, August 7,
1995, January 28, 1997 and June 1, 1997 (the "Partnership
Agreement").

### R E C I T A L S

a.   The parties wish to amend the Partnership
Agreement as provided herein to establish an Operations
Partner for a limited period and to reflect the election of
Charles K. O'Neill as the initial Operations Partner.

NOW, THEREFORE, the parties hereto agree as
follows:

1.   The amendment to the Partnership Agreement
adopted on January 28, 1992 is designated as paragraph (d)
of Section 5 of the Partnership Agreement.

2.   Section 5 of the Partnership Agreement is
amended by the addition at the end thereof of the following
new paragraph:

"(e) A partner nominated by the Management
Committee and elected by the affirmative vote of

NY2: 162142.03

partners having a total of more than 50% profit
percentage interest in the firm shall serve as the
Operations Partner (the "OP") and as a member of the
Management Committee.  The OP shall, subject to the
direction of the Management Committee, carry out the
duties of the Management Committee with respect to the
day-to-day operations, management and administration of
the firm and perform such other duties as may be
requested by the Management Committee from time to
time.   The term of such partner as OP and a Management
Committee member shall be for three years unless the
partner earlier is removed, resigns, dies or is
incapacitated.  Without limiting rights of partners to
remove any member of the Management Committee by
affirmative vote of partners having a total of more
than 50% profit percentage interest in the Firm, the OP
may be removed as OP and a Management Committee member
at any time by a vote of the majority of the members of
the Management Committee (the OP shall be counted for
purposes of determining the number of members of the
Management Committee).  The OP may resign as OP and a
Management Committee member at any time.  Any such
removal or resignation must apply to the OP's
capacities as OP and a Management Committee member.
The initial OP shall be Mr. Charles K. O'Neill.  At the
conclusion of Mr. O'Neill's initial three-year term as

2

OP and a Management Committee member or upon the
earlier removal or resignation of Mr. O'Neill as OP and
a Management Committee member or his earlier death or
incapacity, the provisions of this paragraph (e) and
the parenthetical to the first sentence of Section
5(b), all as added to the Partnership Agreement by the
Amendment dated as of December 18, 1997, shall
terminate, be void and of no further force and effect
and the remaining provisions of the Partnership
Agreement with respect to Management Committee
membership and elections shall regulate such matters."

  3.    The first sentence of Section 5(b) of the
Partnership Agreement is amended by the addition of the
following parenthetical immediately after the words "who are
elected for two-year terms":

  "(except that the OP (as defined in Section 5(e)) shall
  be elected as the OP and a member of the Management
  Committee for a three-year term as provided in Section
  5(e))"

  4.    For purposes of the Management Committee
preliminary election procedure set forth in Section 5(d) of
the Partnership Agreement, the Management Committee
election that will occur following completion of the term
as a member of the Management Committee that Mr. O'Neill
was serving at the time of his initial election as OP shall

3

be considered an election in a year in which there are two
vacancies and the two members of the Management Committee
whose terms are then expiring shall then participate in a
preliminary election in accordance with Section 5(d) of the
Partnership Agreement if they both wish to stand for
reelection.

5.    This Amendment shall be effective from and
after the date set forth above and shall be binding on the
parties hereto, their estates and all persons claiming
through them.

6.    Except as specifically modified herein, the
Partnership Agreement remains in full force and effect.   No
reference to this Amendment need be made in any instrument
or document making reference to the Partnership Agreement;
any reference to the Partnership Agreement in any such
instrument or document is to be deemed a reference to the
Partnership Agreement as amended hereby.

IN WITNESS WHEREOF, the parties hereto have
executed this Amendment on and as of the date first above
written.

4

# DOCUMENT SEPARATOR

## AMENDMENT TO PARTNERSHIP AGREEMENT
## OF CHADBOURNE & PARKE LLP

AMENDMENT, dated as of April 12, 2001, by and among the parties who are signatories hereto, to the Partnership Agreement of Chadbourne & Parke LLP dated as of April 1, 1987, as previously amended by amendments adopted on or as of January 16, 1989, January 28, 1992, August 7, 1995, January 28, 1997, June 1, 1997 and December 18, 1997 (the "Partnership Agreement").

## R E C I T A L S

a   The parties wish to amend the Partnership Agreement as provided herein to establish a Managing Partner for a limited period and to reflect the election of Charles K. O'Neill as the Managing Partner.

NOW THEREFORE, the parties hereto agree as follows:

1. Section 5 of the Partnership Agreement is amended by deleting paragraph (e) thereof in its entirety and replacing it with the following new paragraph (e):

> "(e)   A partner nominated by the Management
> Committee and elected by the affirmative vote of partners having a
> total of more than 50% profit percentage interest in the firm shall
> serve as the Managing Partner (the "MP") and as a member of the
> Management Committee   The MP shall, subject to the direction of

the Management Committee, carry out the duties of the
Management Committee with respect to the day-to-day operations,
management and administration of the firm and perform such other
duties as may be requested by the Management Committee from
time to time. The term of such partner as MP and a Management
Committee member shall be for three years unless the partner
earlier is removed, resigns, dies or is incapacitated. Without
limiting rights of partners to remove any member of the
Management Committee by affirmative vote of partners having a
total of more than 50% profit percentage interest in the firm, the
MP may be removed as MP and a Management Committee
member at any time by a vote of the majority of the members of
the Management Committee (the MP shall be counted for purposes
of determining the number of members of the Management
Committee). The MP may resign as MP and a Management
Committee member at any time. Any such removal or resignation
must apply to the MP's capacities as MP and a Management
Committee member. The MP shall be Mr. Charles K. O'Neill.
At the conclusion of Mr. O'Neill's three-year term as MP and a
Management Committee member or upon the earlier removal or
resignation of Mr. O'Neill as MP and a Management Committee

2

> member or his earlier death or incapacity, the provisions of this
> paragraph (e) and the parenthetical to the first sentence of Section
> 5(b), all as added to the Partnership Agreement by the Amendment
> dated as of April 12, 2001, shall terminate, be void and of no
> further force and effect and the remaining provisions of the
> Partnership Agreement with respect to Management Committee
> membership and elections shall regulate such matters."

2.   The first sentence of Section 5(b) of the Partnership Agreement is amended by deleting in its entirety the parenthetical immediately after the words "who are elected for two-year terms" and replacing it with the following parenthetical:

> "(except that the MP (as defined in Section 5(e)) shall be elected as
> the MP and a member of the Management Committee for a three-
> year term as provided in Section 5(e))"

3.   This Amendment shall be effective from and after the date set forth above and shall be binding on the parties hereto, their estates and all persons claiming through them.

4.   Except as specifically modified herein, the Partnership Agreement remains in full force and effect. No reference to this Amendment need be made in any instrument or document making reference to the Partnership Agreement; any reference to the

3

Partnership Agreement in any such instrument or document is to be deemed a reference

to the Partnership Agreement as amended hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment

on and as of the date first above written.

Marc A. Alpert

John T. Baecher

Stuart D. Baker

Marian E. Baldwin

Thomas B. Beranson

Laura M. Brank

William G. Cavanagh

A. Robert Colby

Andrew C. Coronios

William S. D'Amico

Barry Dinaburg

Vincent Dunn

Peter F. Fitzgerald

Douglas M. Fried

Lynne E. Gedanken

Whitney I. Gerard

Andrew A. Giaccia

Robert J. Gillispie

Marjorie M. Glover

Cornelius J. Golden, Jr.

4

# DOCUMENT SEPARATOR

ı

### AMENDMENT TO PARTNERSHIP AGREEMENT OF
### CHADBOURNE & PARKE LLP

AMENDMENT, dated as of April 5, 2002, by and among the parties who are
signatories hereto, to the Partnership Agreement of Chadbourne & Parke LLP dated as of
April 1, 1987, as previously amended by amendments adopted on or as of January 16,
1989, January 28, 1992, August 7, 1995, January 28, 1997, June 1, 1997, December 18,
1997 and April 12, 2001 (the "Partnership Agreement").

## R E C I T A L S

The parties wish to amend the Partnership Agreement as provided herein to
provide for repayment of certain firm obligations with respect to the Retirement Plan A
for Partners of Chadbourne & Parke LLP and the Retirement Plan B for Partners of
Chadbourne & Parke LLP; each a cash balance defined benefit plan the Firm adopted in
2001.

NOW, THEREFORE, the parties hereto agree as follows:

1.     Section 9 of the Partnership Agreement is amended by the addition
at the end thereof of the following new paragraph:

"(g)     If, at any time, a partner terminates his membership in the
firm for any reason and if, at such time, the firm has or thereafter incurs any obligation to
make any contribution under the Retirement Plan A for Partners of Chadbourne & Parke

LLP and/or the Retirement Plan B for Partners of Chadbourne & Parke LLP as a result of any funding deficiency with respect to such partner's account(s) under either or both of such Plans, such partner shall be indebted to the firm for the amount of such deficiency, and the firm may deduct or withhold such amount from any return of capital, distribution, drawing, bonus or other payment otherwise due by the firm to such partner (or his heirs, representatives or assigns)

2.     This Amendment shall be effective from and after the date set forth above and shall be binding on the parties hereto, their estates and all persons claiming through them.

3.     Except as specifically modified herein, the Partnership Agreement remains in full force and effect   No reference to this Amendment need be made in any instrument or document making reference to the Partnership Agreement; any reference to the Partnership Agreement in any such instrument or document is to be deemed a reference to the Partnership Agreement as amended hereby

IN WITNESS WHEREOF, the parties hereto have executed this Amendment on and as of the date first above written.

_____                    _____
Marc A. Alpert                                      Noam Ayali

2

# DOCUMENT SEPARATOR

### AMENDMENT TO PARTNERSHIP AGREEMENT
### OF CHADBOURNE & PARKE LLP

AMENDMENT, dated as of April 20, 2004, by and among the parties who are
signatories hereto, to the Partnership Agreement of Chadbourne & Parke LLP dated as of
April 1, 1987, as previously amended by amendments adopted on or as of
January 16, 1989, January 28, 1992, August 7, 1995, January 28, 1997, June 1, 1997,
December 18, 1997 and April 12, 2001 (the "Partnership Agreement").

### RECITALS

a. The parties wish to amend the Partnership Agreement as provided herein
to establish a Managing Partner for a limited period and to reflect the election of
Charles K. O'Neill as the Managing Partner.

NOW THEREFORE, the parties hereto agree as follows:

1. Section 5 of the Partnership Agreement is amended by deleting paragraph
(e) thereof in its entirety and replacing it with the following new paragraph (e):

"(e)     A partner nominated by the Management

Committee and elected by the affirmative vote of partners having a

total of more than 50% profit percentage interest in the firm shall

serve as the Managing Partner (the "MP") and as a member of the

Management Committee. The MP shall, subject to the direction of

the Management Committee, carry out the duties of the
Management Committee with respect to the day-to-day operations,
management and administration of the firm and perform such other
duties as may be requested by the Management Committee from
time to time. The term of such partner as MP and a Management
Committee member shall be for three years unless the partner
earlier is removed, resigns, dies or is incapacitated. Without
limiting rights of partners to remove any member of the
Management Committee by affirmative vote of partners having a
total of more than 50% profit percentage interest in the firm, the
MP may be removed as MP and a Management Committee
member at any time by a vote of the majority of the members of
the Management Committee (the MP shall be counted for purposes
of determining the number of members of the Management
Committee). The MP may resign as MP and a Management
Committee member at any time. Any such removal or resignation
must apply to the MP's capacities as MP and a Management
Committee member. The MP shall be Mr. Charles K. O'Neill. At
the conclusion of Mr. O'Neill's three-year term as MP and a
Management Committee member or upon the earlier removal or
resignation of Mr. O'Neill as MP and a Management Committee

2

member or his earlier death or incapacity, the provisions of this

paragraph (e) and the parenthetical to the first sentence of

Section 5(b), all as added to the Partnership Agreement by the

Amendment dated as of April 20, 2004, shall terminate, be void

and of no further force and effect and the remaining provisions of

the Partnership Agreement with respect to Management

Committee membership and elections shall regulate such matters."

2.   The first sentence of Section 5(b) of the Partnership Agreement is

amended by deleting in its entirety the parenthetical immediately after the words

"who are elected for two-year terms" and replacing it with the following parenthetical:

"(except that the MP (as defined in Section 5(e)) shall be elected as
the MP and a member of the Management Committee for a three-
year term as provided in Section 5(e))"

3.   This Amendment shall be effective from and after the date set forth above

and shall be binding on the parties hereto, their estates and all persons claiming through

them.

4.   Except as specifically modified herein, the Partnership Agreement remains

in full force and effect.   No reference to this Amendment need be made in any instrument

or document making reference to the Partnership Agreement; any reference to the

3

I

Partnership Agreement in any such instrument or document is to be deemed a reference

to the Partnership Agreement as amended hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment

on and as of the date first above written.

4

# DOCUMENT SEPARATOR

Ⅰ

## AMENDMENT TO PARTNERSHIP AGREEMENT
## OF CHADBOURNE & PARKE LLP

AMENDMENT, dated as of May 31, 2007, by and among the parties who are signatories hereto, to the Partnership Agreement of Chadbourne & Parke LLP dated as of April 1, 1987, as previously amended by amendments adopted on or as of January 16, 1989, January 28, 1992, August 7, 1995, January 28, 1997, June 1, 1997, December 18, 1997, April 12, 2001, April 5, 2002 and April 20, 2004 (the "Partnership Agreement").

## RECITALS

a. The parties wish to amend the Partnership Agreement as provided herein to establish a Managing Partner for a limited period and to reflect the election of Charles K. O'Neill as the Managing Partner.

NOW THEREFORE, the parties hereto agree as follows:

1. Section 5 of the Partnership Agreement is amended by deleting paragraph (e) thereof in its entirety and replacing it with the following new paragraph (e):

> "(e)   A partner nominated by the Management Committee and elected by the affirmative vote of partners having a total of more than 50% profit percentage interest in the firm shall serve as the Managing Partner (the "MP") and as a member of the

Management Committee. The MP shall, subject to the direction of the Management Committee, carry out the duties of the Management Committee with respect to the day-to-day operations, management and administration of the firm and perform such other duties as may be requested by the Management Committee from time to time. The term of such partner as MP and a Management Committee member shall be for three years unless the partner earlier is removed, resigns, dies or is incapacitated. Without limiting rights of partners to remove any member of the Management Committee by affirmative vote of partners having a total of more than 50% profit percentage interest in the firm, the MP may be removed as MP and a Management Committee member at any time by a vote of the majority of the members of the Management Committee (the MP shall be counted for purposes of determining the number of members of the Management Committee). The MP may resign as MP and a Management Committee member at any time. Any such removal or resignation must apply to the MP's capacities as MP and a Management Committee member. The MP shall be Mr. Charles K. O'Neill. At the conclusion of Mr. O'Neill's three-year term as MP and a Management Committee member or upon the earlier removal or

2

ı

> resignation of Mr. O'Neill as MP and a Management Committee
> member or his earlier death or incapacity, the provisions of this
> paragraph (c) and the parenthetical to the first sentence of
> Section 5(b), all as added to the Partnership Agreement by the
> Amendment dated as of May 31, 2007, shall terminate, be void and
> of no further force and effect and the remaining provisions of the
> Partnership Agreement with respect to Management Committee
> membership and elections shall regulate such matters."

2. The first sentence of Section 5(b) of the Partnership Agreement is amended by deleting in its entirety the parenthetical immediately after the words "who are elected for two-year terms" and replacing it with the following parenthetical·

> "(except that the MP (as defined in Section 5(c)) shall be elected as
> the MP and a member of the Management Committee for a three-
> year term as provided in Section 5(c))"

3. This Amendment shall be effective from and after the date set forth above and shall be binding on the parties hereto, their estates and all persons claiming through them.

4. Except as specifically modified herein, the Partnership Agreement remains in full force and effect. No reference to this Amendment need be made in any instrument

3

or document making reference to the Partnership Agreement; any reference to the Partnership Agreement in any such instrument or document is to be deemed a reference to the Partnership Agreement as amended hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment on and as of the date first above written.

_____  _____ _____ \_\_\_\_\_

_____  _____ _____

_____  _____

4

# DOCUMENT
# SEPARATOR

## AMENDMENT TO PARTNERSHIP AGREEMENT
## OF CHADBOURNE & PARKE LLP

AMENDMENT, dated as of July 21, 2010, by and among the parties who are signatories hereto, to the Partnership Agreement of Chadbourne & Parke LLP dated as of April 1, 1987, as previously amended by amendments adopted on or as of January 16, 1989, January 28, 1992, August 7, 1995, January 28, 1997, June 1, 1997, December 18, 1997, April 12, 2001, April 5, 2002, April 20, 2004 and May 31, 2007 (the "Partnership Agreement").

### RECITALS

a.  The parties wish to amend the Partnership Agreement as provided herein to establish a Managing Partner for a limited period and to reflect the election of Charles K. O'Neill as the Managing Partner.

NOW THEREFORE, the parties hereto agree as follows:

1.  Section 5 of the Partnership Agreement is amended by deleting paragraph (e) thereof in its entirety and replacing it with the following new paragraph (e):

> "(e)   A   partner   nominated   by   the   Management
> Committee and elected by the affirmative vote of partners having a
> total of more than 50% profit percentage interest in the firm shall
> serve as the Managing Partner (the "MP") and as a member of the

Management Committee. The MP shall, subject to the direction of the Management Committee, carry out the duties of the Management Committee with respect to the day-to-day operations, management and administration of the firm and perform such other duties as may be requested by the Management Committee from time to time. The term of such partner as MP and a Management Committee member shall be for one year unless the partner earlier is removed, resigns, dies or is incapacitated. Without limiting rights of partners to remove any member of the Management Committee by affirmative vote of partners having a total of more than 50% profit percentage interest in the firm, the MP may be removed as MP and a Management Committee member at any time by a vote of the majority of the members of the Management Committee (the MP shall be counted for purposes of determining the number of members of the Management Committee). The MP may resign as MP and a Management Committee member at any time Any such removal or resignation must apply to the MP's capacities as MP and a Management Committee member. The MP shall be Mr. Charles K. O'Neill. At the conclusion of Mr. O'Neill's one-year term as MP and a Management Committee member or upon the earlier removal or

2

resignation of Mr. O'Neill as MP and a Management Committee member or his earlier death or incapacity, the provisions of this paragraph (c) and the parenthetical to the first sentence of Section 5(b), all as added to the Partnership Agreement by the Amendment dated as of July 21, 2010, shall terminate, be void and of no further force and effect and the remaining provisions of the Partnership Agreement with respect to Management Committee membership and elections shall regulate such matters."

2. The first sentence of Section 5(b) of the Partnership Agreement is amended by deleting in its entirety the parenthetical immediately after the words "who are elected for two-year terms" and replacing it with the following parenthetical:

"(except that the MP (as defined in Section 5(c)) shall be elected as the MP and a member of the Management Committee for a one-year term as provided in Section 5(c))"

3. This Amendment shall be effective from and after the date set forth above and shall be binding on the parties hereto, their estates and all persons claiming through them.

4. Except as specifically modified herein, the Partnership Agreement remains in full force and effect. No reference to this Amendment need be made in any instrument

3

or document making reference to the Partnership Agreement, any reference to the Partnership Agreement in any such instrument or document is to be deemed a reference to the Partnership Agreement as amended hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment on and as of the date first above written.

4

# DOCUMENT SEPARATOR

## AMENDMENT TO PARTNERSHIP AGREEMENT
## OF CHADBOURNE & PARKE LLP

AMENDMENT, dated as of November 18, 2010, by and among the parties who are

signatories hereto, to the Partnership Agreement of Chadbourne & Parke LLP dated as of

April 1, 1987, as previously amended by amendments adopted on or as of January 16, 1989,

January 28, 1992,   August 7, 1995,   January 28, 1997,   June 1, 1997,   December 18, 1997,

April 12, 2001,   April 5, 2002,   April 20, 2004,   May 31, 2007   and   July 21, 2010

(the "Partnership Agreement").

## RECITALS

a.   The parties wish to amend the Partnership Agreement as provided herein to

establish the position of Managing Partner.

NOW THEREFORE, the parties hereto agree as follows:

1.   Section 5 of the Partnership Agreement is amended by deleting paragraph (e)

thereof in its entirety and replacing it with the following new paragraph (e):

> "(e)   A partner nominated by the Management Committee
> and elected by the affirmative vote of partners having a total of more
> than 50% profit percentage interest in the firm shall serve as the
> Managing Partner   (the   "MP")   and   as   a   member   of   the
> Management Committee. The MP shall, subject to the direction of the
> Management Committee,   carry   out   the   duties   of   the
> Management Committee with respect to the day-to-day operations,
> management and administration of the firm and perform such other

duties as may be requested by the Management Committee from time to time. The term of such partner as MP and a Management Committee member shall be for three years unless the partner earlier is removed, resigns, dies or is incapacitated; provided, however, the term of the partner initially elected MP shall not expire until the Management Committee elections in 2014. Without limiting rights of partners to remove any member of the Management Committee by affirmative vote of partners having a total of more than 50% profit percentage interest in the firm, the MP may be removed as MP and a Management Committee member at any time by a vote of the majority of the members of the Management Committee (the MP shall be counted for purposes of determining the number of members of the Management Committee).      The MP may resign as MP and a Management Committee member at any time. Any such removal or resignation must apply to the MP's capacities as MP and a Management Committee member. In the case of resignation, removal, incapacity or death of the MP prior to the end of the term, the members of the Management Committee will nominate a partner to be Managing Partner and a member of the Management Committee for the unexpired portion of the predecessor MP's three-year term, such partner to be elected by partners having a total of more than 50% profit percentage interest in the Firm.

2

2. The first sentence of Section 5(b) of the Partnership Agreement is amended by deleting in its entirety the parenthetical immediately after the words "who are elected for two-year terms" and replacing it with the following parenthetical:

> "(except that the MP (as defined in Section 5(e)) shall be elected as the MP and a member of the Management Committee for a three-year term as provided in Section 5(e))"

3. This Amendment shall be effective from and after the date set forth above and shall be binding on the parties hereto, their estates and all persons claiming through them.

4. Except as specifically modified herein, the Partnership Agreement remains in full force and effect. No reference to this Amendment need be made in any instrument or document making reference to the Partnership Agreement; any reference to the Partnership Agreement in any such instrument or document is to be deemed a reference to the Partnership Agreement as amended hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment on and as of the date first above written.

_____     _____

_____     _____

_____     _____

3