UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERRIE CAMPBELL and JAROSLAWA Z. JOHNSON, individually, and on behalf of others similarly situated, <br><br>    Plaintiffs, <br><br> v. <br><br> CHADBOURNE & PARKE LLP, MARC ALPERT, ANDREW GIACCIA, ABBE LOWELL, LAWRENCE ROSENBERG, HOWARD SEIFE, and PAUL WEBER <br><br>    Defendants. | Civ. No. 1:16-cv-06832 (JPO) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
(1) MOTION FOR SUMMARY JUDGMENT, PURSUANT TO RULE 56(d);[1] AND
(2) MOTION TO DISMISS CLASS AND COLLECTIVE ACTION ALLEGATIONS**

---

[1] By submitting their Rule 56(d) request for discovery in the form of an opposition, at the direction of the Court, Plaintiffs do not waive the opportunity to oppose Defendants' motion for summary judgment on the merits after applicable discovery is completed.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITES……………………....……………………………………………… i

INTRODUCTION AND SUMMARY OF ARGUMENT………….…………………...…………… 1

    I.    PROCEDURAL HISTORY……………………………………………………………….3

    II.   THE COURT SHOULD DENY CHADBOURNE'S SUMMARY JUDGEMENT MOTION
        UNDER RULE 56(d) AND ALLOW PLAINTIFFS TO TAKE ALL RELEVANT
        DISCOVERY ON THE *CLACKAMAS* ISSUE........................................................5

        A.  Fed. R. Civ. P. 56 Expressly Contemplates Appropriate Discovery…………………5

        B.  Defendants' Summary Judgement Motion Is Premature……………...…………….. 7

        C.  The Court Should Allow Plaintiffs to Take the Requested Discovery……………… 9

            1.  Plaintiffs' Rule 56(d) Declaration Describes the Discovery Plaintiffs Seek in
                Order to Rebut Defendants' Assertions and to Establish their Own Version of
                the Material Facts…………………………………………………………………..12

            2.  The Discovery Plaintiffs Seek is Directly Addressed to the Clackamas
                Factors and Applicable Agency Test and is Reasonably Calculated to Create
                a Material Dispute of Facts and/or Establish the Propriety of Summary
                Judgement in Plaintiffs' Favor……………………………...……………… 18

            3.  Plaintiffs Have Endeavored to Obtain the Discovery Sought From
                Defendants, But Their Efforts Have Been Unsuccessful…………………... 19

        D.  The Court Should Reject Defendants' Attempt to Limit the Scope of Discovery...... 19

    III.  DEFENDANTS' MOTION TO ELIMINATE PLAINTIFFS' CLASS AND COLLECTIVE
        ACTION ALLEGATIONS SHOULD BE DENIED…………….......................................20

        A.  Defendants Labor under a Heavy Burden……………………………..………………… 20

        B.  This Precedent Dooms Defendants' Preemptive Motion to Scuttle the Class……… 23

            1.  The Complaint Sufficiently Pleads Rule 23(a)(1) Numerosity: It is Not
                Obvious on the Face of the Complaint that the Numerosity Requirement
                Cannot Be Satisfied……………………………………………………………24

            2.  Defendants' Argument that Certification Will Fail Under *Dukes'*
                 Commonality Standard Does Not Defeat the Class at the Pleadings Stage.. 27

            3.  There Are No Obvious Conflicts on the Face of the Complaint Precluding a
                 Finding of Rule 23(a)(4) Adequacy……………………………………… 30

            4.  Plaintiffs Successfully Plead an EPA Collective Action............................. 32

    CONCLUSION……………………………………………………………………………34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abram v. United Parcel Serv. of Am., Inc.*, 200 F.R.D. 424 (E.D. Wis. 2001) ........................... 29

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)................................................................. 5

*Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014)........................................................... 32

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 31

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................... 6

*Barghout v. Bayer Healthcare Pharms.*, No. 11-cv-1576, 2012 U.S. Dist. LEXIS 46197 (D.N.J. Mar. 30, 2012)................................................................................................................ 30

*Barner v. Harvey,* No. 95 C 3316, 1997 U.S. Dist. LEXIS 3570 (N.D. Ill., Mar. 25, 1997) ....... 25

*Barrett v. Forest Labs., Inc*., No. 12 cv 5224, 2015 U.S. Dist. LEXIS 117203 (S.D.N.Y. Sept. 2, 2015)................................................................................................................... 33, 34

*Beauperthuy v. 24 Hour Fitness USA, Inc.,* No. 06-0715 SC, 2006 U.S. Dist. LEXIS 88988 (N.D. Cal. Nov. 28, 2006) ................................................................................................. 23

*Belfiore v. P&G*, 94  F. Supp.3d 440 (E.D.N.Y. 2015) ......................................................... 21

*Blagman v. Apple, Inc.*, 12 Civ. 5453, 2013 U.S. Dist. LEXIS 71280 (S.D.N.Y. May 20, 2013) 21

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc*., No. 16-CV-541, 2016 U.S. Dist. LEXIS 172767 (E.D.N.Y. Dec. 14, 2016)........................................................ 21, 23

*Brown v. Nucor Corp*., 785 F.3d 895 (4th Cir. 2015) .......................................................... 28

*Calibuso v. Bank of Am. Corp.,* 893 F. Supp. 2d 374 (E.D.N.Y. 2012)................................... 22, 29

*Cannon v. Ashburn Corp*., No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040 (D.N.J. Dec. 7, 2016) .......................................................................................................... 22

*Carbone v. Zen 333 Inc*., No. 2:16-cv-108, 2016 U.S. Dist. LEXIS 176355 (D.S.C. Dec. 21, 2016).................................................................................................................... 22

*Carey v. Foley & Lardner LLP*, 577 F. App'x. 573 (6th Cir. 2014) .......................................... 8

*Caruso v. Peat, Marwick, Mitchell & Co.*, 779 F. Supp. 332 (S.D.N.Y. 1991) .......................... 11

*Celotext Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 5

*Cf. J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208 (S.D. Ohio 2003) .................... 27

*Chambery v. Tuxedo Junction, Inc*., 10 F. Supp. 3d 415 (W.D.N.Y. 2014)................................ 25

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ............................................................... 31

*Chen v. Hiko Energy, LLC*, No. 14 CV 1771, 2014 U.S. Dist. LEXIS 181846 (S.D.N.Y. Dec. 29, 2014)................................................................................................................... 22

*Chenensky v. New York Life Ins. Co*., No. 07 Civ. 11504 (WHP), 2011 U.S. Dist. LEXIS 48199 (S.D.N.Y. Apr. 27, 2011) ............................................................................................ 22

*Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012)........................ passim

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003) .......................... passim

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)........................................... passim

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc*., 271 F.3d 374 (2d Cir. 2001) ......... 6

*Cronas v. Willis Group Holdings, Ltd.,* No. 06 Civ. 15295, 2011 U.S. Dist. LEXIS 122736 (S.D.N.Y. Oct. 18, 2011).................................................................................................... 28

*Delphi-Delco Elecs. Sys. v. M/V Nedlloyd Europa*, 324 F. Supp. 2d 403 (S.D.N.Y. 2004)........... 6

*Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11 Civ. 3765, 2012 U.S. Dist. LEXIS 96249  (S.D.N.Y. July 11, 2012)....................................................................................... passim

*E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002) ............................ 10, 11

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012)...................................... 28, 29

*Emilio v. Sprint Spectrum, L.P.*, 68 F. Supp.3d 509 (S.D.N.Y. 2014)................................... 20, 21

*Erhart v. Synthes (USA)*, No. 07-01237 (SDW), 2007 U.S. Dist. LEXIS 94760 (D.N.J. Dec. 21, 2007)......................................................................................................................................... 22

*Estate of Gardner v. Cont'l Cas. Co.*, 316 F.R.D. 57 (D. Conn. 2016) .................................. 24, 25

*Fields v. W. Marine Prods.*, No. C 13-04916 WHA, 2014 U.S. Dist. LEXIS 16638 (N.D. Cal. Feb. 7, 2014)............................................................................................................................ 22

*Foresta v. Centerlight Capital Mgmt., LLC*, 379 F. App'x 44 (2d Cir. 2010) ..................... passim

*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) ........................................................ 25

*Girolamo v. Cmty. Physical Therapy & Assocs., Ltd*., No. 15-civ-2361, 2016 U.S. Dist. LEXIS 66048 (N.D. Ill. May 19, 2016)............................................................................................... 22

*Gitman v. Pearson Educ., Inc.*, No. 14 Civ. 8626, 2015 U.S. Dist. LEXIS 116096 (S.D.N.Y. Aug. 23, 2015)......................................................................................................................... 21

*Goldemberg v. Johnson & Johnson Consumer Cos*., No. 13 Civ. 3073, 2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016)............................................................................................. 28

*Grant v. Sullivan*, 131 F.R.D. 436 (M.D. Pa. 1990) .................................................................. 25

*Grogan v. Holder,* No. 08-1747 (BJR), 2012 U.S. Dist. LEXIS 179057 (D.D.C. Sept. 27, 2012) .................................................................................................................................................. 30

Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361 (2d Cir. 2006).................................................. 8

*Gunnells v. Health Plan Servs.*, 348 F.3d 417 (4th Cir. 2003) ................................................. 31

*Hamid v. Blatt*, 2001 U.S. Dist. LEXIS 20012 (N.D. Ill. Nov. 30, 2001) .................................. 24

*Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2014 U.S. Dist. LEXIS 85916 (W.D.N.Y. June 24, 2014)......................................................................................................................................... 22

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)..................................... 7

*Holmes v. Lorch*, 329 F. Supp. 2d 516 (S.D.N.Y. 2004) ......................................................... 6, 7

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29 (2d Cir. 2009). .............................. 31

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) . .................................................. 33

*Jacob v. Duane Reade, Inc.*, No. 11-CV-0160, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 26, 2012)......................................................................................................................................... 33

*Jiang v. Allstate Ins. Co.*, 199 F.R.D. 267 (N.D. Ill. 2001) ........................................................ 24

*Johnson v. Flakeboard Am. Ltd.*, No. 4:11-2607-TLW-KDW, 2012 U.S. Dist. LEXIS 83702 (D.S.C. Mar. 26, 2012)............................................................................................................ 24

*Kassman v. KPMG, LLP*, No. 11 Civ. 3743, 2014 U.S. Dist. LEXIS 93022 (S.D.N.Y. July 8, 2014) .......................................................................................................................... passim

ii

*Katz v. Adecco USA, Inc.*, No. 11 Civ. 2540, 2011 U.S. Dist. LEXIS 64213 (S.D.N.Y. June 16, 2011)..................................................................................................................................... 9

*Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72 (3d Cir. 2011) ......................... 23

*Lanning v. SE Pa. Transp. Auth.*, 176 F.R.D. 132 (E.D. Pa. 1997) ............................................. 25

*Madeira v. United Talmudical Acad.*, 351 F. Supp. 2d 162 (S.D.N.Y. 2004)................................ 6

*Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301 (E.D.N.Y. 2015)....... 8, 11

*Mann v. Estate of Meyers*, 61 F. Supp. 3d 508 (D.N.J. 2014) ..................................................... 11

*Manning v. Boston Med. Ctr. Corp.* 725 F.3d 34, (1st Cir. 1985)................................................ 22

*Mayfield v. Asta Funding, Inc*., 95 F. Supp. 3d 685 (S.D.N.Y. 2015).......................................... 23

*McCluskey v. Trs. of Red DOT Corp. ESOP & Trust*, 268 F.R.D. 670 (W.D. Wash. 2010)........ 25

*McGinnis v. N.Y. Univ. Med. Ctr.*, No. 09 Civ. 6182, 2012 U.S. Dist. LEXIS 9537 (S.D.N.Y. Jan. 25, 2012)................................................................................................................................. 7

*Merrill Iron & Steel, Inc. v. Yonkers Contr. Co.*, No. 05 Civ. 5042, 2006 U.S. Dist. LEXIS 66625 (S.D.N.Y. Sep. 19, 2006) ......................................................................................................... 6

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003)............................................. 7

*Moore v. Napolitano*, 269 F.R.D. 21 (D.D.C. 2010) ............................................................. 25, 33

*Morales v. M. Alfonso Painting Corp.*, No. 11 Civ. 1263, 2013 U.S. Dist. LEXIS 134219 (S.D.N.Y. Sept. 19, 2013) ........................................................................................................ 8

*Motta v. Global Contract Servs.*, No. 15 Civ. 5555, 2016 U.S. Dist. LEXIS 59771 (S.D.N.Y. May. 4, 2016)(same) ......................................................................................................... 21, 23

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 14-CV-7539, 2016 U.S. Dist. LEXIS 43725 (E.D.N.Y. Mar. 31, 2016) ....................................................................................................... 22

*Myers v. Hertz*, 627 F.3d 537 (2d Cir. 2010)............................................................................... 32

*Novella v. Westchester Cty.*, 443 F. Supp. 2d 540 (S.D.N.Y. 2006) ..................................... 25, 26

*Odom v. Hazen Transp. Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011) ................................................. 25

*Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228 (D.N.J. 2011) .......................................... 22

*P.V. v. The Sch. Dist. of Phila.,* CIVIL ACTION NO. 2:11-cv-04027, 2011 U.S. Dist. LEXIS 125370 (E.D. Pa. Oct. 31, 2011) ........................................................................................... 22

*Panepucci v. Honigman Miller Schwartz & Cohn, LLP*, 408 F. Supp. 2d 374 (E.D. Mich. 2005) ........................................................................................................................................ passim

*Pippins v. KPMG, LLP*, No. 11 Civ. 377, 2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ...... 33

*Pole v. Estenson Logistics, LL*C, No. Civ. 15-7196, 2016 U.S. Dist. LEXIS 105789 (C.D. Cal. Aug. 10, 2016)..................................................................................................................... 25, 26

*Puckett v. McPhillips Shinbaum*, No. 2:06-CV-1148, 2010 U.S. Dist. LEXIS 41729 (M.D. Ala. Mar. 30, 2010) ...................................................................................................................... 11

*Reynolds v. Lifewatch, Inc*., 136 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................ 22

*Robidoux v. Celani*, 987 F.2d 93 (2d Cir. 1993).................................................................... 25, 27

*Rosenblatt v. Bivona & Cohen, P.C.*, 969 F. Supp. 207 (S.D.N.Y. 1997).................................... 11

*Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590 (2d Cir. 1986) .................................................. 29

*Ruggles v. Wellpoint, Inc*., 253 F.R.D. 61 (N.D.N.Y. 2008) ................................................. 24, 32

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013)..........................................29, 30

*Seijas v. Republic of Arg.*, 606 F.3d 53 (2d Cir. 2010).............................................................31

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ........................26

*Simpson v. Boeing Co.*, 27 F. Supp. 3d 989 (E.D. Mo. 2014) ..............................................28, 32

*Simpson v. Ernst & Young*, 100 F.3d 436 (6th Cir. 1996) .........................................................11

*Smith v. Merck & Co.*, No. 13-cv-2970, 2014 U.S. Dist. LEXIS 143013 (D.N.J. Oct. 8, 2014) 30, 31

*Smith v. Wash. Post Co.*, No. 12-1746 (RCL), 2013 U.S. Dist. LEXIS 120012 (D.D.C. Aug. 23, 2013)........................................................................................................................22

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013).............................................................................................26

*Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859 (9th Cir. 1996).......................................9

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)............................................32

*Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) ....................................6

*Twegbe v. Pharmaca Integrative Pharm., Inc.*, No. CV 12-5080 CRB, 2013 U.S. Dist. LEXIS 100067 (N.D. Cal. July 17, 2013) ...............................................................................26

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, No. 09 Civ. 0476, 2016 U.S. Dist. LEXIS 7240 (S.D.N.Y. Jan. 21, 2016) ..............................................................................................7

*Wal-Mart v. Dukes*, 564 U.S. 338 (2011) ...................................................................... passim

*Willman v. Zelman & Assocs., LLC*, No. 11 Civ. 1216, 2012 U.S. Dist. LEXIS 35246 (S.D.N.Y. Mar. 15, 2012)...............................................................................................................9

*Windley v. Starion Energy, Inc.*, No. 14cv9053, 2016 U.S. Dist. LEXIS 5504 (S.D.N.Y. Jan. 8, 2016)......................................................................................................................22

*Winfield v. Citbank, N.A.*, 842 F. Supp.2d 560 (S.D.N.Y. 2012) ...............................................22

*Wright v. Family Dollar, Inc.*, No. C 4410, 2010 U.S. Dist. LEXIS 126643 (N.D. Ill. Nov. 30, 2010)......................................................................................................................24

*Young v. Tri County Sec. Agency, Inc.*, Civ. No. 13-5971, 2014 U.S. Dist. LEXIS 62931 (E.D. Pa. May 7, 2014) .......................................................................................................25

## Statutes

29 U.S.C. § 206(d) .................................................................................................. passim

29 U.S.C. §216(b) ...................................................................................................... 3, 34

42 U.S.C. §§ 2000e ................................................................................................. passim

D.C. Code §§ 2-1401 ............................................................................................. passim

## Other Authorities

*Macbeth,* Act I, Scene 7, Lines 1-2 at 38 (The Annotated Shakespeare) (Yale University Press 2005). ...................................................................................................................34

Massie, *Too Soon for Employers to Celebrate?: How Plaintiffs are Prevailing Post-Dukes*, 29 ABA J. of Labor & Employ. Law 177, 183-188 (2014) .........................................................29

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................ passim

Fed. R. Civ. Pro. 23 ..................................................................................................... passim

S.D.N.Y. Loc. Civ. R. 56.1 ........................................................................... 2, 7, 12, 19

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants have jumped the gun.  They have fired off not one but two precipitous motions – one motion seeking summary judgment and a second motion seeking dismissal of Plaintiffs' class and collective action allegations – before discovery has even *begun*.  These motions are fatally premature.  Plaintiffs' Amended Complaint is more than adequate on its face to support Plaintiffs' claims that they are employees entitled to the protections of federal and local anti-discrimination laws.  Likewise, Plaintiffs sufficiently plead a basis for class and collective action treatment of their claims.  The Court should deny Defendants' motions, so the parties may revisit these issues after the completion of applicable discovery.

With respect to their summary judgment motion, Defendants move for judgment as a matter of law on the question of whether Plaintiffs are "employees" under applicable law, including Title VII and the Equal Pay Act ("EPA").  Defendants attempt to characterize partners at Chadbourne & Parke LLP ("Chadbourne" or "the Firm") as engaged in robust self-governance.  The reality, as discovery will show, is that Chadbourne is run by a small, predominantly male, self-perpetuating Management Committee.  The Management Committee operates in secrecy and exercises control over partners' work conditions and compensation.  Chadbourne's own Managing Partner, Defendant Andrew Giaccia, himself has repeatedly observed that Chadbourne's partners act as "employees" and not as "owners" of the Firm.  (Campbell Decl. ¶ 4.)

The determination of whether an individual is an "employee" under applicable anti-discrimination laws is a "fact-intensive" inquiry that "depends on all of the incidents of the relationship with no one factor being decisive." *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 451 (2003).  The Court cannot properly conduct this analysis where no discovery has been conducted and where Defendants have produced only the scantest of evidence

to support their assertions, including one Defendant's self-serving affidavit, the Firm's Partnership Agreement and Plaintiff's signature pages, and another two-page memorandum.

Since filing this motion, Defendants appear to have conceded that Plaintiffs should be allowed some discovery pursuant to Fed. R. Civ. P. 56(d), and therefore the only issue before the Court at this juncture is the scope of that discovery.[2]  Plaintiffs seek all discovery relevant to the fact-intensive legal issue presented by Defendants' motion, namely the nature of the relationship between Chadbourne and its approximately 100 partners.  Because Plaintiffs have been excluded from Firm management, they lack access to information regarding the full scope of the Management Committee's control over partners.  Defendants, on the other hand, seek to cabin discovery to the specific facts identified in their Rule 56.1 statement.  But Defendants do not get to define the parameters of discovery in this manner.[3]  The Court should grant Plaintiffs' request to obtain targeted Rule 56(d) discovery before opposing the motion.[4]

Defendants' "motion to dismiss" the class and collective action allegations is just as hasty as their bid for summary judgment.  Courts in this Circuit and around the country make clear that a court should only rarely strike or dismiss class allegations on the pleadings, prior to discovery.  Instead, arguments against class certification are properly presented in opposition to a motion to certify a class.  The Court should follow suit here.

---

[2] *See, e.g.,* Dkt. No. 40 (letter from Kathleen McKenna, Esq. stating: "Defendants do not categorically object to Rule 56(d) discovery, and remain willing to consider discovery tailored to the facts that plaintiffs are unable to dispute in the absence of such discovery."); Tr. of Dec. 19, 2016 Court Conference at 7:5-6 (Kathleen McKenna, Esq. stating: "[P]art of what separates us is the scope of discovery").

[3] This is particularly so because, following relevant discovery, Plaintiffs will consider cross-moving for summary judgment on the issue of whether Plaintiffs are covered as "employees."  The Court should be equipped with all information needed to adjudicate the parties' respective motions.

[4] Alternatively, the Court should permit full discovery to proceed and set a schedule for the briefing of dispositive motions following the close of discovery.  Such a course is especially appropriate given that discovery on *Clackamas* and other class and merits issues will necessarily overlap.  The extent of control exercised by Chadbourne's male-dominated Management Committee, including its ability to set partner compensation, is a central query in this case.

Moreover, the class allegations are not defective on their face.

First, the Complaint sufficiently pleads numerosity. It alleges the existence of over two dozen class members, and further alleges that the class members' geographic dispersion and fear of retaliation make joinder impracticable. In addition, judicial economy and expediency would be served by a single adjudication of the common issues identified by the Complaint – particularly where Plaintiffs seek injunctive relief on behalf of future partners who cannot yet be identified.

Second, Defendants' contention that Plaintiffs cannot meet Rule 23(a)(2) commonality under *Wal-Mart Stores Inc. v. Dukes* is also fatally premature. Plaintiffs set forth a core allegation affecting all class members: that an all-male Management Committee systemically favors men over women when making compensation decisions. Similar allegations of centralized decision-making routinely survive the pleadings stage, especially where, as here, 1) the proposed class is not unduly large, and 2) discriminatory decisions were allegedly influenced by company-wide policies or executed under the common direction of higher-echelon managers.

Third, Defendants' speculation about conflicts within the class does not defeat the class complaint at this stage. All members of the class have a common interest in addressing Chadbourne's discriminatory practices. The Court should not consider Rule 23(a)(4) adequacy issues now, but should do so when Plaintiffs move for class certification.

Fourth, the standard for certification of an EPA opt-in collective action is lower than Rule 23. Under 29 U.S.C. §216(b), courts typically grant conditional certification and authorize notice to the employees. Defendants cannot establish that § 216(b) certification would be plainly futile.

## I.   <u>PROCEDURAL HISTORY</u>

This class and collection action litigation is barely out of the starting gate. Plaintiffs filed their initial complaint in this action on August 31, 2016, and their First Amended Class Action

Complaint – the operative complaint in this case – on October 27, 2016.  (Dkt. No. 12.) Defendants answered and filed a counterclaim against Ms. Campbell on November 3, 2016.  (Dkt. No. 27.)  Less than two weeks later, on November 14, 2016, Defendants filed the Motions at issue. (Dkt. No. 29.)

At the time of the Motions, the parties had yet to conduct a Rule 26(f) conference or otherwise discuss – much less participate in – discovery, and the Court had not yet convened a case management conference or set a discovery schedule.  (Sanford Decl. ¶¶ 3, 4.)  Hence, Plaintiffs promptly informed defense counsel that they needed discovery pursuant to Rule 56(d) to obtain facts essential to oppose Defendants' summary judgment motion.  (Sanford Decl. ¶ 15.)  At the parties' joint request, the Court held Defendants' Motions in abeyance pending the parties' conference on these issues.  (Dkt. No. 36.)

On December 5, 2016, Plaintiffs provided Defendants with a draft Rule 56(d) declaration, which was substantially similar to the declaration filed with this opposition.  (Sanford Decl. ¶ 15.) Counsel met and conferred on December 6, 2016 and exchanged three follow-up letters, but the parties were unable to reach complete agreement on Plaintiffs' discovery requests.  (Sanford Decl. ¶ 15.)  Defendants sought to limit the scope and duration of discovery and declined to engage in a substantive discussion regarding the specific discovery set forth in Plaintiffs' draft Rule 56(d) declaration.  (Sanford Decl. ¶ 15.)

On December 19, 2016, the Court set a briefing schedule on Defendants' motions and directed that Plaintiffs file their Rule 56(d) discovery request as an opposition to the summary judgment motion rather than as an affirmative motion.  Recognizing that Plaintiffs would be entitled to a reply if they filed a Rule 56 (d) motion, the Court granted Plaintiffs a sur-reply.

## II.   THE COURT SHOULD DENY CHADBOURNE'S SUMMARY JUDGMENT MOTION UNDER RULE 56(d) AND ALLOW PLAINTIFFS TO TAKE ALL RELEVANT DISCOVERY ON THE *CLACKAMAS* ISSUE

Defendants make their summary judgment motion before discovery has even commenced. They rely solely on a self-serving affidavit from Defendant Giaccia and two attached exhibits, Chadbourne's Partnership Agreement (Giaccia Exs. A-C) and a memorandum from the Firm's Management Committee requiring partners to submit year-end performance evaluations. (Giaccia Ex. D.)[5] The timing of Defendants' Motion and the palpable lack of evidentiary support for it – quickly followed by Defendants' apparent acknowledgement that some Rule 56(d) discovery is necessary – strongly suggest that Defendants did not file the motion in hopes of success, but rather to garner a strategic advantage in the parties' anticipated disputes over discovery. But Defendants should not be able to obtain such an edge by filing a premature, abortive motion. Plaintiffs are entitled to relevant discovery regardless of how Defendants frames the issue in its motion papers.

### A.   Fed. R. Civ. P. 56 Expressly Contemplates Appropriate Discovery

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of showing the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To meet its burden, the movant must "[identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c). The burden then shifts to the non-movant to show a genuine issue of fact. *Anderson v.*

---

[5] An additional document submitted by Defendants, a letter purportedly sent by certain female partners at Chadbourne to Plaintiffs' counsel (Giaccia Ex. E), has no conceivable relevance to Defendants' summary judgment motion on the issue of whether Plaintiffs are "employees" under applicable laws.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255.[6]

The non-moving party's obligation is "qualified by Rule 56(f)'s [now 56(d)] provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson*, 477 U.S. at 250 n.5. Because Rule 56(d) "is an important safeguard against improvident or premature motions for summary judgment, courts generally avoid overly technical rulings under this subdivision and apply it with a spirit of liberality." *Delphi-Delco Elecs. Sys. v. M/V Nedlloyd Europa*, 324 F. Supp. 2d 403, 417-18 (S.D.N.Y. 2004); *accord: Holmes v. Lorch*, 329 F. Supp. 2d 516, 529 (S.D.N.Y. 2004). Rule 56(d) reflects the concern that "[t]he nonmoving party should not be railroaded into [its] offer of proof in opposition to summary judgment." *Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989). Accordingly, when a non-movant "reasonably advises the court that it needs discovery to be able to present facts to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001).

In sum, Rule 56(d) reflects the basic precept that summary judgment "should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citation omitted; emphasis in original); *see*

---

[6] Summary judgment is not warranted based solely on a "self-serving affidavit," particularly before discovery is closed. *Merrill Iron & Steel, Inc. v. Yonkers Contr. Co.*, No. 05 Civ. 5042, 2006 U.S. Dist. LEXIS 66625, at *22 (S.D.N.Y. Sep. 19, 2006) ("It would be inappropriate to grant summary judgment based solely on [defendant's] self-serving affidavit when [defendant] moved for summary judgment well before discovery in this case was scheduled to close."); *Madeira v. United Talmudical Acad.*, 351 F. Supp. 2d 162, 167 (S.D.N.Y. 2004) (The court "could not grant summary judgment" based solely on "the self-serving affidavit of an officer of [defendant]" who "has never been deposed.").

*also Holmes*, 329 F. Supp. 2d at 529 (deferring motion where discovery had not begun); *U.S. Polo Ass'n v. PRL USA Holdings, Inc*., No. 09 Civ. 0476, 2016 U.S. Dist. LEXIS 7240, at \*7 (S.D.N.Y. Jan. 21, 2016) (summary judgment "premature" where parties have not had "a fully adequate opportunity for discovery."); *McGinnis v. N.Y. Univ. Med. Ctr*., No. 09 Civ. 6182, 2012 U.S. Dist. LEXIS 9537, at \*14 (S.D.N.Y. Jan. 25, 2012) (dismissing summary judgment motion without prejudice "[b]ecause of the likelihood of further discovery").  Indeed, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).[7]

Thus, in *Foresta v. Centerlight Capital Mgmt., LLC*, 379 Fed. Appx. 44 (2d Cir. 2010), the Second Circuit held that the district court abused its discretion by granting summary judgment, after "only limited discovery," deeming three individuals "independent contractors" rather than "employees."  The court held that *full* discovery was necessary on the application of the relevant factors as to whether the workers in question qualified as "employees" under the agency test set forth in *Clackamas* and *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989).  *Id*. at 46-47.  So too, here, full discovery is needed on the applicable factors.

###### B.  Defendants' Summary Judgment Motion Is Premature

Defendants contend that, as a matter of law, Plaintiffs are not "employees" protected by Title VII and the EPA.[8]  But, as courts have repeatedly counseled, the determination of whether an individual is an "employee" involves a "highly fact-intensive inquiry."  *Carey v. Foley &*

---

[7] Likewise, the requirement that parties submit Rule 56.1 statements citing to admissible evidence for each assertion, *see* S.D.N.Y. Local Rule 56.1(d), necessarily contemplates the completion of adequate discovery.

[8] Defendants further assert that Plaintiffs are not employees under the DCHRA.  The discovery needed with respect to "employee" status under Title VII and the EPA is likewise needed with respect to the DCHRA.

*Lardner LLP*, 577 Fed. Appx. 573, 578 n.3 (6th Cir. 2014).  *See also, e.g.*, *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 311 (E.D.N.Y. 2015); *Morales v. M. Alfonso Painting Corp*., No. 11 Civ. 1263, 2013 U.S. Dist. LEXIS 134219, at *9, 12 (S.D.N.Y. Sept. 19, 2013) ("In this Circuit, the question of whether an employer-employee relationship exists [under the FLSA/EPA] is a fact-intensive inquiry," and thus is "rarely amenable to summary judgment").

Whether an individual is a covered "employee" turns on the common law of agency. *Clackamas*, 538 U.S. at 444-45; *Foresta*, 379 Fed. Appx. at 46.  To determine whether Plaintiffs are "employees," the Court must examine the totality of the circumstances related to the parties' relationship, particularly the Firm's *control* over Plaintiffs' employment.  *See Clackamas*, 538 U.S. at 448.  In *Clackamas*, the Supreme Court articulated six, non-exhaustive factors that drive this inquiry: (i) whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; (ii) the extent to which the organization supervises an individual's work; (iii) whether the individual reports to someone higher in the organization; (iv) the extent to which the individual is able to influence the organization; (v) whether the parties intended that the individual be an employee; and (vi) whether the individual shares in the profits, losses, and liabilities of the organization.  *Id.* at 449-50.  No single factor is decisive, *id.* at 451, and the six factors are not exclusive, *id.* at 450 n.10 ("The answer to whether a shareholder-director is an employee or an employer cannot be decided in every case by a shorthand formula or magic phrase.") (citation omitted).  Further, when determining whether a plaintiff is an "employee," the Second Circuit has generally relied on the thirteen factors enumerated in *Reid*, with an emphasis on the defendant's control over the worker's performance of the job.  *See Foresta*, 379 Fed. Appx. at 46; *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371-72 (2d Cir. 2006).[9]

---

[9] Plaintiffs note that there are various sets of factors applied under Title VII and the FLSA/EPA to determine whether an employment relationship exists.  The unifying element is the overall focus on "control."  The

In the absence of evidence concerning the relevant factors, it is error to enter summary judgment while disregarding a party's Rule 56(d) request for further discovery. *Foresta*, 379 Fed. Appx. at 46-47; *see also Katz v. Adecco USA, Inc.*, No. 11 Civ. 2540, 2011 U.S. Dist. LEXIS 64213, at *7 (S.D.N.Y. June 16, 2011) (deferring summary judgment motion as premature until plaintiff had the opportunity to take discovery on the issue of whether defendant was an "employer" with the requisite number of "employees" under the applicable *Reid* factors); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 868 (9th Cir. 1996) (holding that it was error to dismiss employment discrimination case on basis that plaintiff was a partner when no discovery had been conducted; noting that "[t]he complaint and the partnership agreement leave many unanswered questions about how the partnership actually conducts itself"); *see further Willman v. Zelman & Assocs., LLC*, No. 11 Civ. 1216, 2012 U.S. Dist. LEXIS 35246, at *10-11 (S.D.N.Y. Mar. 15, 2012) (based on *Foresta*, denying motion to dismiss on the issue of whether defendant was an "employer" with the requisite number of "employees"; this issue called for discovery).

In this case, no discovery has been conducted; the discovery period has not even begun. (Sanford Decl. ¶¶ 3, 4.) Plaintiffs' discovery requests, as described below and in the accompanying Rule 56(d) declaration of David Sanford, are targeted to the *Clackamas* factors and the overall agency/control test employed in this Circuit. (Sanford Decl. ¶ 13.) Consequently, the Court should deny Defendants' motion for summary judgment and grant Plaintiffs comprehensive discovery on the issues raised in Defendants' motion.

### C.     The Court Should Allow Plaintiffs to Take the Requested Discovery

As explained in the attached Rule 56(d) declaration of David Sanford, Plaintiffs require

---

pertinent analysis should be applied in light of Title VII's and the EPA's (as well as the DCHRA's) broad remedial purpose to eradicate gender discrimination. *See, e.g.*, Dkt. No. 42 (Pltf's Mot. to Dismiss Counterclaims) at 5-6, 9 (citing cases). Ultimately, the overarching question is whether the Firm exercised sufficient control over Plaintiffs' employment to be in a position to discriminate and retaliate against them.

discovery to present evidence essential to the question of whether Plaintiffs are "employees" under Title VII, the EPA, and the DCHRA. Plaintiffs contend that the Firm's five-member Management Committee comprises a centralized power center that directs and controls all material aspects of Plaintiffs' and the other partners' employment and compensation. (*See, e.g.*, Campbell Decl. ¶¶ 11-12; Johnson Decl. ¶¶ 12-13.)  The ultimate control vested in and exercised by the Committee creates a substantial separation between ordinary partners and the Firm sufficient to make Chadbourne the Plaintiffs' employer for purposes of Title VII, the EPA, and other applicable statutes.  In other words, Plaintiffs are not effectively synonymous with the Firm but are personnel (albeit relatively high-ranking) carrying out the Firm's business on its behalf and potentially subject to its adverse employment actions.  (*See, e.g.*, Campbell Decl. ¶¶ 11-12; Johnson Decl. ¶¶ 12-13.)  This view accords with the size and structure of the Firm.  Unlike the professional partnerships discussed in many of the cases, in which a small handful of individuals joined together to launch a closely-held business, Chadbourne is a multi-national organization with over 300 attorneys across ten offices, about a third of whom – 103 according to Chadbourne's website – hold the title of partner.  (Campbell Decl. ¶ 5; Johnson Decl. ¶ 6.)

The Supreme Court itself has acknowledged that partners at a firm such as Chadbourne may often qualify as "employees."  As stated in *Clackamas*: "Today there are partnerships that include hundreds of members, some of whom may well qualify as 'employees' because control is concentrated in a small number of managing partners."  538 U.S. at 446.  *See also id.* at 451 n.11 (citing factors weighing in favor of and against finding that director-shareholder physicians were employees and remanding to the lower court to determine physicians' status).

Similarly, in *E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002), the Seventh Circuit recognized that large, modern law firms are more akin to corporate banks than

conventional partnerships. *Id*. at 707. Accordingly, *Sidley* postulated that ordinary partners would often be "employees" of the firm, with centralized management committees exercising control over the business and acting as the true "employers."  These issues, the court indicated, would become ripe for resolution only *after* discovery.  *Id.*  Here, Chadbourne's highly-consolidated management structure mirrors that in *Sidley*. *See id.* at 702-703 (among more than 500 partners, power resided in a 36-person committee). And, as in *Sidley*, adequate discovery on these matters is needed before the Court can issue a reasoned decision. *See also, e.g., Magnotti*, 126 F. Supp. 3d at 311 (invoking the "fact-intensive" nature of the *Clackamas* inquiry); *Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 530-31 (D.N.J. 2014) (denying summary judgment on *Clackamas* issue and observing that "[p]erhaps any six-factor test is fertile ground for material issues of fact.").[10]

In *Panepucci v. Honigman Miller Schwartz and Cohn, LLP*, 408 F. Supp. 2d 374 (E.D. Mich. 2005), the court held that "the question of whether plaintiff [a female law partner alleging gender discrimination] is an employee [under *Clackamas*] is not appropriately determined on

---

[10] Contrary to Chadbourne's assertions, partners and shareholders in professional organizations are not routinely deemed to be strangers to employment protections. Relying on common-law principles of control discussed in *Clackamas* and *Reid*, numerous courts have held such individuals to be "employees." *See, e.g.*, *Simpson v. Ernst & Young*, 100 F.3d 436, 443-44 (6th Cir. 1996) (where discovery had concluded, holding that partner in accounting firm was an employee for the purposes of ADA and ERISA because management committee actually ran the firm and because plaintiff had no bona fide ownership interest, share in the profits, fiduciary position, management control, or meaningful vote in firm decisions); *Rosenblatt v. Bivona & Cohen, P.C.*, 969 F. Supp. 207, 214-15 (S.D.N.Y. 1997) (granting plaintiff's motion for summary judgment; finding non-shareholder law firm partner an employee based on ability to control and operate the business, compensation practices, and level of employment security); *Caruso v. Peat, Marwick, Mitchell & Co.*, 779 F. Supp. 332, 333 (S.D.N.Y. 1991) (noting that jury found partner of accounting firm to be employee even though he received profits because compensation was also based on performance and he had only a nominal role in firm management). *See also Magnotti*, 126 F. Supp. 3d at 310-11 (holding that plaintiff had sufficiently pled his status as an employee despite defendant's contention that he was an owner-proprietor: plaintiffs' allegations that defendant controlled all aspects of his work schedule and wages, required him to report to other individuals, and denied him any sort of influence over the company by vesting all voting power elsewhere, "if true, would warrant finding plaintiff to be an employee"); *Puckett v. McPhillips Shinbaum*, No. 2:06-CV-1148, 2010 U.S. Dist. LEXIS 41729, at *17-18 (M.D. Ala. Mar. 30, 2010) (denying summary judgment; applying *Clackamas* to find that law firm's partners could be employees under the ADEA), *adopted at* 2010 U.S. Dist. LEXIS 41728, at *1 (M.D. Ala. Apr. 28, 2010).

[defendant's] motion to dismiss." *Id*. at 376. At the early juncture present in *Panepucci*, the court was "faced only with the pleadings, the competing [affidavits of the parties], the Partnership Agreement, and [defendant's] Attorney Manual."  *Id*. at 377. This limited evidence weighed in both directions, leaving the court "convinced that the answer to [the *Clackamas*] question" – namely whether plaintiff was an "employee" on the one hand or "had the real ability to exercise control over the organization on the other" – "would become clear only after further discovery clarifies [plaintiff's] role with the firm." *Id*.  The court noted that many of the defendant's cited cases "were decided on a motion for summary judgment, after the benefit of discovery." *Id*.

Here, too, there is only limited information available to the Court: the pleadings; the parties' competing affidavits, Chadbourne's Partnership Agreement with Plaintiffs' signature pages, and one other two-page document.  The primary difference is that Defendants label the motion one for summary judgment. Deciding the motion on this sparse record, in advance of discovery, would skirt *Clackamas*'s "fact-intensive" inquiry.

1. *Plaintiffs' Rule 56(d) Declaration Describes the Discovery Plaintiffs Seek in Order to Rebut Defendants' Assertions and to Establish their Own Version of the Material Facts*

The thrust of Defendants' Motion and accompanying Rule 56.1 statement is that Plaintiffs and other Chadbourne partners exercise substantial control over the Firm.  Plaintiffs, however, maintain that Chadbourne partners do not actually enjoy the self-governance depicted by Defendants. In fact, the Firm is almost wholly controlled by its New York-based Management Committee (historically comprised of five men), which routinely makes significant decisions affecting Firm partners in secret and without the input of the general partnership.  (*See, e.g.*, Amend. Compl. ¶¶ 33, 43; Campbell Decl. ¶¶ 11-13; Johnson Decl. ¶¶ 12-14.)  Plaintiffs are confident that their version of the facts will be borne out in discovery.

Defendants' specific assertions with respect to the *Clackmas* factors are taken in turn.

1.      Defendants aver that Chadbourne cannot hire or fire partners without a vote of the general partnership.  Motion at 9.  The proof, however, is in the pudding. Plaintiff Campbell herself was unilaterally terminated by the Management Committee.  Defendants Giaccia and Lowell informed her that the Committee had decided she did not "fit" with the "strategic direction" of the Firm and had no choice but to leave.  (Amend. Compl. ¶ 5; Campbell Decl. ¶¶ 24-28.)  *Defendants themselves admit that the Management Committee made a "final" decision that Ms. Campbell leave the Firm and the decision would not be revisited*.  (Answer to Amend. Compl. ¶ 6.)

*Discovery, including written discovery and depositions, is needed to test the parties' competing assertions regarding the hiring and termination of partners.*   (*See* Sanford Decl. ¶ 6.)

2.      Defendants attest that Plaintiffs have autonomy over their work, and that they have affirmatively consented to Firm policies governing their work. Motion at 10-11.  In reality, Plaintiffs and other partners have been forced to acquiesce to rigorous scrutiny by Firm management and Firm directives on an array of matters, including billable hours, billings, collections, and case staffing.   (*See, e.g.*, Campbell Decl. ¶¶ 30, 41; Johnson Decl. ¶¶ 25, 34.) Partners are disciplined for failure to comply with Management Committee directives.  (*See, e.g.*, Campbell Decl. ¶¶ 33-34, 39; Johnson Decl. ¶¶ 28-29.)

*Discovery, including written discovery and depositions, is needed to test the parties' competing assertions regarding Plaintiffs' and other partners' workplace autonomy (or lack thereof).*   (*See* Sanford Decl. ¶ 7.)

3.      Defendants assert that Plaintiffs can point to no immediate supervisor who oversees their practices or determines when and where they will work. Motion 11-13.  But Plaintiffs assert that the Management Committee wields a heavy hand over such matters. Chadbourne leadership often interfered with partner work and case management.  (Campbell Decl. ¶ 42; Johnson Decl. ¶¶

13

35-36.)   For example, the Committee made staffing decisions regarding Plaintiffs' cases. (Campbell Decl. ¶ 39; Johnson Decl. ¶ 36.)  The Firm also oversaw Plaintiffs' work schedules and required Plaintiffs to submit annual performance evaluations detailing their work. (Campbell Decl. ¶¶ 31, 36; Johnson Decl. ¶ 31.)  Although Plaintiffs may not have reported to Firm management in precisely the same way that an associate reports to a partner, this is not the relevant test: an organization may contain multiple levels of employees with different reporting relationships. Ultimately, it was clear at Chadbourne that for all Firm business, including Plaintiffs' day-to-day job duties and work conditions, the buck stopped with the Management Committee.

*Discovery, including written discovery and depositions, is needed to test the parties' competing assertions regarding the level of supervision and oversight Firm management exercised over Plaintiffs and other partners.*   (*See* Sanford Decl. ¶¶ 8-9.)

4.   Defendants contend that Plaintiffs and other partners can influence the Firm by voting on Firm matters.  Motion at 13.  Defendants further argue that the Management Committee is elected by the partners.  *Id*. at 14.  In reality, Plaintiffs' purported voting rights afford minimal influence over the Firm, and all real authority lies with the Management Committee. Partners' voting shares are solely determined and can be manipulated by the Management Committee, and Plaintiffs, as female partners, were granted disproportionately low voting interests by the Management Committee.  (Campbell Decl. ¶ 15; Johnson Decl. ¶ 16.)  Further, partners are only entitled to vote on "Major Actions," and their involvement in "Major Actions" is significantly more limited than Defendants describe. (Campbell Decl. ¶ 20; Johnson Decl. ¶ 21.)  For example, as previously discussed, the Management Committee unilaterally elected to terminate Ms. Campbell. (Amend. Compl. ¶ 5; Campbell Decl. ¶¶ 24-28.)

*Discovery, including written discovery and depositions, is needed to test the parties'*

14

*competing assertions regarding parties' influence (or lack thereof) over the Firm's governance.* (*See* Sanford Decl. ¶ 10.)

5.     Defendants also assert that Plaintiffs had "unfettered access to almost every piece of financial information within the Firm." Motion at 15.   But, the Management Committee provided selective and incomplete financial disclosures, including as pertaining to partner compensation.   (Campbell Decl. ¶¶ 45-51, 56; Johnson Decl. ¶¶ 41-47, 52; Amend. Compl. ¶ 33.)

*Discovery, including written discovery and depositions, is needed to test the parties' competing assertions regarding Plaintiffs' and other partners' involvement in the Firm's financial affairs.*   (*See* Sanford Decl. ¶ 10.)

6.     Defendants argue that the parties intended that Plaintiffs and other partners would not be employees. Motion at 16. Yet, Defendant Giaccia repeatedly stated that Chadbourne partners were more like employees than owners and partners often expressed similar sentiments. (Campbell Decl. ¶ 4) Further, the parties' had no agreement or understanding that partners were exempt from anti-discrimination protections including Title VII and the EPA. (Campbell Decl. ¶ ¶ 10; Johnson Decl. ¶ 11.)

*Discovery, including written discovery and depositions, is needed to test the parties' competing assertions regarding the parties' intent.*

7.     Finally, Defendants state that Plaintiffs and other partners share in the profits, losses, and liabilities of the Firm.  Motion at 16-17.  In reality, Plaintiffs are not entitled to a share of the Firm's profits or losses, but instead receive compensation that is set unilaterally by the Management Committee.   (Campbell Decl. ¶¶ 43-53; Johnson Decl. ¶¶ 39-49; Amend. Compl. ¶¶ 24-30.)   The Committee routinely overvalues objective factors to systematically underpay female partners.  (Campbell Decl. ¶ 54; Johnson Decl. ¶ 50; Amend. Compl. ¶ 25.)

*Discovery, including written discovery and depositions, is needed to test the parties' assertions regarding the setting of partner compensation and any sharing of profits and losses.* (*See* Sanford Decl. ¶ 11.)

\*       \*       \*

In sum, Defendants present a misleading depiction of the Firm that exaggerates the role of non-Management partners and minimizes the control exercised by the Management Committee. In contrast, Plaintiffs seek discovery to establish the following facts – each central to the *Clackamas* agency/control inquiry – as described in the Rule 56(d) declaration of David Sanford:

1.  *Chadbourne hires and fires partners and sets rules and regulations for their work.*

Plaintiffs seek facts related to Chadbourne's hiring and firing of partners, including information about how partnership candidates are selected, change status (e.g. from "partner" to "partner in transition"), or are terminated from the Firm and who at the Firm is responsible for such employment actions. In particular, Plaintiffs intend to develop proof that the Management Committee, and not the broader partnership, exercises control over partners' employment status, such as by communicating job offers or terminations without notice to the full partnership.  (*See* Sanford Decl. ¶ 6.)  Plaintiffs also seek to discover the full scope of rules and regulations placed on partners by the Firm and how those rules and regulations are set.  Plaintiffs seek to know how the policies binding upon partners are formed by the Management Committee and enforced upon partners.  (*See* Sanford Decl. ¶ 7.)  Plaintiffs propose to seek these facts through document requests and depositions as described in paragraphs 6, 7, and 12 of the Sanford Declaration.

2.  *Chadbourne supervises and directs partners' work; partners report to the Management Committee and heads of practice groups.*

Plaintiffs seek facts related to partners' reporting arrangements and the Firm's supervision and control over their work, not just in theory but in regular practice. To develop these facts,

16

Plaintiffs seek particular categories of correspondence and other documents, as well as depositions, that will show the extent of the Management Committee's control and involvement in partner's work. (*See* Sanford Decl. ¶¶ 8-9.)  Plaintiffs expect discovery to demonstrate that the Management Committee required partners to report to the Committee, set work schedules for partners, required partners to take certain actions, and reprimanded them for their actions in performing their work. Discovery will further show that the Management Committee made frequent decisions affecting partners' management of their cases or overruled partners on matters affecting their cases. The requested discovery is described in paragraphs 8, 9, and 12 of the Sanford Declaration.

       *3.*      *Partners have minimal influence over the Firm's activities and are denied access to basic information regarding Firm management.*

Plaintiffs seek facts related to partners' actual influence over the Firm and access to information regarding the Firm's management. They intend to develop information about the powers of the Management Committee and of firm committees and practice group heads; the Committee's refusal to consider complaints or objections by partners to its actions; and deliberations, actions, or decisions made by the Committee without disclosure or input from the partnership.  (*See* Sanford Decl. ¶ 10.)  Plaintiffs propose to seek these facts through document requests and depositions, as described in paragraphs 10 and 12 of the Sanford Declaration.

       *4.*      *Plaintiffs are not entitled to any share of the Firm's profits and losses, and the Management Committee sets and controls partner compensation.*

Plaintiffs seek facts related to the Firm's compensation system and the manner in which partner compensation is determined. Plaintiffs intend to establish that they and similarly-situated partners are not entitled to a share of profits and losses but that the Committee establishes their pay from year to year.  (*See* Sanford Decl. ¶ 11.)  Plaintiffs will seek these facts through document requests and depositions, as described in paragraphs 11 and 12 of the Sanford Declaration.

*     *     *

Because there has been no discovery in this case, and because partners have been shut out of the inner circle of decision-makers at Chadbourne, Plaintiffs lack access to the information detailed in the Sanford Declaration and are not able to present substantial evidence beyond their own affidavits.  (*See* Sanford Decl. ¶ 14; Campbell Decl. ¶ 17; Johnson Decl. ¶ 18.)  Plaintiffs are entitled to obtain this information to elucidate the true nature of their relationship to the Firm, and whether it constitutes an employment relationship under applicable law. *See, e.g., Foresta*, 379 Fed. Appx. at 47; *Panepucci*, 408 F. Supp. 2d 374.[11]

> (2)   *The Discovery Plaintiffs Seek is Directly Addressed to the Clackamas Factors and Applicable Agency Test and is Reasonably Calculated to Create a Material Dispute of Fact and/or Establish the Propriety of Summary Judgment in Plaintiffs' Favor*

Discovery into the facts and issues described in the Sanford Declaration will directly reflect on the *Clackamas* factors and the applicable agency/control test. Because this is a broad-ranging, fact-intensive inquiry, *see* 538 U.S. at 451, discovery must necessarily touch on a breadth of information related to Plaintiffs' and other partners' level of control over the Firm versus the Firm's control over them.  (*See* Sanford Decl. ¶ 13.)  Plaintiffs have focused Rule 56(d) discovery on facts material to the question of whether they and their colleagues are "employees."  *Id.*  Each of Plaintiffs' anticipated discovery requests are reasonably designed to create a dispute of fact on Defendants' summary judgment motion.  *Id.*  The Court cannot fairly adjudicate these matters unless it has access to full information tested through rigorous discovery.

---

[11] Moreover, Plaintiff Campbell seeks discovery on her employment status following her demotion to "partner in transition."  Plaintiff Campbell maintains that following this action, she was no longer an equity partner of the Firm, even by Chadbourne's standards. Even assuming that Ms. Campbell was not an employee prior to this action, it remains a fact-intensive inquiry as to whether the demotion converted her to "employee" status, making Chadbourne liable for subsequent acts of discrimination and retaliation.

> (3) *Plaintiffs Have Endeavored to Obtain the Discovery Sought From Defendants, But Their Efforts Have Been Unsuccessful*

Plaintiffs have diligently sought discovery pursuant to Rule 56(d), but have been unable to obtain the requested discovery. (Sanford Decl. ¶ 15.)  While conceding that some discovery sought by Plaintiffs is proper, Defendants have summarily rejected the discovery described in the Sanford Declaration as overbroad and have not produced any of the requested information.  *Id.*  As detailed herein, the Court should reject Defendants' attempt to limit the scope of discovery.

### D.  The Court Should Reject Defendants' Attempt to Limit the Scope of Discovery

Since filing their summary judgment motion, Defendants have indicated that they are open to Rule 56(d) discovery but that it should be confined to the specific iterations of fact in their Rule 56.1 statement. But, Plaintiffs properly seek discovery not just on atomized factual tidbits – pointillist dots – but on the complete picture of whether they and similarly-situated partners are "employees" under applicable law.  Adopting Defendants' position would allow parties to hijack discovery by filing preemptive dispositive motions and framing their 56.1  statements narrowly.

Defendants have now represented they do not "categorically object" to discovery, but state in general fashion that the discovery Plaintiffs seek is too broad.  (Dkt. No. 40.)  Defendants claim that discovery must be tailored "to contest the undisputed facts identified in Defendants' summary judgment motion" (*i.e.* the facts enumerated in their 56.1 statement).  *Id.*  Defendants' objection to the scope of discovery is misplaced, because the discovery required directly flows from the open-ended, fact-intensive *Clackamas* inquiry that Defendants have asked the Court to undertake. Plaintiffs requests are closely-hewn to the legal issue in question, and do not venture into other ground.  (*See* Sanford Decl. ¶ 13.)  They are also rooted in Plaintiffs' personal knowledge that the

Firm does not operate as Defendants say it does.  *Id.* If anything, the breadth of the requested discovery serves only to further illustrate why summary judgment at this stage is inappropriate.[12]

### III.   DEFENDANTS' MOTION TO ELIMINATE PLAINTIFFS' CLASS AND COLLECTIVE ACTION ALLEGATIONS SHOULD BE DENIED

#### A.  Defendants Labor under a Heavy Burden

Defendants move to dismiss Plaintiffs' class and collective action allegations, contending that they fail as a matter of law.[13] Although Defendants do not identify a specific procedural mechanism for their motion,[14] it is evident that Defendants carry an extremely heavy burden.

The law is settled in the courts of the Second Circuit and almost every federal jurisdiction that motions to dismiss or strike class allegations are premature and highly disfavored when, as here, discovery on class issues has not been completed and a motion for class certification has not been filed. For example, in *Emilio v. Sprint Spectrum, L.P.*, 68 F. Supp.3d 509 (S.D.N.Y. 2014) (Oetken, J.), this Court denied a motion to strike class allegations.  As this Court noted:

> [M]otions to strike are viewed with disfavor and infrequently granted. A motion to strike

---

[12] Some of the discovery needed on the *Clackamas* question may overlap with other issues in the case, just as class and merits issues frequently overlap. Further, it may make sense to depose particular individuals on all issues at once rather than depose them multiple times. Accordingly, and in the alternative, the Court may determine that it would be more expeditious for the parties to complete *all* discovery before adjudicating the Plaintiffs' and other partners' employment status under applicable law.

[13] In their memorandum, Defendants continually refer to both Plaintiffs.  However, only Ms. Campbell is a proposed Rule 23 class representative (Ms. Johnson is a proposed EPA collective action representative).

[14] Plaintiffs note that it is procedurally improper to file a Rule 12(b) motion to dismiss or Rule 12(f) motion to strike following a responsive pleading – here, Defendants' Answer. *See* Fed. R. Civ. P. 12(b)(motion "must be made before pleading if a responsive pleading is allowed"); Fed. R. Civ. P. 12(f)(2)(party may make motion to strike "before responding to the pleading"). Further, class allegations do not raise a substantive claim on which relief may (or may not) may be granted, making a Rule 12(b)(6) motion to dismiss inapt. Rather, class actions are generally recognized as a procedural mechanism for enforcing substantive law and fostering judicial economy. *See, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).  There the Court defined "procedure" as "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them" (*id.* at 407), and held that Rule 23 fit the bill. Finally, Fed. R. Civ. P. 23(d)(1)(D) is a ministerial tool applicable only *after* the issue of class certification "has been properly presented and decided by a court," generally upon denial of a motion for class certification. *E.g.* *Boatwright v. Walgreen Co.*, No. C 10 3902, 2011 U.S. Dist. LEXIS 22102, at *5-7 (N.D. Ill. Mar. 4, 2010).

> class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification. District courts frequently have deferred the Rule 23 determination until the class certification stage, after the development of a more complete factual record.

*Id*. at 514-15 (citations omitted). A motion to dispose of class allegations on the pleadings is regarded as "procedurally premature" unless it "addresses issues separate and apart from the issues that will be decided on a class certification motion." *Id*. at 515 (citation omitted). *See also, e.g., Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc*., No. 16-CV-541, 2016 U.S. Dist. LEXIS 172767, at *29-30 (E.D.N.Y. Dec. 14, 2016) (rejecting motion to dismiss or strike class allegations as procedurally premature); *Motta v. Global Contract Servs.*, No. 15 Civ. 5555, 2016 U.S. Dist. LEXIS 59771, at *16-17 (S.D.N.Y. May. 4, 2016) (same); *Gitman v. Pearson Educ., Inc.*, No. 14 Civ. 8626, 2015 U.S. Dist. LEXIS 116096, at *8-10 (S.D.N.Y. Aug. 23, 2015) (denying motion as "procedurally premature": "district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination.") (citation omitted); *Belfiore v. P&G*, 94  F. Supp.3d 440, 447 (E.D.N.Y. 2015) ("A motion to strike class allegations… is even more disfavored [than a typical Rule 12(f) motion] because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.") (citations omitted); *Blagman v. Apple, Inc.*, 12 Civ. 5453, 2013 U.S. Dist. LEXIS 71280, at *19 (S.D.N.Y. May 20, 2013) ("Dismissal of class allegations at the pleading stage should be done rarely as the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (citations

21

omitted); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (motions to strike

class allegations are especially "disfavored" and may only be entertained "if the inquiry would not

mirror the class certification inquiry and if resolution of the motion is clear.") (citations omitted);

*Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (as a general

matter, motions to strike class allegations are regarded as "procedurally premature").[15]

---

[15] For additional cases to the same effect, *see, e.g., Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 14-CV-7539, 2016 U.S. Dist. LEXIS 43725, at *63-65 (E.D.N.Y. Mar. 31, 2016) (premature to address challenge to typicality); *Windley v. Starion Energy, Inc.*, No. 14cv9053, 2016 U.S. Dist. LEXIS 5504, at *9-10 (S.D.N.Y. Jan. 8, 2016); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511-12 (S.D.N.Y. 2015); *Chen v. Hiko Energy, LLC*, No. 14 CV 1771, 2014 U.S. Dist. LEXIS 181846, at *8 (S.D.N.Y. Dec. 29, 2014); *Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2014 U.S. Dist. LEXIS 85916, at *44-47 (W.D.N.Y. June 24, 2014); *Calibuso v. Bank of Am. Corp.,* 893 F. Supp. 2d 374, 383, 388, 390-91 & n.7 (E.D.N.Y. 2012); *Winfield v. Citbank, N.A.*, 842 F. Supp.2d 560, 573-74 (S.D.N.Y. 2012); *Chenensky v. New York Life Ins. Co.*, 07 Civ. 11504, 2011 U.S. Dist. LEXIS 48199, at *3-4 (S.D.N.Y. Apr. 27, 2011).

*See further, e.g., Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (emphasizing that motions to strike class allegations from a pleading are highly disfavored and that "a court should typically await the development of a factual record before determining whether the case should move forward on a representative basis."); *Carbone v. Zen 333 Inc.*, No. 2:16-cv-108, 2016 U.S. Dist. LEXIS 176355, at *18-19 (D.S.C. Dec. 21, 2016) (rejecting motion to preemptively dismiss sparse class allegations: "courts have recognized that the facts needed to establish class certification are generally not available until discovery has commenced."); *Cannon v. Ashburn Corp.*, 2016 U.S. Dist. LEXIS 169040, at *29-31 (D.N.J. Dec. 7, 2016) (following majority of courts in District and denying motion to strike class allegations as premature); *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, No. 15-civ-2361, 2016 U.S. Dist. LEXIS 66048, at *17-18 (N.D. Ill. May 19, 2016) (deeming it premature and improper for court "to determine the propriety of class certification at the pleading stage in the context of a motion to dismiss, and without the benefit of any class discovery"); *Fields v. West Marine Prods.*, No. C 13-4916, 2014 U.S. Dist. LEXIS 16638, at *29 (N.D. Cal. Feb. 7, 2014) (motions to strike class allegations "are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety.") (citations omitted); *Smith v. Wash. Post Co.*, 962 F. Supp.2d 79, 84, 90 (D.D.C. 2013) ("The proponent of a motion to strike must carry a formidable burden."; "[C]ourts rarely grant motions to dismiss or strike class allegations before there is a chance for discovery… The Court should not litigate prematurely the sufficiency of the complaint and the appropriateness of class certification.") (citations omitted); *P.V. v. The Sch. Dist. of Phila.,* No. 2:11-cv-04027, 2011 U.S. Dist. LEXIS 125370, at *10-13 (E.D. Pa. Oct. 31, 2011) ("courts in the Third Circuit typically deny as premature motions to strike class action allegations filed before the plaintiff moves for class certification"; only in "'rare' or 'few' cases… [should the court] dismiss or strike class claims with no discovery, solely on the basis of the pleadings") (citations omitted); *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 241 (D.N.J. 2011) (denying motion as premature: "Decisions from this District as well as others have made clear that dismissal of class allegations at [the pleadings stage] should be done rarely and that the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery.") (citations omitted); *Erhart v. Synthes (USA)*, Civ. No. 07-01237, 2007 U.S. Dist. LEXIS 94760, at *7, 11 (D.N.J. Dec. 21, 2007) ("Legion[s] [of] cases have affirmed that motions to strike should be used sparingly."; "[D]ismissal of class action allegations is appropriate only in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *Beauperthuy v. 24 Hour Fitness USA, Inc.,* No. 06-0715, 2006 U.S. Dist. LEXIS 88988,

Under this established body of law, to obtain the requested relief, Defendants would have to (1) raise issues separate and apart from those to be decided in connection with class certification (*e.g.*, *Bonn-Wittingham*, 2016 U.S. Dist. LEXIS 172767, at *29-30; *Motta*, 2016 U.S. Dist. LEXIS 59771, at *16-17), *and* (2) "demonstrate from the face of the Complaint that it would be *impossible* to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc*., 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (emphasis added). *See also Kassman*, 925 F. Supp.2d at 462 (motion to strike (i) must not "mirror the class certification inquiry" and (ii) its resolution must be "clear"); *id*. at 464-65 (motion "procedurally premature" if based on the same sort of Rule 23 issues involved in a class certification determination).

### B.    This Precedent Dooms Defendants' Preemptive Motion to Scuttle the Class

The overwhelming body of case law compels rejection of Defendants' motion. On procedural grounds alone, their motion to dismiss or strike is premature and should be denied. Defendants' arguments against numerosity, commonality, and adequacy raise the very same issues that will be squarely presented by a motion for class certification. *E.g. Motta*, 2016 U.S. Dist. LEXIS 59771, at *17. Moreover, even on these quintessential class certification issues, Defendants cannot demonstrate from the face of the complaint that certification will be *impossible*. Whether certification is warranted is a fact-sensitive determination and only full discovery will yield the necessary evidence to conduct the appropriate "rigorous analysis." *See P.V. v. The Sch. Dist. of Phila.,* No. 2:11-cv-04027, 2011 U.S. Dist. LEXIS 125370, at *12-13 (E.D. Pa. Oct. 31, 2011) (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 93 (3d Cir. 2011), condemning "premature" class certification denial issued on a motion to dismiss when "there had

---

at *9 (N.D. Cal. Nov. 28, 2006) (characterizing motion to strike class allegations as "an improper attempt to argue against class certification before the motion for class certification has been made and while discovery regarding class certification is not yet complete.").

been no motion for class certification and no discovery"); *Johnson v. Flakeboard Am. Ltd*., No. 4:11-2607, 2012 U.S. Dist. LEXIS 83702, at *17, 20 (D.S.C. Mar. 26, 2012).[16]

    1.   *The Complaint Sufficiently Pleads Rule 23(a)(1) Numerosity: It is Not Obvious on the Face of the Complaint that Numerosity Requirement Cannot Be Satisfied*

    The complaint pleads a proposed class of "all female Partners who are, have been or will be employed by Chadbourne from August 2013 to the date of judgment." (Amend. Compl. ¶ 151.)[17]  The complaint alleges that there are at least 26 members of this class. (*Id.* ¶ 169.) The complaint further alleges that joinder is impracticable because class members are geographically dispersed and may be unlikely to come forward due to fear of retaliation. (*Id*. ¶ 179.) Among other remedies, Plaintiffs seek broad declaratory and injunctive relief designed to counteract and reform Chadbourne's allegedly discriminatory policies and practices. (*See, e.g*., *id*. ¶¶ 194-199 (addressing requirements for certification of Rule 23(b)(2) injunctive class); Prayer for Relief.)

    These allegations are more than adequate to plead numerosity. As courts have made clear, there is no bright-line rule for numerosity; "courts have found this element satisfied when the putative class consists of as few as 10 to 40 members." *Hamid v. Blatt*, 2001 U.S. Dist. LEXIS 20012, at *8 (N.D. Ill. Nov. 30, 2001). *See also, e.g*., *Estate of Gardner v. Cont'l Cas. Co*., 316 F.R.D. 57, 69-70 (D. Conn. 2016) (finding numerosity where class would contain at least 29

---

[16] In Defendants' primary case, *Ruggles v. Wellpoint, Inc*., 253 F.R.D. 61 (N.D.N.Y. 2008), the court held that a certification decision would be "premature" in advance of discovery. *Id*. at 66-67. *Ruggles* concurs with the general rule that courts should "reserve judgment on issues pertinent to certification until information necessary to reach an informed decision is available." *Duarte v. Tri-State Physical Med. & Rehab., P.C*., No. 11 Civ. 3765, 2012 U.S. Dist. LEXIS 96249, at *20 (S.D.N.Y. July 11, 2012). *Jiang v. Allstate Ins. Co*., 199 F.R.D. 267 (N.D. Ill. 2001) was decided on a motion for class certification, not on the pleadings (the court dismissed only certain individual claims). Chadbourne is left with *Wright v. Family Dollar, Inc*., No. C 4410, 2010 U.S. Dist. LEXIS 126643 (N.D. Ill. Nov. 30, 2010) one of the rare cases where "the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Id*. at *4. This is far from the situation here and, in any event, *Wright* should not be followed.

[17] This class definition is not set in stone and may be revised going forward. *See, e.g*., *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 115 (S.D.N.Y 2012). This is all the more reason why it would be overly hasty to dismiss or strike the class allegations at this stage.

members); *Pole v. Estenson Logistics, LLC*, No. Civ. 15-7196, 2016 U.S. Dist. LEXIS 105789, at *8-17 (C.D. Cal. Aug. 10, 2016) (conducting Rule 23(a)( 1) analysis and noting that numerosity would be satisfied even for 17-member class); *Chambery v. Tuxedo Junction, Inc.*, 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014) (classes of 15 and 29 members); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (court "may certify a class even if it is composed of as few as 14 members").[18]

Especially for classes falling below the forty-person threshold for presumptive numerosity, the Court should consider: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). *See also, e.g.*, *Estate of Garner*, 316 F.R.D. at 69-70; *Novella v. Westchester Cty.*, 443 F. Supp. 2d 540, 546-48 (S.D.N.Y. 2006) (certifying 24-person class); *McCluskey v. Trs. of Red DOT Corp. ESOP & Trust*, 268 F.R.D. 670, 673-76 (W.D. Wash. 2010) (certifying class of 27).

Here, Plaintiffs' challenge to Chadbourne's policies and practices – including the system for assigning compensation to partners – should be mounted in a single action rather than a multiplicity of actions. Judicial economy strongly weighs in favor of a class action. *See, e.g., McCluskey*, 268 F.R.D. at 674-75; *Pole*, 2016 U.S. Dist. LEXIS 105789, at *16-17. Further, as the complaint alleges, members of the class are geographically dispersed. *Cf. McCluskey*, 268 F.R.D. at 675 (finding that the dispersion factor supported numerosity where only 3 out of 27 class

---

[18] *See further Young v. Tri County Sec. Agency, Inc.*, Civ. No. 13-5971, 2014 U.S. Dist. LEXIS 62931, at *6-7 (E.D. Pa. May 7, 2014)(certifying 27-member class); *Odom v. Hazen Transp. Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying 16-member class); *Moore v. Napolitano*, 269 F.R.D. 21, 28 (D.D.C. 2010)(citing cases certifying 29-36 member classes); *Lanning v. SE Pa. Transp. Auth.*, 176 F.R.D. 132, 147-48 (E.D. Pa. 1997) (class of twenty-two satisfied numerosity requirement); *Barner v. Harvey*, No. 95 C 3316, 1997 U.S. Dist. LEXIS 3570 (N.D. Ill. Mar. 25, 1997) (class of 13 certified where other factors made joinder impracticable); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) (class of 18).

members resided outside of the judicial district); *Novella*, 443 F. Supp. 2d at 546-47 (dispersion across multiple counties within the same state supports a finding of numerosity).

Class members also face critical real world barriers to bringing individual claims. For example, the fear of potential retaliation "presents a daunting obstacle that favors the conclusion that joinder of all class members would be impracticable." *Twegbe v. Pharmaca Integrative Pharm., Inc.*, 2013 U.S. Dist. LEXIS 100067, at *16 (N.D. Cal. July 17, 2013) (37-member class); *see also Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357, at *56-57 (S.D.N.Y. Mar. 15, 2013) ("Joinder is increasingly impracticable and a finding of numerosity is supported where, as here, the potential class members . . . may fear retaliation by their employer") (citing cases), *adopted* 2013 U.S. Dist. LEXIS 80587 (S.D.N.Y. June 7, 2013).  As the Second Circuit has acknowledged, even former employees may be reluctant to affirmatively opt into collective litigation – much less file individual actions – for fear of being "blackballed." *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011). This factor is especially pronounced here, where Chadbourne has made a point of targeting and retaliating against Plaintiffs (*see* Amend. Compl. ¶¶ 9, 38, 85-115, 132-136, 147-150, 233-235, 249-250, 255, 265), including by filing a public Counterclaim against Lead Plaintiff Kerrie Campbell. (Dkt. No. 42.)

Finally, Plaintiffs seek significant declaratory and injunctive relief to address Defendants' class-wide policies and practices.  Thus, this action aims "to certify a class that includes persons who may be injured in the future and who are, therefore, impossible to identify in the present." *Novella*, 443 F. Supp.2d at 548. "The numerosity requirement is 'relaxed' when injunctive or declaratory relief is sought." *Pole*, 2016 U.S. Dist. LEXIS 105789, at *16.

Hence, because the size of the proposed class does not pose a *per se* bar to certification, Defendants' motion must be denied. *See Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No.

11 Civ. 3765, 2012 U.S. Dist. LEXIS 96249, at *27-29 (S.D.N.Y. July 11, 2012). In *Duarte*, the employer moved for judgment on the pleadings, asserting a lack of numerosity.  Invoking the "fact-intensive" *Robidoux* inquiry, the court could not conclude as a matter of law that the class would fail to meet the numerosity test. Here, as in *Duarte*, the complaint pleads existence of several factors suggesting that they might be able to establish numerosity at the class certification stage. Defendants' attempt to whittle down the class through information and materials outside of the pleadings should be disregarded.[19] Plaintiffs are permitted to test Defendants' assertions through discovery. This includes Defendants' supposition that 14 female partners disapprove of this action and are likely to opt-out. Defendants cite no authority that such a circumstance can defeat numerosity out of the blocks. *Cf. J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 220 (S.D. Ohio 2003), cited in Def. Br. at 21 (certifying Rule 23(b)(3) class, and noting that a class can later be decertified for lack of numerosity if a sufficient number of class members *actually* opt out). It remains speculative as to what the members of the proposed class will *actually* do in response to a Court-ordered notice detailing the information required by Rule 23(c)(2)(B). Further, the possibility of opt-outs will not affect numerosity of the proposed (b)(2) injunctive class.

Ultimately, the Court should consider numerosity at the class certification phase.

2. *Defendants' Argument that Certification Will Fail Under* Dukes' *Commonality Standard Does Not Defeat the Class at the Pleadings Stage*

The complaint identifies numerous common questions apt for class-wide resolution. It is well-established that "even a single common question will do." *E.g. Goldemberg v. Johnson & Johnson Consumer Cos*., No. 13 Civ. 3073, 2016 U.S. Dist. LEXIS 137780, at *55 (S.D.N.Y. Oct.

---

[19] In the ordinary Rule 12(b)(6) context, reliance on materials outside of the pleadings converts a motion to dismiss into a motion for summary judgment (with the opportunity to conduct necessary discovery, *see* Fed. R. Civ. P. 56(d)). Here, the proper recourse is to defer a determination on the propriety of class certification proceedings until after a motion for class certification is filed after applicable discovery.

4, 2016) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Chadbourne's attempt to paint this case as another *Dukes* is unavailing, particularly at the pleadings stage. As opposed to the expansive and amorphous 1.5 million-member class in *Dukes*, the proposed class here is narrowly focused and modest in size and scope.  *See, e.g.*, *Chen-Oster*, 877 F. Supp. 2d at 119 ("*Dukes* is distinguishable in another way. Time after time the Supreme Court circled back to the issue of scale."). In *Chen-Oster*, as here, plaintiffs were "all members of a circumscribed category of [] employees" and did not "challenge literally millions of employment decisions." The court found these "factual distinctions" to be "critical": "Here, in contrast to the scattershot claims in *Dukes*, the possibility exists that class members' claims will be based on a 'common contention,' thereby meeting the commonality requirement." *Id.* (citing *Dukes*).[20]

Moreover, a central allegation in this case is that the Management Committee controlled all relevant policies and made all compensation decisions concerning the class. As the Fourth Circuit has distilled, *Dukes* permits certification of an action involving subjective decision-making: (1) "when the exercise of discretion is tied to a specific employment practice that affected the class in a uniform manner"; (2) "when there is also an allegation of a company-wide policy of discrimination that affected employment decisions"; or (3) when "high-level" management exercises the discretion at issue. *Brown v. Nucor Corp.*, 785 F.3d 895, 916 (4th Cir. 2015); *Scott*

---

[20] *See further, e.g.*, *Cronas v. Willis Group Holdings, Ltd.*, No. 06 Civ. 15295, 2011 U.S. Dist. LEXIS 122736, at *9 (S.D.N.Y. Oct. 18, 2011) (limited size and scope of class supported commonality); *Simpson v. Boeing Co.*, 27 F. Supp. 3d 989, 995 (E.D. Mo. 2014) ("The narrow scope of plaintiff's [class] allegations" – centered on a contention that "defendant discriminates against minorities through its hiring policies and practices for specific positions at its St. Louis locations" – "make this case distinguishable from… *Dukes*, and increase the likelihood that plaintiff will be able to identify a common answer to the question of why class members were not hired."); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509, 530 (N.D. Cal. 2012) (finding the limited size and scope of the class to distinguish the case from *Dukes* and support commonality); *Johnson*, 2012 U.S. Dist. LEXIS 83702, at *15-16 (rejecting *Dukes*-based motion to strike class allegations: "the proposed class consists of 25-50 employees in two small plants in one small town" and "claims involve an isolated set of decisions by a limited number of decision makers and a company-wide hostile work environment perpetrated and/or tolerated by the same small group of supervisors.").

*v. Family Dollar Stores, Inc.*, 733 F.3d 105, 113-14 (4th Cir. 2013).[21]  Biased decision-making by a discrete nucleus of individuals remains a paradigmatic basis for certification. *See Dukes*, 564 U.S. at 350 (commonality would be met when claims involve alleged bias by the same individual); *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986) (evidence that decisions "were made by the same, central group of people . . . would indicate that [defendant] discriminated 'in the same general fashion' against [plaintiff]. . . and against other class members") (citation omitted); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 519 (N.D. Cal. 2012) ("The fact that the scope of this suit is confined to the selection of GMs and AGMs by a much smaller group of decisionmakers than in *Dukes* – decisionmakers who form a relatively small coherent group – makes it far less 'unbelievable' that [they] would exercise their discretion in a common way").[22]

Accordingly, post-*Dukes* case law confirms that allegations similar to those in the complaint suffice at the pleadings stage. *See, e.g.*, *Kassman,* 925 F. Supp.2d at 463-64 (plaintiffs sufficiently pled corporate-level policies and practices that allegedly resulted in discrimination, making it "plausible that plaintiffs will come forth with sufficient evidence at the class certification stage to demonstrate commonality."); *Calibuso v. Bank of Am. Corp.,* 893 F. Supp. 2d 374, 389 (E.D.N.Y. 2012) (class allegations survived dismissal when they were not "purely" based on discretion afforded to lower-level supervisors but also concerned common criteria adopted by corporate defendant); *Chen-Oster,* 877 F. Supp. 2d at 118-19 (complaint identified a number of company-wide practices that allegedly influenced or guided discretionary actions against class;

---

[21] *See also* Massie, *Too Soon for Employers to Celebrate?: How Plaintiffs are Prevailing Post-Dukes*, 29 ABA J. OF LABOR & EMPLOY. LAW 177, 199 (2014) ("*Dukes* only blocks certification when the **sole** basis for liability is a system of discretion...") (emphasis added).

[22] *Accord*: *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 424 (N.D. Ill. 2003) ("Commonality is relatively easily satisfied when a single individual or a small, centralized group makes decisions."); *Abram v. United Parcel Serv. of Am., Inc.*, 200 F.R.D. 424, 432 (E.D. Wis. 2001) ("When blame for discrimination is laid at the feet of a single decisionmaker, or a small group of individuals, it is comparatively easy to find commonality."); *Johnson*, 2012 U.S. Dist. LEXIS 83702, at *15-16.

"the employment practices in this case, together or individually, might well—with the benefit of discovery—comprise a 'common mode of exercising discretion that pervades the entire company.'").  *See also Scott*, 733 F.3d at 116-117 (holding that district court abused its discretion by denying plaintiffs leave to amend in order to elaborate on their class allegations; observing that the proposed amended complaint alleged "uniform corporate policies and *high-level corporate decision making,*" "substantively different" from the scenario in *Dukes*) (emphasis added).[23]

Chadbourne's basic contention – that this case is too individualized for class treatment – should be resolved after the filing of a class certification motion, supported by evidence developed in discovery. It would be wholly improper to hold at this stage that there can be no class at all.

### 3. *There Are No Obvious Conflicts on the Face of the Complaint Precluding a Finding of Rule 23(a)(4) Adequacy*

Defendants further claim that there is an inherent conflict between the class members because, they say, all Chadbourne partners compete for partner points. But the complaint alleges that common policies and practices systematically disfavor female partners as compared to their male counterparts. If gender bias were removed from the process, all class members would stand to benefit. All class members have a strong interest in addressing these issues.

---

[23] *See further Smith v. Merck & Co.,* No. 13-cv-2970, 2014 U.S. Dist. LEXIS 143013, at *20-23 (D.N.J. Oct. 8, 2014) (rejecting *Dukes*-based motion to dismiss and strike class allegations as "simply premature" and opining that plaintiffs "have certainly pled sufficient allegations regarding Defendant's promotion practices and subjective decisionmaking such that Plaintiffs' class claims are plausible."); *Barghout v. Bayer Healthcare Pharms.,* No. 11-cv-1576, 2012 U.S. Dist. LEXIS 46197, at *25-31 (D.N.J. Mar. 30, 2012) (denying *Dukes*-based motion to dismiss and strike class allegations; finding that "as a whole," the complaint showed that female employees were adversely affected by company policies); *Grogan v. Holder,* Civ. No. 08-1747, 2012 U.S. Dist. LEXIS 179057, at *13-14 (D.D.C. Sept. 27, 2012) (rejecting *Dukes*-based motion to dismiss class allegations as "premature" where plaintiffs challenged policies and practices "that could conceivably be company-wide policies and practices. . . . The fact that the challenged policies and practices are highly subjective does not immunize them under *Wal-Mart* from being the target of a Title VII class action suit"); *Johnson*, 2012 U.S. Dist. LEXIS 83702 (denying *Dukes*-based motion to strike or dismiss class allegations as "inappropriate" at the pleadings stage where plaintiff pled claims involving decisions and actions of a small and limited group of company managers).

To defeat Rule 23(a)(4) adequacy, there must be a "fundamental" conflict of interest that "goes to the very heart of the litigation." *See, e.g.*, *Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013);[24] *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). The proper analysis considers whether a class representative "possess[es] the same interest and suffer the same injury" as the class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); *see also, e.g.*, *Gunnells v. Health Plan Servs.*, 348 F.3d 417, 431 (4th Cir. 2003) (rejecting adequacy challenge where class members "share common objectives and the same factual and legal positions. They have the same interest in establishing the liability of [defendant]"); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 661 (N.D. Ill. 2006) ("Here the strength of the common injury and interest shared by the named plaintiffs and class members—the harm caused by an allegedly hostile work environment and the interest in eliminating that environment—plainly overrides any potential conflicts" between supervisors and their subordinates).

Plaintiffs here allege that they suffered the same injuries as their fellow female partners and seek relief from the same discriminatory practices. If Plaintiffs succeed in proving systemic gender discrimination, it will advance – not undermine – the interests of the entire class. Issues regarding the remedies available once liability is established do not typically create a "fundamental" conflict at the certification stage. *Gunnells*, 348 F.3d at 431 n.7 ("[P]otential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class will not bar a finding of adequacy."); *cf. Seijas v. Republic of Arg.*, 606 F.3d 53, 57 (2d Cir. 2010) (potential conflicts at damages phase did not justify refusing

---

[24] Even such a conflict may often be cured by subclassing. *Id.* Notably, even at the class certification stage, it is premature to deny certification based upon potential or hypothetical conflicts; if such conflicts become real, a court may certify subclasses and appoint new class representatives for the additional subclasses. *E.g. Johnson v. Meriter Health Servs. Emple. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 243 (W.D. Pa. 2008) (citing NEWBERG ON CLASS ACTIONS).

to certify class). Defendants are unable to establish from the pleadings alone that Plaintiffs' interests are incontrovertibly "antagonistic" to those of the class members. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015). *See also Amara v. CIGNA Corp*., 775 F.3d 510, 520-22 (2d Cir. 2014) (adequacy not defeated given a "dearth of proof" in the record that a class-based remedy would harm some class members).

In sum, it is improper for the Court to conclude – particularly at this early, pre-discovery juncture – that some female partners stand to benefit from the systematic gender discrimination challenged in this case or would be harmed by its elimination.  Indeed, no class member could have a vested interest in the perpetuation of such unlawful practices. *Cf. Ruggles v. WellPoint, Inc*., 272 F.R.D. 320, 338 (N.D.N.Y. 2011) (in overtime misclassification case, rejecting argument that some class members wished to retain their exempt status).

*Simpson v. Boeing Co*., 27 F. Supp.3d 989 (E.D. Mo. 2014) is instructive. There, the court rejected the proposition that class members in a Title VII failure-to-hire or failure-to-promote case would have inherently conflicting claims because they are in competition for a limited number of job positions. Accordingly, the court held, plaintiff's allegations "that she and the putative class members suffered the same injuries… are sufficient to survive defendant's motion to dismiss." *Id.* at 995. Likewise, here, the adequacy inquiry should be deferred for class certification proceedings.

4.    *Plaintiffs Successfully Plead an EPA Collective Action*

Under 29 U.S.C. § 216(b), an employee may maintain a collective action on behalf of "similarly-situated" employees.  As opposed to Rule 23, employees are only bound by the action if they affirmatively opt into the case by filing a consent with the court.

Because of the unique features of an opt-in collective action, courts have adopted a two-stage certification procedure. *See, e.g.*, *Myers v. Hertz*, 627 F.3d 537, 554-55 (2d Cir. 2010). At the

first, or "notice," stage, the issue is whether the proposed collective action members should receive notice giving them the opportunity to opt-in. Plaintiffs need only make a "modest" or "minimal" preliminary showing that "similarly-situated" employees exist. *See, e.g.*, *Barrett v. Forest Labs., Inc.*, No. 12 cv 5224, 2015 U.S. Dist. LEXIS 117203, at \*4-6 (S.D.N.Y. Sept. 2, 2015); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158-59 (S.D.N.Y. 2014) (Oetken, J.); *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160, 2012 U.S. Dist. LEXIS 11053, at \*10-13 (S.D.N.Y. Jan. 26, 2012) (Oetken, J.). Importantly, employees need only be "similarly situated" "with respect to their allegations that the law has been violated." *E.g. Barrett*, 2015 U.S. Dist. LEXIS 117203, at \*6. Further, the Rule 23 factors do not apply and *Dukes* is inapplicable. *See, e.g., Pippins v. KPMG, LLP*, No. 11 Civ. 377, 2012 U.S. Dist. LEXIS 949, at \*19-21 (S.D.N.Y. Jan. 3, 2012)*. Courts generally grant conditional certification under this lenient standard. *E.g Jackson*, 298 F.R.D. at 158-159.

Here, Plaintiffs allege that Chadbourne has engaged in a common practice and scheme of pay discrimination against female partners and has adopted policies and practices resulting in pay disparities across the class. It is facially plausible that there are other women in the proposed collective action who have experienced pay disparities, and that a collective action comprised of some or all of the employees who choose to opt into the case will be certified. This is true not withstanding any purported differences in "skills," "experience," and "tenure" at the Firm. *See, e.g*., *Moore v. Publicis Groupe SA*, No. 11 Civ. 1279, 2012 U.S. Dist. LEXIS 92675, at \*23-38 (S.D.N.Y. June 28, 2012); *Barrett*, 2015 U.S. Dist. LEXIS 117203; *Kassman v. KPMG, LLP*, No. 11 Civ. 3743, 2014 U.S. Dist. LEXIS 93022, at \*12-14, 16-24 (S.D.N.Y. July 8, 2014), among numerous precedents conditionally certifying EPA actions. Contrary to Defendants' bare avowals, there is nothing inherent in the title "partner" that bars certification.

Defendants assert that Plaintiffs cannot meet their certification burden with "unsupported

claims." Def. Br. at 23 (citing *Myers*). To be sure, *some* – albeit very limited – evidence beyond the pleadings is typically required. But the very same standard counsels that Defendants' motion should be denied as premature; the Court should not address conditional certification and the propriety of § 216(b) opt-in notice until Plaintiffs actually move for such relief. *Barrett v. Forest Labs., Inc.*, 39 F. Supp.3d 407, 453 (S.D.N.Y. 2014).

## CONCLUSION

Chadbourne has made two motions – a motion for summary judgment and a motion to expunge class allegations – that are fatally premature at this stage. Like the murderous Macbeth, Chadbourne believes "if it were done, when 'tis done, then 'twere well it were done quickly."[25] But Plaintiffs' Amended Complaint is more than adequate on its face to support a claim that Plaintiffs are employees covered by Title VII and the EPA and to assert viable class and collective action allegations. At this early juncture, Plaintiffs are entitled to discovery before the Court makes any case-determinative rulings. Accordingly, the Court should grant Plaintiffs' Request for Rule 56(d) discovery and dismiss Defendants' premature motions. In the alternative, the Court should allow full discovery to proceed before entertaining dispositive motions.

Dated: January 9, 2017                    Respectfully submitted,

                                          David W. Sanford (admitted *pro hac vice*)
                                          Jeremy Heisler (JH-0145)
                                          Andrew Melzer (AM-7649)
                                          Alexandra Harwin (AH-3111)
                                          Saba Bireda (admitted *pro hac vice*)
                                          Kevin Love Hubbard (admitted *pro hac vice*)
                                          **SANFORD HEISLER, LLP**
                                          1350 Avenue of the Americas, 31st Floor

---

[25] *Macbeth,* Act I, Scene 7, Lines 1-2 at 38 (The Annotated Shakespeare) (Yale University Press 2005).

New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
amelzer@sanfordheisler.com
aharwin@sanfordheisler.com
sbireda@sanfordheisler.com
khubbard@sanfordheisler.com
***Counsel for Plaintiffs and the Class***

35