UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERRIE CAMPBELL and JAROSLAWA Z. JOHNSON, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHADBOURNE & PARKE LLP, MARC ALPERT, ANDREW GIACCIA, ABBE LOWELL, LAWRENCE ROSENBERG, HOWARD SEIFE, and PAUL WEBER<br><br>Defendants. | Civ. No. 1:16-cv-06832 (JPO) |

### DECLARATION OF JAROSLAWA Z. JOHNSON

I, JAROSLAWA Z. JOHNSON, hereby declare under penalty of perjury that the following is true and correct:

1. I began my employment at Chadbourne & Parke LLP ("Chadbourne" or the "Firm") as a "guarantee" partner in the Firm's Kiev office in December 2003.

2. As a guarantee partner, I had no partnership shares in the Firm. I was not promoted to equity partner until 2006.

3. The Firm's Management Committee decided to close the Kiev office in April 2014. I resigned from the partnership in April 2014. I then served as a Senior Counsel of the Firm from April until December 31, 2014.

4. In this lawsuit, I, along with Plaintiff Kerrie Campbell, bring collective action pay discrimination claims under the Equal Pay Act ("EPA") on behalf of current, former, and future female partners at Chadbourne. I believe that there are at least 27 such current and former female partners since August 2013.

1

5. I do not have information on the citizenship of Chadbourne's current and former female partners. I do not have detailed information on the work locations of Chadbourne's current and former female partners. I do not have access to the personal address and other personal contact information for all of the Firm's current or former female partners.

**Firm Partners and Offices**[1]

6. When I last checked on January 9, 2017, the Firm's website identified 103 partners.

7. When I last checked on January 9, 2017, the Firm's website identified 10 offices. I lack information, however, regarding the real-time operating status of all of Chadbourne's offices located outside of the United States.

**The Firm's Partnership Agreement**

8. Chadbourne adopted its Partnership Agreement before I joined the Firm. My understanding is that most of Chadbourne's current partners joined the Firm after the Firm's adoption of its original Partnership Agreement.

9. Chadbourne presents its Partnership Agreement to incoming partners on a take-it-or-leave-it basis. After I joined the partnership, I was presented with and required to sign the Firm's Partnership Agreement.

10. Chadbourne has never provided me with a copy of the Partnership Agreement containing the signatures of all Chadbourne partners. At present, I do not know the identity of all Chadbourne partners who are signatories to the Firm's Partnership Agreement.

11. The Partnership Agreement contains no provisions exempting partners from the protections of federal, state, or local anti-discrimination laws. Further, partners do not sign any

---

[1] These headings are provided for convenience only. This declaration should be read as a whole, and the headings in no way limit or qualify the assertions made herein.

2

agreements or contracts specifying that they are exempt from the protections of federal, state, or local anti-discrimination laws.

### The Firm's Management Committee

12. Chadbourne is controlled by a five-member Management Committee based in New York. The Management Committee exercises complete control over the Firm's finances, operations, management, personnel, and administration. The Management Committee makes important decisions affecting the Firm without prior notice to, full disclosure to, substantive input from, or votes of the full Firm partnership.

13. Partners who are not on the Management Committee are effectively shut out of meaningful participation in the Firm's governance. Partners who are not on the Management Committee are powerless to meaningfully influence the Management Committee. Further, partners who are not on the Management Committee do not have substantive input into the powers and duties of the Management Committee.

14. It is my understanding that Chadbourne's Management Committee had always been exclusively male until after the time Plaintiff Kerrie Campbell filed her charge of discrimination, alleging systemic gender discrimination, with the United States Equal Employment Opportunity Commission. It is my understanding that the Firm's Managing Partner has always been male.

15. It is my understanding that the Firm's Chief Operating Officer, Lisa Palestine, provides administrative support to the Management Committee. Ms. Palestine is not an attorney, a Chadbourne partner, or a member of the Management Committee. It is my understanding that she has no voting power on matters affecting the Firm.

16. The Firm's Partnership Agreement requires that the Management Committee members be elected by partners holding a majority of profit percentage interests in the Firm. The

3

partners' voting shares, however, are unilaterally set and exclusively controlled by the five-member Management Committee itself. Further, the partners holding the highest voting shares at the Firm are predominantly and disproportionately male.

17. Chadbourne does not have a partner compensation committee, an executive committee, or any comparable committees that serve as a check on the Management Committee's control over Firm finances, operations, management, personnel, and administration.

18. The Management Committee routinely operates in secret. The Management Committee does not disclose to the full partnership many of its internal deliberations, discussions, and actions concerning important Firm matters. The Firm's partners are not privy to many of the decisions and actions of the Management Committee concerning the Firm's finances, operations, management, personnel, and administration. I am not, and never have been, a member of the Management Committee and therefore lack access to the information described in the Declaration of David Sanford relating to the Management Committee's control over partners of the Firm, including internal deliberations and discussions and private communications with other partners.

19. The Management Committee initiates, implements, and controls important Firm decisions without prior notice to, consultation with, or input from Firm partners, including the hiring of lateral partners and promotion of internal partners, the de-equitization and termination of partners, the exploration of firm mergers, the opening and closing of offices worldwide, and the hiring and firing of attorneys and staff.

20. For example, the Management Committee does not inform partners (or only informs partners after the fact) regarding important Firm decisions, including the opening and closing of offices, write-offs of millions of dollars of receivables, claims made against the Firm for alleged wrongdoing, settlements agreed to or entered into by the Firm to resolve claims of

4

alleged wrongdoing, severance or other payments made by the Firm upon partners' and other attorneys' departure from the Firm, and the initiation of merger discussions with other firms. On these matters, the Management Committee does not solicit or receive substantive input from, or obtain votes by, the full partnership.

21. While some of the actions taken by the Management Committee are described in the Partnership Agreement as "major actions" requiring a vote of the full partnership, in practice the Management Committee initiates, implements, and controls these decisions without prior notice to, substantive input from, or a vote by Firm partners. On the limited occasions when votes of the full partnership are held, voting is often *pro forma* because the Management Committee has already taken decisive action. The Management Committee encourages secrecy in voting and resists disclosing the results of votes even when partners request disclosure.

### The Management Committee Controls the Hiring and Firing of Partners

22. The Management Committee controls the hiring and firing of partners in the Firm.

23. The Management Committee determines which individuals are to be made partner prior to any vote of the broader partnership. Based on my experience at the Firm, I believe that the Management Committee has extended offers of partnership without first notifying, consulting with, or obtaining a vote of the full partnership. The role of the full partnership in selecting and hiring partners is minimal and *pro forma*. Based on my experience at the Firm, I believe that the Management Committee grants preferential treatment to men and discriminates against women in its decisions concerning promotions to the partnership.

24. Based on my experience, I believe that the Management Committee has secretly demoted, de-equitized, or effectively terminated partners without first notifying, consulting with, or obtaining a vote of the full partnership. It is my understanding that, following such secret

5

actions, the Management Committee has withheld and refused to timely return the demoted, de-equitized, or terminated partners' capital contributions.

### The Management Committee Sets the Rules and Regulations for Partners' Work

25. The Firm, through its Management Committee, sets comprehensive rules and regulations regarding partners' work. Partners must comply with a wide array of directives from the Firm, including directives from the Management Committee concerning case management procedures, billing actions, and performance reviews.

26. The Management Committee develops and implements Firm policies without prior notice to, substantive input from, or votes of the full Firm partnership. Partners collectively are rarely, if ever, given the opportunity to review, discuss, challenge, object to, or vote on Firm policies before they have been enacted by the Management Committee. Partners have no recourse if they disagree with the Firm policies developed by the Management Committee. Partners who disagree with or oppose policies developed by the Management Committee concerning partners or the Firm as a whole are nonetheless bound by those policies.

27. I did not have the authority to develop any significant management policies for the Kiev office and instead was tasked with implementing with the policies developed by the Management Committee.

28. The Firm, through its Management Committee, issues reprimands to partners who do not comply with Firm policies.

29. The Firm, through its Management Committee, threatens to withhold, and actually does withhold, compensation from partners who fail to comply with Firm policies and Management Committee directives. For example, the Firm withholds compensation from partners if they do not record or bill their time according to the schedule set by the Management Committee.

30. Policies enacted by the Management Committee do not ensure that the Firm operates ethically and consistently with respect to all clients. The Management Committee's policies do not ensure that the Firm is financially fair to all partners. Rather, the Management Committee discriminates against female partners, and female partners, including myself, have been adversely affected by the Management Committee's discriminatory decisions.

### The Management Committee Supervises Partners, and Partners are Required to Report to the Management Committee

31. The Firm, through its Management Committee, supervises the work of partners. Among other things, the Management Committee requires partners to complete annual self-evaluations detailing their work at and contributions to the Firm. The Management Committee sets deadlines for the completion of the memorandum and threatens that failure to timely complete the memorandum will have adverse consequences. This performance review process is indistinguishable from performance management processes used to evaluate employees.

32. Partners lack the authority to deviate from the billing rates set by the Management Committee without the Committee's approval. The Management Committee set billing rates for the Kiev office and had the authority to make all decisions related to billing and collections for the office. I requested and was refused approval to deviate from the billing rates set by the Management Committee.

33. By dictate of the Management Committee, partners are not permitted to hire attorneys or non-attorney staff without approval from the Management Committee. The Management Committee denied my requests that the Firm provide the Kiev office with additional staff and increase the pay for attorneys hired in the office. Furthermore, the Management Committee repeatedly demanded that I fire staff over my vigorous objections.

34. As described above and herein, partners are required to report to the Management Committee, including reporting to the Management Committee regarding their performance, their billable hours, their billings and collections (which are closely monitored), their case staffing, and other case management issues.

35. I was subjected to significant oversight by the Management Committee and the international practice group heads, Claude Serfilippi and Ayse Yuksel. The Management Committee and the international practice group heads closely supervised my work and required me to seek approval for all significant management decisions. In addition, I was required to attend monthly calls with Mr. Serfilippi and Ms. Yuksel.

36. The Management Committee has inserted itself into and interfered with partner work and management of client matters. For example, the Management Committee and international practice group heads directed me on how to utilize attorneys on matters in the Kiev office. On multiple occasions, I was told to use fewer attorneys to staff matters. I was also required to inform the Management Committee or international practice group heads of my business development efforts.

37. The Management Committee made the unilateral decision to close the Kiev office without consulting with me prior to making its decision. I had expected to continue working, in the role of Senior Counsel, at the Firm after December 31, 2014, but I was forced to secure other employment after the Management Committee decided to close the Kiev office without consulting with me.

38. The Firm refused me access to any partner compensation data for 2013 even though I remained a partner until April 2014.

### The Management Committee Controls Partner Compensation

39. The Management Committee unilaterally sets and exclusively controls partner compensation, including the assignment of draws, the assignment of bonuses, the assignment of "points" or "shares," the valuation of "points" or "shares," and the allocation of any profits or losses. The Management Committee wields unchecked authority to change from year to year any partner's draw, bonus, "points" or "shares," and/or share of profits or losses.

40. Partners who are not on the Management Committee do not have the opportunity to meaningfully influence the Management Committee's decisions regarding compensation, including the setting of draws, the assignment of bonuses, the assignment of "points" or "shares," and the allocation of any profits or losses.

41. Individual partners have no entitlement to any share of profits or losses, and the Management Committee exercises complete control over the allocation of profits or losses among Firm partners. Partners are provided with little to no information regarding the reasoning for the Management Committee's allocation of profits or losses. The Management Committee does not disclose the basis for any net profit distribution that is made to individual partners.

42. The Management Committee sets each partner's "draw." The Management Committee does not disclose the basis for computing each partner's "draw" and does not disclose each partner's "draw" to the partnership at large.

43. The Management Committee sets aside a portion of the Firm's revenues each year to award bonuses to certain partners. Partners have no say in the amount set aside for bonuses or the process to determine who receives a bonus.

44.     The Management Committee does not provide partners with insight or input into how the Management Committee determines partner compensation. The Management Committee does not provide partners with substantive information as to the basis for the Management Committee's allocation of points or valuation of points. While the Management Committee requires partners to complete detailed year-end memoranda reviewing their work and the work of other partners, partners generally receive no feedback on their year-end reviews, and partners are not provided with the memoranda that other partners submit or with other feedback purportedly considered in the Management Committee's preliminary allocation of points.

45.     Further, the Management Committee withholds crucial data and other information pertaining to the Firm's large Project Finance group from the full partnership. For example, the "matrix" books that the Management Committee provides to partners omit individual financial data pertaining to the Project Finance group, including individual billable hours, collections, or realization rates, or the compensation of partners in the Project Finance group. The Project Finance group includes dozens of partners.

46.     Like all other partners who were not on the Management Committee, I lacked access to all of the Firm's financial information. The Management Committee provides partners with only limited disclosures regarding the Firm's finances. The Management Committee rejects partners' requests for additional financial information. In the limited reports provided by the Management Committee, the Management Committee does not explain how the Management Committee makes decisions that impact Firm operations and finances.

47.     While the Management Committee offer partners *pro forma* meetings regarding their allocation of points to partners, partners who request these meetings receive little to no

information regarding the basis for the Management Committee's compensation decisions and do not appear able to meaningfully influence the Management Committee's compensation decisions.

48. The Management Committee distributes preliminary and final points lists to partners. While the preliminary and final points lists distributed to partners contain columns for "%," the points lists do not specify what this column refers to and do not state that it corresponds to any partner's percentage of ownership in the Firm. The points lists do not contain the actual compensation provided to all partners.

49. I submitted the required year-end memoranda each year I was a partner. Despite my well-founded requests for an increase in my points and compensation in these memoranda, the Management Committee refused to increase my compensation. Instead, the Management Committee responded to my requests for equitable treatment, in the form of a compensation adjustment, by retaliating against me.

50. The Management Committee disregarded objective factors in order to pay female partners like me less than similarly situated male partners. The Management Committee pays female partners less than male partners even when, as in my case, they outperform them in generating revenue for the Firm. In my experience, the Management Committee minimizes positive information about female partners and systemically undervalues female partners.

**Partners are Powerless to Influence Firm Governance**

51. The Management Committee hand picks the Firm's practice group leaders and members of Firm committees. The Management Committee discourages certain partners from seeking leadership positions at the Firm, including positions on the Management Committee. The Management Committee refused my requests to participate in Firm leadership and serve on Firm committees. Upon information and belief, the Firm's male management has discriminatorily

refused other female partners' requests to participate in Firm leadership and serve on Firm committees.

52. While the Firm holds meetings that are open to the general partnership, these meetings are typically attended by relatively few partners. Based on my experience, these meetings are perfunctory and uninformative in nature. At these meetings, the Management Committee and Managing Partner lead the discussions and provide only perfunctory, limited, and selective information regarding the Firm's performance and actions. The Management Committee discourages partners from asking substantive questions, especially regarding Firm finances, Firm operations, and partner compensation. Partners who have asked questions about or requested the disclosure of information concerning the Firm's finances have been criticized and rebuffed by members of the Management Committee. As a result, partners rarely ask substantive questions.

53. Partners are reluctant to question or challenge decisions made by the Management Committee.

54. The Firm's leadership, in particular the Management Committee and the Managing Partner, is in a position to discriminate and take adverse actions against partners without the input or influence of the full partnership.

55. I expect discovery to establish the facts detailed in this Declaration, as well as additional facts demonstrating that the Management Committee exercises control over the terms and conditions of partners' employment with the Firm.

Executed on January 9, 2017

_____
JAROSLAWA Z. JOHNSON