UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERRIE CAMPBELL and JAROSLAWA Z. JOHNSON, individually, and on behalf of others similarly situated, | |
| Plaintiffs, | Civ. No. 1:16-cv-06832 (JPO) |
| v. | |
| CHADBOURNE & PARKE LLP, MARC ALPERT, ANDREW GIACCIA, ABBE LOWELL, LAWRENCE ROSENBERG, HOWARD SEIFE, and PAUL WEBER | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' EMERGENCY MOTION
FOR CORRECTIVE ACTION AND RELATED RELIEF**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

OVERVIEW OF RELEVANT FACTS.................................................................... 3

ARGUMENT ......................................................................................................... 5

   I.   THE COURT SHOULD ISSUE SWIFT AND EFFECTIVE ORDERS TO
      COUNTERACT CHADBOURNE'S ABUSIVE COMMUNICATIONS WITH CLASS
      MEMBERS AND ENSURE THEY ARE ABLE TO FREELY JOIN THIS ACTION ...... 5

         A.   The Court Has Broad Authority to Manage Class and Collective Actions .. 5

         B.   Chadbourne's Communications About the Case Are Misleading and
             Coercive, and Improperly Attempt to Deter Female Partners from Joining
             the Action ................................................................................................. 8

         C.   The Court Should Grant a Reasonable Restriction on Defendants'
             Communications with Class Members on the Subject of this Action ........ 12

         D.   The Court Should Order Corrective Notice to the Class ............................ 13

         E.   The Court Should Issue an Order Suspending Plaintiff Campbell's
             Expulsion Vote and Prohibiting Defendants from Otherwise Retaliating or
             Threatening Retaliation Against Plaintiffs or Class Members in Any
             Manner...................................................................................................... 15

              1.   An Order is Warranted Under *Gulf Oil*, *Hoffmann-LaRoche*, and
                   Their Progeny to Preserve the Integrity of the Lawsuit and the Rights
                   of Potential Opt-in Plaintiffs ........................................................... 15

              2.   Alternatively, Plaintiffs Are Entitled to the Requested Relief Under
                   the Traditional  TRO/Preliminary Injunction Standard ................... 16

         F.   The Court Should Grant Equitable Tolling in Favor of Potential Opt-ins . 20

         G.   The Court May Impose Other Sanctions in its Discretion ........................ 24

CONCLUSION..................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841 (JPO)(JCF), 2015 U.S. Dist. LEXIS 145563 (S.D.N.Y. Oct. 27, 2015)......................................................................................... *passim*

*Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. 8:5105, 2009 U.S. Dist. LEXIS 51833 (E.D. La. Apr. 20, 2009) ................................................................................................. 21

*Bailey v. Gulf Coast Transp. Inc.*, 280 F.3d 1333 (11th Cir. 2002)...................................... 17

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2007 U.S. Dist. LEXIS 21315 (N.D. Cal. Mar. 6, 2007) .......................................................................................... 23

*Belt v. Emcare Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003) ................................................ *passim*

*Billingsley v. Citi Trends, Inc.*, 560 Fed. Appx. 914 (11th Cir. 2014)........................................ 7

*Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12 CV 529S, 2012 U.S. Dist. LEXIS 144722 (W.D.N.Y. Oct. 5, 2012) ...................................................................................... 6

*Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545 (S.D. Iowa 2000)............................. 7

*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014) ........................................................ 6, 14

*Carrillo v. Schneider Logistics*, No. CV 11-8557, 2012 U.S. Dist. LEXIS 26927 (C.D. Cal. Jan. 31, 2012).................................................................................................. 18, 22

*Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128 (W.D.N.Y. 2003)............................................ 17

*Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir. 2002)......... 7

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30 (2d Cir. 2010) ............................................................................................................. 16

*Clincy v. Galardi S. Enters., Inc.*, 2009 U.S. Dist. LEXIS 78845 (N.D. Ga. Sept. 2, 2009).. 16, 18

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)............................................................ 21

*Devos, Ltd. v. Record*, No. 15-cv-6916, 2015 U.S. Dist. LEXIS 172929 (E.D.N.Y. Dec. 24, 2015)...................................................................................................................... 20

*EEOC v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559 (S.D.N.Y. 2002)..................................... 7

*Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041, 2016 U.S. Dist. LEXIS 88495 (S.D.N.Y. July 7, 2016)..................................................................................................................... 20

*Erhardt v. Prudential Group*, 629 F.2d 843 (2d Cir. 1980)....................................................... 11

*Flood v. Carlson Rests., Inc.*, No. 14 Civ. 2470, 2015 U.S. Dist. LEXIS 6608 (S.D.N.Y. Jan. 20, 2015)...................................................................................................................... 23

*Forauer v. Vt. Country Store, Inc.*, No. 5:12-cv-276, 2013 U.S. Dist. LEXIS 164167 (D. Vt. Nov. 19, 2013)............................................................................................................... 7, 11

*Garcia v. Lee*, No. 10-CV-1618, 2010 U.S. Dist. LEXIS 52082 (E.D.N.Y. May 26, 2010) ....... 18

*Glus v. Brooklyn E. Terminal*, 359 U.S. 231 (1959)................................................................. 22

*Greene v. Alan Waxler Group Charter Servs., LLC*, No. 2:09-CV-748, 2012 U.S. Dist. LEXIS 53568 (D. Nev. Apr. 17, 2012) .............................................................................. 22

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)................................................................... *passim*

*Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994).................................... 10

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)............................................... *passim*

*Holt v. Continental Group*, 708 F.2d 87 (2d Cir. 1983) ........................................................ 17

*Iavorski v. I.N.S.*, 232 F.3d 124 (2d Cir. 2000)..........................................................................20

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009 U.S. Dist. LEXIS 11169 (D. Col. Feb. 3, 2009)...........................................................................21

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005)..............12

*In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988) ..........................................................12

*In re WorldCom. Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 20748 (S.D.N.Y. Nov. 17, 2003).....................................................................................................................11

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ............................................21, 23

*Kellgren v. Petco Animal Supplies, Inc.*, 2014 U.S. Dist. LEXIS 78456 (S.D. Cal. 2014)..........23

*Kleiner v. First Nat'l Bank*, 751 F.2d 1192 (11th Cir. 1985)...................................................7, 16

*Koval v. PacBell Tel.*, No. C 12-1627, 2012 U.S. Dist. LEXIS 113196 (N.D. Cal. Aug. 12, 2012) .................................................................................................................................21

*Leake v. Univ. of Cincinnati*, 605 F.2d 255 (6th Cir. 1979) ........................................................22

*Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010)...................................10, 14

*Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008) ......................................7, 12

*Maddy v. GE*, Civ. No. 14-490, 2015 U.S. Dist. LEXIS 35686 (D.N.J. Mar. 15, 2015)..............14

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012)...................................23

*McSwiggin v. Omni Limousine*, No. 2:14-CV-2172, 2015 U.S. Dist. LEXIS 92590 (D. Nev. July 16, 2015)............................................................................................................................24

*Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373 (S.D. Ga. 2009).....................................10

*Ornelas v. Hooper Holmes, Inc.*, 12-cv-3106, 2014 U.S. Dist. LEXIS 172162 (D.N.J. Dec. 12, 2014)......................................................................................................................................21

*Recinos-Recinos v. Express Forestry, Inc.*, Civ. No. 05-1355, 2006 U.S. Dist. LEXIS 2510 (E.D. La. Jan. 23, 2006) .................................................................................................................10

*Romano v. SLS Residential, Inc.*, 253 F.R.D. 292 (S.D.N.Y. 2008)............................................10

*Roslies-Perez v. Superior Forestry Serv.*, 652 F. Supp. 2d 887 (M.D. Tenn. 2009 ..............10, 22

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ..........................7

*Stickle v. SCI Western Mkt. Support Ctr., L.P.*, No. CV 08-083-PHX-MHM, 2008 U.S. Dist. LEXIS 83315 (D. Ariz. Sept. 29, 2008)...............................................................20, 21, 23

*Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100 (D. Colo. 2013) ..................13, 23

*Suchodolski Assocs. v. Cardell Fin. Corp.*, No. 03 Civ. 4148, 2003 U.S. Dist. LEXIS 24933 (S.D.N.Y. Dec. 9, 2003) ...............................................................................................16

*Torres v. Gristedes Operating Corp.*, 628 F. Supp.2d 447 (S.D.N.Y. 2008) ...............................8

*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012) ............................10, 12, 15

*Veliz v. Cintas Corp.*, No. C 03-1180, 2004 U.S. Dist. LEXIS 24871 (N.D. Cal. Nov. 12, 2004) 8

*Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485 (C.D. Cal 2006) ..........................................13

*Wenner Media LLC v. N. & Shell N. Am. Ltd*, No. 05 Civ. 1286, 2005 U.S. Dist. LEXIS 1925 (S.D.N.Y. Feb. 8, 2005) .........................................................................................16, 17

*Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982, 2012 U.S. Dist. LEXIS 83505 (N.D. Cal. June 15, 2012)................................................................................*passim*

*Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935, 2011 U.S. Dist. LEXIS 23115 (E.D.N.Y. Mar. 8, 2011) ................................................................................................21, 23

iii

*Zamboni v. Pepe West 48th St LLC*, 12 Civ. 3157, 2013 U.S. Dist. LEXIS 34201 (S.D.N.Y. Mar. 12, 2013)................................................................................................................... 2, 6, 14

**Statutes**

The Equal Pay Act of 1963, 29 U.S.C. § 206(d) …………………………………………..*passim*
Title VII of the Civil Rights Act of 1964, as amended …………………………….......…   11
29 U.S.C. § 216(b)…………………………………………………………………………… *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................*passim*

## <u>INTRODUCTION</u>

Throughout the course of this matter, Defendants have taken a series of overtly retaliatory actions designed to punish Plaintiffs for pursuing their claims and to intimidate other female partners who might wish to join the case. After Plaintiff Campbell complained to the Firm about gender discrimination in pay, the Management Committee informed her that she could not remain at Chadbourne, announced that she was a "partner in transition" from the Firm, and slashed her compensation to the level of a first-year associate. Once Ms. Campbell filed suit, Chadbourne's retaliatory conduct only intensified. Defendants have publicly denounced this action, Plaintiffs, and their attorneys in the press; pressured female partners at the Firm to disavow this case; and filed a baseless counterclaim directed at Ms. Campbell's activity in pursuing this litigation.

Now, Chadbourne has administered the *coup de grace* with a vicious one-two blow. First, Chadbourne unilaterally cut off Ms. Campbell's salary payments with no warning or explanation, leaving her without any income. Second, Chadbourne has publicly announced that it is scheduling a vote – now set for Wednesday, April 19, 2017 – to formally expel Ms. Campbell from the Firm.

In a press statement that the Firm distributed to reporters on April 5, 2017, Chadbourne makes no bones about the reasons for Ms. Campbell's expulsion. Chadbourne explicitly connects the scheduled vote to this lawsuit and states that the Firm's decision is "the inevitable result of the choices Ms. Campbell has made" in pursuing this case. It is highly unusual, if not unprecedented, to publicly announce an expulsion vote before it has occurred; and, here, Chadbourne contacted the press about its plans for a vote even before notifying the Firm's partners. It is readily inferred that the purpose and effect of this communication was not only to demean and humiliate Ms. Campbell, but also to convey a direct and undisguised threat to the Firm's other female partners: anyone who joins this action places her career and reputation in jeopardy.

Chadbourne's high-profile threats of retaliation undermine the purposes of this class and

1

collective action and effectively preempt the Court's role in issuing notice under the Equal Pay Act ("EPA").[1]  Accordingly, under a long line of established case law, the Court has the authority – and the obligation – to step in to preserve the fairness and integrity of this litigation and potential collective action members' rights to freely opt into this case without fear of repercussion.[2]

Under Fed. R. Civ. P. 23(d) and extensive precedent concerning similar abuses in the class and collective action context,[3] the Court should grant the following emergency relief to counteract the pernicious effects of Chadbourne's retaliatory and threatening conduct:

1. A reasonable restriction on Defendants' and their agents' communications with potential class and collective action members about the Plaintiffs and this litigation.

2. Corrective notice informing female partners that they cannot be retaliated against for joining or participating in this lawsuit, that the Court is fully equipped to protect them from any actual or threatened retaliation, and that any such retaliation will not be tolerated.

3. An order suspending the expulsion vote for Ms. Campbell and otherwise prohibiting Defendants from taking or threatening retaliatory measures against Plaintiffs and potential opt-ins. If Defendants are permitted to carry through on their publicly-announced threats of retaliation, it will likely cement the chilling effect of these threats and ensure that no other female partner will pursue her claims against Chadbourne.

4. Equitable tolling on the claims of potential opt-ins.

---

[1] *See, e.g.*, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989); *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841 (JPO)(JCF), 2015 U.S. Dist. LEXIS 145563, at *8-9 (S.D.N.Y. Oct. 27, 2015) (parties' communications with potential case members especially dangerous in an opt-in collective action, where such communications might "sabotage the goal of the FLSA's informed consent requirement").

[2] *See, e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)("[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *6-7 (judicial intervention warranted when a party's communications with potential class members pose "a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally"); *Zamboni v. Pepe West 48th St LLC*, 12 Civ. 3157, 2013 U.S. Dist. LEXIS 34201, at *9 (S.D.N.Y. Mar. 12, 2013) ("[C]ourts have a responsibility to restrict communications that are potentially coercive or misleading.").

[3] Alternatively, Plaintiffs meet the general standard for a traditional TRO and/or preliminary injunction.

## OVERVIEW OF RELEVANT FACTS

Plaintiff Kerrie Campbell brings class and collective action claims against Chadbourne & Parke LLP and its senior leaders for engaging in systemic pay discrimination against the Firm's female partners.  Dkt. No. 12, Counts I-II, VII.  Ms. Campbell also pursues individual retaliation claims – and her allegations continue to mount as the Firm engages in successive acts of retribution.  *Id.*, Counts III-V, VIII-IX; *see also* Dkt. No. 42 at 8-9.

As detailed in prior submissions to this Court, after Ms. Campbell complained to Chadbourne's Management Committee about gender discrimination in compensation, Defendants cut her pay dramatically, informed her that the Committee had made a "final decision" that she had to leave the Firm (effectively terminating her), and announced to other partners that she was a "partner in transition" from the Firm – divested of profit-sharing and other incidents of partnership. Dkt. No. 12 ¶¶ 7, 41, 92-108.

Since Ms. Campbell filed this lawsuit, Chadbourne has repeatedly engaged in acts and communications to punish Ms. Campbell and the other Plaintiffs for bringing this action and deter the Firm's other female partners from joining and from pursuing their rights.  Shortly after Ms. Campbell lodged her initial complaint, female partners were pressured to sign an open letter disavowing this litigation. As opt-in plaintiff Mary Yelenick explained in a Declaration to this Court, "at least two of the partners who signed the letter subsequently expressed to me that they hesitated, but felt great pressure to sign the letter."  *See* Dkt. No. 80 ¶ 12.

Then, when Ms. Campbell and former partner Jaroslawa Johnson filed an Amended Complaint in this action, Chadbourne retaliated by filing a Counterclaim predicated almost entirely on Ms. Campbell's actions in connection with this lawsuit.  Dkt. No. 27.  Chadbourne openly admitted that its counterclaim was directed at "the manner" in which Ms. Campbell brought this litigation – including the content of her complaint, her communications with the press about this

3

litigation, and her discussions with other Chadbourne attorneys about gender discrimination within the Firm.  Dkt. No. 59 at 1.  The implicit message to potential opt-ins was that any Chadbourne partner who joins this lawsuit risks being subject to a costly and burdensome countersuit.

In March 2017, a third partner, Mary Yelenick, joined this action as an opt-in plaintiff. Chadbourne again acted swiftly to discourage other partners from participating in this action.  In a statement released to the press the following day, Chadbourne expressed its dismay at Ms. Yelenick's decision to join this litigation – stating that it was "saddened" by her participation – and denounced the lawsuit. Sanford Decl. ¶ 5. After Ms. Yelenick submitted a declaration in support of conditional certification, Defendants again attempted to discredit this action (Chadbourne called it a "lawsuit that seeks unjust economic reward") and to undercut Ms. Yelenick's professional standing and contributions to the Firm.  *Id*. ¶ 6, Ex. 4.

In recent days, Chadbourne's acts of retaliation have greatly intensified.  On April 3, 2017, the Firm suddenly stopped paying Ms. Campbell any compensation whatsoever – withholding a scheduled salary payment without any notice or explanation. Campbell Decl. ¶ 4. Then, on April 5, after the parties' attempts to mediate the case proved unsuccessful, Chadbourne immediately began contacting reporters to announce plans to formalize Ms. Campbell's expulsion.  *Id*. ¶ 6.

In a lengthy statement circulated to the national press on April 5, Chadbourne explained that the impending formal ouster was the "inevitable result of the choices Ms. Campbell has made" – what Chadbourne characterized as Ms. Campbell's "cho[ice] to pursue baseless claims in the cynical pursuit of a big and underserved payday."  Sanford Decl. ¶ 7. Chadbourne's statement also impugned Ms. Campbell's professional reputation. In a remarkably open admission of its retaliatory motives, Chadbourne directly linked its decision to call an expulsion vote to Ms. Campbell's pursuit of this action:

> Early last year, Chadbourne's Management Committee asked Ms. Campbell to voluntarily leave the Firm [ . . . ]. This was done quietly and carefully in order to give her the chance to achieve better results with a fresh start elsewhere. She decided not to do so and, instead, chose to pursue baseless claims in the cynical pursuit of a big and underserved payday. The Firm has been exceedingly patient and sought to avoid having a formal expulsion vote if other outcomes were possible. As Chadbourne prepares for a new future, the choices Ms. Campbell has made have left the Firm no alternative but to seek to bring this relationship to an end in this manner. No matter how she will try to mischaracterize it, this decision is the inevitable result of the choices Ms. Campbell has made.

*Id*. The statement carried an implicit threat to all female partners: that, like Ms. Campbell, those who join this lawsuit risk their jobs and livelihoods and face the prospect of public humiliation.[4]

Only after providing this statement to the press did Chadbourne proceed to formally notify Ms. Campbell and the general partnership. Chadbourne's Management Committee sent an email to all Firm partners informing them that the vote to expel Ms. Campbell will take place on Wednesday, April 19, 2017 at 11:00 a.m. Campbell Decl. ¶ 7 & Ex. 3. If Chadbourne is allowed to carry out its threat to publicly expel Ms. Campbell, she will suffer irreparable harm to her professional reputation and will be left in financial ruin; in particular, she risks losing the home that she and her children have lived in for fifteen years. *Id*. ¶ 9. Just as importantly for purposes of the present motion, other female partners are likely to be irrevocably chilled from joining this action and pursuing similar claims against Chadbourne.

## ARGUMENT

**I. THE COURT SHOULD ISSUE SWIFT AND EFFECTIVE ORDERS TO COUNTERACT CHADBOURNE'S ABUSIVE COMMUNICATIONS WITH CLASS MEMBERS AND ENSURE THEY ARE ABLE TO FREELY JOIN THIS ACTION**

### A. The Court Has Broad Authority to Manage Class and Collective Actions

As the Supreme Court stated in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981):

---

[4] Notably, the Firm has changed its rationale for terminating Ms. Campbell's employment. *Before* this lawsuit was filed, the Firm insisted that Ms. Campbell had to leave and find a job elsewhere because her practice "no longer fit" the "strategic direction" of the Firm. Dkt. No. 12 ¶ 5. *Since* the filing of the lawsuit, however, Chadbourne has launched a public smear campaign against Ms. Campbell and, now, announced that she is being expelled in connection with this suit. The inference of retaliation is clear.

> Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*See also, e.g.*, Fed. R. Civ. P. 23(d); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (holding that the "same justifications" identified in *Gulf Oil* giving district courts the "broad authority to exercise control over a class action" apply in collective actions); *Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12 CV 529S, 2012 U.S. Dist. LEXIS 144722, at *5 (W.D.N.Y. Oct. 5, 2012) ("Courts have the authority in both Rule 23 class actions and FLSA collective actions (29 U.S.C. § 216(b)) to enter appropriate orders governing the conduct of counsel and parties.").

Accordingly, the Court is charged with managing communications between parties and potential class and collective action members. *See Gulf Oil*, 452 U.S. at 101-102; *Hoffmann-La Roche*, 493 U.S. at 171-73. In particular, "**a district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate, unbalanced, misleading, or coercive, or which improperly attempts to encourage class members not to join the suit**." *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841 (JPO)(JCF), 2015 U.S. Dist. LEXIS 145563, at *7 (S.D.N.Y. Oct. 27, 2015)(collecting cases). Ultimately, "courts have a responsibility to restrict communications that are potentially coercive or misleading." *Zamboni v. Pepe West 48th St LLC*, 12 Civ. 3157, 2013 U.S. Dist. LEXIS 34201, at *9-10 (S.D.N.Y. Mar. 12, 2013)(same).

These concerns are exacerbated here by two critical factors. *First*, where a defendant-employer engages in communications with employees, courts widely recognize an inherent potential for abuse and coercion. *See, e.g.*, *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *12 (collecting cases);[5] *see generally Kleiner v. First Nat'l Bank*, 751 F.2d 1192, 1202 (11th Cir. 1985)

---

[5] *See also Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal. 2014) ("Courts have also observed that an ongoing employer-employee relationship is particularly sensitive to coercion."); *Zamboni*, 2013 U.S. Dist.

("A unilateral communications scheme, moreover, is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.").[6] *Second*, the opt-in requirement of 29 U.S.C. § 216(b) creates particular opportunities for mischief.  In a collective action, employees are not covered by the litigation – and their statutes of limitations ordinarily continue to run – until they affirmatively join the suit. Improper communications by an employer can thus directly interfere with employee rights and the role of court-authorized opt-in notice. Hence, the need for court intervention to preserve the integrity of the litigation is especially pronounced at the early stages of collective actions. *See, e.g.*, *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *8-9; *Billingsley v. Citi Trends, Inc*., 560 Fed. Appx. 914, 921-24 (11th Cir. 2014) (recognizing a special capacity for "irreparable damage" when employer conduct may chill workers from timely opting-in).[7]

For these reasons, courts are vigilant in protecting against communications that may chill participation and interfere with the opt-in process. *Billingsley*, 560 Fed. Appx. at 922 ("[D]istrict courts routinely . . . correct the effects of pre-certification communications with potential FLSA

---

LEXIS 34201, at *9-10 ("In some circumstances, where there is an ongoing and unequal business or employment relationship between the parties, communications may be deemed inherently coercive . . . a communication may be coercive where the defendant interferes with participation by potential class members."); *EEOC v. Morgan Stanley & Co*., 206 F. Supp. 2d 559, 562-63 (S.D.N.Y. 2002) (because of inherent risk of coercion, placing restrictions on defendant's contacts with employees); *Forauer v. Vt. Country Store, Inc*., No. 5:12-cv-276, 2013 U.S. Dist. LEXIS 164167, at *19-20 n.1 (D. Vt. Nov. 19, 2013) (collecting cases); *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 548 (S.D. Iowa 2000).

[6] While Chadbourne disputes whether partners are "employees" under the EPA, there is no question that Chadbourne and its partners are engaged in an "ongoing business relationship" and that it has coercive power over partners' fates.  Chadbourne's actions in relation to Plaintiff Campbell are a case in point.

[7] *See also e.g.*, *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 n.12 (S.D. Ala. 2008) (observing that an employer's "[o]ne-sided, misleading communications with putative opt-in collective members… could easily have the effect of tainting the entire class and jeopardizing the entire litigation") (citation omitted); *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003) ("Defendants' conduct is more egregious in this collective action than it would be in a class action because potential class members must opt into the collective action rather than opt out as in a class action."); *see generally Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) (recognizing that "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights").

collective action members after misleading, coercive, or improper communications."). *See, e.g.*, *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982, 2012 U.S. Dist. LEXIS 83505, at *15 (N.D. Cal. June 15, 2012) (ordering corrective notice where "Defendants' communications have posed a realistic danger that participation in the lawsuit will be chilled"); *Veliz v. Cintas Corp.*, No. C 03-1180, 2004 U.S. Dist. LEXIS 24871, at *14-17 (N.D. Cal. Nov. 12, 2004)(issuing corrective notice where defendant's statement about the case "improperly serves to discourage the joining of the instant suit"); *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 668-70 (E.D. Tex. 2003) (ordering corrective notice, among other relief, where letter criticizing lawsuit was framed "in such a way as to discourage absent class members from joining the suit" ).

### B. Chadbourne's Communications About the Case Are Misleading and Coercive, and Improperly Attempt to Deter Female Partners from Joining the Action

Here, Chadbourne has engaged in a pattern of communications and expressive conduct in the Firm workplace and through the press that exact retribution from Plaintiffs and send a message to other would-be opt-ins to fall into line or face similar consequences.  Chadbourne has issued public statements condemning the suit, disparaging the Plaintiffs, expressing displeasure that additional Plaintiffs have joined, and impugning the integrity and motives of those who participate. *See* Sanford Decl. Exs. 1-6.  For example, after Ms. Yelenick opted in, Chadbourne stated that it was "saddened" by her decision and publicly questioned her contributions to the Firm. *Id*. ¶ 5. Additionally, Chadbourne has filed a baseless, retaliatory counterclaim against Ms. Campbell. *Cf. Torres v. Gristedes Operating Corp.*, 628 F. Supp.2d 447, 471-74 (S.D.N.Y. 2008)(legally-suspect counterclaims send a "strong message to other potential claimants that participation in the lawsuit will result in costly legal action, whether or not there is a legal justification for such claims").[8]

---

[8] Plaintiffs have filed a pending motion to dismiss the counterclaims based on their groundless nature and patently retaliatory effect. *See* Dkt. Nos. 41-42, 59-60. Now, it is even more imperative that the Court promptly grant this motion to safeguard potential collective action members' right to freely opt into the action.

With its latest conduct, Chadbourne has sunk to a new low and communicated its clearest and most explicit warning to date that female partners who "sadden" the Firm by participating in this case will suffer dire costs: abject humiliation and potential career suicide.  As set forth above, Chadbourne's April 5 press statement directly conveys that Ms. Campbell is being publicly shamed and expelled from the partnership because of her "choices" *in bringing this case*. The timing of Chadbourne's actions is particularly egregious. Chadbourne issued its explosive press release even before the Management Committee informed Firm partners that it was scheduling the expulsion vote. Further, the announcement comes as the Court is expected to rule on Plaintiffs' motion for conditional certification and issue § 216(b) opt-in notice to female partners. Thus, the press release both communicates that the result of the vote is a *fait accompli* (no partner can freely vote "no" after the Management Committee publicly demanded Ms. Campbell's expulsion) and directly interferes with the forthcoming notice and opt-in process. Given Chadbourne's threats, no female partner has an informed and unencumbered choice to opt into this litigation.

Under the established *Gulf Oil/Hoffmann-LaRoche* line of case law, Chadbourne's conduct is abusive and improper in several respects.

*First*, Chadbourne's press release is "coercive." Regardless of whether Chadbourne is an "employer" within the meaning of the EPA, it has exploited its coercive power over female partners to the utmost. Chadbourne's management has made clear that it has the prerogative to slash or eliminate compensation for partners who join the case, undermine their careers, launch frivolous countersuits, and even terminate them from the Firm.

Courts routinely intercede when a defendant or its agents attempt to intimidate or threaten potential plaintiffs or class members into abandoning their claims or otherwise declining to participate in a class or collective action. No finding of intent is required; intervention is warranted

if the communications have the likely *effect* of chilling plaintiffs' or class members' exercise of their rights. *See, e.g.*, *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 484-85 (S.D.N.Y. 2012) (evidence of interference with the rights of potential opt-ins where plaintiff alleged that another employee had agreed to be a co-plaintiff but decided not to after defendant threatened to have him reported to immigration and possibly deported); *Wright*, 2012 U.S. Dist. LEXIS 83505, at *12-13 ("Plaintiffs have established that, at the very least, Defendants' communications were improper because they plausibly could have a chilling effect on participation in the class action. Most problematic in Defendants' communications to Plaintiffs are the comments about how Plaintiffs' lives will be subject to public scrutiny as a result of the litigation — including future employers."); *Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517-19 (N.D. Cal. 2010) (defendants solicited opt-outs in coercive manner); *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1380-81 (S.D. Ga. 2009) (defendant's agents visited plaintiffs and allegedly threatened them; even if there was no intentional coercion, court held that there was a "potentially abusive situation" warranting intervention: "Should these types of communications continue, they would threaten the ability of plaintiffs and potential plaintiffs to assert their rights through this litigation."); *Belt*, 299 F. Supp. 2d 664 (employer sent letter to potential class members containing numerous improper statements which would deter participation in the case, including a suggestion that the action could threaten their employment); *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994) (defendants warned of potential costs and consequences of participating in the suit).[9]

---

[9] *See further Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 297 (S.D.N.Y. 2008) (defendants engaged in scheme to elicit opt-outs by providing false and misleading information about negative consequences of class membership while omitting positive benefits); *Recinos-Recinos v. Express Forestry, Inc.*, Civ. No. 05-1355, 2006 U.S. Dist. LEXIS 2510, at *24 (E.D. La. Jan. 23, 2006) (prohibiting defendants from contacting potential opt-ins after defendants' agents engaged in a "campaign of intimidation": "A protective order is necessary to halt any improper communications and to diffuse the atmosphere of threats and coercion so as to allow the orderly progress of this litigation."); *Roslies-Perez v. Superior Forestry Serv.*, 652 F. Supp. 2d 887, 891 (M.D. Tenn. 2009)(noting that court had previously "barred communications by

*Second*, Chadbourne's contacts with potential opt-ins are misleading. By warning partners that Ms. Campbell is being pilloried and expelled for pursuing her claims in this action, Chadbourne implicitly states (i) that it is permissible and lawful for Chadbourne to retaliate against partners who participate in this litigation and/or (ii) that it can get away with doing so. Accordingly, by suggesting that Chadbourne management can freely retaliate against and punish Plaintiffs and opt-ins, Chadbourne grossly misinformed class members about their legal rights and remedies under Title VII and the EPA. One of the policies behind Rule 23 is "the protection of class members from 'misleading communications from the parties or their counsel.'" *In re WorldCom. Inc. Sec. Litig*., No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 20748, at *22 (S.D.N.Y. Nov. 17, 2003) (quoting *Erhardt v. Prudential Group*, 629 F.2d 843, 846 (2d Cir. 1980)).  The Court should dispel any uncertainty sown by Chadbourne: partners must be made aware that there are strong and effective protections against retaliation and that retaliation will not be tolerated here.

*Third*, Chadbourne jeopardizes the functioning of this litigation by improperly influencing partners' decisions regarding whether to opt-in and pursue their claims. *See Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *6-7 ("[J]udicial intervention is warranted when communications pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.") (citation omitted); *see further Forauer v. Vt. Country Store, Inc*., No. 5:12-cv-276, 2013 U.S. Dist. LEXIS 164167, at *13-21 (D. Vt. Nov. 19, 2013) (restricting parties' post-notice communications that do not accurately reflect court's conditional certification order, including defendant's "implication" that the collective action was without merit).  It is established that "when a defendant contacts putative class members for the purpose

---

Defendants, their employees, agents and intermediaries with the Plaintiffs and putative class members about this lawsuit . . . based upon proof that an SFSI crew leader had engaged in acts of coercion and retaliation against opt-in-Plaintiffs" and that the court had "also barred future acts of intimidation or coercion").

of altering the status of a pending litigation, such communication is improper without judicial authorization." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005).

---

Taken as a whole, judicial intervention is warranted because – in the context of this litigation – Chadbourne's communications with potential opt-ins are undeniably misleading and coercive and clearly have the "potential to chill participation" in the case. *See Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *28-30. These communications "could easily have the effect of tainting the entire class and jeopardizing the entire litigation." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 n.12 (S.D. Ala. 2008) (citation omitted).

### C. The Court Should Grant a Reasonable Restriction on Defendants' Communications with Class Members on the Subject of this Action

Under *Gulf Oil*, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101. *Gulf Oil* "does not, however, require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" *In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (citing *Gulf Oil*). Courts frequently impose such restrictions where a party's conduct threatens the administration of justice, including by sabotaging class members' rights to freely participate in the action. *See, e.g.*, *Urtubia*, 857 F. Supp.2d at 485 (prohibiting defendants not only from "retaliating, or threatening retaliation, directly or indirectly, against any potential class member," but also from "communicating with any potential class member regarding this lawsuit and its subject matter other than through the class member's counsel, if any, absent prior permission from the Court"); *Wright*, 2012 U.S. Dist. LEXIS 83505, at *15 (barring

12

defendants "from communicating with potential class members regarding this litigation"); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 490 (C.D. Cal 2006) (issuing restriction where defendant fired one employee during opt-out period, threatened another, and engaged in similar coercive communications); *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1110 (D. Colo. 2013) (restricting defendants from further communication with employees about the litigation until after the end of the opt-in period where defendants held mandatory meetings about lawsuit which court found to be misleading, confusing, and coercive).

Here, Defendants have engaged in a pattern of retaliatory and threatening communications culminating in the April 5 press release. Particularly heading into a notice and opt-in period, the need for a reasonable limitation is evident. Unless the Court exercises its authority to rein in these abuses, Defendants will continue to threaten and intimidate partners and interfere with this action.

Hence, Plaintiffs propose that the Court enter a targeted order prohibiting Defendants and their agents from disparaging Plaintiffs and from directly or indirectly suggesting or threatening that any Plaintiff or other partner is being or will be targeted, penalized, or retaliated against in any fashion in connection with the litigation or for pursuing claims against Chadbourne or its successor, Norton Rose Fulbright.  Defendants should further be required to seek Court approval before making any press statements concerning Plaintiffs or this action. Such restrictions are critical to help restore partners' ability to make free choices about opting in. In contrast, there is no legitimate reason for Defendants to publicly disparage Plaintiffs or threaten retaliation. Plaintiffs' proposed order is "carefully drawn" to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 102.

### D.  The Court Should Order Corrective Notice to the Class

An order restricting Defendants' future behavior is necessary, but not sufficient, to remedy

the effects of their conduct in this action.  Based on Chadbourne's actions, partners are likely being deterred from participating in this litigation.  Unless they receive corrective notice, this state of affairs will be perpetuated and Chadbourne will reap the fruits of its conduct.

Where defendants engage in improper communications with class members, courts often order corrective notice.  *See, e.g.*, *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *30-34; *Zamboni*, 2013 U.S. Dist. LEXIS 34201, at *11-12. Courts routinely issue such notice to address statements that could engender fears of retaliation. For example, in *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014), the court granted curative notice where defendants sent a letter warning employees that if they joined the suit, the business would close and they would lose their jobs, "a dramatic statement of the potential loss of employment should employees join the lawsuit." *Id*. at 624. As the court stated: "Regardless of whether the Letter was well intentioned, the communications' one-sidedness discourages participation. . . . Most importantly, the repeated warning that the practice would close and employees would lose their jobs if the litigation proceeded is highly inflammatory." *Id*. at 625. *See also, e.g.*, *Maddy v. GE*, Civ. No. 14-490, 2015 U.S. Dist. LEXIS 35686, at *6-10 (D.N.J. Mar. 15, 2015)(issuing curative notice where defendant disseminated a time-keeping email which "threatens discipline, up to and including termination, for the activity to which [class employees] would necessarily admit by joining the collective action"); *Wright*, 2012 U.S. Dist. LEXIS 83505, at *15-18 (ordering corrective notice including strong statements about retaliation); *Li*, 270 F.R.D. at 518-19 (same); *Belt*, 299 F. Supp.2d at 669-70, 676 (same).

Here, Defendants have engaged in communications with at least as obvious a chilling effect. By making a public example of Ms. Campbell, Chadbourne warns other partners that they could well suffer a similar fate. Consequently, the Court should grant curative notice tailored to Defendants' violations and their effects on this litigation. The notice should inform class members

14

that (a) neither Defendants nor their agents or surrogates may harass, threaten, or retaliate against them in any way in connection with this action; and (b) the Court will not tolerate any such retaliation. Further, as set forth below, the Court should back up these statements by notifying class members that it has suspended Ms. Campbell's expulsion vote and dismissed Chadbourne's counterclaims against her.  Such a strong corrective notice is needed to dispel Chadbourne's threats and restore partners' ability to freely opt into the litigation.

### E. The Court Should Issue an Order Suspending Plaintiff Campbell's Expulsion Vote and Prohibiting Defendants from Otherwise Retaliating or Threatening Retaliation Against Plaintiffs or Class Members in Any Manner

*1. An Order is Warranted Under <u>Gulf Oil</u>, <u>Hoffmann-LaRoche</u>, and Their Progeny to Preserve the Integrity of the Lawsuit and the Rights of Potential Opt-in Plaintiffs*

Chadbourne has announced that Ms. Campbell will be publicly guillotined for pursuing this case and has effectively threatened other partners that they could be next.  It is not enough to inform partners in the abstract that they are protected from retaliation. If the blade is allowed to drop, it will undo any such message and virtually ensure that no other partners will pursue their claims against Chadbourne. Accordingly, the Court should issue an order suspending the expulsion vote – at minimum, until the end of the notice and opt-in period. Only by demonstrating that the law has real teeth can the Court make inroads against Chadbourne's insidious conduct.[10]

Courts have not hesitated to step in under similar circumstances. In *Urtubia*, for instance, plaintiff alleged that defendant-employer induced a potential co-plaintiff to drop out of the case by threatening to report him to immigration. Plaintiff further alleged that several current employees told him that they were compelled by defendant to sign affidavits on its behalf. In addition to

---

[10] Further, while the vote is suspended, the Court should direct Defendants to reinstate Ms. Campbell's compensation (at least at the reduced level in effect since February 2016). For Ms. Campbell to remain a nominal partner but receive no compensation would continue to communicate that Chadbourne can get away with blatant and crippling retribution.

imposing a restriction on the employer's communications with potential class members, the court issued an order prohibiting defendants from "retaliating, or threatening retaliation, directly or indirectly, against any potential class member for considering or asserting claims regarding Defendants' compliance with wage and hour laws." 857 F. Supp.2d at 484-85.  Similarly, here, Chadbourne's acts and threats of retaliation jeopardize the proper functioning of the litigation. If Chadbourne is permitted to follow through on these threats, it would send a powerful message to the class that cannot be walked back at a later juncture. The damage will be irrevocable.

2.    *Alternatively, Plaintiffs Are Entitled to the Requested Relief Under the Traditional TRO/Preliminary Injunction Standard*[11]

(a)    <u>Legal Standard</u>

A TRO or preliminary injunction is warranted where the moving party establishes "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). A court need not find that the moving party is likely to prevail on the merits. Rather, the "serious questions" standard "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.*[12]

---

[11] "Because the source of the Court's authority to enjoin abusive communications is Rule 23(d) rather than Rule 65 (governing preliminary injunctions and restraining orders), a party does not have to establish the [] preliminary-injunction factors to obtain such an injunction." *Tolmasoff v. GM, LLC*, NO. 16-11747, 2016 U.S. Dist. LEXIS 85101, at *30-31 (E.D. Mich. June 30, 3016) (citing *Kleiner*, 751 F.2d at 1201).  Plaintiffs address these factors solely in the alternative, and demonstrate that they are also entitled to relief under the traditional framework for granting a TRO and/or preliminary injunction.

[12] *See, e.g.*, *Wenner Media LLC v. N. & Shell N. Am. Ltd*, No. 05 Civ. 1286, 2005 U.S. Dist. LEXIS 1925, at *14 (S.D.N.Y. Feb. 8, 2005)(sufficiently serious questions); *Suchodolski Assocs. v. Cardell Fin. Corp.*,

As this Circuit has cautioned: "Preliminary injunctions should not be mechanically confined to cases that are simple or easy. Requiring in every case a showing that ultimate success on the merits is more likely than not is unacceptable as a general rule." *Id.* (citations omitted).[13]

Under these standards, courts have enjoined potentially retaliatory actions that have the capacity to interfere with or chill statutory rights – even in individual cases.  *See, e.g.*, *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128 (W.D.N.Y. 2003)(enjoining retaliatory actions against individual FLSA plaintiffs). "The Second Circuit has recognized that... retaliation and the resulting weakened enforcement of federal law can *itself* be irreparable harm in the context of a preliminary injunction application."  *Id.* at 135 (citing *Holt v. Continental Group*, 708 F.2d 87, 91 (2d Cir. 1983)). "A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights... or from providing testimony for the plaintiff in her effort to protect her own rights." *Holt*, 708 F.2d at 91. As set forth above, the justifications for such an injunction are even stronger here in a class and collective action because the effect is not indirect or remote; rather, threats of retribution immediately impact the proper functioning of the litigation.

      (b)    <u>Chadbourne's Scheduled Expulsion Vote Will Cause Irreparable Harm to the Litigation and the Rights of Potential Opt-in Plaintiffs</u>

On this prong, a movant need only demonstrate a likelihood, not a "certainty," of imminent irreparable harm or injury.  *Wenner Media LLC v. N. & Shell N. Am. Ltd*, No. 05 Civ. 1286, 2005 U.S. Dist. LEXIS 1925, at *10 (S.D.N.Y. Feb. 8, 2005). *Cf., e.g.*, *Gulf Oil*, 542 U.S. at 104 (holding that there need only be a "likelihood of serious abuses" that threaten the litigation process).

---

No. 03 Civ. 4148, 2003 U.S. Dist. LEXIS 24933, at *14 (S.D.N.Y. Dec. 9, 2003)(same).

[13] *Cf. Bailey v. Gulf Coast Transp. Inc.*, 280 F.3d 1333, 1337 (11th Cir. 2002)(rejecting argument that an injunction cannot be issued in an FLSA case "until a lawsuit concludes with a finding of liability," because "[e]mployees may be much less likely to stand up for their substantive rights under the statute if they know that months or years will pass before a court can act to halt prohibited intimidation by their employer").

Here, if Defendants are allowed to proceed with the expulsion vote, the litigation will suffer irreparable harm. *Cf., e.g.*, *Garcia v. Lee*, No. 10-CV-1618, 2010 U.S. Dist. LEXIS 52082, at \*5 (E.D.N.Y. May 26, 2010)(enjoining alleged retaliatory discharge and prohibiting further adverse employment actions: "I credit the plaintiffs' claims that the threat of retaliation has discouraged other employees from participating in this lawsuit as plaintiffs or witnesses. Even if [plaintiffs] were not in fact retaliated against, it is reasonable to infer that the defendants' adverse action against them so soon after they filed formal complaints may have deterred other employees from asserting their rights under FLSA or joining this lawsuit."); *Clincy v. Galardi S. Enters., Inc*., 2009 U.S. Dist. LEXIS 78845, at \*7-8 (N.D. Ga. Sept. 2, 2009) (ordering defendants to immediately reinstate plaintiffs terminated for their involvement in the case and prohibiting further retaliation; finding irreparable harm where "it appears likely that other similarly situated employees . . .will be deterred from joining the action as a result of the action taken against Plaintiffs" since "Defendants not only fired Plaintiffs for their participation in this suit, but also informed other entertainers at Onyx that Plaintiffs had been fired because of their participation").[14]

If Chadbourne consummates its brazen threat to expel Ms. Campbell because of this lawsuit, partners' fears of retribution will be confirmed. And, Defendants may be emboldened to engage in additional threats and acts of retaliation. The consequences are dire: potential collective action members will likely be irrevocably chilled from joining and participating in the action; the statutes of limitations on their EPA claims will evaporate; their rights under the EPA will be extinguished; and valuable evidence may be lost. This would undermine the purposes of a class and collective action and the role of the Court in managing the litigation – including by issuing

---

[14] *See further Carrillo v. Schneider Logistics*, No. CV 11-8557, 2012 U.S. Dist. LEXIS 26927, at \*33 (C.D. Cal. Jan. 31, 2012) ("[I]t is reasonable to infer that if the termination were allowed to proceed, any replacement workers... would be reluctant to assert their rights.").

timely, accurate opt-in notice. The Court should preserve the integrity of this litigation by sending a clear counter-message to class members that their rights will be zealously protected.[15]

      (c)     <u>Plaintiffs Demonstrate a Likelihood of Success on the Merits, or at Minimum, Raise Sufficiently Serious Questions to Create Fair Grounds for Litigation</u>

Plaintiffs have a likelihood of success on the merits of their claim that Defendants have engaged in litigation abuses with a powerful capacity to chill participation in this action. As set forth under the *Gulf Oil* line of cases discussed above, courts are concerned about the likely effect of Defendants' communications on the broader class.  Here, Chadbourne's April 5 press release suggests on its face that Ms. Campbell is being targeted for choosing to pursue this action (and the Firm takes gratuitous digs at her professional abilities to boot). This is apt to create a strong *perception* of retaliation on the part of other female partners. Thus, it is likely that partners who believe they have EPA claims against Chadbourne will be deterred from pursuing those claims.[16]

Because the Court can – and should – enter an injunction to safeguard the rights of other class members in this case, it need not consider Ms. Campbell's likelihood of success on the merits of her individual retaliation claim against Chadbourne. Nevertheless, in the alternative, she is more than able to satisfy this prong. Chadbourne's press release likely constitutes an admission that the Firm is expelling Ms. Campbell because of her protected activity in bringing this case. And, this statement follows upon similar concessions by Chadbourne in response to Plaintiff's motion to dismiss Chadbourne's counterclaims – namely that the counterclaims are directed at the manner in which she has pursued her claims.  At minimum, Chadbourne's apparent admissions easily raise

---

[15] If the vote proceeds, Plaintiff Campbell will also be likely to suffer catastrophic and irreparable harm. She will be divested of her family's sole source of income and ignominiously ousted from the Firm. Based on her personal health and financial circumstances, she will be left destitute – with her long-time family home destined for foreclosure and her reputation in tatters. Campbell Decl. ¶ 9. Money damages at the end of the case cannot adequately compensate for these losses.

[16] Once a TRO is entered, Plaintiffs may be able to gather and introduce further evidence of chilling.

"sufficiently serious questions" going to the merits of Ms. Campbell's retaliation claims.

> (d)   The Balance of Hardships Weighs Strongly in Favor of Emergency Relief

Proceeding to the "balance of hardships," the harm resulting from the denial of Plaintiffs' motion is "decidedly greater than the harm [Defendants] would suffer if the motion was granted." *Devos, Ltd. v. Record*, No. 15-cv-6916, 2015 U.S. Dist. LEXIS 172929, at *49-50 (E.D.N.Y. Dec. 24, 2015) (citation omitted). As set forth above, the expulsion vote – currently set for Wednesday, April 19, 2017 – will engender severe and irreparable harm by cementing the impact of Chadbourne's threats of retaliation. In contrast, Chadbourne can point to no real harm that will result from deferring the vote. There is no particular urgency mandating that Ms. Campbell's expulsion be formalized now, and the Firm can assert no legitimate interest in dissuading is female partners from joining a *bona fide* gender discrimination lawsuit.

**F. The Court Should Grant Equitable Tolling in Favor of Potential Opt-ins**

"Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." *Iavorski v. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000) (internal quotation marks and alteration omitted). *See also Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041, 2016 U.S. Dist. LEXIS 88495, at *6-7 (S.D.N.Y. July 7, 2016) (Oetken, J.) (equitable tolling is "sometimes necessary as a matter of fairness.'").

A § 216(b) collective action has two primary benefits: (1) it enables workers to vindicate their rights by joining together and pooling their efforts and resources; and (2) it facilitates judicial economy by consolidating related claims in a single forum. *Hoffmann-La Roche*, 493 U.S. at 170. These benefits "depend on employees receiving accurate and timely notice concerning the pendency of a collective action, so they can make informed decisions about whether to participate." *Id*. These benefits "will disappear" if workers do not receive timely notification of a lawsuit or if the effectiveness of notice is thwarted by employer misconduct. *Id*.; *see also, e.g., Stickle v. SCI*

*Western Mkt. Support Ctr., L.P.*, No. CV 08-083-PHX-MHM, 2008 U.S. Dist. LEXIS 83315, at

*64-65 (D. Ariz. Sept. 29, 2008)(granting equitable tolling in light of these considerations).

Hence, "[c]ourts routinely grant equitable tolling in the... collective action context to avoid

prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture

of collective actions under 29 U.S.C. § 216(b)." *Antonio-Morales v. Bimbo's Best Produce, Inc.*,

No. 8:5105, 2009 U.S. Dist. LEXIS 51833, at *4 (E.D. La. Apr. 20, 2009). While tolling is not

automatic, courts in FLSA collective actions grant equitable tolling to serve the "interests of

justice." *See, e.g.*, *Ornelas v. Hooper Holmes, Inc.*, 12-cv-3106, 2014 U.S. Dist. LEXIS 172162,

at *11-13 (D.N.J. Dec. 12, 2014)(granting tolling due to delay in resolving plaintiffs' motion for

conditional certification); *Koval v. PacBell Tel.*, No C 12-1627, 2012 U.S. Dist. LEXIS 113196,

at *19-20 (N.D. Cal. Aug. 12, 2012)("[C]ourts have equitably tolled the statute of limitations in a

FLSA action when doing so is in the interest of justice.")(citation omitted).[17]

As this Court summarized:

Unlike Rule 23 class actions, in a FLSA collective action the limitations period continues
to run for each plaintiff until he or she files written consent with the court to join the
lawsuit. . . . A district court may toll the limitations period to avoid inequitable
circumstances, giving due consideration to whether the plaintiffs have acted with
reasonable diligence in pursuing their claims and whether the circumstances are
extraordinary enough to warrant equitable relief.

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)(Oetken, J.)(citing *Chapman v.*

*ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).  The rationale

for tolling is at least as compelling in the EPA context, as the Equal Pay Act "is broadly remedial,

and it should be construed and applied so as to fulfill the underlying purposes which Congress

sought to achieve." *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974).

---

[17] *See also, e.g., Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935, 2011 U.S. Dist. LEXIS 23115, at
*9 (E.D.N.Y. Mar. 8, 2011); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS,
2009 U.S. Dist. LEXIS 11169, at *12 (D. Col. Feb. 3, 2009); *Stickle*, 2008 U.S. Dist. LEXIS 83315, at *63-64.

Although misconduct on the part of the defendant is not required, tolling is particularly appropriate where an employer has impeded employees' ability to pursue their claims. *Cf. Glus v. Brooklyn E. Terminal*, 359 U.S. 231, 232-33 (1959)(the principle that "no man may take advantage of his own wrong" is "[d]eeply rooted in our jurisprudence . . . and has frequently been employed to bar inequitable reliance on statutes of limitations").[18]  This includes where employers threaten or intimidate employees in a collective action. *See, e.g.*, *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557, 2012 U.S. Dist. LEXIS 26927, at *55 & n.16 (C.D. Cal. Jan. 31, 2012)(granting tolling in light of conclusion that, in defendants' workplace, "it would be reasonable to expect workers not to assert FLSA claims for lack of information and fear of retaliation"); *Clincy*, 2009 U.S. Dist. LEXIS 78845, *9-10 ("[P]roper grounds exist to toll the statute of limitations for a limited period until similarly situated individuals may be made aware that they may pursue FLSA claims without the fear of retaliation or reprisal."); *Roslies-Perez v. Superior Forestry Serv.*, 652 F. Supp. 2d 887, 890-92, 898-99 (M.D. Tenn. 2009)(employer made "derisive statements" about case, tried to intimidate opt-ins, and threatened workers with adverse consequences if they joined).

Here, equitable tolling is needed because Chadbourne has interfered with female partners' legal rights.  As detailed above, Chadbourne has engaged in a concerted course of conduct to deter class members from pursing their claims – including publicly denouncing this litigation as "false" and "baseless"; impugning Plaintiffs' motives by describing the prosecution of this lawsuit as "the cynical pursuit of a big and underserved payday"; belittling Plaintiffs' professional contributions; pressuring the Firm's current female partners to sign a letter disavowing this litigation; filing a

---

[18] *See also*, *e.g.*, *Greene v. Alan Waxler Group Charter Servs., LLC*, No. 2:09-CV-748, 2012 U.S. Dist. LEXIS 53568, at *10 (D. Nev. Apr. 17, 2012)(finding tolling warranted in FLSA case where defendant "misrepresented the applicable law and assured plaintiffs they were being paid lawfully"); *Leake v. Univ. of Cincinnati*, 605 F.2d 255 (6th Cir. 1979)(tolling Title VII's filing deadline where employer requested that employee postpone filing charge until it could investigate claims and assured her that "it would not use the time it spent in its investigation to prejudice plaintiff with respect to any statute of limitations").

retaliatory counterclaim against Ms. Campbell expressly predicated on her actions in connection with this lawsuit; and calling a vote to formally expel Ms. Campbell from the Firm because of her actions in bringing this case.  Given Chadbourne's fierce retaliation, it is reasonable to infer that other female partners have been and are being impeded from joining this action and that this chilling effect will continue until the Court takes appropriately fulsome corrective measures.[19]

Meanwhile, Plaintiffs have diligently prosecuted this case, including by seeking conditional certification and opt-in notice even before the commencement of discovery. Any delays can be attributed to Defendants' conduct in making frivolous filings and motions and engaging in discovery gamesmanship. In particular, Defendants indicated a willingness to cooperate on discovery but then reversed course after more than two months of delay.  Plaintiffs have simultaneously engaged in good faith efforts to settle this action through multiple mediation sessions. Despite Plaintiffs' efforts to move this matter forward, Chadbourne has undertaken repeated attempts to undermine this litigation and curtail class members' rights.  Chadbourne's extraordinary actions justify equitable tolling going back to the initial filing of this action.[20]

---

[19] The Court should also extend the proposed opt-in period by 30 days (from 45 to 75 days) to allow the proposed corrective measures to take effect.

[20] Procedural delays created by the parties' discovery disputes, the briefing activity on Defendants' groundless motion to dismiss and retaliatory counterclaims, and the parties' settlement efforts in this case can themselves justify equitable tolling.  *See, e.g.*, *Yahraes*, 2011 U.S. Dist. LEXIS 23115, at *7-10 (granting tolling where litigation involved extensive motions practice, scheduling disputes concerning Plaintiffs' conditional certification motion, and delays in producing documents); *Kellgren v. Petco Animal Supplies, Inc.*, 2014 U.S. Dist. LEXIS 78456, at *12-13 (S.D. Cal. 2014)(equitably tolling statute of limitations where delay caused by the defendants' motion to dismiss would unfairly prejudice potential collective action members); *Stickle*, 2008 U.S. Dist. LEXIS 83315, at *61-65 (equitably tolling statute of limitations pending resolution of defendants' motion to dismiss); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2007 U.S. Dist. LEXIS 21315, at *28-30 (N.D. Cal. Mar. 6, 2007)(equitably tolling limitations period due to delays arising from related settlement negotiations).

Moreover, tolling is warranted during the pendency of Plaintiffs' conditional certification motion as well as the notice and opt-in period. *See, e.g.*, *Jackson*, 298 F.R.D. at 170 (Oetken, J.)(granting equitable tolling as of the date such motion); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012)(same; observing that employees "should also not be penalized due to the courts' heavy dockets and understandable delays in rulings"); *Flood v. Carlson Rests., Inc.*, No. 14 Civ. 2470, 2015 U.S. Dist. LEXIS 6608, at *18-19 (S.D.N.Y. Jan. 20, 2015)(granting tolling during notice and opt-in period); *Stransky v.*

G.     **The Court May Impose Other Sanctions in its Discretion**

Defendants' conduct may also warrant other sanctions. For example, the Court may award Plaintiffs all reasonable attorney's fees and costs associated with this motion, including those incurred in relation to the corrective notice. *See Belt*, 299 F. Supp. 2d at 670.

## CONCLUSION

Chadbourne has engaged in a pattern of high-profile communications and conduct with the apparent purpose and likely effect of intimidating other female partners at the Firm and dissuading them from joining this case. This pattern includes vociferously denouncing this litigation; denigrating the Plaintiffs and impugning their motives in bringing this case; pressuring class members to disavow this litigation; launching a counterclaim against Ms. Campbell predicated on her actions in connection with this lawsuit; and, finally, publicly heralding that she will soon be expelled because of her "choices" to bring this action against Chadbourne.  The message to other female partners is clear: anyone who joins this lawsuit may pay the ultimate price. Unless the Court takes swift and decisive counter-action, class members will surely determine that it is simply too risky to participate in this litigation and their rights under the EPA will be extinguished.

With its coercive and improper communications and conduct, Chadbourne threatens the integrity and viability of this gender discrimination class and collective action lawsuit.  To avert this outcome and to secure the "just, speedy, and inexpensive determination" of Plaintiffs' and potential opt-ins' claims on the merits (Fed. R. Civ. P. 1; *see also Hoffmann-LaRoche, supra*), the Court should grant the requested emergency relief in its entirety.

---

*Health One of Denver*, 868 F. Supp.2d 1178, 1182 (D. Col. 2012)(ordering tolling from date of notice motion until 90 days after potential opt-ins receive notice). As one court recently observed, failure to toll the limitations period during the pendency of a § 216(b) notice motion would encourage defendants to vigorously oppose such motions, even where they lack a reasonable basis to do so. *See McSwiggin v. Omni Limousine*, No. 2:14-CV-2172, 2015 U.S. Dist. LEXIS 92590, at *10 (D. Nev. July 16, 2015).

Dated: April 12, 2017                    Respectfully submitted,

<br>

_____
David Sanford (admitted *pro hac vice*)
Jeremy Heisler (JH-0145)
Andrew Melzer (AM-7649)
Alexandra Harwin (AH-3111)
Saba Bireda (admitted *pro hac vice*)
Sᴀɴꜰᴏʀᴅ Hᴇɪꜱʟᴇʀ, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
amelzer@sanfordheisler.com
aharwin@sanfordheisler.com
sbireda@sanfordheisler.com

*Counsel for Plaintiffs and the Class*