PROSKAUER ROSE LLP
Kathleen M. McKenna
Evandro C. Gigante
Rachel S. Fischer
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900
kmckenna@proskauer.com
egigante@proskauer.com
rfischer@proskauer.com
*Attorneys for Chadbourne & Parke LLP,*
*Marc Alpert, Andrew Giaccia,*
*Abbe Lowell, Lawrence Rosenberg,*
*Howard Seife, and Paul Weber*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| KERRIE L. CAMPBELL, JAROSLAWA Z. JOHNSON, AND MARY T. YELENICK, individually, and on behalf of others similarly situated, | : : : : : : | Case No.: 1:16-cv-06832 (JPO)(BCM) |
| Plaintiffs, | : : | **ECF CASE** |
| v. | : : | **ANSWER TO SECOND AMENDED** |
| NORTON ROSE FULBRIGHT US, LLP, CHADBOURNE & PARKE LLP, MARC ALPERT, ANDREW GIACCIA, ABBE LOWELL, LAWRENCE ROSENBERG, HOWARD SEIFE, and PAUL WEBER, | : : : : : : : : | **COMPLAINT WITH COUNTERCLAIM** |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Defendants Chadbourne & Parke LLP ("Chadbourne" or the "Firm"), Marc Alpert

("Alpert"), Andrew Giaccia ("Giaccia"), Abbe Lowell ("Lowell"), Lawrence Rosenberg

("Rosenberg"), Howard Seife ("Seife"), and Paul Weber ("Weber") (collectively "Defendants"),

by their attorneys, Proskauer Rose LLP, hereby answer the Second Amended Class Action, Collective Action, and Individual Complaint ("Second Amended Complaint") as follows:

As to the un-numbered introductory paragraph of (and much of the highly charged language designed for media attention in) the Second Amended Complaint which alleges that Plaintiffs Kerrie L. Campbell ("Campbell"), Jaroslawa Z. Johnson ("Johnson"), and Mary T. Yelenick ("Yelenick") (collectively, "Plaintiffs") bring this action to redress supposed "systematic gender discrimination" at Chadbourne, Defendants deny this allegation and further state that what this action actually presents is the unfortunate scenario where the worthy purposes of the nation's anti-discrimination laws are falsely invoked by three partners who seek to avoid responsibility for and divert attention from their own respective professional performances and, with respect to Campbell, the facts of her own misconduct, as more specifically detailed herein.

## I.     AS TO AND AS CONCERNING THE "INTRODUCTION"

1.      Defendants deny the allegations in Paragraph 1 of the Second Amended Complaint, except admit that Chadbourne was until recently an international law firm with over 300 attorneys, some of whom were employees and some of whom were partners, and had 10 offices around the world.  Defendants refer Plaintiffs to the rankings referenced in *The American Lawyer* for the true and complete contents thereof.

2.      Defendants deny the allegations in Paragraph 2 of the Second Amended Complaint.

3.      Defendants deny the allegations in Paragraph 3 of the Second Amended Complaint, except admit that Chadbourne combined with global law firm Norton Rose

Fulbright ("Norton Rose Fulbright")[1] on or about June 30, 2017, and admit that Andrew

Giaccia is presently Vice Chair of Norton Rose Fulbright US LLP's U.S. Management

Committee, and two former members of Chadbourne's Management Committee, Ayse Yuksel

and Howard Seife, presently serve on Norton Rose Fulbright's Global Executive Committee.

Defendants additionally admit that Abbe Lowell was formerly the head of Chadbourne's

Litigation Practice Group and now serves as Co-head of Regulations, Investigations, Securities

and Compliance for Norton Rose Fulbright US LLP.

4.      Defendants deny the allegations in Paragraph 4 of the Second Amended

Complaint, and further state that Campbell's productivity and revenue generation have been far

below those of Chadbourne's "top performing male Partners,"  except Defendants admit that

on February 19, 2016, Giaccia met with Campbell and explained that the Management

Committee had concluded that her practice did not fit with the Firm and suggested that the best

step for Campbell personally would be to transition to another Firm that was more suitable for

her, and admit that Campbell was told that her monthly draw would be reduced.  This decision

was made in connection with the Management Committee's annual evaluations of each

Chadbourne partner's role and contributions to the Firm, a practice which at times can include

partners being asked to move their practices elsewhere as the Firm re-evaluated its strategic

plans and goals.  The Management Committee's decision that Campbell's practice was a poor

fit for the Firm was a well-informed, carefully considered business judgment that was made in

the ordinary course of business for entirely legitimate and proper business reasons and without

---

[1] Throughout the Second Amended Complaint, Plaintiffs refer to Norton Rose Fulbright US LLP as "Norton Rose," "Norton Rose Fulbright," and "Norton Rose Fulbright US LLP."  Defendants assume that all of these references are to the Defendant Norton Rose Fulbright US LLP.

a scintilla of consideration being given to her gender. Campbell generated relatively little business and proved to have little potential for cross-selling to other departments at the Firm, contrary to expectations created by Campbell both when interviewing with the Firm and after. In addition, in the short period in which she has been a partner, Campbell was seemingly unable to manage her practice, mistreated associates, and acted in ways that raised serious questions about her legal knowledge and judgment as well as her technical competence in litigation matters. Campbell's inappropriate behavior at a Firm event and before a client during an out-of-town trial, among other troubling behavior, made clear to Chadbourne that Campbell should not continue at the Firm.

5.    Defendants deny the allegations in Paragraph 5 of the Second Amended Complaint, except admit that Johnson is an experienced attorney who was previously the Managing Partner of the Firm's Kiev office with over 20 years' experience in corporate expansion in emerging markets, and that collectively over many years the total billings from the Kiev office were in the millions of dollars.

6.    Defendants deny the allegations in Paragraph 6 of the Second Amended Complaint, except admit that Yelenick spent her entire legal career at Chadbourne, toward the end of her time at Chadbourne was (along with a more senior partner) co-chair of Chadbourne's Products Liability group, and during the course of her career worked on certain large and/or complex matters for clients of other partners in the Firm.

7.    Defendants deny the allegations in Paragraph 7 of the Second Amended Complaint. From their extra-judicial statements, public relations attempts,

mischaracterizations of events, and inflammatory language, it is not clear what Plaintiffs'
motives are.

## II.      AS TO AND CONCERNING "OVERVIEW OF CHADBOURNE'S DISCRIMINATION AGAINST FEMALE PARTNERS"

8.      Defendants deny the allegations in Paragraph 8 of the Second Amended
Complaint insofar as they are made in reference to Chadbourne, and deny having knowledge or
information sufficient to form a belief as to the allegations in Paragraph 8 to the extent they
may refer to any other law firm.  Defendants refer to the American Bar Association and
National Association of Women Lawyers articles cited in Paragraph 8 for the true and
complete contents thereof.

9.      Defendants deny the allegations in Paragraph 9 of the Second Amended
Complaint insofar as they are made in reference to Chadbourne, and deny having knowledge or
information sufficient to form a belief as to the allegations in Paragraph 9 to the extent they
may refer to any other law firm.  Defendants refer to the Major, Lindsey & Africa study cited
in Paragraph 9 for the true and complete contents thereof.

10.      Defendants deny the allegations in Paragraph 10 of the Second Amended
Complaint, and state that Chadbourne was an equal opportunity employer and assessed the
performance of its attorneys and staff on the merits without regard to gender; that
compensation of women at the Firm was not determined based on their gender; and that
Plaintiffs' own performance showed them to be far from the "similarly situated male attorneys"
to whom they want to be compared.  Defendants further aver that a woman has served on the
Firm's Management Committee, first as an *ex officio* member and then as a full member; that
women have served as Managing Partners of the Firm's Washington D.C., Moscow, Kiev, and

Istanbul, offices; and that women have led numerous practice groups and chaired various committees at Chadbourne.   Defendants additionally refer Plaintiffs to the contents of the articles cited in Paragraph 10 of the Second Amended Complaint for the true and complete contents thereof.

11.   Defendants deny the allegations in Paragraph 11 of the Second Amended Complaint.

12.   Defendants deny the allegations in Paragraph 12 of the Second Amended Complaint, except admit that pursuant to the partnership agreement that Plaintiffs elected to sign, and under which they now assert claims in this action, the Firm's Management Committee, which is elected by the partnership and for seats on which any partner (including Plaintiffs) was free to run, was "vested with all the powers of the partners in the management of the business of the firm and to make and carry out the decisions necessary therefor [with certain defined limited exceptions]," and that at certain times pertinent hereto the Management Committee was composed of five male partners and also had two *ex officio* members, one of whom was female and one of whom was male.

13.   Defendants deny the allegations in Paragraph 13 of the Second Amended Complaint, except admit that compensation at Chadbourne was largely determined by the number of "points" set for each partner by the Management Committee for a given year and the Firm's actual financial performance in that year.  Points assigned and Firm profits paid to women partners did not include any consideration of gender, and further state that the Management Committee reminded all partners on an annual basis in connection with the compensation process that statistics such as productivity, originations and revenues were

incomplete indicators of partners' contributions, as such designations did not accurately reflect the teamwork involved in originating, retaining, and growing business, and, accordingly, that it is was important for the Management Committee to obtain a more rounded view of partners' contributions. The Management Committee therefore considered a host of other factors relevant to setting compensation, including, but not limited to: efforts undertaken by partners to enhance revenues; instances of teamwork yielding new business or other positive results; instances where partners have referred work to other groups or attorneys in other U.S. or international offices; partners who have been of help to one another; client-related activities, including service to existing clients, obtaining new work from existing clients, obtaining new clients, and any other activities deemed noteworthy in this regard; assumption of Firm responsibilities and participation in Firm activities; efforts made by partners to attract lateral partners and other senior attorneys to the Firm; *pro bono* activities; activities aimed at improving attorney competence, including recruiting and training, diversity efforts, and morale; and activities outside the Firm that serve to enhance the reputation of the Firm and its partners.

14. Defendants deny the allegations in Paragraph 14 of the Second Amended Complaint, and additionally refer to their response to Paragraph 13 of the Second Amended Complaint.

15. Defendants deny the allegations in Paragraph 15 of the Second Amended Complaint, except admit that at times partners, both male and female, have had their points decreased over time as determined by the Management Committee in its consideration of the relevant factors (as noted in Defendants' response to Paragraph 13).

16.     Defendants deny the allegations in Paragraph 16 of the Second Amended Complaint.

17.     Defendants deny the allegations in Paragraph 17 of the Second Amended Complaint, except admit that in 2013 the number of points among the male partners ranged from 250- 2,050, while those among the female partners ranged from 350-950.  Allocation of points and bonuses result from a careful consideration of the criteria described in Paragraph 13 above.

18.     Defendants deny the allegations in Paragraph 18 of the Second Amended Complaint, except admit that in 2014 the number of points among the male partners ranged from 250-2,250, while those among the female partners ranged from 375-1,000.  Allocation of points and bonuses result from a careful consideration of the criteria described in Paragraph 13 above.

19.     Defendants deny the allegations in Paragraph 19 of the Second Amended Complaint, except admit that in 2015 the number of points among the male partners ranged from 250-2,100, while those among the female partners ranged from 375-1,000.  Allocation of points and bonuses result from a careful consideration of the criteria described in Paragraph 13 above.

20.     Defendants deny the allegations in Paragraph 20 of the Second Amended Complaint, and further state that the transition of origination credit was determined by the partner who led and held the client relationship, not by the Management Committee, and when a partner responsible for managing a particular client relationship planned to retire or otherwise

leave the Firm, that partner after consideration with the client would report which other partner at the Firm would assume responsibility for the client after the partner left.

21.    Defendants deny the allegations in Paragraph 21 of the Second Amended Complaint.

22.    Defendants deny the allegations in Paragraph 22 of the Second Amended Complaint and further state that a female partner actually served on a predecessor to what became the Chadbourne Management Committee; further state that a female partner served as an *ex officio* member of the Management Committee for years, including at the times when Campbell and Johnson were partners at Chadbourne, before that female partner was elected to the Management Committee in 2016 at a time before Campbell commenced this action; and further specifically deny the demeaning, sexist, insulting, and indeed ironic insinuations in Paragraph 22 that the election to the Management Committee of an accomplished woman partner who won in a contested multi-candidate race was in any way connected to her gender or Plaintiffs' claims in this action.

23.    Defendants deny the allegations in Paragraph 23 of the Second Amended Complaint and further state that phrases in Paragraph 23 like "all-male dictatorship," "black box," "complete secrecy," "under wraps," "wall of silence," "glass ceiling," and "unchecked dominion" are all publicity-seeking catch-phrases designed to misrepresent how much information Plaintiffs and all other partners received and how much input Plaintiffs and all other partners had at Chadbourne; that the Firm's partnership generally met on a monthly basis, discussed and voted on any number of issues in a given year; and that all Firm partners, including Plaintiffs, had access to weekly, monthly, and annual reports on the finances of the

9

Firm and the performance of both its partner and non-partner attorneys, as well as information about business generated by the Firm, billings and collections of all partners, realization rates of all attorneys, hours worked of all attorneys, the inventory of accounts receivable and work-in-progress at the Firm, and the Firm's payroll expenses, disbursements, and account balances, among other information. Plaintiffs, like all partners at the Firm, received detailed information on the compensation paid to all Firm partners, as well as information on the compensation of non-partner attorneys. The compensation process includes multiple opportunities for partners to provide input on their performance and the performance of others, along with other input from within the Firm. In fact, Plaintiffs availed themselves of such opportunities with memoranda and even meetings with the Management Committee. Plaintiffs also had access 24 hours a day to a computerized database containing a wide range of real-time client, matter, and attorney financial data, including realization and utilization data, for all attorneys at Chadbourne, both partner and non-partner.

24. Defendants deny the allegations in Paragraph 24 of the Second Amended Complaint.

25. Defendants deny the allegations in Paragraph 25 of the Second Amended Complaint.

26. Defendants deny the allegations in Paragraph 26 of the Second Amended Complaint.

27. Defendants deny the allegations in Paragraph 27 of the Second Amended Complaint and refer to their affirmative averments in Paragraph 23, and state that Campbell received all the compensation provided for in the offer letter pursuant to which she agreed to

join the Firm, and, as Campbell has been advised, that the Firm will return Campbell's capital to her in the normal course. Campbell actually received more compensation than she would have otherwise earned as a result of the billing partner statistics that the Firm permitted to be attributed to Campbell for a case that she did not actually bring to the Firm, and Campbell was able to receive a large bonus as if she had satisfied the terms of the compensation letter she agreed to when she joined the Firm.

28. Defendants deny the allegations in Paragraph 28 of the Second Amended Complaint.

### III. AS TO AND AS CONCERNING THE "PARTIES"

29. Defendants deny the allegations in Paragraph 29 of the Second Amended Complaint, except admit that Campbell is a Maryland resident, moved to Chadbourne laterally from another firm, and from her arrival at Chadbourne in January 2014 through the date when Chadbourne's partners voted to expel her from the partnership in April 2017 she was a partner located in Chadbourne's Washington, D.C. office with a percentage ownership share in the Firm's profits and losses and the same rights and obligations as any other partner in the Firm.

30. Defendants deny the allegations in Paragraph 30 of the Second Amended Complaint, except admit that Johnson managed Chadbourne's Kiev office until the end of 2013 when she asked to step down as Managing Partner, turning over managerial responsibility for the office to another attorney, that Johnson transitioned to Senior Counsel and continued to work in the Kiev office on a reduced schedule, that in April 2014 the Firm informed Johnson that it was closing the Kiev office, and thereafter, Johnson performed wind-down activities until the Kiev office formally closed in October 2014, and admit that for a short period Johnson

was an independent contractor of Chadbourne when she transitioned to the Senior Counsel position. Defendants deny having knowledge or information sufficient to form a belief as to whether Johnson maintained a home in Chicago during the relevant time period.

31. Defendants deny the allegations in Paragraph 31 of the Second Amended Complaint, except admit that Yelenick began her employment at Chadbourne in June 1981 as an associate in the Litigation practice group, was subsequently promoted to Counsel, was promoted to Partner in 1996, retired from the Firm's partnership on December 31, 2016, and elected to remain at Chadbourne in an "Of Counsel" role following her retirement but did not bill any time to client work at Chadbourne while in that "Of Counsel" role. Defendants additionally admit that Yelenick has held the title of "Of Counsel" at Norton Rose Fulbright US LLP since the completion of Chadbourne's combination with Norton Rose Fulbright.

32. Defendants deny the allegations in Paragraph 32 of the Second Amended Complaint, except admit that Norton Rose Fulbright US LLP is a Texas limited liability partnership registered in New York, and that on or about June 30, 2017 Chadbourne combined with Norton Rose Fulbright. The last sentence alleged in Paragraph 32 states a legal conclusion to which no responsive pleading is required.

33. Defendants deny the allegations in Paragraph 33 of the Second Amended Complaint, except admit that Chadbourne was a limited liability partnership with offices worldwide, including New York, New York, and Washington, D.C., that Chadbourne's New York office was the Firm's largest, and that at certain times pertinent hereto the Management Committee was composed of five male partners and also had two *ex officio* members, one of whom was female and one of whom was male. Defendants admit that on or about June 30,

2017 Chadbourne combined with Norton Rose Fulbright. Plaintiffs' allegation that Chadbourne was an "employer" under various statutes states a legal conclusion to which no responsive pleading is required.

34.    Defendants deny the allegations in Paragraph 34 of the Second Amended Complaint, except admit that Marc Alpert was a Partner at Chadbourne and was a member of the Firm's Management Committee from June 2014 to June 2016. Defendants further state that Alpert did not become a member of the Management Committee until after Campbell had joined the Firm, and that he was not a member of the Management Committee at any time during Johnson's tenure at the Firm.

35.    Defendants deny the allegations in Paragraph 35 of the Second Amended Complaint, except admit that Giaccia was the Managing Partner of Chadbourne and a member of the Firm's Management Committee, and that since Chadbourne combined with Norton Rose Fulbright Giaccia has been Vice Chair of Norton Rose Fulbright US LLP's Management Committee.

36.    Defendants deny the allegations in Paragraph 36 of the Second Amended Complaint, except admit that Abbe Lowell was the Head of the Litigation practice group at Chadbourne, and since Chadbourne combined with Norton Rose Fulbright Lowell has been the Co-head of Regulations, Investigations, Securities and Compliance for Norton Rose Fulbright US LLP and is the Global Co-Head of Regulatory and Investigations for Norton Rose Fulbright.

37.    Defendants deny the allegations in Paragraph 37 of the Second Amended Complaint, except admit that Lawrence Rosenberg was a Partner at Chadbourne and a member

of the Firm's Management Committee, and since Chadbourne combined with Norton Rose Fulbright Rosenberg has been a partner in Norton Rose Fulbright US LLP's Corporate, Mergers and Acquisitions, and Securities practice.

38. Defendants deny the allegations in Paragraph 38 of the Second Amended Complaint, except admit that Howard Seife was a Partner at Chadbourne and a member of the Firm's Management Committee, and admit that since Chadbourne combined with Norton Rose Fulbright Seife has been a member of Norton Rose Fulbright's Global Executive Committee.

39. Defendants deny the allegations in Paragraph 39 of the Second Amended Complaint, except admit that Paul Weber was a Partner at Chadbourne and a member of the Firm's Management Committee, and that since Chadbourne combined with Norton Rose Fulbright Weber has been a Partner in Norton Rose Fulbright US LLP's Project Finance practice.

## IV.   AS TO AND AS CONCERNING THE "JURISDICTION AND VENUE"

40. Defendants deny the allegations in Paragraph 40 of the Second Amended Complaint.

41. Defendants deny the allegations in Paragraph 41 of the Second Amended Complaint, except admit that venue is proper in this Court and that Chadbourne transacted a substantial portion of its business in New York and had its largest office in this District, that Chadbourne sent Plaintiffs their offer letters from New York, and that Norton Rose Fulbright transacts business in New York.

42. Defendants deny the allegations in Paragraph 42 of the Second Amended Complaint.

43. Defendants admit the allegations in Paragraph 43 of the Second Amended Complaint.

## V.     AS TO AND AS CONCERNING THE "FACTUAL ALLEGATIONS"

44. Defendants admit the allegations in Paragraph 44 of the Second Amended Complaint.

45. Defendants deny the allegations in Paragraph 45 of the Second Amended Complaint, except to admit that Campbell previously worked at Collier Shannon and Manatt, Phelps, and Phillips, LLC, and that she purports to practice law in the areas of consumer product safety and defamation/product disparagement.

46. Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 46 of the Second Amended Complaint as to why Campbell left or had to leave her prior law firm.

47. Defendants admit the allegations in Paragraph 47 of the Second Amended Complaint.

48. Defendants admit the allegations in Paragraph 48 of the Second Amended Complaint, except refer to Campbell's November 26, 2013 offer letter for the true and complete contents thereof.

49. Defendants deny the allegations in Paragraph 49 of the Second Amended Complaint.

50. Defendants deny the allegations in Paragraph 50 of the Second Amended Complaint, except admit that Campbell joined the Firm on or about January 8, 2014 and that Campbell opened multiple billable indexes under the names of various clients, which varied in

size and significance, and deny having knowledge or information sufficient to form a belief as to whether clients praised the quality of Campbell's work, and further state, as more particularly set forth in Paragraph 2 of this Answer, that Campbell did not perform "exceptionally well" at Chadbourne and in fact:

    a.   Did not generate the revenue alleged by her in the Second Amended Complaint, or even the revenue levels to which her compensation was tied in her offer letter from Chadbourne.

    a.   Has blatantly misstated her compensation arrangements with Chadbourne in the Second Amended Complaint.

    b.   Sought to claim ordinary client expense reimbursements as fee revenue generated by her.

    c.   Represented that she would be bringing to the Firm a defamation matter for a high net-worth individual when in fact the client refused to work with Campbell because of his dissatisfaction with how she previously handled his case. The matter remained at the Firm only because of the efforts of Lowell, who (at Campbell's request) traveled overseas to establish a relationship with the client so that the case could be handled by the Firm. During the trip abroad and after, the client made clear to Chadbourne that he did not want Campbell to work on his case or to be billed for her time. Notwithstanding this request, the Firm and Lowell permitted billing partner statistics on the case to be attributed entirely to Campbell. This matter—on which the client made clear that he *did not want*

16

*Campbell involved*—comprised approximately $1,522,000 of the $2,155,000 in billings for which Campbell had credit for the year 2014.

d. Demonstrated deficiencies in her practice management soon after her arrival. Campbell became notorious among associates in the Litigation Department (both male and female) for giving false deadlines, disappearing and being incommunicado for days or weeks at a time, and creating unnecessary last-minute fire drills for routine court filings. To the extent Campbell communicated with associates, they complained that her instructions were inconsistent and confusing and wasted a lot of time for them and for clients.

e. Insisted that the Firm hire an associate from her prior firm as Counsel, and then immediately refused to work with him.

f. Exhibited questionable legal judgment. For example, she sought to pursue a legal theory or strategy on a matter that did not appear supportable or correct to any of the multiple attorneys who reviewed it, and then repeatedly demanded that new associates be assigned to re-do the work in the hopes of getting a different answer after each associate reported that the approach Campbell proposed could not reasonably be advanced. Campbell repeatedly criticized the associates with whom she worked to others in the Litigation Department, and complained that the work product she received was "unusable." Campbell's wasteful use of associate time led to a number of write-offs. On at least one occasion, an attorney approached Firm management in this situation out of concern that he would be subject to sanctions had he advocated for Campbell's position.

g. Despite numerous efforts by the Firm's litigation department manager and its director of legal personnel and associate recruiting, refused to use the network of support that the Firm provides to all partners to secure them appropriate associate and counsel staffing for client matters. When Campbell did make her needs known through departmental channels, those needs were immediately addressed. Over time, more attorneys expressed reluctance to be staffed on or work with Campbell.

h. Frequently contacted Lowell and Litigation Department administration with frantic last-minute staffing needs, but when associates were assigned to Campbell's "urgent" matters, they would reach out to Campbell for days without receiving any response. Campbell would schedule phone calls only to fail to make herself available to tell the associates what it was that she needed. Campbell frequently would only surface shortly before work product was due to the client or in court. Campbell was also often absent from the office, making it even more difficult for associates to communicate with her.

i. Arrived at a Firm event already inebriated, acted in a shocking and inappropriate manner toward the male fiancé of a male Chadbourne attorney, and made graphic comments to a male Chadbourne attorney while at the event.

j. During an out-of-town trial, displayed poor judgment with respect to the use of alcohol in the presence of a client between trial days.

51. Defendants deny the allegations in Paragraph 51 of the Second Amended Complaint, except admit that Campbell was a member of the *Law 360 Media & Entertainment*

18

Editorial Advisory Board and was listed in the publication "Best Lawyers in America" in the category of First Amendment Litigation**,** and admit that Campbell testified before the United States Consumer Product Safety Commission.

52.  Defendants admit the allegations in Paragraph 52 of the Second Amended Complaint, and further state that the Firm has a Management Committee consisting of 5 members elected directly by the partners to serve two-year terms, other than the Managing Partner who is elected by the partners to serve a three-year term.

53.  Defendants deny the allegations in Paragraph 53 of the Second Amended Complaint, except admit that under the Firm's Partnership Agreement the Management Committee was "vested with all the powers of the partners in the management of the business of the firm and to make and carry out all decisions necessary therefor" (with certain defined limited exceptions, which exceptions include the approval of mergers with any other law firm, which would require a partnership vote), which decisions included the setting of partner compensation, and that the Management Committee exercised the powers given to it as may have been useful or necessary in particular situations.

54.  Defendants deny the allegations in Paragraph 54 of the Second Amended Complaint, except admit that, for their mutual benefit and protection as co-owners of the Firm sharing in profits and losses, all partners without regard to gender were subject to ordinary and commonly-used client-matter intake policies or procedures, including as to billing arrangements, collections, and write-offs.

55.  Defendants deny the allegations in Paragraph 55 of the Second Amended Complaint except admit that Campbell, and all other equity partners of Chadbourne, were

encouraged (but never required) to submit annual year-end memoranda describing a wide variety of matters concerning themselves and other partners for the Management Committee's consideration in setting compensation, as more particularly discussed in Paragraph 13 of this Answer.

56.     Defendants deny the allegations in Paragraph 56 of the Second Amended Complaint, except admit that Giaccia denied Campbell's requests that the Firm create and name her chair of what would have been a one-person Consumer Product Safety & Risk Management practice "group" or a one-person Reputation Protection and Defamation practice "group."

57.     Defendants deny the allegations in Paragraph 57 of the Second Amended Complaint, except admit that Campbell agreed to receive 500 points as a partner upon her arrival at Chadbourne.  Those points reflected Chadbourne's sense of Campbell's prior performance. Defendants deny having knowledge or information sufficient to form a belief as to what Campbell's collections truly were at Manatt.  Far from having "the deck stacked against her" from her start, the Firm permitted the billing partner statistics for a matter to be attributed to Campbell for a case that generated over a million and a half dollars in fees that the client did not want to assign to her or use her.

58.     Defendants deny the allegations in Paragraph 58 of the Second Amended Complaint, and state that the points level of partners who had been at the Firm for decades were not simply "awarded" but rather earned based on a wide assortment of relevant factors and years of demonstrated performance that go far beyond billable partner collections for the prior year, as more particularly discussed in Paragraph 13 of this Answer.  Defendants

additionally state that Campbell possessed neither the experience nor the professional reputation of ███████████ and never made even remotely the same quality of contributions to the Firm and its clients as ███████████ made over his many years with the Firm, and any suggestion in Paragraph 58 that the two are in any way comparable is denied and indeed absurd.

59.   Defendants deny the allegations in Paragraph 59 of the Second Amended Complaint, and state that the points level of partners who have been at the Firm for decades were not simply "awarded" but rather earned based on a wide assortment of relevant factors and years of demonstrated performance that go far beyond billable partner collections for the prior year, as more particularly discussed in Paragraph 13 of this Answer.  Defendants further state that the allegations in Paragraph 59 of the Second Amended Complaint misstate the compensation process and the scope of partner contributions that are evaluated in it (as discussed more particularly in Paragraph 13 of this Answer), and are premised on a false portrayal of Campbell's own contributions.

60.   Defendants deny the allegations in Paragraph 60 of the Second Amended Complaint, except admit that Campbell asked for a substantial points increase, to which Giaccia responded that Campbell was new to the Firm and had not demonstrated her ability to generate revenue, as she generated in the year 2014 far less than the $2.5 million she alleges. He also pointed out to her, as she ignores, that the Firm had permitted her to be attributed billing partner statistics for a large case for which she would otherwise not have earned any credit.

61.     Defendants deny the allegations in Paragraph 61 of the Second Amended Complaint, except admit that the Management Committee determined whether a partner would be awarded a bonus, and in what amount, without regard to the gender of the partner.

62.     Defendants deny the allegations in Paragraph 62 of the Second Amended Complaint, except admit that for the years 2014, 2015 and 2016 Campbell did not receive a discretionary merit bonus from Chadbourne, in view of her overall performance in those years. She was far from "one of the Firm's top performers."

63.     Defendants deny the allegations in Paragraph 63 of the Second Amended Complaint, and with respect to her alleged "exemplary performance" refer to the affirmative averments in Paragraph 50 of this Answer.

64.     Defendants deny the allegations in Paragraph 64 of the Second Amended Complaint, except Defendants deny having knowledge or information sufficient to form a belief as to Campbell's actual collections at Manatt.

65.     Defendants deny the allegations in Paragraph 65 of the Second Amended Complaint, and further state that Campbell was never one of the highest business-generating partners or one of the most productive partners in the Firm.

66.     Defendants deny the allegations in Paragraph 66 of the Second Amended Complaint, except admit that despite her first-year performance, the Firm permitted the billing partner statistics for the case that was salvaged by Lowell (see ¶ 50, supra) to be attributed to Campbell so as to allow her to appear to meet the thresholds set in her offer letter from the Firm, and that Campbell's points for 2015 were set in accordance with the 550-point level specified in her offer letter.

67. Defendants deny the allegations in Paragraph 67 of the Second Amended Complaint.

68. Defendants deny the allegations in Paragraph 68 of the Second Amended Complaint, and state that Campbell received all the compensation for 2014 for which the Firm had contracted in its offer letter to her, which far exceeded ███████████████ and refer to the terms of Campbell's offer letter for the true and complete contents thereof.

69. Defendants deny the allegations in Paragraph 69 of the Second Amended Complaint, and refer to the affirmative averments in Paragraph 50 of this Answer regarding how billing partner statistics were attributed to Campbell for a large case that she did not actually bring to the Firm.

70. Defendants deny the allegations in Paragraph 70 of the Second Amended Complaint, except admit that Campbell requested both in her year-end memorandum and in a meeting with the Management Committee an increase in her points to ██ points, an increase that was not warranted because Campbell had not demonstrated an ability to generate significant revenue at Chadbourne or to otherwise contribute at a higher level.

71. Defendants deny the allegations in Paragraph 71 of the Second Amended Complaint, except admit that Campbell requested of Giaccia an increase in her points that was not warranted given her contributions in 2014, and also requested a position in leadership that likewise was not merited.

72. Defendants deny the allegations in Paragraph 72 of the Second Amended Complaint, except admit that Giaccia told Campbell that she would not receive the substantial additional points she requested for the 2015 year because she had not demonstrated an ability

to reliably generate annual revenue at Chadbourne at the level that would warrant such an increase, and that Campbell's attempt to compare herself with another lateral partner with a very different professional history and Firm responsibilities than Campbell's, and whose compensation was governed by a significantly different agreement with the Firm, were inappropriate.

73.     Defendants deny the allegations in Paragraph 73 of the Second Amended Complaint.

74.     Defendants deny the allegations in Paragraph 74 of the Second Amended Complaint.

75.     Defendants deny the allegations in Paragraph 75 of the Second Amended Complaint, except admit that the Management Committee was authorized under the Firm's Partnership Agreement to set partner compensation.

76.     Defendants deny the allegations in Paragraph 76 of the Second Amended Complaint.

77.     Defendants deny the allegations in Paragraph 77 of the Second Amended Complaint, except state that all write-offs relating to the referenced matter were made in full compliance with the Firm's usual procedures for obtaining approvals for write-offs, and for reasons that had nothing to do with Campbell, and refer to the terms of Campbell's offer letter for the true and complete contents thereof.

78.     Defendants deny the allegations in Paragraph 78 of the Second Amended Complaint, except state that all write-offs relating to the referenced matter(s) were made in full compliance with the Firm's usual procedures for obtaining approvals for write-offs, and for

reasons that had nothing to do with Campbell, and refer to the terms of Campbell's offer letter for the true and complete contents thereof.

79.    Defendants deny the allegations in Paragraph 79 of the Second Amended Complaint, except state that Lowell and Giaccia made substantial efforts to meet Campbell's staffing needs.  As described in Paragraph 50 above, Campbell refused to use the Litigation Department's process for staffing her cases, only to then complain about not getting adequate support from the department.  And when given such support, Campbell created case management issues for almost every attorney assigned to her cases.  Even then, Lowell and the Firm administrative personnel found ways to staff Campbell's cases, often in the face of written and orally communicated strong resistance from attorneys who had worked with Campbell in the past. Defendants additionally state that Giaccia as Managing Partner did not ordinarily get involved in staffing logistics, and any involvement of his in this regard here resulted from the increasingly urgent concerns expressed by associates and staff about Campbell's mismanagement of cases.

80.    Defendants deny the allegations in Paragraph 80 of the Second Amended Complaint, except refer to the terms of the referenced documents and publications for the true and complete contents thereof, and further state that the Firm provided support for Campbell's practice in the Litigation Department as it had done for female and male partners in litigation and other practice areas; included her practice in planning and meetings; and provided Campbell with business development support when it was requested.  During the course of such activities, Campbell took business trips and made other marketing efforts at the Firm's expense at her discretion and with administrative support from the Firm's marketing personnel.

81.     Defendants deny the allegations in Paragraph 81 of the Second Amended Complaint, except admit that Giaccia denied Campbell's requests that the Firm create and name her chair of a one-person Consumer Product Safety & Risk Management practice "group" or a one-person Reputation Protection and Defamation practice "group," and that female as well as male partners served as practice group leaders at Chadbourne.

82.     Defendants deny the allegations in Paragraph 82 of the Second Amended Complaint, except state that another litigation partner had the office next to Campbell's, and that requests from associates to move offices are accommodated where possible.  Campbell was not the "sole remaining female Partner in the Litigation Department in the D.C. office."

83.     Defendants deny the allegations in Paragraph 83 of the Second Amended Complaint.

84.     Defendants deny the allegations in Paragraph 84 of the Second Amended Complaint, except admit that Giaccia and Lowell informed Campbell that the Management Committee in the course of year-end compensation deliberations had determined that her practice did not fit with Chadbourne, that it would be best for her if she would work to transition her practice to another firm, and that they recommended that she do so, with the expectation that she could transition out by August 31, 2016, more than six months later, and that the only month in 2016 in which Campbell ever billed more than 200 hours — or indeed more than 70 hours — was January 2016.  Giaccia's efforts were intended to give Campbell the time and support needed to find a position better matched to her practice and to make clear that the Firm wanted her transition to another firm to be her priority for the next six months, which should have been ample time to accomplish a move.

85.     Defendants deny the allegations in Paragraph 85 of the Second Amended Complaint.

86.     Defendants deny the allegations in Paragraph 86 of the Second Amended Complaint.  Indeed, Campbell sought new business after the meeting and submitted requests for conflict checks.  Giaccia sought to give Campbell the time and support needed to find a position better matched to her practice and to make clear that the Firm did not think she should prioritize seeking new business at the expense of finding that better-matched position.

87.     Defendants deny the allegations in Paragraph 87 of the Second Amended Complaint, and state that Campbell was not "discharged" from the Firm, and remained a partner of the Firm until she was expelled from the Chadbourne partnership by a vote of the Firm's partners in April 2017, and was never the only female litigation partner in the Firm's D.C. office.

88.     Defendants deny the allegations in Paragraph 88 of the Second Amended Complaint, except admit that Campbell sent Giaccia an email on February 23, 2016, and refer to the terms of that e-mail for the true and complete the contents thereof.

89.     Defendants deny the allegations in Paragraph 89 of the Second Amended Complaint, except admit that Giaccia sent Campbell an email on February 25, 2016, and refer to the terms of that e-mail for the true and complete the contents thereof.

90.     Defendants deny the allegations in Paragraph 90 of the Second Amended Complaint, except admit that Campbell met with Chadbourne's Management Committee on March 29, 2016 and that Chadbourne's Chief Operating Officer, Lisa Palestine, was present because she routinely participated in Management Committee meetings as part of her position.

91. Defendants deny the allegations in Paragraph 91 of the Second Amended Complaint, and state that Campbell generated less than half of the amount she asserts in Paragraph 91.

92. Defendants deny the allegations in Paragraph 92 of the Second Amended Complaint.

93. Defendants deny the allegations in Paragraph 93 of the Second Amended Complaint, except admit that on April 1, 2016 Campbell met with Giaccia in Washington D.C., with Alpert on the speakerphone from New York, told Campbell that the Management Committee did not intend to revisit its decision, and discussed certain financial proposals tied to Campbell's possible departure from the Firm by certain dates. Campbell was not *required* to leave the Firm by the end of August 2016, and indeed remained at the Firm as a partner up until her expulsion from the Chadbourne partnership in April 2017.

94. Defendants deny the allegations in Paragraph 94 of the Second Amended Complaint, except admit that Giaccia told Campbell that he wished to support her ability to transition from the Firm and reminded her that this should be a priority. Campbell did not appear to be making significant efforts to make a transition. Campbell advised Giaccia that she had been ill and consequently had not pursued a transition very extensively.

95. Defendants deny the allegations in Paragraph 95 of the Second Amended Complaint, except admit that as an explanatory note for not listing Campbell's shares and points on an April 6, 2016 memorandum circulated only to partners of the Firm, the phrase "partner in transition" appeared by Campbell's name (as it did for other partners), but that at all times before Campbell's fellow partners voted to expel her from the Chadbourne partnership in

28

April 2017 Campbell was an equity partner of the Firm holding shares and points, and, as such, was required to make all mandatory payments required of partners of the Firm in the same manner as all other equity partners. Until and including the very day when Campbell was expelled by vote from the Chadbourne partnership in April 2017, Campbell even attended Firm and partner meetings despite her allegation that she previously had been "terminat[ed]" from the Partnership in April 2016.

96.     Defendants deny the allegations in Paragraph 96 of the Second Amended Complaint, and state that Campbell remained an equity partner of Chadbourne until her fellow partners voted to expel her from the Chadbourne partnership in April 2017, and refer to the terms of the Firm's Partnership Agreement for the true and complete contents thereof.

97.     Defendants deny the allegations in Paragraph 97 of the Second Amended Complaint, except admit that Giaccia sent Campbell an e-mail on April 13, 2016 and refer to the terms of that e-mail for the true and complete contents thereof.

98.     Defendants deny the allegations in Paragraph 98 of the Second Amended Complaint but admit that Giaccia on several occasions inquired about Campbell's transition efforts in view of the August 31, 2016 goal that previously had been articulated.

99.     Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 99 of the Second Amended Complaint, except deny that there was any "discriminatory termination of [Campbell's] employment," as she was never a Chadbourne employee and was an equity partner of Chadbourne up until she was expelled from the Chadbourne partnership by a vote of the Firm's partners in April 2017.

100.  Defendants deny the allegations in Paragraph 100 of the Second Amended Complaint and state that Giaccia exchanged a number of emails with Campbell after August 2016 relating to staffing and other client issues.  On each occasion, Campbell took a considerable period to respond and mostly wrote emails to mischaracterize Giaccia's communications in an effort to support retaliation claims she was planning to assert.  The Firm (including Giaccia and Lowell) responded to her requests for staffing on any matter and provided her staffing on the work she identified.

101.  Defendants deny the allegations in Paragraph 101 of the Second Amended Complaint, except to aver that e-mail was the preferred method of communication with Campbell since the filing of her Complaint, as she gratuitously sent a number of hostile, insulting, and unprofessional e-mails containing numerous false statements to Firm management after filing her Complaint on August 31, 2016.

102.  Defendants deny the allegations in Paragraph 102 of the Second Amended Complaint and specifically deny that Campbell has any First Amendment rights vis-à-vis a private partnership like the Firm — a basic legal principle that a lawyer like Campbell, who claims to be highly experienced in First Amendment matters, should know.

103.  Defendants deny the allegations in Paragraph 103 of the Second Amended Complaint, except state as follows: on one occasion, Lowell observed what he deemed an offensive picture that had been posted outside of Campbell's office in a hallway, either by Campbell herself or some other unknown person, which he removed from the wall as being inappropriate for a professional environment.  On or about the following day he observed a different picture (smiley face) posted outside (not inside) of Plaintiff's office in this same

hallway (again posted either by Campbell herself or some other unknown person), and also observed a third picture (a man) on the floor in that hallway with tape on it that appeared to have fallen off the wall, whereupon Lowell re-taped the fallen picture back onto the wall from which it appeared to have fallen. Shortly thereafter, Lowell concluded that such postings in the office hallways were inappropriate for a professional environment and therefore returned and removed all of the pictures and possibly a card with a Nelson Mandela quote. In addition, Campbell mounted a secret camera that recorded only an act of office management that occurred entirely when she was away from her office, and not an act of retaliation.

104. Defendants deny having knowledge or information sufficient to form a belief regarding the allegations in Paragraph 104 of the Second Amended Complaint, except refer to the affirmative averments of Paragraph 103 of this Answer.

105. Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 105 of the Second Amended Complaint, except refer to the affirmative averments of Paragraph 103 of this Answer.

106. Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 106 of the Second Amended Complaint, except refer to the affirmative averments of Paragraph 103 of this Answer.

**B. Johnson's Allegations**

107. Defendants admit the allegations in Paragraph 107 of the Second Amended Complaint, except deny having knowledge or information sufficient to form a belief as to whether Johnson served as the "first female editor-in-chief of the *Wisconsin Law Review.*"

108.  Defendants admit the allegations in Paragraph 107 of the Second Amended Complaint.

109.  Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 109 of the Second Amended Complaint, except admit that Johnson has practiced law for more than 35 years on a variety of transactional matters.

110.  Defendants deny the allegations in Paragraph 110 of the Second Amended Complaint, except admit that Johnson was previously a partner at the Kiev office of Altheimer & Gray, and that Johnson joined Chadbourne as Altheimer was closing down its operations.  Defendants deny having knowledge or information sufficient to form a belief as to the additional allegations in this Paragraph.

111.  Defendants admit the allegations in Paragraph 111 of the Second Amended Complaint.

112.  Defendants deny the allegations in Paragraph 112 of the Second Amended Complaint, except admit that Johnson became a partner at Chadbourne in 2003.

113.  Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 113 of the Second Amended Complaint, except admit that Johnson was recognized by *Chambers Global* and *IFLR 1000*, and refer to the referenced publications for the true and complete contents thereof.

114.  Defendants deny the allegations in Paragraph 114 of the Second Amended Complaint, except admit that Johnson led the Kiev office for ten years, during which time she managed a number of attorneys and support staff, and that she was responsible for $5 million

in collections in 2008.  With regard to her collections, Johnson has admitted in press interviews that she "was not a rainmaker at Chadbourne."[2]

115.  Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 115 of the Second Amended Complaint, except admit that upon information and belief Johnson was appointed by President Clinton to the Western NIS Enterprise Fund and now serves as its President and Chief Executive Officer.

116.  Defendants deny the allegations in Paragraph 116 of the Second Amended Complaint.

117.  Defendants deny the allegations in Paragraph 117 of the Second Amended Complaint, except admit that the Management Committee played a role in determining the budget for the Kiev office.

118.  Defendants deny the allegations in Paragraph 118 of the Second Amended Complaint, except admit that the Management Committee decided to close the Kiev office in 2014 in light of the unprofitability of that office, and that it told Johnson that it was closing the office in or around April 2014.

119.  Defendants deny the allegations in Paragraph 119 of the Second Amended Complaint, except admit that Johnson was never awarded more than 675 points during her tenure at Chadbourne.

---

[2] Brian Baxter, *Ex-Chadbourne Partner Discusses Decision to Join Gender Bias* Suit (The American Lawyer, Oct. 18, 2016), available at: http://www.americanlawyer.com/id=1202770213905/ExChadbourne-Partner-Discusses-Decision-to-Join-Gender-Bias-Suit?slreturn=20160930132903.

120. Defendants deny the allegations in Paragraph 120 of the Second Amended Complaint, except admit that Johnson had 450 points for the year 2013, 525 points in 2012, and that Johnson's collections totaled $1,465,000 as billing partner for the year 2012.

121. Defendants deny the allegations in Paragraph 121 of the Second Amended Complaint.

122. Defendants deny the allegations in Paragraph 122 of the Second Amended Complaint.

123. Defendants admit the allegations in Paragraph 123 of the Second Amended Complaint.

124. Defendants deny the allegations in Paragraph 124 of the Second Amended Complaint, except admit that Johnson was responsible for over $1.4 million in collections for 2012, and admit that Johnson engaged in managerial and business activities in 2013.

125. Defendants deny the allegations in Paragraph 125 of the Second Amended Complaint.

126. Defendants deny the allegations in Paragraph 126 of the Second Amended Complaint, except admit that Johnson had 525 points in 2012, 450 points in 2013, and that she was responsible for over $1.4 million in collections in 2012.

127. Defendants deny the allegations in Paragraph 127 of the Second Amended Complaint.

128. Defendants admit the allegations in Paragraph 128 of the Second Amended Complaint, and state that Johnson knew that the office had been doing poorly for quite some time, and did not question the obvious decision that was made in difficult political

circumstances but rather questioned why the Firm was not also closing its Moscow office.  The

Management Committee informed the full partnership about its decision to close the Kiev

office within a few weeks after Johnson was informed.

129.  Defendants deny the allegations in Paragraph 129 of the Second Amended

Complaint, except admit that Johnson transitioned from Partner to Senior Counsel at her

request at the beginning of 2014.

### C. Yelenick's Allegations

130.  Defendants admit the allegations in Paragraph 130 of the Second Amended

Complaint.

131.  Defendants admit the allegations in Paragraph 131 of the Second Amended

Complaint.

132.  Defendants deny the allegations in Paragraph 132 of the Second Amended

Complaint, except admit that Yelenick spent more than 35 years at Chadbourne and that she,

along with numerous other attorneys, represented and advised companies in products liability

litigation and trials, including certain large and/or complex matters for major clients of other

partners in the Firm such as Purdue Pharma, the American Tobacco Company and Jim Beam.

Defendants admit that toward the end of her time at Chadbourne Yelenick was co-chair (along

with a more senior partner) of the Firm's Products Liability group for several years.

133.  Defendants deny the allegations in Paragraph 133 of the Second Amended

Complaint, except that admit that Yelenick has at times been recognized in the publications

listed in Paragraph 133 and admit that Yelenick has at times spoken at legal conferences and

moderated panels on products liability issues. Defendants refer Plaintiffs to the referenced rankings for the true and correct contents thereof.

134. Defendants deny the allegations in Paragraph 134 of the Second Amended Complaint, except admit that the Litigation Department was one of Chadbourne's largest departments.

135. Defendants deny the allegations in Paragraph 135 of the Second Amended Complaint, and state that Yelenick has grossly overstated her generation and collection of revenues and her origination of matters and clients for the Firm, particularly in relation to the contributions of other partners, both male and female.

136. Defendants deny the allegations in Paragraph 136 of the Second Amended Complaint.

137. Defendants deny the allegations in Paragraph 137 of the Second Amended Complaint, except admit that Yelenick retired from the Firm's partnership on December 31, 2016 and elected to remain at the Firm in an "Of Counsel" role following her retirement but did not bill any time to client work at Chadbourne while in that "Of Counsel" role, and has held the title of "Of Counsel" at Norton Rose Fulbright US LLP since Chadbourne's combination with Norton Rose Fulbright on or about June 30, 2017.

138. Defendants deny the allegations in Paragraph 138 of the Second Amended Complaint, except admit that at certain times pertinent hereto the Management Committee was composed of five male partners and also had two *ex officio* members, one of whom was female and one of whom was male.

139.  Defendants deny the allegations in Paragraph 139 of the Second Amended complaint.

140.  Defendants deny the allegations in Paragraph 140 of the Second Amended Complaint, except admit that information regarding potential firm mergers was not shared with the partnership at large during all stages of those discussions.

141.  Defendants deny the allegations in Paragraph 141 of the Second Amended Complaint.

142.  Defendants deny the allegations in Paragraph 142 of the Second Amended Complaint.

143.  Defendants deny the allegations in Paragraph 143 of the Second Amended Complaint and refer to the affirmative averments in ¶ 20 of this Answer.

144.  Defendants deny the allegations in Paragraph 144 of the Second Amended Complaint and refer to the affirmative averments in ¶ 132 of this Answer.

145.  Defendants deny the allegations in Paragraph 145 of the Second Amended Complaint.

146.  Defendants deny the allegations in Paragraph 146 of the Second Amended Complaint, and state that Alpert prior to his departure consulted with the clients he had managed about which partners would assume the billing partner responsibilities for those relationships.  The result of those consultations was that responsibilities were given to those partners, both male and female, who had worked most closely with those clients along with Alpert over the years.

147.  Defendants deny the allegations in Paragraph 147 of the Second Amended Complaint.

148.  Defendants deny the allegations in Paragraph 148 of the Second Amended Complaint, which grossly overstates Yelenick's performance at the Firm, and states that Yelenick's points levels increased and decreased at various times in accordance with the Management Committee's assessment of all aspects of her performance.

149.  Defendants deny the allegations in Paragraph 149 of the Second Amended Complaint and further state that the male partner to whom Yelenick seeks to compare herself is clearly very different from her, and is himself unique in his contributions to the Firm.  The male partner referenced was a corporate mergers and acquisitions ("M&A") partner who served as the lead M&A counsel on projects originated by Chadbourne's Project Finance group, which was a premier practice at the Firm.

150.  Defendants deny the allegations in Paragraph 150 of the Second Amended Complaint.

151.  Defendants deny the allegations in Paragraph 151 of the Second Amended Complaint, except admit that the Management Committee decreased Yelenick's points from 525 in 2014 to 475 in 2015 and that $1.25 million was collected on matters on which Yelenick was the responsible (not billing or originating) partner in 2014.

152.  Defendants deny the allegations in Paragraph 152 of the Second Amended Complaint.

153.  Defendants admit the allegations in Paragraph 153 of the Second Amended Complaint.

154. Defendants deny the allegations in Paragraph 154 of the Second Amended Complaint, except admit that Yelenick informed Langford that she would not sign the proposed letter.

155. Defendants deny the allegations in Paragraph 155 of the Second Amended Complaint, except admit that Yelenick received a message from Lowell. Defendants lack knowledge or information sufficient to form a belief as to the allegations in the last sentence of this Paragraph.

156. Defendants deny the allegations in Paragraph 156 of the Second Amended Complaint, except admit that, at the request of some of the Firm's female partners, female partners were invited to a meeting at Chadbourne's New York office after the date on which the letter by female partners was signed, to discuss the lawsuit, and that Yelenick need not participate by phone. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 156.

157. Defendants deny the allegations in Paragraph 157 of the Second Amended complaint, except deny having knowledge or information sufficient to form a belief as to why Yelenick did not sign the letter.

158. Defendants deny the allegations in Paragraph 158 of the Second Amended Complaint, except admit that after Yelenick joined this action Chadbourne issued a press statement that stated, *inter alia*, that her claims were "erroneous, self-serving, and baseless," which they are, and refers to the press statement for the true and complete contents thereof.

159. Defendants deny the allegations in Paragraph 159 of the Second Amended Complaint except admit that Chadbourne combined with Norton Rose Fulbright on or about

June 30, 2017.  The allegation that Norton Rose Fulbright is a "merged successor firm" is a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 159 of the Second Amended Complaint.

160.  Defendants deny the allegations in Paragraph 160 of the Second Amended Complaint, except admit that Norton Rose Fulbright and Chadbourne announced their intent to combine many months after the initial complaint in this action was filed and began receiving attention from various media outlets, and admit that on February 25, 2017, Plaintiffs' counsel informed Chadbourne's counsel of Plaintiffs' intent to file an Amended Complaint against Norton Rose Fulbright.

161.  Defendants deny the allegations in Paragraph 161 of the Second Amended Complaint, except admit that Chadbourne and Norton Rose Fulbright combined on June 30, 2017, more than two months after the Chadbourne partners had voted to expel Campbell from the Chadbourne partnership in April 2017.

162.  The first two sentences of Paragraph 162 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations in the first two sentences of Paragraph 162.  Defendants deny the remaining allegations in Paragraph 162, except state that a number of former Chadbourne lawyers and staff became associated with Norton Rose Fulbright, that Norton Rose Fulbright occupies space formerly occupied by Chadbourne in several offices, and that certain individuals who held leadership positions at Chadbourne now hold leadership positions at Norton Rose Fulbright.

163.  The allegations contained in Paragraph 163 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 163, and deny having knowledge or information sufficient to form a belief as to the allegations concerning Norton Rose Fulbright's 2016 revenues.

## VI.  AS TO AND CONCERNING "ALLEGATIONS OF SYSTEMIC GENDER DISCRIMINATION AGAINST FEMALE PARTNERS"

164.  Defendants incorporate their denials from previous paragraphs of their Answer as a denial of the allegations in Paragraph 164 of the Second Amended Complaint.

165.  Defendants deny the allegations in Paragraph 165 of the Second Amended Complaint, except admit that at times the Management Committee made decisions about the Firm in accordance with its duties and its delegated authority from the Firm's partners (including Plaintiffs) as set forth in the Chadbourne Partnership Agreement they (including Plaintiffs) all signed.

166.  Defendants deny the allegations in Paragraph 166 of the Second Amended Complaint, except admit that since the Managing Partner position was created by an amendment to the Firm's partnership agreement in 2001, the Firm only had two Managing Partners, each elected by the Firm's partners, both of whom were male.

167.  Defendants deny the allegations in Paragraph 167 of the Second Amended Complaint, except admit that a partner's percentage ownership in the Firm determined the percentage value of his or her vote.

168.  Defendants deny the allegations in Paragraph 168 of the Second Amended Complaint.

169.  Defendants deny the allegations in Paragraph 169 of the Second Amended Complaint.

170.  Defendants deny the allegations in Paragraph 170 of the Second Amended Complaint.

171.  Defendants deny the allegations in Paragraph 171 of the Second Amended Complaint, except admit that Chadbourne did not have any committee called the "Partner compensation committee" or "executive committee" that existed alongside the Management Committee that was established by the partnership agreement that the Firm's partners (including the Plaintiffs) all signed.

172.  Defendants deny the allegations in Paragraph 172 of the Second amended Complaint.

173.  Defendants deny the allegations in Paragraph 173 of the Second Amended Complaint, except admit that the Management Committee set partner compensation as authorized by the Firm's Partnership Agreement.  Defendants refer Plaintiffs to Chadbourne's Partnership Agreement for the true and complete contents thereof.

174.  Defendants deny the allegations in Paragraph 174 of the Second Amended Complaint, except admit that Chadbourne utilized a "point" or "share" system, and refer to the affirmative averments of ¶ 13 of this Answer.

175.   The allegations in Paragraph 175 comprise only a partial sentence, to which no responsive pleading is required.

176.  Defendants deny the allegations in Paragraph 176 of the Second Amended Complaint, except admit that the Management Committee made decisions regarding the distribution of profits for Chadbourne's partners.

177.  Defendants deny the allegations in Paragraph 177 of the Second Amended Complaint, except admit that the number of "points" or "shares" assigned to a partner affected the amount of the distribution of profits that partner received.

178.  Defendants deny the allegations in Paragraph 178 of the Second Amended Complaint, except admit that the Management Committee encouraged (but never required) partners to submit annual year-end memoranda describing their contributions to the Firm for the Management Committee's consideration in setting compensation, including efforts to enhance revenues, as more particularly discussed in Paragraph 13 of this Answer.

179.  Defendants deny the allegations in Paragraph 179 of the Second Amended Complaint, except admit that the Management Committee did not share year-end memoranda with the general partnership.

180.  Defendants deny the allegations in Paragraph 180 of the Second Amended Complaint.

181.  Defendants deny the allegations in Paragraph 181 of the Second Amended Complaint.

182.  Defendants deny the allegations in paragraph 182 of the Second Amended Complaint.

183.  Defendants deny the allegations in Paragraph 183 of the Second Amended Complaint.

184.  Defendants deny the allegations in Paragraph 184 of the Second Amended Complaint.

185.  Defendants deny the allegations in Paragraph 185 of the Second Amended Complaint.

186.  Defendants deny the allegations in Paragraph 186 of the Second Amended Complaint.

187.  Defendants deny the allegations in Paragraph 187 of the Second Amended Complaint.

188.  Defendants deny the allegations in Paragraph 188 of the Second Amended Complaint.

189.  Defendants deny the allegations in Paragraph 189 of the Second Amended Complaint.

190.  Defendants deny the allegations in Paragraph 190 of the Second Amended Complaint.

191.  Defendants deny the allegations in Paragraph 191 of the Second Amended Complaint.

192.  Defendants deny the allegations in Paragraph 192 of the Second Amended Complaint, and further state that determinations such as "Billing Partner" and "Responsible Partner" were made by the partners who bring matters to the Firm, who were free to share their billing credit with others and/or to assign responsible partner credit to other partners.  The Management Committee rarely involved itself in determining which partner(s) should have "Billing Partner" or "Responsible Partner" status for any given matter.

193. Defendants deny the allegations in Paragraph 193 of the Second Amended Complaint.

194. Defendants deny the allegations in Paragraph 194 of the Second Amended Complaint.

195. Defendants deny the allegations in Paragraph 195 of the Second Amended Complaint.

196. Defendants deny the allegations in Paragraph 196 of the Second Amended Complaint.

197. Defendants deny the allegations in Paragraph 197 of the Second Amended Complaint.

198. Defendants deny the allegations in Paragraph 198 of the Second Amended Complaint.

199. Defendants deny the allegations in Paragraph 199 of the Second Amended Complaint.

200. Defendants deny the allegations in Paragraph 200 of the Second Amended Complaint, except admit that partner compensation at Chadbourne was determined by the Management Committee.

201. Defendants deny the allegations in Paragraph 201 of the Second Amended Complaint.

202. Defendants deny the allegations in Paragraph 202 of the Second Amended Complaint.

203. The allegations in Paragraph 203 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

204. The allegations in Paragraph 204 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

205. The allegations in Paragraph 205 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required. Defendants refer Plaintiffs to the cited ethical rules for the true and accurate contents thereof.

206. The first sentence of Paragraph 206 of the Second Amended Complaint states a legal conclusion to which no responsive pleading is required. Defendants refer Plaintiffs to Chadbourne's Discrimination, Harassment, & Retaliation Policy for the true and accurate contents thereof.

207. Defendants deny having knowledge or information sufficient to form a belief as to the allegations in Paragraph 207 of the Second Amended Complaint, except deny that Defendants discriminated or retaliated against any partners, including Plaintiffs.

## VII.    AS TO AND CONCERNING "CLASS ACTION ALLEGATIONS UNDER TITLE VII"

208. Defendants incorporate their denials from previous paragraphs of their Answer as a denial of the allegations in Paragraph 208 of the Second Amended Complaint.

209. Defendants deny the allegations in Paragraph 209 of the Second Amended Complaint, and specifically deny that any of the Plaintiffs are Class Representatives or that any Class may be maintained in this action.

210. Defendants deny the allegations in Paragraph 210 of the Second Amended Complaint.

211. Defendants deny the allegations in Paragraph 211 of the Second Amended Complaint.

212. Defendants deny the allegations in Paragraph 212 of the Second Amended Complaint.

213. Defendants deny the allegations in Paragraph 213 of the Second Amended Complaint.

214. Defendants deny the allegations in Paragraph 214 of the Second Amended Complaint.

215. Defendants deny the allegations in Paragraph 215 of the Second Amended Complaint.

216. Defendants deny the allegations in Paragraph 216 of the Second Amended Complaint.

217. Defendants deny the allegations in Paragraph 217 of the Second Amended Complaint.

218. Defendants deny the allegations in Paragraph 218 of the Second Amended Complaint.

219. Defendants deny the allegations in Paragraph 219 of the Second Amended Complaint.

220. Defendants deny the allegations in Paragraph 220 of the Second Amended Complaint.

221. Defendants deny the allegations in Paragraph 221 of the Second Amended Complaint.

222. Defendants admit the allegations in Paragraph 222 of the Second Amended Complaint.

223. Defendants deny the allegations in Paragraph 223 of the Second Amended Complaint.

224. Defendants deny the allegations in Paragraph 224 of the Second Amended Complaint.

225. Defendants deny the allegations in Paragraph 225 of the Second Amended Complaint.

226. Defendants deny that a Rule 23 Class action may be maintained in this matter or that any female Partners were ever "employed" by Chadbourne during the time when they were partners in the Firm.

227. The allegations in Paragraph 227 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

228. Defendants deny the allegations in Paragraph 228 of the Second Amended Complaint.

229. The allegations in Paragraph 229 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

230. Defendants deny the allegations in Paragraph 230 of the Second Amended Complaint.

231. Defendants deny the allegations in Paragraph 231 of the Second Amended Complaint.

232.  Defendants deny the allegations in Paragraph 232 of the Second Amended Complaint, except admit that the Management Committee made decisions regarding partner compensation.

233.  Defendants deny the allegations in Paragraph 233 of the Second Amended Complaint.

234.  Defendants deny the allegations in Paragraph 234 of the Second Amended Complaint.

235.  The allegations in Paragraph 235 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required; to the extent a response is required, Defendants deny the allegations.

236.  Defendants deny the allegations in Paragraph 236 of the Second Amended Complaint.

237.  Defendants deny the allegations in Paragraph 237 of the Second Amended Complaint; further deny that female partners are dispersed throughout the United States; and deny that female partners who had been in the Firm's international offices may be included in the proposed class.  Defendants admit that certain male and female former Chadbourne partners left Norton Rose Fulbright US LLP after Chadbourne and Norton Rose Fulbright combined on June 30, 2017.

238.  Defendants deny the allegations in Paragraph 238 of the Second Amended Complaint.

239.  Defendants deny the allegations in Paragraph 239 of the Second Amended Complaint.

240. Defendants deny the allegations in Paragraph 240 of the Second Amended Complaint.

241. Defendants deny the allegations in Paragraph 241 of the Second Amended Complaint.

242. Defendants deny the allegations in Paragraph 242 of the Second Amended Complaint.

243. Defendants deny the allegations in Paragraph 243 of the Second Amended Complaint, except admit that the purported "Class Representatives" are women who formerly were partners of Chadbourne.

244. Defendants deny the allegations in Paragraph 244 of the Second Amended Complaint.

245. Defendants deny the allegations in Paragraph 245 of the Second Amended Complaint.

246. Defendants deny the allegations in Paragraph 246 of the Second Amended Complaint.

247. Defendants deny the allegations in Paragraph 247 of the Second Amended Complaint.

248. Defendants admit that Plaintiffs are seeking the relief stated in Paragraph 248 of the Second Amended Complaint but deny that they or the purported Class are entitled to any of the relief described therein.

249. Defendants deny the allegations in Paragraph 249 of the Second Amended Complaint.

250. Defendants deny the allegations in Paragraph 250 of the Second Amended Complaint.

251. Defendants deny the allegations in Paragraph 251 of the Second Amended Complaint.

252. Defendants deny the allegations in Paragraph 252 of the Second Amended Complaint.

253. Defendants deny the allegations in Paragraph 253 of the Second Amended Complaint.

254. Defendants deny the allegations in Paragraph 254 of the Second Amended Complaint.

255. The first sentence of Paragraph 255 states a legal conclusion to which no responsive pleading is required. Defendants deny the allegations in the second sentence of Paragraph 255 of the Second Amended Complaint.

## VIII. AS TO AND AS CONCERNING THE "COLLECTIVE ACTION ALLEGATIONS UNDER THE EQUAL PAY ACT"

256. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint that Plaintiffs reference in Paragraph 256 of the Second Amended Complaint as if fully set forth herein.

257. The allegations in Paragraph 257 state a legal conclusion to which no responsive pleading is required. To the extent a response to Paragraph 257 is required, Defendants admit that Plaintiffs purport to assert claims under the statutes cited therein but deny that they are entitled to assert said claims.

258.  Defendants deny the allegations in Paragraph 258 of the Second Amended Complaint.

259.  Defendants deny the allegations in Paragraph 259 of the Second Amended Complaint.

260.  Defendants deny the allegations in Paragraph 260 of the Second Amended Complaint, except the allegation that "[c]ounts for violation of the EPA may be brought and maintained as an 'opt-in' collective action pursuant to 29 U.S.C. § 216(b)" states a legal conclusion to which no responsive pleading is required.

261.  Defendants deny the allegations in Paragraph 261 of the Second Amended Complaint.

## IX.  AS TO AND AS CONCERNING "COUNTS"

### COUNT I

262.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

263.  The allegations in Paragraph 263 state a legal conclusion to which no responsive pleading is required.

264.  Defendants deny the allegations in Paragraph 264 of the Second Amended Complaint.

265.  Defendants deny the allegations in Paragraph 265 of the Second Amended Complaint.

266.  Defendants deny the allegations in Paragraph 266 of the Second Amended Complaint.

267.  Defendants deny the allegations in Paragraph 267 of the Second Amended Complaint.

268.  Defendants deny the allegations in Paragraph 268 of the Second Amended Complaint.

269.  Defendants deny the allegations in Paragraph 269 of the Second Amended Complaint.

270.  Defendants deny the allegations in Paragraph 270 of the Second Amended Complaint.

271.  Defendants deny the allegations in Paragraph 271 of the Second Amended Complaint.

272.  Defendants deny the allegations in Paragraph 272 of the Second amended Complaint.

## **COUNT II**

273.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

274.  The allegations in Paragraph 274 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

275.  Defendants deny the allegations in Paragraph 275 of the Second Amended Complaint.

276.  Defendants deny the allegations in Paragraph 276 of the Second Amended Complaint.

277.  Defendants deny the allegations in Paragraph 277 of the Second Amended Complaint.

278.  Defendants deny the allegations in Paragraph 278 of the Second Amended Complaint.

279.  Defendants deny the allegations in Paragraph 279 of the Second Amended Complaint.

280.  Defendants deny the allegations in Paragraph 280 of the Second Amended Complaint.

281.  Defendants deny the allegations in Paragraph 281 of the Second Amended Complaint.

282.  Defendants deny the allegations in Paragraph 282 of the Second Amended Complaint.

283.  Defendants deny the allegations in Paragraph 283 of the Second Amended Complaint.

284.  Defendants deny the allegations in Paragraph 284 of the Second Amended Complaint.

## <u>COUNT III</u>

285.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

286.  Defendants deny the allegations in Paragraph 286 of the Second Amended Complaint, except admit that Campbell filed an EEOC charge relating to the Firm on June 30,

2016. The allegations concerning whether Campbell engaged in "protected activity" state a legal conclusion to which no responsive pleading is required.

287. Defendants deny the allegations in Paragraph 287 of the Second Amended Complaint.

288. Defendants deny the allegations in Paragraph 288 of the Second Amended Complaint.

289. Defendants deny the allegations in Paragraph 289 of the Second Amended Complaint.

290. Defendants deny the allegations in Paragraph 290 of the Second Amended Complaint.

291. Defendants deny the allegations in Paragraph 291 of the Second Amended Complaint.

292. Defendants deny the allegations in Paragraph 292 of the Second Amended Complaint.

293. Defendants deny the allegations in Paragraph 293 of the Second Amended Complaint.

294. Defendants deny the allegations in Paragraph 294 of the Second Amended Complaint.

## <u>COUNT IV</u>

295. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

296. Defendants deny the allegations in Paragraph 296 of the Second Amended Complaint.

297. Defendants deny the allegations in Paragraph 297 of the Second Amended Complaint.

298. Defendants deny the allegations in Paragraph 298 of the Second Amended Complaint.

299. Defendants deny the allegations in Paragraph 299 of the Second Amended Complaint.

300. Defendants deny the allegations in Paragraph 300 of the Second Amended Complaint.

301. Defendants deny the allegations in Paragraph 301 of the Second Amended Complaint.

302. Defendants deny the allegations in Paragraph 302 of the Second Amended Complaint.

## <u>COUNT V</u>

303. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

304. Defendants deny the allegations in Paragraph 304 of the Second Amended Complaint.

305. Defendants admit that Yelenick joined this action as an opt-in Plaintiff on February 27, 2017, and lack knowledge or information sufficient to form a belief as to Yelenick's motives.

306. Defendants deny the allegations in Paragraph 306 of the Second Amended Complaint.

307. Defendants deny the allegations in Paragraph 307 of the Second Amended Complaint.

308. Defendants deny the allegations in Paragraph 308 of the Second Amended Complaint.

309. Defendants deny the allegations in Paragraph 309 of the Second Amended Complaint.

310. Defendants deny the allegations in Paragraph 310 of the Second Amended Complaint.

311. Defendants deny the allegations in Paragraph 311 of the Second Amended Complaint.

312. Defendants deny the allegations in Paragraph 312 of the Second Amended Complaint.

313. Defendants deny the allegations in Paragraph 313 of the Second Amended Complaint.

## **COUNT VI**

314. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

315. Defendants deny the allegations in Paragraph 315 of the Second Amended Complaint.

316.  Defendants deny the allegations in Paragraph 316 of the Second Amended Complaint.

317.  Defendants deny the allegations in Paragraph 317 of the Second Amended Complaint.

318.  Defendants deny the allegations in Paragraph 318 of the Second Amended Complaint.

319.  Defendants deny the allegations in Paragraph 319 of the Second Amended Complaint.

320.  Defendants deny the allegations in Paragraph 320 of the Second Amended Complaint.

## COUNT VII

321.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

322.  Defendants deny the allegations in Paragraph 322 of the Second Amended Complaint.

323.  Defendants deny the allegations in Paragraph 323 of the Second Amended Complaint.

324.  Defendants deny the allegations in Paragraph 324 of the Second Amended Complaint.

325.  Defendants deny the allegations in Paragraph 325 of the Second Amended Complaint.

326. Defendants deny the allegations in Paragraph 326 of the Second Amended Complaint.

## COUNT VIII

327. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

328. Defendants deny the allegations in Paragraph 328 of the Second Amended Complaint.

329. Defendants deny the allegations in Paragraph 329 of the Second Amended Complaint.

330. Defendants deny the allegations in Paragraph 330 of the Second Amended Complaint.

331. Defendants deny the allegations in Paragraph 331 of the Second Amended Complaint.

332. Defendants deny the allegations in Paragraph 332 of the Second Amended Complaint.

## COUNT IX

333. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

334. Defendants deny the allegations in Paragraph 334 of the Second Amended Complaint except admit that Chadbourne was an employer as to certain persons but not Plaintiffs for purposes of the DCHRA.

335.  Defendants deny the allegations in Paragraph 335 of the Second Amended Complaint.

336.  Defendants deny the allegations in Paragraph 336 of the Second Amended Complaint.

337.  Defendants deny the allegations in Paragraph 337 of the Second Amended Complaint.

338.  Defendants deny the allegations in Paragraph 338 of the Second Amended Complaint.

339.  Defendants deny the allegations in Paragraph 339 of the Second Amended Complaint.

## COUNT X

340.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

341.  Defendants deny the allegations in Paragraph 341 of the Second Amended Complaint, except admit that Chadbourne was an employer as to certain persons but not Plaintiffs for purposes of the DCHRA.

342.  Defendants deny the allegations in Paragraph 342 of the Second Amended Complaint.

343.  Defendants deny the allegations in Paragraph 343 of the Second Amended Complaint.

344.  Defendants deny the allegations in Paragraph 344 of the Second Amended Complaint.

345.  Defendants deny the allegations in Paragraph 345 of the Second Amended Complaint.

346.  Defendants deny the allegations in Paragraph 346 of the Second Amended Complaint.

## COUNT XI

347.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

348.  Defendants deny the allegations in Paragraph 348 of the Second Amended Complaint, except admit that Chadbourne was an employer as to certain persons but not Plaintiffs for purposes of the DCHRA.

349.  Defendants deny the allegations in Paragraph 349 of the Second Amended Complaint.

350.  Defendants deny the allegations in Paragraph 350 of the Second Amended Complaint.

351.  Defendants deny the allegations in Paragraph 351 of the Second Amended Complaint.

352.  Defendants deny the allegations in Paragraph 352 of the Second Amended Complaint.

353.  Defendants deny the allegations in Paragraph 353 of the Second Amended Complaint.

## COUNT XII

354.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

355.  Defendants deny the allegations in Paragraph 355 of the Second Amended Complaint.

356.  Defendants deny the allegations in Paragraph 356 of the Second Amended Complaint.

357.  Defendants deny the allegations in Paragraph 357 of the Second Amended Complaint.

358.  Defendants deny the allegations in Paragraph 358 of the Second Amended Complaint.

359.  Defendants deny the allegations in Paragraph 359 of the Second Amended Complaint.

## COUNT XIII

360.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

361.  Defendants deny the allegations in Paragraph 361 of the Second Amended Complaint.

362.  Defendants deny the allegations in Paragraph 362 of the Second Amended Complaint.

363.  Defendants deny the allegations in Paragraph 363 of the Second Amended Complaint.

364.  Defendants deny the allegations in Paragraph 364 of the Second Amended Complaint.

365.  Defendants deny the allegations in Paragraph 365 of the Second Amended Complaint.

366.  Defendants deny the allegations in Paragraph 366 of the Second Amended Complaint.

## COUNT XIV

367.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

368.  Defendants deny the allegations in Paragraph 368 of the Second Amended Complaint.

369.  Defendants admit that Yelenick joined this action as an opt-in Plaintiff on February 27, 2017, and lack knowledge or information sufficient to form a belief as to Yelenick's motives.

370.  Defendants deny the allegations in Paragraph 370 of the Second Amended Complaint.

371.  Defendants deny the allegations in Paragraph 371 of the Second Amended Complaint.

372.  Defendants deny the allegations in Paragraph 372 of the Second Amended Complaint.

373.  Defendants deny the allegations in Paragraph 373 of the Second Amended Complaint.

374. Defendants deny the allegations in Paragraph 374 of the Second Amended Complaint.

## COUNT XV

375. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

376. Defendants deny the allegations in Paragraph 376 of the Second Amended Complaint.

377. Defendants deny the allegations in Paragraph 377 of the Second Amended Complaint.

378. Defendants deny the allegations in Paragraph 378 of the Second Amended Complaint.

379. Defendants deny the allegations in Paragraph 379 of the Second Amended Complaint.

## COUNT XVI

380. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

381. Defendants deny the allegations in Paragraph 381 of the Second Amended Complaint.

382. Defendants deny the allegations in Paragraph 382 of the Second Amended Complaint.

383. Defendants deny the allegations in Paragraph 383 of the Second Amended Complaint.

384. Defendants deny the allegations in Paragraph 384 of the Second Amended Complaint.

385. Defendants deny the allegations in Paragraph 385 of the Second Amended Complaint.

## COUNT XVII

386. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

387. Defendants deny the allegations in Paragraph 387 of the Second Amended Complaint.

388. Defendants deny the allegations in Paragraph 388 of the Second Amended Complaint, except admit that Plaintiff joined this action on February 27, 2017.

389. Defendants deny the allegations in Paragraph 389 of the Second Amended Complaint.

390. Defendants deny the allegations in Paragraph 390 of the Second Amended Complaint.

391. Defendants deny the allegations in Paragraph 391 of the Second Amended Complaint.

392. Defendants deny the allegations in Paragraph 392 of the Second Amended Complaint.

393. Defendants deny the allegations in Paragraph 393 of the Second Amended Complaint.

## COUNT XVIII

394.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

395.  Defendants deny the allegations in Paragraph 395 of the Second Amended Complaint.

396.  Defendants deny the allegations in Paragraph 396 of the Second Amended Complaint.

397.  Defendants deny the allegations in Paragraph 397 of the Second Amended Complaint.

398.  Defendants deny the allegations in Paragraph 398 of the Second Amended Complaint.

399.  Defendants deny the allegations in Paragraph 399 of the Second Amended Complaint.

## COUNT XIX

400.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

401.  Defendants deny the allegations in Paragraph 401 of the Second Amended Complaint.

402.  Defendants admit that Yelenick joined this action as an opt-in Plaintiff on February 27, 2017, and lack knowledge or information sufficient to form a belief as to Yelenick's motives.

403.  Defendants deny the allegations in Paragraph 403 of the Second Amended Complaint.

404.  Defendants deny the allegations in Paragraph 404 of the Second Amended Complaint.

405.  Defendants deny the allegations in Paragraph 405 of the Second Amended Complaint.

406.  Defendants deny the allegations in Paragraph 406 of the Second Amended Complaint.

407.  Defendants deny the allegations in Paragraph 407 of the Second Amended Complaint.

## COUNT XX

408.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

409.  Defendants deny the allegations in Paragraph 409 of the Second Amended Complaint.

410.  Defendants deny the allegations in Paragraph 410 of the Second Amended Complaint.

411.  Defendants deny the allegations in Paragraph 411 of the Second Amended Complaint.

412.  Defendants deny the allegations in Paragraph 412 of the Second Amended Complaint.

## COUNT XXI

413.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

414.  Defendants deny the allegations in Paragraph 414 of the Second Amended Complaint, except refer the Court to the November 26, 2013 offer letter for true and complete contents thereof.

415.  Defendants deny the allegations in Paragraph 415 of the Second Amended Complaint.

416.  Defendants deny the allegations in Paragraph 416 of the Second Amended Complaint, except refer the Court to the November 26, 2013 offer letter for the true and complete contents thereof.

417.  Defendants deny the allegations in Paragraph 417 of the Second Amended Complaint.

418.  Defendants deny the allegations in Paragraph 418 of the Second Amended Complaint.

419.  Defendants deny the allegations in Paragraph 419 of the Second Amended Complaint.

## COUNT XXI

420.  Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

421.  The allegations in Paragraph 421 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

422.  The allegations in Paragraph 422 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

423. The allegations in Paragraph 423 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required, and to the extent any response might be required such allegations are denied.

424. Defendants admit the allegations in the first sentence of Paragraph 424 the Second Amended Complaint. The second sentence of Paragraph 424 the Second Amended Complaint states a legal conclusion to which no responsive pleading is required and to the extent any response might be required such allegations are denied.

425. Defendants deny the allegations in Paragraph 425 of the Second Amended Complaint.

426. Defendants deny the allegations in Paragraph 426 of the Second Amended Complaint.

427. Defendants deny the allegations in Paragraph 427 of the Second Amended Complaint.

428. Defendants deny the allegations in Paragraph 428 of the Second Amended Complaint.

## <u>COUNT XXII</u>

429. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

430. The allegations in Paragraph 430 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

431. The allegations in Paragraph 431 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required and to the extent any response might be required such allegations are denied.

432. Defendants deny the allegations in Paragraph 432 of the Second Amended Complaint.

433. The allegations in Paragraph 433 of the Second Amended Complaint state a legal conclusion to which no responsive pleading is required.

434. Defendants deny the allegations in Paragraph 434 of the Second Amended Complaint.

435. Defendants deny the allegations in Paragraph 435 of the Second Amended Complaint.

## COUNT XXIII

436. Defendants repeat each of the answers to each and every allegation of the Second Amended Complaint as if fully set forth herein.

437. Defendants deny the allegations in Paragraph 437 of the Second Amended Complaint and additionally state that Paragraph 437 of the Second Amended Complaint states a legal conclusion to which no responsive pleading is required.

438. Defendants deny the allegations in Paragraph 438 of the Second Amended Complaint, except admit that Campbell made a required capital contribution of $217,250 to the Firm.

439. Defendants deny the allegations in Paragraph 439 of the Second Amended Complaint.

440. Defendants deny the allegations in Paragraph 440 of the Second Amended Complaint.

441. Defendants deny the allegations in Paragraph 441 of the Second Amended Complaint.

**VIII.   AS TO AND AS CONCERNING THE "PRAYER FOR RELIEF"**

Defendants deny the allegations set forth in the WHEREFORE clause of the Second Amended Complaint, and further deny that Plaintiffs and/or the purported class members are entitled to any of the relief demanded therein or any relief whatsoever.  Defendants deny each and every allegation in the Second Amended Complaint not specifically admitted herein.

## AFFIRMATIVE OR OTHER DEFENSES

In further of their Answer to the Second Amended Complaint, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants state as follows for their affirmative and other defenses, without admitting thereby that they necessarily bear the burden of proof on any such defense.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint fails, in whole or in part, to state a claim upon which relief can be granted or a claim for which the damages sought may be awarded.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collective members, are barred, in whole or in part, by the applicable statutes of limitation and/or filing periods.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collective members, are barred, in whole or in part, as for any matters for which Plaintiffs failed to satisfy administrative, procedural and jurisdictional prerequisites for commencing and maintaining this action.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

To the extent, if any, Defendants engaged in conduct with respect to Plaintiffs, (1) all actions by Defendants with respect to Plaintiffs were lawful and were made in good faith compliance with applicable provisions of law, rules and regulations, and (2) all actions by Chadbourne with respect to Plaintiffs were taken for legitimate, non-discriminatory, non-retaliatory, non-prohibited reasons and/or for good cause.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Even assuming that Defendants ever engaged in any conduct with respect to Plaintiffs that was motivated in part by unlawful reasons (which Chadbourne expressly denies), Defendants would have taken the same actions with respect to Plaintiffs for lawful, non-discriminatory, non-retaliatory reasons.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

Even assuming that there ever was any unlawful discriminatory behavior with respect to Plaintiffs (which Chadbourne expressly denies), Defendants at all times exercised reasonable care to prevent and promptly correct such, and Plaintiffs unreasonably failed to take advantage of the preventive and/or corrective opportunities provided by Chadbourne or to avoid harm otherwise.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Chadbourne at all relevant times has maintained, disseminated and observed equal employment, affirmative action, a harassment-free work environment, and anti-retaliation policies, that *inter alia*, provide that all personnel decisions are to be made on the basis of merit without regard to gender or on any other basis that is protected under applicable law, prohibit any form of harassment or intimidation on any basis that is protected by applicable law, and prohibit any form of retaliation against an individual who reports a claim of discrimination or who opposes any act or practice made unlawful by any federal, state, or local statute, or who cooperates in the investigation of such a report.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collective members, are barred, in whole or in part, by equitable defenses, including the doctrines of equitable estoppel, laches, waiver and/or unclean hands.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or the collective members have not been damaged by any of Defendants' actions.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

If damaged, which Defendants expressly deny, Plaintiffs have failed to make reasonable and diligent efforts to mitigate damages.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFNESE

The Second Amended Complaint fails to state a claim upon which an award of punitive damages can be granted.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or the collective members are not entitled to recover punitive damages because, at all relevant times, Defendants engaged in good faith efforts to comply with all of their obligations.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or the collective members are not entitled to recover any exemplary or punitive damages because Defendants did not commit, ratify, authorize, or acquiesce in any malicious, willful, or reckless act.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative class and/or collective members are not entitled to recover attorneys' fees and costs under the causes of action as demanded in the Second Amended Complaint.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, and those of the putative class and/or collective members, are barred, in whole or in part, by the jurisdictional requirements of the Fair Labor Standards Act, 29 U.S.C. § 213(f).

### AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

The Court does not have subject matter jurisdiction over all or part of the claims asserted in the Second Amended Complaint.

WHEREFORE, Defendants request that the Court enter judgment in favor of Defendants and dismiss the Second Amended Complaint in its entirety, and award Defendants their attorneys' fees and costs and such other relief as the Court deems just and proper.

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, Defendant/Counterclaimant Chadbourne & Parke LLP ("Chadbourne," the "Firm," or "Counterclaimant"), by its attorneys, Proskauer Rose LLP, hereby re-asserts, as it did in its Answer to Plaintiffs' First Amended Complaint, the following counterclaim against Kerrie Campbell ("Campbell").

1.      Prior to its combination with global law firm Norton Rose Fulbright ("Norton Rose Fulbright") on or about June 30, 2017, Chadbourne was an international law firm with over 300 attorneys and locations on five continents.  Chadbourne was recognized internationally for its work in project-finance and energy, corporate transactions, tax, international disputes, bankruptcy, and litigation.

2.      Counterclaim defendant Campbell was a Chadbourne partner, until she was expelled from the Chadbourne partnership by a vote of the Firm's partners in April 2017. Campbell joined Chadbourne in January 2014 as a lateral partner in the Litigation Department, based in Chadbourne's Washington, D.C. office.  Campbell described her practice as focusing primarily in the fields of First Amendment litigation, consumer product safety, and "reputation protection."

3.      As a leading international law firm, Chadbourne's reputation was perhaps its most valuable asset.  That reputation had been developed and fortified over nearly a century of cutting-edge, service-focused legal practice in courts and boardrooms across America and around the world.

4.      Campbell is aware that Chadbourne placed paramount importance on its reputation as a firm.

5.      Indeed, and ironically, one of Campbell's primary areas of practice is what she called "reputation protection," which involves representing those whose products or services have been defamed in the press by the publication of false allegations.  As such, she is keenly aware of the fact that even false and meritless allegations of wrongdoing can have a devastating effect on corporations and firms.

6.      Campbell's First Amended Complaint contained numerous allegations purporting to disclose confidential and proprietary financial information of Chadbourne and its individual partners.

7.      In and around the time Campbell filed the First Amended Complaint, and wholly separate from the filings made and judicial proceedings in this lawsuit, Campbell engaged in a nationwide campaign to impugn, malign, and denigrate Chadbourne outside the Court in the press, online, and at speaking engagements.

8.      On information and belief, Campbell actively sought opportunities to be interviewed by the press and to participate in speaking engagements regarding Chadbourne.

9.      This campaign, which is separate from the instant litigation and outside any judicial proceeding, had no lawful purpose but rather was an effort to denigrate Chadbourne in the court of public opinion through false allegations and sensational hyperbole, with the implicit extortionate threat that this campaign of falsity would continue unless Chadbourne were to agree to a large settlement in this factually baseless and legally defective litigation.

10.     The public statements made by Campbell, both individually and through her attorneys, went far beyond a mere recitation or summarization of the allegations in the original Complaint or First Amended Complaint.  Indeed, Campbell purposefully chose not to serve the

initial Complaint on Chadbourne and instead chose to focus her efforts on the nationwide press campaign.

11.     On August 31, 2016, the very day the initial Complaint in this action was filed (but not served), Campbell's counsel David Sanford gave an interview falsely stating that "gender discrimination is standard procedure" at Chadbourne.  Aebra Coe, "Breaking: Chadbourne Partner Smacks Firm with $100M Gender Discrimination Class Action," Law360, August 31, 2016.[3]

12.     On September 7, 2016, Campbell gave an interview to BNA in which she accused the Firm of creating a "hostile environment."  Stephanie Russell-Kraft, "Working at Chadbourne While Suing Chadbourne for $100M," BNA, Sept. 7, 2016.

13.     Shortly thereafter, 14 female Chadbourne partners drafted and sent a letter to Sanford criticizing him for his "patronizing" and "patriarchal" attempt to speak on behalf of all female Chadbourne partners as if these educated, highly competent attorneys were nothing more than helpless victims.  In response, Sanford dismissively – and falsely – accused them of having other motives this letter, such as to "keep in good standing with the powers that be."  Sanford thus falsely and insultingly insinuated that the female Chadbourne partners were but helpless victims who are capable only of obeying orders given to them by male partners.  Ashby Jones, "Female Partners at Chadbourne Respond to Discrimination Suit," The Wall Street Journal Law Blog, Sept. 12, 2016.

14.     Sanford further falsely impugned the professional competence of the 14 Chadbourne partners as attorneys by stating that they "were apparently not aware of" non-

---

[3] David Sanford is the Chairman of Sanford Heisler Sharp.  He is a male.  The firm's Managing Partners are also male.  Indeed, fewer than 20% of Sanford Heisler Sharp's partners are female.

solicitation laws, which Sanford incorrectly claimed prevented him from reaching out to them prior to filing a lawsuit, even for so much as just to verify the supposed facts he was alleging in their name and purportedly on their behalf. Kat Greene, "Female Partners at Chadbourne Disavow Discrimination Suit," Law360, Sept. 13, 2016.

15. On October 13, 2016, Sanford and Campbell appeared as featured speakers at a panel discussion at Stanford Law School. The title of the program was "Litigating the Glass Ceiling: Gender Discrimination Actions Against Big Law."

16. During the course of this presentation, both Sanford and Campbell proceeded to slander Chadbourne before the audience, many of whom were law students at Stanford and potential Chadbourne recruits.

17. On October 14, 2016, Campbell and Sanford participated in a "podcast" interview with J. Craig Williams and Bob Ambrogi. During this interview, both Campbell and Sanford made various false statements regarding Chadbourne, including but not limited to the statements set forth below:

   a. During the interview, Campbell falsely said that she "was at the very bottom of the point system" at Chadbourne. This statement is wholly false, as there are, and always have been, both male and female partners whose compensation is lower than Campbell's own compensation.

   b. During the interview, Sanford falsely said "At Chadbourne in particular you have 20 non-partner attorneys who left the Firm in 2015. 85%, approximately 85%, are female, 17 out of the 20," as if to insinuate that female attorneys were fleeing or being driven out of the Firm. Sanford's statement significantly misstates both the

78

actual number of non-partner attorney departures from Chadbourne during that time period, and the percentage of that group that was female, which was in fact under 50%.

18.    By October 21, 2016, a draft Amended Complaint for this action, marked "PRIVILEGED ATTORNEY WORK PRODUCT DRAFT: 10/19 at 12:05 pm" ("Draft Amended Complaint") was posted on the website of Sanford & Heisler, https://sanfordheisler.com, specifically at the then-existing URL https://sanfordheisler.com/wp-content/uploads/2016/08/Amended-Chadbourne-Complaint-10-19-2016-CLEAN.pdf.  This posting, which appears to waive the attorney-client privilege, was outside a litigation filing.

19.    The Draft Amended Complaint, which was published worldwide on the Internet at least six (6) days before Campbell and her counsel filed the First Amended Complaint on October 27, 2016, contains numerous of denigrating false and misleading statements about the Firm, its partners (including women partners), and associates (including women associates).

20.    After filing the First Amended Complaint on October 27, 2016, Sanford & Heisler released a press statement falsely claiming that "[g]ender discrimination seems to be Chadbourne's modus operandi."  PR NewsWire,"Sanford Heisler, LLP Adds Female Former Partner of Chadbourne & Parke LLP as Second Named Plaintiff and Class Representative in $155 Million Gender Discrimination Class Action," Oct. 27, 2016.

21.    Sanford and Sanford & Heisler's motivation for making these various false statements against the Counterclaimants was made clear by Sanford's own public comments that were quoted as follows in an October 27, 2016 article in Bloomberg BNA:

The amended complaint should signal to other law firms and companies with a history of sex discrimination that things just "get worse in litigation" after the

79

opportunity for an early resolution has passed, lead class counsel David Sanford told Bloomberg BNA.

"It's important to examine what went on and to take care of things at the front-end" before litigation becomes necessary, he said Oct. 27. Sanford is the chairman of Sanford Heisler LLP in Washington.

*     *     *

**More Law Firms to Be Sued?**

Sanford, whose firm has a strong track record of successful class sex bias litigation against other industries—including obtaining a $19.5 million settlement from Qualcomm Inc. July 26—told Bloomberg BNA that class lawsuits against other big law firms may be coming.

"We do plan similar suits against other firms, mostly big but not all," but whether they come to pass depends on the outcome of current settlement talks, he said. "We're trying to resolve" the disputes with the other firms presuit, but if that doesn't happen "we will file," he said.

Patrick Dorrian, "Chadbourne Class Action Adds Six Partners as Defendants," Bloomberg BNA, Oct. 27, 2016.

22.     The gravamen of Sanford's comments is clear:  this lawsuit, and the separate nationwide campaign of falsehoods against Chadbourne are only tangentially related to Plaintiffs Kerrie Campbell, Jaroslawa Johnson or Mary Yelenick, or the action they have filed against Chadbourne.  The true goals of Sanford and Sanford & Heisler are to make an example of how they are able to inflict injury upon Chadbourne reputationally, and thereby to serve notice to *other* law firms or companies that, should a future complaint arise against them, they would be well served to settle with Sanford & Heisler "at the front end" or they, too, would be subject to a baseless nationwide smear campaign of falsehoods like the one now being conducted against Chadbourne.

80

23.     In another interview published on October 27, 2016, Sanford falsely accused

Chadbourne of "Animal House-like hijinks," and a "fraternity-type prank that shows the culture

of intimidation, harassment and retaliation."  Brian Baxter, "Chadbourne Hit With New

Complaint – and Video – in Gender Bias Suit," The Am Law Daily, Oct. 27, 2016.

24.     Some of the baseless attacks by Sanford and Campbell, for example published by

Stephanie Russell-Kraft, "Chadbourne Partner Suing Firm Answers Three Questions," BNA,

Oct. 27, 2016, are based on false allegations that Lowell went into Campbell's office which

never happened.  Campbell and Sanford omit numerous aspects of the events they are

misrepresenting to the public, the true purpose and nature of which events are set forth more

fully in Paragraph 9 of Defendants' Answer in this action.

25.     Campbell likewise claimed, in a press interview, that a postcard bearing a

Mandela quote had twice been torn from her office wall, and replaced with a smiley face.

Stephanie Russell-Kraft, "Chadbourne Partner Suing Firm Answers Three Questions," BNA,

Oct. 27, 2016.  Here again, the fact is that Lowell never went into Campbell's office to do the

things claimed, that the events about which Campbell is referring occurred on an outside wall,

and the true purpose and nature of these events is set forth more fully in Paragraph 9 of

Defendants' Answer in this action.  In the same interview, she accused Chadbourne of being a

"boys' club" and made several disparaging comments regarding what she referred to as "male

management."  *Id.*

26.     Campbell in the First Amended Complaint (and in the Second Amended

Complaint) has admitted that she has engaged in surreptitious videotaping of the Firm premises.

27.     On information and belief, Campbell has reached out to numerous Chadbourne employees and former employees and encouraged them to make unfounded and false accusations of gender discrimination or other mistreatment against Chadbourne and the individual Defendants, and possibly to assert claims of their own against the Firm in which she is a partner, in the hope that such claims would increase her personal ability to negotiate a lucrative settlement with the Firm of the unfounded claims she has asserted in this action.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (BY CHADBOURNE AGAINST CAMPBELL)

28.     Counterclaimant hereby reincorporates and realleges Paragraphs 1-27, above.

29.     From January 2014 until April 2017, Campbell was an equity partner in Chadbourne.  As such, she owed a fiduciary duty to Chadbourne and to all other Chadbourne partners.

30.     As set forth above, Campbell engaged in a nationwide smear campaign against Chadbourne – both individually and through the authorized and extra-judicial statements of her attorneys.  Campbell made numerous knowingly false statements and accusations in the press solely with the purpose of injuring Chadbourne's hard-earned reputation.

31.     These false statements and accusations constitute a breach of Campbell's fiduciary duty of loyalty to Chadbourne.

32.     As a Chadbourne equity partner, Campbell had access to confidential information (which she knows is confidential) regarding the Firm and its partners, including but not limited to information regarding billing rates, origination rates, yearly collections, and compensation.

82

33.     Campbell's First Amended Complaint (and her Second Amended Complaint) contained numerous allegations purporting to disclose confidential and proprietary financial information of Chadbourne and its individual partners.

34.     The allegations setting forth purported details of confidential and personal financial information were not necessary to meet Campbell's pleading burden under Fed. R. Civ. P. 8.

35.     Campbell further made statements purporting to disclose confidential and proprietary financial information of Chadbourne and its individual partners during the course of her press campaign against the Firm.

36.     Campbell's disclosure of confidential Chadbourne data was a direct breach of her duty of loyalty to her partners and the Firm.

37.     Campbell's actions in purposefully disseminating such false and misleading statements regarding what purported to be Chadbourne's private financial data constituted a direct breach of her duty of loyalty to her partners and the Firm.

38.     Campbell's alleged and surreptitious videotaping of Firm premises where privileged client business is being conducted was likewise a direct breach of her fiduciary duties to her partners and the Firm.

39.     On information and belief, Campbell has reached out to numerous Chadbourne employees and former employees and encouraged them to make unfounded accusations of gender discrimination or other mistreatment against Chadbourne and the individual Defendants, solely for her own personal gain.

40.     Campbell's attempts to elicit these false accusations were made with no lawful purpose and constitute a breach of her fiduciary duties to Chadbourne and to the individual Counterclaimants.

41.     Chadbourne therefore seeks monetary damages and punitive damages according to proof.


## PRAYER FOR RELIEF

WHEREFORE, Chadbourne seeks the following relief:

A)      An order finding and declaring that Campbell and her counsel Sanford, and Sanford Heisler Sharp LLP have made knowingly false statements regarding Chadbourne;

B)      An order requiring Campbell, Sanford, and Sanford Heisler Sharp LLP to publicly retract all false statements regarding Chadbourne;

C)      An order finding and declaring that Campbell has breached her fiduciary duty to Chadbourne;

D)      Temporary and permanent injunctive relief enjoining Campbell from releasing any Chadbourne confidential information into the public record or otherwise disseminating such confidential information;

E)      An order directing Campbell to cease surreptitious recording on the premises of the Firm;

F)      An award of compensatory damages according to proof;

G)      An award of punitive damages according to proof;

H)      Attorneys' fees and costs as may be provided by law; and

I)      Any other and further legal or equitable relief that the Court deems proper.

Dated: October 10, 2017
New York, New York

PROSKAUER ROSE LLP

By:   */s/ Kathleen M. McKenna*
Kathleen M. McKenna
Evandro C. Gigante
Rachel S. Fischer
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900
kmckenna@proskauer.com
egigante@proskauer.com
rfischer@proskauer.com

*Attorneys for Defendants and*
*Counterclaimant*