Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

November 6, 2017

**Via ECF**

The Honorable Barbara C. Moses
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Courtroom 9A
New York, New York 10007

Kathleen M. McKenna
Member of the Firm
d 212.969.3130
f 212.969.2900
kmckenna@proskauer.com
www.proskauer.com

Re: ***Campbell, et al. v. Norton Rose Fulbright US LLP, Chadbourne & Parke LLP, et al., No. 16-cv-06832 (S.D.N.Y.)***

Dear Judge Moses:

Per the Court's October 24, 2017 order, Plaintiffs and the Chadbourne Defendants[1] (collectively, for purposes of this letter, the "parties") hereby submit a joint letter regarding outstanding ESI disputes.[2]

### I.   Dispute Regarding Searches of Individual Email Accounts

*Plaintiffs' Position.* The question is whether the individually-named parties are required to search their personal email accounts for responsive documents. The answer should be yes. Defendants have taken the position that only the named Plaintiffs, but not the individually-named Defendants, are required to search their personal email accounts for responsive documents. Plaintiffs' position is that the individually named parties should be treated the same as one another; if the named Plaintiffs are required to search their personal email accounts for relevant documents, so should the individually-named Defendants.[3]

Defendants assert that their personal email accounts do not need to be searched because,

---

[1] Proskauer Rose LLP represents Chadbourne & Parke LLP ("Chadbourne" or the "Firm"), Marc Alpert, Andrew Giaccia, Abbe Lowell, Howard Seife, Lawrence Rosenberg, and Paul Weber (collectively, the "Chadbourne Defendants").

[2] Based on the Court's prior statements on the record, Defendants maintain that this joint letter may properly exceed 4 pages insofar as it states both parties' positions on multiple issues in dispute for the Court's consideration.  *See* 8/25/17 Tr. at 24:5-12.

[3] Defendants' cost-shifting proposal should be rejected. Defendants do not even attempt to argue that the named Defendants' personal email accounts are not reasonably accessible, and Plaintiffs' proposal for limited, targeted searches of the named Defendants' personal email accounts does not impose an undue burden or cost.

Beijing | Boca Raton | Boston | Chicago | Hong Kong | London | Los Angeles | New Orleans | New York | Newark | Paris | São Paulo | Washington, DC

94235972v4



Hon. Barbara C. Moses
November 6, 2017
Page 2

Defendants claim, they did not use these accounts to conduct Firm business.[4]  But this is not the relevant test.  Rule 26(b) instructs that the scope of relevant discovery is "broad," and includes "any matter that bears on, or that reasonably could lead to other matter that could bear on party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda,* No. 14–CV–9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (citations omitted).  Other courts in the Second Circuit have ordered searches of individual defendants' email accounts where information from those accounts may be relevant to the claims before the court.  Contrary to Defendants' position, there is no requirement that personal email accounts be used for "business" to be searchable. *See*, *e.g.*, *Sunderland v. Suffolk Cty., New York*, No. CV 13-4838, 2016 WL 3264169 at *1 (E.D.N.Y. June 14, 2016) (granting plaintiff's motion to compel discovery of individual defendants' personal emails for emails and correspondence that referenced the plaintiff and issues relevant to her claims). Accordingly, Defendants' personal emails that bear on the *Clackamas* factors – such as emails discussing such matters as their firing or disciplining of partners and their decisions to withhold information from partners – are squarely discoverable.

*Defendants' Position*.  The Court should deny Plaintiffs' request to run searches through the personal email accounts of the named Defendants.  Plaintiffs and the individually named Defendants are not similarly situated with regard to their personal email accounts.  *None* of the individual named Defendants used their personal email accounts for the business of the Firm, and will so stipulate if need be, whereas at least some of the Plaintiffs used their personal accounts for this purpose--a fact that Plaintiffs do not dispute.  Significantly, Plaintiffs do not identify any reason to believe that the individually named Defendants used their personal email accounts for firm business. We previously inquired of the individual Defendants as to where relevant documents might be kept, and none of them identified their personal email accounts. After receiving Plaintiffs' inquiry last week as to whether we would agree to search the individual Defendants' personal email accounts we again confirmed with the individual Defendants that none of them used their personal email accounts for Firm business matters. Searching the individually named Defendants' personal email accounts would be unnecessary and grossly disproportionate to the needs of the case, particularly in light of the extensive ESI that is already underway, as described below and in the parties' joint letter to the Court dated October 20, 2017.

The case cited by Plaintiffs in support of their application to conduct this fishing expedition is *Sunderland v. Suffolk County, New York*, No. CV 13-4838, 2016 WL 3264169 (E.D.N.Y. June 14, 2016).  Unlike this case, however, in *Sunderland* the individual defendants do not appear to have attested that they did not use their personal email accounts for business

---

[4] While Defendants claim that Plaintiffs used their personal email accounts for business, Defendants only recently raised this argument and have never explained the basis for this assertion.



Hon. Barbara C. Moses
November 6, 2017
Page 3

purposes.

For these reasons, searching the individually named Defendants' personal email accounts goes far beyond what is required or permitted under F.R.C.P 26(b), and there is no reason to require the Chadbourne Defendants to incur the burden and expense of collecting, processing and running searches through personal email accounts that will not yield relevant or responsive information.[5]

## II. Dispute Regarding Inclusion of Additional ESI Custodians

*Plaintiffs' Position.* Defendants have refused to run ESI searches for three custodians who are believed to have relevant information regarding the Management Committee's overarching control over Chadbourne and its partners. One of the proposed custodians is the former head of Chadbourne's Washington, D.C. office (where Plaintiff Campbell worked), who is believed to have had numerous disagreements with the Management Committee regarding the amount of control the Committee exercised over staffing on D.C. partners' cases. Another proposed custodian is a former partner who vocally objected to the Management Committee's secrecy and advocated transferring the Committee's power to set partner compensation to a separate committee of partners. The third proposed custodian is another former partner who repeatedly questioned the Management Committee regarding the Firm's finances and operations. Notably, two of the three proposed custodians were partners whom the Management Committee apparently directed to leave the Firm. (Plaintiffs propose that a subset of the ESI searches listed in Exhibit 1 be run for the additional custodians. Specifically, Plaintiffs seek that their Proposed Search Nos. 5-6, 52-53, and 59 be run for all three custodians and that their Proposed Search Nos. 7-11, 13-14, 16-21, and 39-40 be run for the two custodians whom the Management Committee directed to leave the Firm.)

These custodians are believed to have ESI responsive to several of Plaintiffs' pending document requests. The two partners who were directed to leave the Firm are believed to have ESI responsive to Plaintiffs' Request No. 7 ("Documents concerning any partner's ability to remain at the Firm after the Management Committee has requested that he or she leave."). Documents confirming that partners were unable to remain at Chadbourne after being directed to leave are relevant in showing that the Management Committee fired partners. Additionally, all three proposed custodians are believed to have ESI responsive to Plaintiffs' Request No. 8 ("Documents concerning the Management Committee's process for developing and implementing policies that apply to partners, including documents showing any roles that

---

[5] It is Defendants' position that should the Court require the Chadbourne Defendants to search the individual Defendants' personal email accounts, all costs and expenses of this search and review should be shifted to Plaintiffs.



Hon. Barbara C. Moses
November 6, 2017
Page 4

partners other than those on the Management Committee play in developing such policies."). These custodians were vocal in expressing their desire to understand and help develop Firm policies, and their emails are expected to show the Management Committee's exclusion of non-Management Committee partners from the policymaking process. This will confirm that non-Management Committee partners did not have any meaningful influence over the Firm's policies. The documents are not sought merely to show rank-and-file partners' "views" of the Management Committee; instead, the emails will show in practice how little power ordinary partners had over the affairs of Chadbourne and even over their own status at the Firm.

The experiences of these Chadbourne partners bear upon the Court's analysis of various *Clackamas* factors, including the first factor regarding the Firm's ability to fire partners and the fourth factor regarding partners' lack of influence over the Firm. Further, these searches do not impose any undue burden on Defendants; Plaintiffs propose running ESI searches on just three non-Management Committee partners besides the named litigants – a small proportion of the over 80 partners that Chadbourne employed. *See Stinson v. City of New York*, No. 10 Civ. 4228, 2015 WL 4610422 at *4 (S.D.N.Y. 2015) (allowing plaintiffs to designate 49 named custodians and holding that large scale ESI searches are appropriate where plaintiffs were attempting to show both the existence of policies at the "executive" level and how those policies were communicated to employees). Further, while Defendants may argue that certain searches of these custodians' email accounts may be duplicative of searches run on other custodians' email accounts, technology can be employed to "de-duplicate" and ensure that only unique additional documents are reviewed.

***The Chadbourne Defendants' Position.*** The Chadbourne Defendants have agreed to conduct an extensive amount of electronic discovery to date. Among other things, the Chadbourne Defendants have agreed to search the emails of twenty-five (25) ESI custodians, which include the named Plaintiffs, the named Defendants, former members of Chadbourne's Management Committee, and other Chadbourne personnel. As described in the parties' joint letter of October 20, 2017, the process has been time consuming and costly. The Chadbourne Defendants engaged a vendor to index forty-two (42) tapes containing the relevant and accessible ESI, each of them containing 800 gigabytes (GB) of data, in addition to two hard drives and two flash drives. After analysis of the indexed tapes containing thousands of files and data sets, the individual custodians who were agreed upon were manually identified and their data was extracted. To date, the Chadbourne Defendants have processed 2.5 terabytes (or 2,500 gigabytes) of data for the agreed upon custodians and time frames.

The additional three custodians who Plaintiffs seek to add are not relevant to the *Clackamas* inquiry, and none of the justifications that Plaintiffs have proffered for searching their email accounts has merit. Even if it were true that people other than Plaintiffs disagreed with the Management Committee or believed that the Management Committee was "secretive,"

94235972v4



their personal views on that matter are of no moment to the legal issues presented here. As this Court has stated repeatedly, "the question is whether *plaintiffs* were in substance employees of the firm . . . not whether *all* partners (or even all partners not on the Management Committee) could be so classified." Dkt No. 153, p. 5 n.3. *See also* 10/11/2017 Tr. at 9:5-20. Thus, even if Plaintiffs were correct that partners may have disagreed with the Management Committee from time to time, such fact has no bearing whatsoever on the threshold *Clackamas* question.

These three partners' communications with Management Committee members would arguably be relevant to the extent they related to Plaintiffs' Document Request Nos. 7 and 8, but their own views of the Firm, shared with people other than the Management Committee have no relevance to the *Clackamas* issues of the ability to hire and fire or partner's influence over the Firm. With regard to Plaintiffs' Request No. 7, the relevant inquiry would necessarily involve the Management Committee's deliberations and determinations as to partners' ability to remain at the Firm after they are asked to leave. The personal views of the people who were asked to leave do not in any way impact the Firm's ability to "hire" or "fire" partners, nor do they have any bearing on how these partners had the ability to influence the Firm. By definition, Plaintiffs' Request No. 8 involves the *Management Committee's* process for developing and implementing policies—not the viewpoints of others as to the role of the Management Committee.

The only conceivably relevant communications in the three additional custodians' email accounts would be those that they sent to or received from the custodians that the parties have already agreed to, including each member of the Management Committee over a six year period. The Federal Rules of Civil Procedure require that discovery be limited if the discovery that is sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." F.R.C.P. 26(b)(2)(C)(i). There is simply no basis on which to add three additional custodians whose communications with Management Committee members are already subject to discovery, and whose communications with others are plainly irrelevant to *Clackamas*.

### III. Dispute Regarding ESI Search Terms

*Plaintiffs' Position.* The parties have been unable to resolve disputes about which "proximity operators" should be applied in certain searches – meaning, how near the keywords must be to one another to be deemed responsive to the search. Of the 14 searches in dispute, 12 of the searches involve disputes where Defendants propose use of a "NEAR/10" or "NEAR /20" while Plaintiffs propose the use of a "NEAR/40" or "NEAR/30" connector. Exhibit 1 sets forth the searches that the parties have agreed upon (in green) and the searches in dispute (in yellow).

Defendants' proposed searches are unnecessarily narrow, while Plaintiffs' proposed searches are sufficiently tailored to produce relevant information. For Proposed Search No. 11,



Hon. Barbara C. Moses
November 6, 2017
Page 6

which addresses the critical question of the Management Committee's firing of partners, Defendants sought a NEAR/40 operator, even though the search returned only 27 unique documents; Plaintiff proposed an "AND" operator to ensure the search is not under-inclusive. By way of further example, for Proposed Searches Nos. 3, 23, and 24, which pertain specifically to Plaintiff Campbell, Plaintiff Johnson, and the potential fourth plaintiff in this action, Defendants have insisted on a NEAR/10 operator, even though the searches identify the individuals by name and therefore a narrow proximity operator is not necessary to target responsive documents. By way of further example, for Proposed Search No. 52, which addresses the Management Committee's disciplining of partners for not complying with Firm policies, Defendants have demanded a NEAR/10 search, even though the search terms themselves (comply OR complian* OR complie* OR adher* OR mandatory OR deadline* OR disciplin* OR reprimand* OR warn*), are tailored to ensure responsiveness. In sum, Plaintiffs' proposed ESI searches are targeted to elicit relevant information, and the Court should order Defendants to perform these searches.

The cases Defendants cite are easily distinguishable. The plaintiff in *Duhigg v. Goodwill Indus.*, No. 8:15-cv-91, 2016 WL 4991480, at *3 (D. Neb. Sept. 16, 2016), requested defendants produce "*all* emails that simply mention[ed] her name" (emphasis in original). The plaintiff's broad request in *Duhigg* differs greatly from Plaintiffs' requests here that focus on specific terms and connectors tailored to the *Clackamas* issues before the Court. The "eighty-eight searches" proposed by the plaintiff in *Moore v. Lowe's Home Centers, LLC*, No. 14-cv-1459, 2016 WL 687111 at *5 (W.D. Wash. Feb. 19, 2016) included common words such as "annoy*, bull, click*, dad, date*, hand, rack, rod, box," apparently without the restrictive connectors Plaintiffs have already agreed to in this matter. Furthermore, the *Moore* plaintiff suggested the new searches after defendant had already ran *and reviewed* 21,000 other documents.

While Defendants object to the aggregate hit count associated with these documents,[6] Defendants themselves have agreed to perform these searches if they are not required to run searches for the three additional custodians discussed above. Further, the hit counts will be even further reduced once documents the parties have agreed are not discoverable, such as communications between the named parties and their counsel of record, are excluded.

***The Chadbourne Defendants' Position***. The Chadbourne Defendants have already agreed to extensive ESI in this case, and the additional ESI that Plaintiffs are seeking is unnecessary and disproportionate to the needs of this case. The parties have agreed in principle to run sixty-one (61) searches and, as explained above, to twenty-five (25) ESI custodians. The

---

[6] Defendants have not provided Plaintiffs with incremental hit counts showing the number of unique documents generated by the disputed searches.

94235972v4



Hon. Barbara C. Moses
November 6, 2017
Page 7

search terms that the Chadbourne Defendants have agreed to (which include the "Final Search Terms" in the boxes highlighted in green in Exhibit 1, and, the searches in the "Defendants' Proposal" column in the rows highlighted in yellow) will generate approximately **90,000** documents for review.  Plaintiffs, however, are seeking modifications to those search terms which would generate an additional 25,000 documents for review, for a total of **115,000** documents.  The entire disagreement between the parties relates to how "close" certain words should be to each other in the ESI that is being searched.  For example, the parties disagree as to whether certain words should be within ten or twenty (or more) words of each other.  Given the nature of discovery in this case, many of the keywords that the parties have agreed to are generic and non-specific.  For example, most of the searches contain the word "partnership," but that word also appears in the footer of all Chadbourne emails.  Other searches contain similarly generic words which can be used in a multitude of contexts, including in the legal work that Chadbourne's lawyers engaged in.  Grouping the search terms more closely together is the most logical way to locate relevant and responsive documents.

Plaintiffs' proposed searches are not appropriately targeted, and Plaintiffs have not, and cannot, provide any justification for their more expansive searches.  Plaintiffs' pure speculation that their proposed searches will yield more relevant and responsive documents does not justify the Chadbourne Defendants having to review an additional 25,000 documents, which would be substantially disproportionate to the needs of this case.  *See, e.g. Duhigg v. Goodwill Indus.*, No. 8:15-cv-91, 2016 WL 4991480, at *3 (D. Neb. Sept. 16, 2016) (finding the plaintiffs' proposed search terms overbroad and disproportionate to the needs of the case, and specifically noting that "[t]he breadth of Plaintiff's request is demonstrated by the fact that over 14,000 emails are responsive to her request."); *Moore's v. Lowe's Home Centers, LLC*, No. 14-cv-1459, 2016 WL 687111 (W.D. Wash. Feb. 19, 2016) (finding that Plaintiffs' eighty-eight (88) proposed searches were "overly broad and not proportional to the case" when Plaintiff did not provide specifics about what she reasonably expected such searches to show or that the information could be found by other means).[7]

      **IV.**    **Other Discovery Issue**

*Plaintiffs' Position.* Below, Defendants improperly attempt to inject into this letter a dispute regarding non-ESI discovery, even though this Court's Order (Dkt. No. 152) clearly contemplated that this joint letter would focus on ESI disputes.  In any event, Plaintiffs vigorously dispute Defendants' attempts to characterize their discovery responses as "deficient."

---

[7] In an effort to resolve the outstanding ESI issues, the Chadbourne Defendants offered to accept Plaintiffs' search terms in exchange for Plaintiffs' agreement not to seek to add the 3 new custodians described above and their agreement that the Chadbourne Defendants' personal email accounts need not be searched.  Plaintiffs rejected this offer to resolve the parties' pending ESI disputes.



Hon. Barbara C. Moses
November 6, 2017
Page 8

Further, the issues raised by Defendants are not ripe for consideration by the Court, as the parties have not yet met and conferred on these issues. Plaintiffs have repeatedly offered to meet and confer on the issues raised in Defendants' letter. After receiving Defendants' letter, Plaintiffs reached out to Defendants on October 16, 2017, and scheduled a meet-and-confer for October 17, 2017, but during the meet-and-confer, Defendants preferred to focus on the ESI disputes, and a meet-and-confer regarding their letter was deferred. During a teleconference last week, Plaintiffs' counsel (Ms. Harwin) and Defendants' counsel (Ms. Fischer) discussed that the parties would first resolve the more time-sensitive ESI issues and then meet and confer regarding Defendants' letter. Plaintiffs subsequently offered to meet and confer with Defendants this coming Friday, and the parties plan to meet and confer then.

***The Chadbourne Defendants' Position.*** The Chadbourne Defendants sent Plaintiffs a deficiency letter on October 9, 2017 setting forth numerous deficiencies in Plaintiffs' responses to the Chadbourne Defendants' document requests. For example, throughout their responses to discovery requests, Plaintiffs refused to produce documents without stating any specific reasons for their refusal. Plaintiffs additionally objected to numerous requests on the purported grounds that certain documents are "in the possession, custody or control of Defendants" without identifying the documents that are purportedly in Defendants' possession. Plaintiffs also objected to many of the Chadbourne Defendants' document requests wholesale without sufficient explanations for their objections. Plaintiffs have not provided any reason for their failure to comply with their discovery obligations or their failure to respond to the Chadbourne Defendants' deficiency letter. The Chadbourne Defendants have confirmed their availability for a meet and confer on Friday, November 10.

Respectfully submitted,

 _s/David Sanford_____           __s/Kathleen M. McKenna_____
David Sanford                        Kathleen M. McKenna
*Counsel for Plaintiffs*             *Counsel for Defendants Chadbourne & Parke LLP, Marc Alpert, Andrew Giaccia, Abbe Lowell, Lawrence Rosenberg, Howard Seife, and Paul Weber*

94235972v4