```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #16cv6832
 CAMPBELL, et al.,                  : 1:16-cv-06832-JPO-BCM

                    Plaintiffs,     :

         - against -                :

 CHADBOURNE & PARKE, LLP, et al.,   : New York, New York
                                      November 9, 2017
                    Defendants.      :

----------------------------------- :

                      PROCEEDINGS BEFORE
                THE HONORABLE BARBARA C. MOSES,
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:           SANFORD HEISLER SHARP, LLP
                          BY:  ALEXANDRA HARWIN, ESQ.
                               ANDREW MELZER, ESQ.
                          1350 Avenue of the Americas
                          31st Floor
                          New York, New York 10019

For Defendant -           PROSKAUER ROSE, LLP
Chadbourne & Parke        BY:  KATHLEEN MCKENNA, ESQ.
                               RACHEL FISCHER, ESQ.
                               EVANDRO GIGANTE, ESQ.
                          11 Times Square
                          New York, New York 10036




Transcription Service: Carole Ludwig, Transcription Services
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES CONTINUED:

```
For Defendant - Norton    SIDLEY AUSTIN, LLP
Rose Fulbright US:        BY:  STEVEN BIERMAN, ESQ.
                              MELISSA COLON-BOSOLET
                         787 Seventh Avenue
                         New York, New York 10019
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                          PROCEEDINGS                    4

 2            THE CLERK:  Kerrie Campbell v. Chadbourne & Parke,

 3    LLP.  Counsel, state your name for the record.

 4            MS. ALEXANDRA HARWIN:  Alexandra Harwin for the

 5    plaintiffs, from Sanford, Heisler, Sharp.

 6            MR. ANDREW MELZER:  Good morning, your Honor.

 7    Andrew Melzer, Sanford Heisler, Sharp, also for the

 8    plaintiffs.

 9            HONORABLE BARBARA C. MOSES (THE COURT):   Good

10    morning, Ms. Harwin and Mr. Melzer.

11            MS. RACHEL FISCHER:  Good morning, your Honor,

12    Rachel Fischer, Proskauer Rose, for the Chadbourne

13    defendants.

14            MS. KATHLEEN McKENNA:  Good morning, your Honor,

15    Kathleen McKenna for the Chadbourne defendants.

16            MR. EVANDRO GIGANTE:  Good morning.  Evandro

17    Gigante, Proskauer Rose for the Chadbourne defendants.

18            MS. MELISSA COLON-BOSOLET:  Good morning, your

19    Honor, Melissa Colon-Bosolet for Norton Rose Fulbright US.

20            MR. STEVEN BIERMAN:  Good morning, your Honor,

21    Steven Bierman from Sidley for Norton Rose Fulbright.

22            THE COURT:  I'm not going to attempt to say all

23    your names, because there's so many of you.

24            Mr. Bierman, you rearranged your schedule?

25            MR. BIERMAN:  I think that was the last
```

1                          PROCEEDINGS                          5

2    conference I think I rearranged my schedule.

3              THE COURT:  All right, well, it's nice to see you

4    all here.  There are an awful lot of lawyers here for a

5    dispute over whether search terms should have a "within 20"

6    versus a "within 50" connector.  But since disputes like

7    that are, of course, what I live for as a federal judge,

8    I'm happy to have all of the help possible on resolving

9    these thorny issues.

10             Let us begin with the two disputes that don't

11   require me to determine whether it's within 20 or within

12   50.  First, the dispute regarding the individual email

13   accounts of the individual defendants.  I understand that

14   this is about their non-Chadbourne & Parke email accounts,

15   their Google or whatever accounts.  My inclination -- and

16   I'll let you speak to this -- my inclination is to say that

17   what is good for the goose is good for the gander here;

18   that if the plaintiffs' personal email accounts are to be

19   searched, then the individual defendants are to be

20   searched, as well, certainly, in the absence of any

21   evidentiary showing that I can rely on that there is

22   absolutely, positively nothing relevant and responsive in

23   those personal email accounts.  Since I am myself a human

24   being -- believe it or not -- as well as a former law firm

25   partner, I know that even individuals who generally make

```
1                          PROCEEDINGS                      6
```

2   it a practice to use their business email account for

3   business don't always adhere to that 100% of the time.  So

4   I'm not prepared at this early stage to say there isn't

5   going to be anything which is relevant and discoverable in

6   those Gmail accounts or whatever they are.  And I have not

7   heard from the defendants any extraordinary facts

8   concerning burden or expense that would perhaps move the

9   needle on that.  So that's my tentative, if you will.

10          I'll hear from Proskauer first.

11          MS. FISCHER:  Thank you, your Honor.  While I

12   just want to point out that the parties in their ESI

13   protocol stipulated and agreed that data sources such as

14   emails do not need to be searched when a party certifies in

15   writing that the data source does not contain responsive

16   ESI.  And we've provided that information to plaintiffs,

17   we've provided that information to the Court.  And the

18   parties really are not similarly situated with regard to

19   their use of personal emails.  We've made that

20   representation on behalf of the named defendants, and we

21   know that at least one of the plaintiffs was using a Yahoo

22   account for firm business.  So it really is not quite the

23   same, the plaintiffs and the defendants, who they were

24   using a personal email.

25          THE COURT:  Now, when you say you've certified it

1                          PROCEEDINGS                        7

2   in writing, does that mean you asked the individual

3   defendants and they said no, we didn't use our personal

4   accounts, and that's the basis of the certification?

5            MS. FISCHER:  That's correct.

6            THE COURT:  See, I'm not impugning your client's

7   honesty in any way, shape or form; it's just that they're

8   human.  And I'm not at all confident, having been through

9   this a lot of times in a lot of cases, that that's going to

10  turn out to be accurate.

11           MS. FISCHER:  Well, what we did, your Honor, I

12  mean, at the outset of the case when we first -- not at the

13  outset of the case, at the outset of discovery, when we

14  first started looking at ESI, you know, we inquired of our

15  custodians where responsive and relevant information would

16  lie, both hard copy and electronic documents.  And then

17  when this dispute arose last week with plaintiffs as to

18  whether the named defendants were using their personal

19  emails, we again reconfirmed that they were not using it

20  for business purposes or for any matters related to the

21  firm.

22           THE COURT:  You reconfirmed based on their

23  unaided recollection, correct?  I mean, did anyone do any

24  test searches?

25           MS. FISCHER:  We did not run test searches.

```
 1                        PROCEEDINGS                    8

 2            THE COURT:  Yes.  Search the personal accounts.

 3            The next issue is whether to include the business

 4   emails, the law firm emails for three additional current or

 5   former partners at the firm who you are diplomatically, I

 6   guess, not naming in the publicly-filed joint letter, which

 7   is fine -- I don't need the names.  I guess on this one my

 8   tentative -- I learned to be a lawyer in the Northern

 9   District of California, where you would literally call a

10   certain number the night before you had a discovery motion,

11   and you would hear a recording giving you the judge's

12   tentative ruling.  And then you had to call your opponent

13   and call the clerk's office if you wanted to show up and

14   argue against the tentative.  So forgive my nomenclature; I

15   have not yet set up a telephone number for tentative

16   rulings here.

17            Anyway, on the second issue that you've briefed

18   to me, my inclination is to say no, that is to say that we

19   don't need these three additional custodians because

20   nothing in the joint letter has persuaded me that it is

21   likely that anything relevant will be, A, in their email

22   accounts; and, B, not also in the email accounts of the 25

23   other or existing custodians, including the former and

24   current members of the management committee.

25            So, Ms. Harwin, do you want to take that one?
```

1                           PROCEEDINGS                    9

2          MS. HARWIN:  Sure. Your Honor, with respect to

3    these three individual, defendants agreed already in their

4    document responses that they would produce responsive

5    documents concerning the circumstances of deacquitization,

6    termination or change in status of partners --

7          THE COURT:  Sure.  But if you could address my

8    concern, which is look, let's suppose that Mr. or

9    Ms. former partner who vocally objected to the management

10   committee's secrecy did in fact do that from his or her

11   Chadbourne email account.  But those emails would have gone

12   to the management committee, right?  So what are we missing

13   here?

14         MS. HARWIN:  Well, your Honor, presumptively,

15   some did.  But it doesn't mean that the only emails that an

16   individual sent regarding the management committee's

17   secrecy in this instance went to the management committee.

18   We have reason to believe that these concerns were not

19   shared only with the management committee.

20         THE COURT:  "Only" is not the question.  What you

21   would have to convince me to make these additional searches

22   worth the candle is that Mr. or Ms. partner sent some truly

23   relevant email that didn't go to any of the other 25

24   custodians whose accounts are being searched, that Mr. or

25   Ms. partner sent a truly relevant email only to, you know,

1                           PROCEEDINGS                    10

2    their spouse or their psychiatrist -- that's not a good

3    example because there'd be a privilege issue there -- and

4    that notwithstanding the fact that this email was not shared

5    with the management of the firm, it's somehow worth getting.

6              MS. HARWIN:  Well, your Honor, with respect to

7    that issue, whether there are emails that were unique to the

8    non-custodians from the management committee, meaning

9    emails that were sent to others at the firm, for example,

10   such as other partners discussing these issues but not sent

11   to the management committee members, those emails would be

12   identified through a simple technological, you know, hit

13   report as to unique documents.

14             THE COURT:  Right, but we have to -- "we,"

15   someone, you or Chadbourne -- has to spend the time and

16   money getting there before you dedupe.  What assurance can

17   you give me that after the deduping there's anything

18   relevant left?

19             MS. HARWIN:  Well, for example, emails that, you

20   know, may exist in the system could be documents used to

21   prepare for committees for conversations with the management

22   committee, communications to other partners that would

23   reflect oral discussions with the management committee.  We

24   have not engaged in discovery at this juncture where we've

25   received -- we haven't subpoenaed these individuals.  We

```
 1                          PROCEEDINGS                   11

 2   don't have the other information that we would need, apart

 3   from hit-count reports, that would identify whether there

 4   are unique documents here that were not shared with the

 5   management committee.

 6           THE COURT:  All right, so I'll tell you what.  If

 7   you're in a position where you can give me more than

 8   speculation; if you talk to these folks, if you come up with

 9   an example from somebody else's email account of something

10   important that didn't go to the management committee, try

11   again, not now.

12           MS. HARWIN:  Thank you, your Honor.

13           THE COURT:  All right, now we get to the truly

14   exciting part of this morning's agenda, which is the ESI

15   search terms.  How would you like me to approach that?

16           MS. HARWIN:  Your Honor, what I would suggest is

17   defendants already agreed that they would run these disputed

18   search terms if the three additional custodians that we just

19   talked about were not included in the searches.  So I think

20   that, given your ruling on this subject of the additional

21   custodians, I think that we could proceed with all the

22   searches as plaintiffs outlined them.

23           THE COURT:  Ms. Fischer?

24           MS. FISCHER:  We had offered as a compromise,

25   given these three discovery disputes we're here about today,
```

1                              PROCEEDINGS                    12

2  we had offered as a compromise that we would run these

3  searches.  That was to avoid being here today.  Here we are.

4  You know, we're prepared to defendant our position as to why

5  the additional 25,000 documents shouldn't be searched.

6           And, in addition, you know, this compromise that

7  we had offered, now we do need to go back and call and

8  search the named defendants' personal email.  So there's

9  certainly a significant amount of ESI that still needs to be

10  done.

11           THE COURT:  You want me to go through these search

12  by search?  Because, of course, that's what I went to law

13  school to do, right, decide whether you're going to get a

14  more relevant and manageable bunch of emails if the

15  connector is 20 instead of 30 instead of 35.

16           MS. FISCHER:  Your Honor, we think the numbers are

17  significant, and this will add time and expense to our ESI

18  review.

19           THE COURT:  All right, let's do it.  How do I tell

20  from this chart here which ones I need to mediate on?

21           MS. HARWIN:  So the chart, it's the yellow items

22  are the ones that are disputed.

23           THE COURT:  Unfortunately, mine is in black and

24  white.

25           MS. HARWIN:  Oh, there was a copy --

```
 1                        PROCEEDINGS                13

 2           MS. FISCHER:  We can identify them by number.

 3           MS. McKENNA:  We have a clean copy we can give

 4    you, your Honor.

 5           THE COURT:  Oh, that would be great.  Hand up the

 6    color one for me.

 7           For some reason, the one that I have is in black

 8    and white because my crack chamber staff obviously printed

 9    it for me in black and white.

10           MS. HARWIN:  We delivered to chambers a color

11    copy.

12           THE COURT:  Fine.  I have it now.

13           MS. FISCHER:  Your Honor, I just want to note, as

14    well, that in search No. 3 I believe the copy we just gave

15    you is not redacted in ours, and in the public record it is

16    redacted because there's a name on there that we had agreed

17    and --

18           THE COURT:  All right, I am making a note of that.

19           All right, so it's the yellow ones that are in

20    dispute, correct?

21           MS. HARWIN:  That's correct, your Honor.

22           THE COURT:  Not the green ones.  All right, so

23    No. 3 with respect to Partner X, what is the dispute here?

24    How do I read this?

25           MS. HARWIN:  So the dispute, as with all these
```

1                              PROCEEDINGS                    14

2    disputes, has to do with proximity connectors.  And

3    defendants proposed a very narrow proximity connector of

4    within 10, which given that the search itself contains the

5    name of the partner and contains other terms specifically

6    relating to her circumstance, it's an unnecessary

7    modification.

8              THE COURT:  All right.  Defendants want near 10;

9    plaintiffs want near 40.  And is there a hit report that

10   tells me the difference in volume between these two?

11             MS. FISCHER:  I have some numbers.  You know, we

12   didn't have it at the time that we spoke last week.  And the

13   numbers are not totally precise because the unique counts on

14   the plaintiffs' report are different than the unique counts

15   on the defendants' report; but it's somewhere around -- it

16   would be an additional 800, 900 documents, something like

17   that.

18             THE COURT:  All right, so on No. 3 we'll go with

19   40.

20             On No. 4, what is the difference between the

21   near-10 connector that the defendants want and the near-20

22   connector that the plaintiffs want?

23             MS. FISCHER:  It's about 980.

24             THE COURT:  And what's the hit report at the

25   defendants' level with the near 20?

1                           PROCEEDINGS                    15

2                MS. FISCHER:  I'm sorry?

3                THE COURT:  That's the difference, right?  That's

4      an additional --

5                MS. FISCHER:  Plaintiffs' it was approximately

6      1,800; defendants was approximately 830.

7                THE COURT:  Oh, I see.  Okay.  All right, we will

8      go with near 10 on Item No. 4.  Those are fairly tight

9      terms; if it's not in the same sentence, it's not that

10     likely to be on topic.

11               MS. HARWIN:  And, your Honor, with respect to the

12     near 20, just, you know, typical sentences are generally

13     about 20 words.  And so the near 20 is designed to get at

14     approximately one sentence, where we use near 40 as

15     approximately two sentences.

16               THE COURT:  Right.  We'll go with near 20 on Item

17     No. 4.

18               Item No. 5 --

19               MS. FISCHER:  The differential was approximately

20     245.

21               THE COURT:  That's just not that many documents.

22     We'll go with near 40 on that one.

23               MS. FISCHER:  We'll withdraw our --

24               THE COURT:  No. 6?

25               MS. FISCHER:  We'll agree to plaintiffs' terms

1                                PROCEEDINGS                    16

2  on 6.

3              THE COURT:  Okay, so that takes us to No. 11.

4  Let's see, this is you're searching for management

5  committee within something-or-other of firing.

6              MS. HARWIN:  That's right.  And, your Honor, my

7  understanding is that the search that defendants propose is

8  a near-40 search, only brings up 27 unique documents.

9              THE COURT:  And what would the "and" connector

10  bring up?

11              MS. FISCHER:  That's actually not accurate.  It's

12  in the report I'm looking at here.  And the number of unique

13  documents -- that's what I alluded to before -- every time

14  you change a search, the unique documents for the other

15  searches change.

16              THE COURT:  True.

17              MS. FISCHER:  So, actually, that would yield -- in

18  our search it was 44; plaintiffs' search, 315.  Again, not

19  totally precise; the differential would be about 271.

20              THE COURT:  I'm going to go with near 40 on this

21  one.  So far, as you can tell, I'm doing baseball

22  arbitration; I'm not picking a magistrate judge's number in

23  between.  But if the differential gets significant enough, I

24  may do that.

25              MS. HARWIN:  Your Honor, given the criticalness of

1                       PROCEEDINGS                17

2  this particular search to the first Clackamas factor,

3  specifically --

4              THE COURT:  Which one?

5              MS. HARWIN:  This one about firing.  And given

6  the small difference of less than 300 documents, I --

7              THE COURT:  Oh, I'm sorry.  I misspoke.  I said

8  near 40, but I was thinking I'm going with the plaintiffs

9  on this.  So I apologize.  I'll go with the "and" connector

10  on this one.

11             All right, moving right along --

12             MS. FISCHER:  The next one, 23, this was actually

13  the most significant of them all.  Using plaintiffs'

14  proposal, this yielded over 21,000 unique documents.

15             THE COURT:  That's a lot of documents.

16             MS. FISCHER:  Using defendants' proposal, it

17  yielded just over 10,000 unique documents.

18             THE COURT:  All right, let me take a look at what

19  we're arguing about here.  This is the name of the lead

20  plaintiff within some number of words of all kinds of

21  things.

22             MS. HARWIN:  That's right.  And --

23             THE COURT:  So this covers a lot of territory.

24             MS. HARWIN:  Well, it covers things specific to

25  this plaintiff.  Each of the search terms uses her name.

```
 1                        PROCEEDINGS                   18

 2    Her first name is not a, you know, such a common name, so

 3    it's not --

 4              THE COURT:  No, I understand.  You're probably not

 5    getting -- well, are you getting -- am I reading this

 6    correctly that it would pick up anyone whose name is

 7    Campbell even if it's not Kerrie Campbell?

 8              MS. FISCHER:  Yes.

 9              THE COURT:  Are there other Campbells at the firm?

10              MS. FISCHER:  I am not certain.  I am not sure.

11              I would also add that the other words that are

12    being used, for example, the word "offer"; you know, for

13    example, the word "remove," those are --

14              THE COURT:  Sure.  Those are common English words.

15              MS. FISCHER:  -- very common -- exactly, they're

16    very common type of words.  So I think the relevant

17    discovery that plaintiffs are looking for here would be

18    coming in the same sentence in pretty close proximity to

19    this person's name.

20              THE COURT:  Right.  So taking Ms. Harwin's earlier

21    comment to heart that sentences, particularly lawyer

22    sentences, which are long, can be perhaps 20 words, let's

23    try a "within 20" or a "near 20" connector.  On this one

24    you'll get somewhere between 10,000 and 21,000 documents.

25    And, you know, as with all of these, once you see what you
```

 1                         PROCEEDINGS                    19

 2  get, you may or may not have a reasoned basis for arguing

 3  that there's some additional relevant documents if we just

 4  push it to near 25.

 5              MS. HARWIN:  Thank you, your Honor.

 6              THE COURT:  All right.  And then Item No. 24?

 7              MS. FISCHER:  The differential is just under 200

 8  documents.

 9              THE COURT:  All right, why don't we just go with

10  the plaintiffs' position on that one, which is the "and"

11  connector, correct?

12              MS. FISCHER:  On 26 and 30, we'll withdraw our

13  objections to those, as well.

14              THE COURT:  All right, what about 32?

15              MS. FISCHER:  Thirty-two, also the differential,

16  it's 224 between plaintiffs and defendants.

17              THE COURT:  All right, so go ahead and look at

18  those.  We'll give the near-30 on that one.

19              The search is zooming right along.  No. 40?

20              MS. FISCHER:  Forty, also the differential is 116.

21              THE COURT:  So we'll go with near-40.

22              I'm sorry, you just -- which ones did you just

23  withdraw?  You withdrew 26 and 30, is that correct

24              MS. McKENNA:  Yes, your Honor.

25              MS. FISCHER:  Yes.

1                              PROCEEDINGS                    20

2               THE COURT:  All right.  Hold on one second.

3          What's left?

4               MS. FISCHER:  Only a few.

5               THE COURT:  Fifty-two and 53.

6               MS. FISCHER:  Fifty-two was actually more

7     significant.  The differential is 2,769 unique documents

8     between plaintiffs' and defendants' proposals.

9               THE COURT:  All right, how many hits at near-10?

10              MS. FISCHER:  Well, this is the unique case,

11    1,226.

12              THE COURT:  And how many -- so that means there

13    are 3,000, almost 4,000, at near-40, correct?

14              MS. FISCHER:  That's correct.  It's 3,995.

15              THE COURT:  All right, we're going to go with

16    near-20 on Item 52 on the legal-sentence theory.

17              And No. 53?

18              MS. FISCHER:  Fifty-three, the differential is

19    1,846.  Plaintiffs' unique counts is about 9,500;

20    defendants' about 7,600, 7671.

21              THE COURT:  All right, we'll go with near-20 on

22    that one.

23              And No. 60, the last one.  I'm so excited.

24              MS. FISCHER:  And is.  And we'll also withdraw our

25    objection to 60.

1                              PROCEEDINGS                    21

2              THE COURT:  Okay.  Now, I do see in the parties'

3  joint letter a reference to a not yet fully ripe dispute,

4  which in fact is not fully ripe but it perhaps would not

5  hurt for me to remind plaintiffs' counsel that under the

6  Federal Rules of Civil Procedure you do actually have to

7  give a reason for discovery objections.

8              MS. HARWIN:  Your Honor, it's our position we have

9  given ample and specific reasons for our discovery

10  objections.  We dispute their characterization very much,

11  and we're going to meet and confer with them tomorrow

12  morning at 11:15.

13              THE COURT:  You're going to meet and confer

14  tomorrow morning at 11:15, which is a court holiday.  So if

15  you come back to me, it will have to be sometime after that.

16              Anything else I can do for counsel today?

17              MS. FISCHER:  Yes, your Honor.  We wanted to raise

18  the timing and schedule for ESI review and production.

19              THE COURT:  Didn't I already extend it for you at

20  your request?

21              MS. FISCHER:  That's right, your Honor; we

22  extended it.  But given, first of all, the additional

23  discovery that was ordered here; in addition, given the

24  volume of ESI, it is quite substantial -- it is quite

25  substantial.  I mean, we had already agreed to review 90,000

1                           PROCEEDINGS                    22

2   documents.  Based on today's court conference, it looks like

3   that will be somewhere over 100,000 documents.  Looking at

4   the 90,000 number, assuming a rate of reviewing 50 documents

5   an hour, that's 1,800 hours of review time.  And, of course,

6   that doesn't include the --

7           THE COURT:  That's the first-level review for both

8   privilege and responsiveness?

9           MS. FISCHER:  That would be just the first-level

10  review.  We would also do a quality control review, a

11  privilege review, privilege logging, redactions.  It's quite

12  a process, as I'm sure the Court's aware.  So, you know,

13  presently we are scheduled to produce documents on

14  December 1; but in light of the volume of ESI that's been

15  agreed to and ordered --

16          THE COURT:  I can't remember, because for some

17  reason I don't have my current scheduling order with me, but

18  did I give you a rolling production direction --

19          MS. FISCHER:  No.

20          MS. McKENNA:  No, your Honor.

21          THE COURT:  -- or just a date?

22          MS. HARWIN:  Your Honor, you gave a specific date

23  for the agreed-upon search terms of December 1 and said that

24  that deadline was except the portion, if any, related to

25  search terms and custodians as to which the parties have not

1                          PROCEEDINGS                    23

2   agreed.

3              THE COURT:  Right.  So one might say that means

4   that you produce the first 90,000, not produce all of the

5   90,000 but those that turn out to be discoverable, by

6   December 1; and the additional searches that I just ordered

7   today you'll have extra time on.  Are you telling me you

8   can't get the first tranche done by December 1?

9              MS. FISCHER:  I think, your Honor, that we  could

10  produce some documents by December 1, but what we would ask,

11  just in light of the volume, would be a very short, perhaps

12  two-week, extension of the December 1 deadline, perhaps to

13  December 15, which would permit us additional time to get

14  this done.

15             THE COURT:  And then how long -- that would be for

16  everything?

17             MS. FISCHER:  Yes, your Honor.

18             THE COURT:  All right --

19             MS. HARWIN:  Plaintiffs consent.

20             THE COURT:  -- let's do that.

21             So December 15 for ESI.  And does that require any

22  other dates to slip?

23             MS. HARWIN:  I don't believe so, your Honor.

24             MS. McKENNA:  No, no, your Honor.

25             THE COURT:  All right.  Fine.  December 15.

1                           PROCEEDINGS                    24

2            Anything else?

3            MS. HARWIN:   Thank you, your Honor.

4            THE COURT:   Thank you, counsel.

5            MR. MELZER:   Thank you, your Honor.

6            MS. FISCHER:   Thank you.

7            (Whereupon, the matter is adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Campbell, et al. versus Chadbourne & Parke, LLP, et al., Docket #16cv6832, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

*Carole Ludwig*

Signature_____

Date:  November 10, 2017