UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERRIE L. CAMPBELL, JAROSLAWA Z. JOHNSON, and MARY T. YELENICK, individually, and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NORTON ROSE FULBRIGHT US LLP, CHADBOURNE & PARKE LLP, MARC ALPERT, ANDREW GIACCIA, ABBE LOWELL, LAWRENCE ROSENBERG, HOWARD SEIFE, and PAUL WEBER,<br><br>    Defendants. | Civ. No. 1:16-cv-06832 (JPO)(BCM) |

**MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION
FOR APPROVAL OF SETTLEMENT OF, AND DISMISSAL OF,
PLAINTIFFS' EQUAL PAY ACT CLAIMS**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. RELEVANT HISTORY OF LITIGATION AND SETTLEMENT....................................1

III. LEGAL STANDARD FOR APPROVAL OF SETTLEMENT.........................................3

IV. THE SETTLEMENT IS FAIR AND REASONABLE ......................................................4

    A. Seriousness of Litigation Risk ...............................................................................4

    B. Plaintiffs' Range of Possible Recovery ..................................................................6

    C. Avoidance of Burdens and Expenses of Litigation..................................................8

    D. The Settlement Is the Product of Intensive Arm's Length Negotiations, Without Fraud or Collusion .....................................................................................8

    E. Attorneys' Fees Are Also Reasonable ...................................................................10

V. CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Alonso v. LE Bilboquet NY*, LLC, No. 16-CV-8448 (JMF), 2017 WL 445145 (S.D.N.Y. Feb. 1, 2017) .................................................................................................................................. 11

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...................................................................................................................... 10

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ................................... 2, 4

*Felter v. Zedo, Inc.*, No. 15 Civ. 8178 (HBP), 2016 WL 1394222 (S.D.N.Y. Apr. 1, 2016) ..... 4, 5

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005) ............................................... 11

*Gomez v. H & R Gunlund Ranches*, No. CV F10-1163 (LJO)(MJS), 2010 WL 5232973 (E.D. Cal. Nov. 22, 2011) ................................................................................................................ 11

*Gonqueh v. Leros Point to Point, Inc.*, No. 1:14-cv-5883-GHW (GWG), 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016) ....................................................................................................... 10

*Hernandez v. C & S Wholesale Grocers, Inc.*, No. 06-cv-2675 (CLB)(MDF), slip op. (S.D.N.Y. July 31, 2008) ......................................................................................................................... 10

*Pavon v. Daniel's Bagel Corp.*, No. 15-CV-8376 (LTS) (SN), 2016 WL 3960555 (S.D.N.Y. July 12, 2016) ................................................................................................................................. 4

*Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...................................................................................................... 10

*Winingear v. City of Norfolk,* No. 2:12-cv-560 (HCM), 2014 WL 3500996 (E.D. Va. July 14, 2014) ...................................................................................................................................... 11

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) .......................................... 4, 5

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (GF), 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) 10

**Statutes**

29 U.S.C. §§ 201 *et seq.* ................................................................................................................ 4
29 U.S.C. § 206(d) ......................................................................................................................... 2

## I. INTRODUCTION

After engaging in extensive litigation activity and protracted negotiations, Plaintiffs Kerrie L. Campbell, Jaroslawa Z. Johnson, and Mary T. Yelenick ("Plaintiffs") have reached agreements with Defendants Norton Rose Fulbright US LLP, Chadbourne & Parke LLP, Marc Alpert, Andrew Giaccia, Abbe Lowell, Lawrence Rosenberg, Howard Seife, and Paul Weber ("Defendants") to resolve their individual claims in this case.

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and Your Honor's Individual Practice Rule 3(I), the parties must seek Court approval of settlements that resolve claims under the Equal Pay Act (or "EPA"), 29 U.S.C. § 206(d). Here, Plaintiffs have standalone agreements with Defendants that settle their claims under the Equal Pay Act (which are subject to Court approval), as well as separate agreements that resolve all of Plaintiffs' remaining claims against Defendants.

Plaintiffs believe that their EPA settlement agreements provide an excellent recovery, without subjecting them to the substantial risks and expenses of further litigation. These settlements were only achieved after hard fought and protracted negotiations between capable counsel, facilitated by a skilled mediator. Accordingly, Plaintiffs' EPA settlements are fair and reasonable and should be approved in all respects.

## II. RELEVANT HISTORY OF LITIGATION AND SETTLEMENT

This case alleges that Defendant Chadbourne & Parke LLP ("Chadbourne") discriminated against Plaintiffs and the Firm's other female partners by paying them less than similarly situated male partners. (Dkt. No. 118.) Plaintiffs each assert individual claims under the Equal Pay Act; Plaintiff Campbell and Plaintiff Johnson opted into the EPA collective action on October 13, 2016 (Dkt. No. 10), and Plaintiff Yelenick opted into the EPA collective action on February 27, 2017

(Dkt. No. 68). Additionally, Plaintiffs have gender discrimination claims under Title VII and other individual common law claims, and Plaintiff Campbell and Plaintiff Yelenick have asserted other statutory claims. (Dkt. No. 118.)

The case has been heavily litigated. The parties[1] extensively briefed Defendants' pre-discovery motion for summary judgment (Dkt. Nos. 29-32, 52-56, 61-62, 64-65) and Plaintiffs' motion for conditional certification of an EPA collective action. (Dkt. Nos. 63, 71-73, 77, 79-80, 82-83.) The Court denied those motions without prejudice pending the exchange of relevant discovery. (Dkt. No. 108.) Since that time, Magistrate Judge Barbara Moses has decided various discovery and litigation disputes after reviewing briefing and hearing argument by the parties. (Dkt. Nos. 112, 129, 149, 153, 160.) Sanford Heisler Sharp's attorneys and staff have devoted over 3,600 hours to this case. (Sanford Decl. ¶ 10.)

The parties have made efforts to resolve this case over an extended period but were not successful until recently. On August 9, 2016, Plaintiff Campbell and Defendant Chadbourne participated in a full-day mediation with Dina Jansenson, an experienced mediator with JAMS, but were unable to reach agreement at that time. (*Id.* ¶ 2.) On February 27, 2017, Plaintiffs and Defendants participated in a full-day mediation with Ms. Jansenson, but again were unable to reach agreement at that time. (*Id.*) On April 5, 2017, the parties participated in a telephonic mediation session with Ms. Jansenson, but again were unable to reach agreement. (*Id.*)

On November 13, 2017, Plaintiff Johnson, Plaintiff Yelenick, and Defendants resumed mediation with Ms. Jansenson, where they finally reached an agreement in principle after lengthy negotiations. (*Id.* ¶ 3.) Even after reaching this agreement in principle, it took over two months

---

[1] Norton Rose Fulbright US LLP was added as a Defendant in this case in August 2017. All references to "Defendants" or "the parties" prior to that time, including in connection with motion practice, discovery disputes, or settlement efforts, exclude Defendant Norton Rose Fulbright US LLP.

of intensive arm's length negotiations (including many teleconferences and email exchanges) for the settling parties to reach full agreement on all terms. (*Id.*) Finally, on January 22, 2018, Plaintiff Johnson and Plaintiff Yelenick each entered into the standalone settlement agreements with Defendants that resolve their individual EPA claims. (*Id.*)

On December 19, 2017, Plaintiff Campbell and Defendants resumed mediation with Ms. Jansenson. (*Id.* ¶ 4.) Plaintiff Campbell and Defendants did not reach agreement at the mediation, and it was only through an additional two months of intensive arm's length negotiations between counsel (again including many teleconferences and email exchanges) that they reached agreement. On February 27, 2018, Plaintiff Campbell entered into the standalone settlement agreement with Defendants that resolves her individual EPA claims. (*Id.*)

Plaintiffs' respective EPA settlement agreements are appended as Exhibits 1, 2, and 3 to the Sanford Declaration. (*Id.* Exs. 1, 2 & 3.) These agreements resolve the Plaintiffs' EPA claims on an individual basis and in no way affect the rights or claims of any non-parties to this litigation.

### III. LEGAL STANDARD FOR APPROVAL OF SETTLEMENT

Because the Equal Pay Act is a part of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), Plaintiffs seek the Court's approval of the agreements that settle their EPA claims. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

A settlement of FLSA (including EPA) claims should be approved so long as it is "fair and reasonable." *See, e.g.*, *Pavon v. Daniel's Bagel Corp.*, No. 15-CV-8376 (LTS) (SN), 2016 WL 3960555, at *1 (S.D.N.Y. July 12, 2016) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). Generally, courts approve FLSA settlements when they are "reached as a result of contested litigation to resolve bona fide disputes." *Felter v. Zedo, Inc.*, No. 15 Civ. 8178 (HBP), 2016 WL 1394222, at *1 (S.D.N.Y. Apr. 1, 2016) (internal quotation marks and citations

omitted). The Court should determine whether "the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted).

In assessing whether the proposed settlement is fair and reasonable, courts may consider the totality of the circumstances, including: "(1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risk faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Id*.

## IV. THE SETTLEMENT IS FAIR AND REASONABLE

Here, the parties' settlements were only reached after more than a year of intense litigation activity, including extensive motion practice in which Defendants challenged Plaintiffs' very right to bring suit under the Equal Pay Act, and protracted negotiations, including multiple mediations and extensive follow-up negotiations. The resulting settlements certainly "reflect[] a reasonable compromise over contested issues," and are fair and reasonable in all respects. *Felter*, 2016 WL 1394222, at *1 (internal citations omitted). Thus, the settlement of Plaintiffs' EPA claims should be approved in its entirety.

### A. Seriousness of Litigation Risk

In this case, liability and damages are both sharply disputed. Early in the case, Defendants raised a threshold dispute as to whether Plaintiffs, as former law firm partners, are entitled to avail themselves of the protections of the Equal Pay Act. (*See* Dkt. No. 82.) Defendants filed a pre-discovery motion for summary judgment (Dkt. No. 30) contending that Plaintiffs are not

"employees" under the relevant statutes, including the Equal Pay Act, because of their "status as partners at the Firm and according to the terms of the operative partnership agreement." (Dkt. No. 108.) Defendants also vigorously opposed Plaintiffs' motion for conditional certification of an EPA collective action on similar grounds. (Dkt. Nos. 63-83.) While the Court ultimately denied both motions without prejudice until limited discovery could be completed on the threshold issue of Plaintiffs' employment status, in reviewing the parties' respective submissions, the Court stated, "If Defendants are right, the case cannot proceed." (Dkt. No. 108.)

The parties subsequently commenced the targeted discovery ordered by the Court on the threshold question of whether Plaintiffs are "employees" covered by the EPA and other relevant statutes. (*See* Dkt. No. 105.) The proper scope of discovery, including as to the discovery of electronically stored information (ESI), has been a hotly contested issue, leading to motion practice. Magistrate Judge Barbara Moses has decided various discovery and litigation disputes after reviewing briefing and hearing argument by the parties. (*See* Dkt. Nos. 112, 129, 149, 153, 160.) Absent this settlement, Defendants would be expected to file a renewed motion for summary judgment after the close of this first stage of discovery.

In addition to the risk associated with litigating Plaintiffs' employment status, the parties dispute the merits of the claims that Plaintiffs experienced gender discrimination in pay (and, if so, to what extent). Defendants assert that Chadbourne was "an equal opportunity employer" and that the "compensation of women at the Firm was not determined based on their gender." (Dkt. No. 146, ¶ 10). Defendants further dispute that the potential male comparators that Plaintiffs identified in support of their pay discrimination claims were, in fact, similarly situated to Plaintiffs. Additional discovery and litigation would be required in order to determine whether Plaintiffs will succeed on their claims that they suffered gender discrimination in pay.

The settlement resolves all of the foreseeable risks of litigation in a favorable manner. Thus, this factor strongly favors Court approval of the settlement.

### B. Plaintiffs' Range of Possible Recovery

Back pay damages under the Equal Pay Act are calculated by comparing the compensation received by the Plaintiffs to the compensation received by similarly situated male partners during the statutory limitations period. Accordingly, the estimation of Plaintiffs' damages under the Equal Pay Act vary markedly based on which male comparators are selected. Moreover, Defendants vigorously dispute whether Plaintiffs are, in fact, similarly situated to any of the higher paid males they have identified as potential comparators.

Comparisons of Plaintiff Campbell to male partners at Chadbourne indicate a range of potential recovery. If Plaintiff Campbell is compared to a male partner that she contends is similarly situated based on their respective revenue collections, her EPA back pay damages are estimated at $1,391,205.38, whereas if Plaintiff Campbell is compared to other male partners who she contends handled similar types of cases as her, her EPA back pay damages are estimated at $316,649.23.[2] (Sanford Decl. ¶ 6.) Defendants, meanwhile, dispute that Plaintiff Campbell and any of the higher paid male partners at Chadbourne were in fact similarly situated and contend that she has no back pay damages, and contend that even her stated criteria for claimed comparability could in fact yield a range of figures both higher and lower than what she now asserts. Meanwhile, Plaintiff Campbell's EPA settlement provides that Defendants will make payments to Campbell that total $1,000,000 (plus an additional payment for her attorneys' fees and costs). (Sanford Decl. Ex. 1 ¶ 2(a).)

---

[2] These calculations assume a two-year statute of limitations, as do the calculations for Plaintiff Yelenick. Defendants vigorously dispute that the extended limitations period for "willful" violations applies here.

6

Comparisons of Plaintiff Yelenick to male partners at Chadbourne likewise indicate a range of potential recovery. If Plaintiff Yelenick is compared to a male partner that she contends is similarly situated based on their respective revenue collections, her EPA back pay damages are estimated at $258,188.37, whereas if Plaintiff Yelenick is compared to another male partner who she contends handled similar types of cases as her, her EPA back pay damages are estimated at $106,970.10. (Sanford Decl. ¶ 7.) Again, Defendants dispute that any higher paid male partners at Chadbourne were in fact similarly situated to Plaintiff Yelenick and contend that she has no back pay damages, and contend that even her stated criteria for claimed comparability could in fact yield a range of figures both higher and lower than what she now asserts. Meanwhile, Plaintiff Yelenick's EPA settlement provides that Defendants will make payments to her that total over $750,000 (plus an additional payment for her attorneys' fees and costs). (Sanford Decl. Ex. 2 ¶ 2(a).)

Comparisons of Plaintiff Johnson to male partners at Chadbourne indicate a limited potential for recovery. Plaintiff Johnson was no longer a partner at Chadbourne during the two-year statute of limitations period and therefore has potential for recovery only if the extended statute of limitations for willful violations of the Equal Pay Act is applied. Assuming an extended statute of limitations, if Plaintiff Johnson is compared to a male partner that she contends is similarly situated based on their respective revenue collections, her EPA back pay damages are estimated at $103,710.39, whereas if Plaintiff Johnson is compared to another male partner who she contends handled similar types of matters as her, her EPA back pay damages are estimated at $67,921.30.[3] (Sanford Decl. ¶ 8.) Again, Defendants dispute that any higher paid male partners at Chadbourne were in fact similarly situated to Plaintiff Johnson and contend that she has no back

---

[3] This assumes that Johnson, who worked primarily out of Chadbourne's Kiev office, worked in the United States for a quarter of the time within the statute of limitations period.

7

pay damages, and contend that even her stated criteria for claimed comparability could in fact yield a range of figures both higher and lower than what she now asserts. Meanwhile, Plaintiff Johnson's EPA settlement provides that Defendants will make payments to her that total $250,000 (plus an additional payment for her attorneys' fees and costs). (Sanford Decl. Ex. 3 ¶ 2(a).)

In sum, the standalone EPA settlements provide Plaintiffs with a favorable recovery under the Equal Pay Act. Thus, this factor strongly favors Court approval of the settlement.

### C. Avoidance of Burdens and Expenses of Litigation

While the parties have already engaged in extensive motion practice and exchanged initial discovery, the burdens and expenses of litigation would increase drastically if litigation proceeded in this case. Each side would anticipate additional motion practice concerning the adequacy of the other's discovery responses, and then Plaintiffs would be required to prepare for and conduct numerous depositions and engage in further motion practice in connection with Defendants' contemplated renewed motion for summary judgment. Thereafter, the burdens and expenses of litigation would only further increase with a second round of discovery on the merits, followed by additional summary judgment briefing and then possible trial. Settlement now allows Plaintiffs to avoid these burdens and expenses, which could easily cost many hundreds of thousands of dollars.

Given the favorable result achieved through this settlement, incurring additional burdens or expenses of litigation ultimately would be unlikely to increase Plaintiffs' recovery under the Equal Pay Act. Thus, this factor also strongly favors Court approval of the EPA settlements.

### D. The Settlement is the Product of Intensive Arm's Length Negotiations, Without Fraud or Collusion

Plaintiffs' EPA settlements are the result of protracted and hard-fought arm's length negotiations, in which each party was represented by experienced, capable attorneys. Sanford Heisler Sharp, LLP in particular has been recognized repeatedly as one of the nation's leading

8

plaintiffs' firms and has extensive experience litigating gender discrimination, including Equal Pay Act, cases. *See, e.g., Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852 at *10 (S.D.N.Y. Nov. 30, 2010) ("[Sanford Heisler Sharp], has just the sort of established record contemplated by the Rules."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374 at *1 (S.D.N.Y. Aug. 6, 2010) (recognizing Sanford Heisler Sharp as having "an established record of competent and successful prosecution of large . . . class actions"); s*ee also Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (GF), 2014 WL 7011819, at *5 (N.D. Ill. Dec. 12, 2014) (acknowledging that Sanford Heisler Sharp "is very experienced in complex class and collective litigation . . . and has been repeatedly recognized for its skilled and effective representation"); *Hernandez v. C & S Wholesale Grocers, Inc.*, No. 06-cv-2675 (CLB)(MDF), slip op. (S.D.N.Y. July 31, 2008) (describing Sanford Heisler Sharp as "exceptionally able and experienced").

The fact that the settlements were reached with the assistance of an experienced mediator over the course of extended negotiations further supports the conclusion that the negotiations were at arm's length, without fraud or collusion. *See, e.g.*, *Gonqueh v. Leros Point to Point, Inc.*, No. 1:14-cv-5883-GHW (GWG), 2016 WL 791295, at *3 (S.D.N.Y. Feb. 26, 2016) (finding the settlement was "reached as the result of intensive, arms-length negotiations, including mediation with an experienced third-party neutral."). Even with the assistance of the mediator, the parties still required multiple mediations, followed by months of follow-up negotiations, in order to reach final settlements. In short, there is absolutely no concern that the settlement is a result of "overreaching" by the employer.

### E. Attorneys' Fees Are Also Reasonable

In addition to the above amounts that Defendants will pay directly to Plaintiffs, Defendants will pay Plaintiffs' attorneys' fees in amounts consistent with those agreed to by Plaintiffs in their individual retainer agreements with counsel. Specifically, the EPA agreements provide for Defendants to pay $134,615.38 for Plaintiff Johnson's attorneys' fees and costs (Sanford Decl. Ex. 3 ¶ 2(a)(iii)), $403,846.15 for Plaintiff Yelenick's attorneys' fees and costs (Sanford Decl. Ex. 2 ¶ 2(a)(iii)), and $538,461.54 for Plaintiff Campbell's attorneys' fees and costs (Sanford Decl. Ex. 1 ¶ 2(a)(iii)). These sums represent 35% of the gross settlement provided for in each Plaintiff's EPA settlement agreement. Plaintiffs, who are themselves lawyers with over thirty years of experience each, have fully approved these fees. (Sanford Decl. ¶ 9.)

The attorneys' fees to be paid by Defendants in connection with the EPA settlements are wholly reasonable, particularly in light of Plaintiffs' favorable recovery. As described above, this litigation is complex and risky. Counsel's extensive investment of time and labor, the case's magnitude and substantial complexities, the risk of protracted continued litigation, the quality of counsel's representation in achieving this settlement, and the fees' relation to the settlement,[4] as well as public policy considerations supporting the payment of attorneys' fees in discrimination cases, all confirm the reasonableness of the attorneys' fees specified in Plaintiffs' retainer agreements and in their EPA settlements. Further, there is no reason to reduce attorneys' fees

---

[4] The contingency fee of 35% is well within the range of fees that have been approved in this Circuit and elsewhere, even in the class action context. *See, e.g.*, *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008) (awarding an $8 million fee in employment case, representing over 38% of total relief, in addition to nearly $1 million in litigation expenses); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188-89 (W.D.N.Y. 2005) (awarding 38.26% of fund); *see also, e.g.*, *Winingear v. City of Norfolk,* No. 2:12-cv-560 (HCM), 2014 WL 3500996 at *6-7 (E.D. Va. July 14, 2014) (approving fee award equivalent to 35% of $3.2 million total fund and noting "that this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Gomez v. H & R Gunlund Ranches*, No. CV F10-1163 (LJO)(MJS), 2010 WL 5232973, at *5 (E.D. Cal. Nov. 22, 2011) (45% fee award in FLSA collective action).

where they are consistent with a commonly approved percentage, there are no other opt-in plaintiffs, the case is not settled as a collective action, and the attorneys' fees are based on agreements between Plaintiffs and counsel. *See Alonso v. LE Bilboquet NY*, LLC, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (granting *Cheeks* approval).

## V. CONCLUSION

The parties' settlements resolve the risks and burdens of litigation in a favorable manner. All relevant factors strongly favor Court approval of the settlements. Accordingly, Plaintiffs respectfully request that the Court approve the settlements as fair and reasonable and enter Plaintiffs' proposed order.

Dated: March 14, 2018                             Respectfully submitted,

/s/ David W. Sanford

David W. Sanford (admitted *pro hac vice*)
Jeremy Heisler (JH-0145)
Kevin Sharp (admitted *pro hac vice*)
Andrew Melzer (AM-7649)
Alexandra Harwin (AH-3111)
Saba Bireda (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
ksharp@sanfordheisler.com
amelzer@sanfordheisler.com
aharwin@sanfordheisler.com
sbireda@sanfordheisler.com

*Counsel for Plaintiffs*